UNITED STATE BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

    Silvia Nuer,

        Debtor.

Chapter 7
Case No. 08-14106

Hon. Robert E. Gerber
Bankruptcy Judge

---

## AFFIDAVIT IN FURTHER SUPPORT OF MOTION FOR TERMINATION OF THE AUTOMATIC STAY.

Natalie A. Grigg, Esq., an attorney duly admitted to practice before the United States Bankruptcy Court for the Southern District of New York, states the following under the penalty of perjury:

1. I am an associate with Steven J. Baum, P.C., the attorneys for JP Morgan Chase Bank National Association as servicer for Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Trust 2006-2 (the "Secured Creditor"), a secured creditor of Silvia Nuer (the "Debtor"), and as such, am fully familiar with the facts and circumstances contained herein.

2. This Affirmation is submitted in further support of Secured Creditor's motion to terminate the automatic stay as to the Debtor's interest in real property commonly known as 1651 Metropolitan Avenue, 7C, Bronx, NY 10462.

# ARGUMENT

## POINT I

### DEBTOR FAILED TO PROVIDE PROOF THAT THE SECURED CREDITOR ASSESSED CHARGES OR CREDITED PAYMENTS IN AN IMPROPER MANNER.

3. In response to the Secured Creditor's Motion for Relief, the Debtor has not provided one ounce of proof to show that she has made any payments on the subject mortgage since September 2007. The Debtor did not provide cancelled checks, proof of direct payment, or banking statements that would show that funds were issued to pay the monthly mortgage payments from October 2007 through the present time.

4. Rather, the Debtor makes conclusory allegations about the fees assessed against the loan and claims that the Secured Creditor violated the terms of the Note and Mortgage. A payment history attached hereto as Exhibit A demonstrates that all fees charged against the loan are permitted pursuant to the terms of the Note and Mortgage. Notably, up until October 2007, Debtor, for the most part, submitted her monthly payments on time. On the rare occasion where the payment was late, Debtor included the amount of the late fee in her payment.

5. Likewise, on only one occasion was $0.26 placed in suspense for a period of three days before it was applied to the outstanding late fees that had been assessed due to Debtor's failure to submit her first payment in a timely manner.

6. With respect to Debtor's allegations that interest was improperly assessed on the loan, Debtor has provided no support for this contention. The Note that is the subject of this motion is an adjustable rate note and provides that the Debtor will pay interest at a yearly rate of 8.7%, and that this rate will change in accordance with Section 4 of the Note. Section 4 provides that the initial fixed interest rate will change to an adjustable interest rate on February 1, 2008, and on that day

every sixth month thereafter. *See* Exhibit A attached to Secured Creditor's Motion for Relief, Fixed/Adjustable Rate Note, § 4.

7. Additionally, Section 4(A) sets forth how the interest rate will be calculated as well as provides for a maximum and minimum rate. Debtor has failed to come forth with evidence to show how interest has been improperly assessed against the loan, and the Secured Creditor submits that any changes were done in accordance with the aforementioned provisions.

8. Further, a review of the Note and Mortgage reveals that the Secured Creditor is permitted to assess such fees as late charges, attorneys fees, property inspections, and valuation fees. Paragraph 7 of the Note states

> "(A) Late Charges for Overdue Payments
> If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder."

Exhibit A, ¶ 7.

9. Looking to New York law to govern contract interpretations shows that the law is clear that one who signs a document is conclusively bound to its terms and cannot later be heard to allege that she did not know or understand the provisions. *Transmedia Restaurant Co. v. 33 East 61st Street Restaurant Corp.*, 184 Misc.2d 706 (N.Y. Sup. 2000) *citing Dunkin' Donuts of America v. Liberatore*, 138 A.D.2d 559 (2d Dep't 1988). A signatory to a contract is conclusively bound, even if her mind never gave a sense to the express terms of the contract. *Pimpinello v. Swift & Co.*, 253 N.Y. 159 (1930); *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411 (1920); *Sterling Nat'l Bank v. I.S.A. Merchandising Corp.*, 91 A.D.2d 571 (1st Dep't 1982). Stated in another way, a signatory is presumed to know the contents of what is signed and assented to the provisions. There is no excuse for a person's failure to read or comprehend the contract materials. *Sofio v. Hughes*, 162 A.D.2d 518 (2d Dep't 1990).

10. The terms of the Mortgage provide that the Debtor agreed to pay the principal and interest due under the note, as well as any prepayment, late charges or other amounts due under the Note. *See* Exhibit A to Secured Creditor's Motion for Relief, Mortgage, "Covenants," § 1. This section also provides that if the lender accepts lesser payments, that the lender is not obligated to apply such payments when it accepts such payments. *Id.* The terms also permit the lender to "hold such unapplied fund until [the Debtor] make[s] payments to bring the Loan current." *Id.* Further, the Mortgage permits the lender to charge fees for services performed in connection with the Debtor's default under the Note and Mortgage, "including, but not limited to, attorneys' fees, property inspection and valuation fees." *See* Exhibit A attached to Secured Creditor's Motion for Relief, Mortgage, ¶ 14 entitled "Loan Charges."

11. A review of the payment history demonstrates that the payments were applied toward the monthly payment due at the time the payment was received. In fact, for the most part, the history shows that any amount of an overpayment was applied to the unpaid principal balance. The late charges set forth in the Secured Creditor's proof of claim were assessed against the loan as of October 2007 when Debtor stopped making payments on the Note and Mortgage. *See* Exhibit A.

12. Simply put, there is a written Note, secured by a Mortgage, whereby the Debtor agreed to make monthly payments to the holder of the Note and Mortgage. The Debtor failed to make her monthly payments and the Mortgage is now due for the October 2007 installment. Clearly, there has been a default in the conditions of the mortgage loan agreement, to which the Debtor is personally liable as record owner and original obligor.

13. The Secured Creditor has suffered and continues to suffer prejudice in that it has not received any payments on the Note secured by the Mortgage since September, 2007. Debtor has

not disputed that she has not made payments since that time. As such, the Secured Creditor's motion for relief should be granted in its entirety.

## POINT II

### THE SECURED CREDITOR IS NOT OBLIGATED TO PROVIDE A NOTICE OF DEFAULT BEFORE SEEKING THE INSTANT RELIEF.

14. To the extent that the Debtor is referring to the foreclosure proceedings that took place before she filed for bankruptcy, the Secured Creditor submits that a Notice of Default was issued on or about December 5, 2007. Debtor was aware at that time that the Secured Creditor intended to foreclose on the Mortgaged Premises if the default was not cured.

15. For argument's sake, if Debtor's allegations refer to the Secured Creditor not mailing a second Notice of Default and Intent to Accelerate before making the instant motion, the Secured Creditor was under no obligation to do so. There are no requirements in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the Local Rules that require a Secured Creditor to issue a Notice of Default and Intent to Accelerate before moving for relief from the automatic stay.

## POINT III

### THE SECURED CREDITOR IS NOT REQUIRED TO COMPLY WITH APPLICABLE FANNIE MAE/FREEDI MAC/GINNE MAE SERVICING GUIDELINES.

16. Debtor also alleges that the Secured Creditor failed to follow applicable Fannie Mae/Freddie Mac Servicing Laws, Regulations, and Order. First, Debtor failed to submit proof that this loan would be subject to such guidelines. This is most likely due to the fact that the subject loan was not

a loan secured by Freddie Mac/Fannie Mae. Thus, the Fannie Mae/Freddie Mac guidelines are inapplicable and the Secured Creditor was not required to adhere to such guidelines.

17. Therefore, Debtor's allegations are without merit and must be disregarded by the Court.

## POINT IV

### THE DEBTOR FAILED TO SHOW HOW THE SECURED CREDITOR FAILED TO ACT IN GOOD FAITH.

18. The Debtor has failed to provide any evidence that the Secured Creditor has, in any way, acted inappropriately or in bad faith and has offered no proof of any wrongdoing on the part of the Secured Creditor. The Debtor alleges that the Secured Creditor failed to follow applicable standards of residential mortgage lending and servicing, yet fails to identify the standards that the Secured Creditor allegedly did not adhere to while servicing the subject Mortgage.

19. The Debtor's conclusory and unsupported claims of bad faith are negated by the express terms of the parties' unambiguous written agreements and as such, must be dismissed. *Long Island Rail Road Co. v. Northville Industries Corp.*, 41 N.Y.2d 455, 393 N.Y.S. 2d 925 (1977); *West, Weir & Bartel Inc. v. Mary Carter Paint Co.*, 25 N.Y.2d 535, 307 N.Y.S. 2d 449 (1969).

20. As noted above, the Secured Creditor has complied with the terms and provisions of the underlying Note and Mortgage. Debtor has failed to submit proof as to how the Secured Creditor has violated those terms. The Debtor has the burden of demonstrating bad faith behavior, and failing to do so, this Affirmative defense fails.

# POINT V

## THE SECURED CREDITOR IS NOT BARRED BY THE DOCTRINE OF UNCLEAN HANDS.

21. The Debtor alleges that the Secured Creditor is barred from obtaining relief from the automatic stay by the doctrine of unclean hands. "The doctrine of unclean hands holds that 'the equitable powers of th[e] court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage.'" *Torres v. Gristede's Operating Corp.*, 2008 U.S. Dist. LEXIS 66066, *38 (S.D.N.Y. August 28, 2008).

22. It is well established that the party invoking the doctrine of unclean hands as a defense has the burden of proof. *See Balaber-Strauss v. Murphy*, 331 B.R. 107, 2005 Bankr. LEXIS 1652 (Bankr. S.D.N.Y. 2005). In order to establish unclean hands, there must be a showing of wrongful intent or willful misconduct. *See William Penn Life Ins. Co. v. Viscuso*, 569 F.Supp. 2d 355, 362, 2008 U.S. Dist. LEXIS 61014 (S.D.N.Y. July 30, 2008).

23. Additionally, the debtor must show that she was personally injured by the Secured Creditor's conduct. *See Schweitzz Dist. Co. v. P&K Trading*, 1998 U.S. Dist. LEXIS 12268 (E.D.N.Y. July 16, 1998).

24. The Second Circuit has held that "'while equity does not demand that its suitors shall have led blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy at issue." *Dunlop-McCullen v. Local 1-S*, 149 F.3d 85, 90 (2d Cir. 1998). In such circumstances, the court may deny equitable relief "'where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith . . . .'" *Balaber-Strauss*, 331 B.R. at 135 (citation omitted); *see also Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F.Supp. 2d 126 (S.D.N.Y. 1999) (courts that have denied relief due to plaintiff's unclean hands have found plaintiff guilty of truly unconscionable and brazen behavior).

25. "It is undisputed that an unclean hands defense requires a finding of bad faith." *Obabueki v. IBM*, 145 F. Supp. 2d 371, 401 (S.D.N.Y. 2001).

26. Applying these principles to the instant case leads to the conclusion that the Secured Creditor has not come to the table with unclean hands, and the Debtor's defense is without merit.

27. The Debtor makes conclusory allegations that the Secured Creditor failed to comply with the terms of the Note and Mortgage, without expressly stating how this was done. The Debtor offered no proof to support this allegation.

28. The Debtor also alleges that the Secured Creditor willfully failed to comply with 11 U.S.C. § 362(a), 11 U.S.C. § 506(b), and Fed. R. Bankr. Pro. 2016(a). In addressing Debtor's allegations that the Secured Creditor has violated 11 U.S.C. § 362(a), it is important to note that the Secured Creditor has not taken any action to collect on the debt since the filing of the instant position. In fact, the whole purpose for the underlying motion is to obtain relief from the stay so that the Secured Creditor can lawfully pursue its rights under State law. The Debtor makes allegations that the Secured Creditor has not complied with § 362(a), yet has failed to provide any proof to support this contention.

29. Likewise, Debtor's allegations that the Secured Creditor failed to comply with § 506(b) is also without merit. Section 506(b) provides that the holder of a claim is entitled to interest on the claim as well as reasonable fees, costs, or charges in the event that the claim is secured by property the value of which is greater than the amount of the claim.

30. Additionally, Debtor's allegations regarding Fed. R. Bankr. Pro. 2016 is unfounded and inapplicable to the present case. Rule 2016(a) govern an entity's application for compensation or reimbursement for services rendered in connection with the case. Here, the Secured Creditor is not

seeking reimbursement or compensation from the estate for services performed, and thus, this rule is inapplicable.

31. Further, while the Debtor alleges that the circumstances surrounding the real estate closing and execution of the note and mortgage involved fraudulent activity, the Debtor fails to account for the most important aspect of the transaction: that being the Secured Creditor was not a party to that transaction. As can be seen from the Debtor's loan documents, the original loan transaction was between the Debtor and Long Beach Mortgage Company.

32. The Debtor goes so far as to make such unsubstantiated statements as the Movant (here, J.P. Morgan), "conspired to use known falsified documents," "conspired to perpetrate and did so perpetrate a fraud for the purpose of Movant's own financial gain," "conspired and did in fact knowingly and purposefully draft checks at the closing," and used forged documentation at the time of closing. Importantly, the Secured Creditor was not a party to the original transaction that brought about the execution of the Note and Mortgage. It is preposterous to think that the Secured Creditor should be accused of fraud or found guilty of fraudulent conduct when it was not a party, and thus could not have the requisite intent to commit fraud.

33. In order to establish a cause of action for fraud, the Debtor must plead "(1) a misrepresentation or material omission of fact, (2) which was false and known to be false by the defendant, (3) made for the purpose of inducing the other party to rely upon it, (4) justifiable reliance by the other party on the misrepresentation or material omission, and (5) injury," *Oxyn Telecomms., Inc. v. ONSE Telecom*, 2003 U.S. Dist. LEXIS 17371 (S.D.N.Y. September 30, 2003) "Proof of fraud must be established by clear and convincing evidence so that the inference of fraud is unequivocal." *Kolinsky v. Gagliano*, 110 B.R. 128, 136, 1990 Bankr. LEXIS 268 (Bankr. S.D.N.Y. 1990).

34. Debtor's allegations of fraud as against the Secured Creditor are baseless and frivolous. As noted above, the Secured Creditor was not a party to the closing that occurred on or about January 6, 2006. Thus, the Secured Creditor could not have made any material misrepresentations of fact, nor could it have the requisite intent to deceive. To the extent that the Debtor alleges potential fraud on the part of third parties, the Debtor has the ability to file suit against those parties and seek the appropriate damages.

35. The Secured Creditor did not play any part in drafting documents, issuing drafts, retaining attorneys, or performing any other activity surrounding that event. The Debtor has failed to provide any evidence whatsoever that the Secured Creditor has acted inappropriately or in bad faith, and has offered no proof of any wrongdoing on the part of the Secured Creditor. As there has been no showing of any bad faith, fraud, or deceit on the part of the Secured Creditor, the defense of unclean hands cannot succeed. *See e.g. Transp. Workers Union, Local 100 v. N.Y. City Transit Auth.*, 341 F. Supp. 2d 432 (S.D.N.Y. 2004).

### POINT VI

### THE SECURED CREDITOR WAS AND IS NOT UNDER AN OBLIGATION TO PROVIDE HUD COUNSELING.

36. The Debtor alleges that the Secured Creditor failed to send a notice advising the Debtor of the availability of loan counseling pursuant to HUD law 12 U.S.C. Section 1701. The Debtor fails to offer any legal authority for this proposition. While loans insured by the Federal Housing Administration of the U.S. Department of Housing and Urban Development suggest credit counseling in their guidelines, there is no legal obligation to do so. In any event, even if such a requirement were to exist, it undoubtedly applies to FHA insured home loans only. The Mortgage

that is the subject of this motion is not an FHA insured loan and as such, any HUD requirement would not apply.

## POINT VII

### THE SECURED CREDITOR HAS STANDING TO BRING A MOTION FOR RELIEF.

37. To be entitled to relief from the automatic bankruptcy stay, it is necessary that the party seeking such relief be a "party in interest." 11 U.S.C. § 362(d). While the term "party in interest" is not defined in the Code, whether an entity is a party in interest and has standing to file a Motion for Relief depends on whether it has a pecuniary interest. In order to have party in interest standing, a party "...must be either a creditor or a debtor to invoke the court's jurisdiction." *See In re Comcoach Corp.* 698 F.2d 571, 573 (2d Cir. 1983).

38. JP Morgan's status as a servicer to Deutche Bank provides the necessary standing for America's Servicing Company to make the instant motion. *See In Re Viencek*, 273 B.R. 354 (N.D.N.Y. 2002) (A mortgage servicer was a real party in interest and had standing to object to a Motion to Expunge a Proof of Claim because "of its pecuniary interest in the mortgages it services); *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002) (Loan servicer was a party in interest in debtors' bankruptcy proceedings involving loan which it serviced, as servicer possessed rights sought to be enforced in bankruptcy claim and had an economic interest in the debt.).

39. The application in support of the Motion for Relief clearly identifies that J.P. Morgan is making the Application as the servicer for Deutsche, J.P. Morgan does not claim to be the holder of the Note and Mortgage. However, J.P Morgan is the loan service provider for Deutsche and has a pecuniary interest in the loan it is servicing. Thus, J.P. Morgan has standing to make the instant motion.

40. Additionally, the code defines a creditor as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A claim is defined as a "right to payment," (*Id.* at § 101(5)(A)), or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payments (*Id.* At § 101(5)(B)).

41. At the outset, it should be noted that the Debtor herself acknowledged that Washington Mutual Bank is a Secured Creditor by listing it as such on Schedule D of her Petition. In indicating that there is a secured claim on the Mortgaged Premises, the Debtor has acknowledged that there is a valid claim secured by the real property and the creditor would therefore have standing to vacate the automatic stay.

42. Therefore, it is evident that J.P. Morgan is a "creditor" of the Debtor. The Debtor has an obligation and duty to pay based on the Note and Mortgage she executed, thus, J.P. Morgan, as servicer for Deutsch, has a right to payment from the Debtor and a pecuniary interest in the mortgage. J.P. Morgan also has the right to equitable relief based on a breach of performance giving rise to a right to payment. As such, J.P. Morgan possesses a claim against the Debtor as well as "creditor" status and has standing to move to vacate the automatic stay.

### POINT VIII

### THERE IS NO REQUIREMENT THAT THE SECURED CREDITOR PRODUCE THE ORIGINAL NOTE.

43. The Debtor contends that the Secured Creditor cannot enforce its rights under the original note if the note was lost by the prior holder. However, this defense has no bearing on the instant proceeding.

44. Notably, there is no contention by the Secured Creditor that the note was lost. Logically, if the note was lost, the Secured Creditor would not have been able to provide a duplicate copy of the

note as Exhibit A to the Motion for Relief. A review of Exhibit A reveals that the Debtor executed a Fixed/Adjustable Rate Note in the amount of $104,000 on January 6, 2006.

45. In moving for relief from the stay, there is no requirement under 11 U.S.C. 362, F.R.B.P. 4001, F.R.B.P. 9014, or the Local Rules of this Court that the note must be produced to successfully obtain relief from the automatic stay.

46. FRBP 3001(c) provides that "When a claim ...is based on a writing, the original <u>or a duplicate</u>..." shall be provided. *Emphasis added.*

47. Therefore, the Secured Creditor is in no way compelled to produce the original note and, in fact, the Debtor is not entitled to the original promissory note as said document is a negotiable instrument and the holder of the note is entitled to payment upon the debt.

48. Additionally, the case law relied on by the Debtor is distinguishable from the instant proceeding. In *Dennis Joslin Co. v. Robinson Broadcasting Corp.*, 977 F.Supp. 491 (D.D.C. 1997), the Federal Deposit Insurance Corporation ("FDIC") acquired the note after it was executed, and then subsequently sold the note to another entity. Notably, prior to selling the note, the FDIC actually lost the original note and had to file an affidavit of lost note. The plaintiff, a holder subsequent to the FDIC, commenced suit to recover on the note. The defendant argued that the plaintiff could not recover on the note because the District of Columbia version of the Uniform Commercial Code prevented such recovery unless the note was in the plaintiff's possession at the time it was lost. Importantly, the plaintiff was not in possession of the note when it commenced the suit, nor was it in possession of the note at the time it was lost. Based on plaintiff's failure to meet those two factors, the court held that the plaintiff could not recover on the note.

49. Unlike the situation in *Dennis Joslin*, here, there is no contention that the note was lost since it was executed by the Debtor. Thus, any argument that the Secured Creditor cannot enforce its rights pursuant to the note is without merit.

## POINT IX

### DEBTOR'S REQUEST FOR DOCUMENTS AND ACCELERATED TIME SHOULD BE DENIED.

50. Notably, the first time Debtor has made a request for documents were in response to the Secured Creditor's Motion for Relief. At no time prior to the instant proceeding did the Debtor make a request pursuant to the Real Estate Settlement Procedures Act, nor did the Debtor issue formal discovery demands.

51. Despite this, Debtor now makes a motion seeking this information and asking the court to accelerate the time frame in which said documentation should be disclosed. Said counter motion is conceivably close to a motion to compel, yet Debtor did not previously request the information, nor has the Debtor made a good faith effort to resolve any dispute for such information as required by Federal Rule of Bankruptcy Procedure 7037.

52. Notwithstanding these objections, and to void any further delay, a full payment history is attached hereto as Exhibit A. As set forth in the Secured Creditor's original papers, the Debtor has not submitted any payments since October 2007. Likewise, no payments have been made since the commencement of the instant bankruptcy Case. Thus, the Secured Creditor cannot provide a history of receipts of payments since the filing of this case, nor can the Secured Creditor provide a detailed summary of the application or disbursements of any such payments.

53. A copy of the broker price opinions and appraisals that were completed on the property are attached hereto as **Exhibit B**.

54. The current holder of the mortgage is Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Trust 2006-2, 300 Grand Avenue, Los Angeles, CA 90071.

55. Secured Creditor requests that this Court deny any further requests made by the Debtor as the Debtor has failed to make such requests in good faith.

WHEREFORE, the Secured Creditor respectfully requests an Order of this Court granting Secured Creditor's Motion for Relief in its entirety, together with such other and further relief as the Court deems just and equitable.

_____
Natalie A. Grigg, Esq.

Subscribed and sworn to before me this
30th day of January, 2009

_____
Notary Public

SHERRI A. BEALS
Notary Public, State of New York
Qualified in Erie County
My Commission Expires February 13, 2010