TEITELBAUM & BASKIN, LLP
Attorneys for JPMorgan Chase Bank, N.A.
as servicer for Deutsche Bank National
Trust Company, as Trustee for Long
Beach Mortgage Trust 2006-2
3 Barker Avenue, Third Floor
White Plains, New York 10610
Tel. 914.437.7670
jteitelbaum@tblawllp.com
Jay Teitelbaum

Presentment Date: May 4 at 11:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

In re                              :        Chapter 7
                                   :
SILVIA NUER,                       :        Case No. 08-14106 (REG)
                                   :
            Debtor                 :
-----------------------------------------------------------

## OBJECTION TO DEBTOR'S APPLICATION FOR ORDER PURSUANT TO BANKRUPTCY RULE 2004; AND CROSS APPLICATION FOR A PROTECTIVE ORDER PURSUANT TO BANKRUPTCY RULE 7026(C) AND 9014

JPMorgan Chase Bank, N.A. as servicer ("**JPMorgan**") for Deutsche Bank National Trust Company, as Trustee ("**DBank**") for Long Beach Mortgage Loan Trust 2006-2 ("**LBMLT 2006-2**"), a creditor and party-in-interest herein, by its attorneys, Teitelbaum & Baskin, LLP, for its (i) objection to the application of Silvia Nuer (the "**Debtor**") for an order pursuant to Bankruptcy Rule 2004 to authorize document and deposition discovery of JPMorgan (the "**Rule 2004 Application**"); and (ii) in support of its cross application for a protective order pursuant to Bankruptcy Rule 7026(c) and 9014, respectfully states:

### Preliminary Statement

JPMorgan objects to the Rule 2004 Application on the grounds that substantially all of the discovery requested is burdensome, overbroad and entirely irrelevant to a determination of the motion dated November 14, 2008, by JPMorgan, as servicer, for relief from the automatic stay (the "**Lift Stay**

**Motion**") with respect to the premises known as 1651 Metropolitan Avenue 7C, Bronx, New York (the "**Premises**").

Although, JPMorgan submits that it has already produced sufficient evidence of its standing to prosecute the Lift Stay Motion, JPMorgan provide additional reasonable discovery in an effort to resolve Debtors' remaining concerns regarding JPMorgan's standing to prosecute the Lift Stay Motion[1]. However, JPMorgan objects to the Rule 2004 Application and seeks a protective order of this Court with respect to any requested discovery relating to any issue other than standing and objects to the discovery with respect to standing as set forth below to the extent that the requests areit overbroad, burdensome and irrelevant.

In prior pleadings filed with this Court[2] JPMorgan has demonstrated (x) cause to support the granting of the Lift Stay Motion; and (y) that the boiler plate, scorched earth, objections to the Lift Stay Motion are legally and factually baseless. As discussed below, any further prosecution of such objections is abusive and burdensome and raises serious issues under Bankruptcy Rule 9011.

1. The Premises is not the Debtor's residence;

---

[1] In so doing, JPMorgan does not acknowledge or admit that the Debtor has a good faith basis for asserting an objection based upon standing or that there is any merit to such objection.

[2] In support of the Lift Stay Motion, JPMorgan has filed the following:

(i) Application dated November 14, 2008, with Exhibit A: First Note and Mortgage and an Assignment; Exhibit B: The worksheet required by Local General Order M-346; Exhibit C: Property valuation reflecting a value of $137,000; Exhibit D: Form of proposed order; and Memorandum of Law (Docket Nos. 7 and 8) (the "**Application**");

(ii) Affidavit of Natalie Grigg in Further Support of Motion, dated January 30, 2009, with Exhibit A: Payment History and Exhibit B: Broker Price Opinion (Docket No. 28) (the "**Grigg Affidavit**");

(iii) Supplemental Affirmation of Natalie Grigg in Support of the Motion, with Exhibit A: Limited Power of Attorney regarding authority to execute assignments on behalf of JPMorgan; Exhibit B: Assignment of First Mortgage; Exhibit C: Certificate and Affidavit of Facts regarding LBMC as subsidiary of WaMu; and Exhibit D: FDIC Affidavit regarding transfer of WaMu assets and servicing to JPMorgan. (Docket No. 32) ("**Grigg Supplement**").

(iv) Supplemental Affirmation of Natalie Grigg in Further Support of the Motion dated March 31, 2009 (Docket No 38).

Each of the foregoing pleadings and the Exhibits annexed thereto are incorporated herein by reference as if fully set forth.

2. The Debtor has not made a payment of either principal or interest in connection with the purchase money loan for the Premises since September 2007;

3. The Debtor has no ability to cure the arrears;

4. The Debtor proposes to surrender the Premises;

5. The Debtor and the estate have little or no equity in the Premises;

6. None of the objections to the Lift Stay Motion refer or relate to the acts or conduct of JPMorgan, as servicer;

7. None of the objections to the Lift Stay Motion, other than the objection to standing, are relevant to the determination of the Lift Stay Motion;

8. The documentary evidence already provided to this Court and to counsel for the Debtor demonstrates, as a matter of law, that none of the objections to the Lift Stay Motion state a valid defense to the Lift Stay Motion or state a claim against JPMorgan.

## Statement of Undisputed Facts

1. The following facts are not disputed:

   a. The Debtor applied to Long Beach Mortgage Corp. ("**LBMC**") for a loan in the amount of $130,000 to finance 100% of the purchase price of the Premises, based upon a stated income application (the "**Loan**").

   b. The Loan was approved by LBMC to provide the Debtor with $104,000, secured by a first mortgage lien upon the Premises and $26,000, secured by a second mortgage lien on the Premises.

   c. On or about January 6, 2006, the closing on the Loan took place and the Debtor executed, among other documents:

3

i. a promissory note dated January 6, 2006, in the principal amount of $104,000 (the "**First Note**") in favor of LBMC in connection with the purchase of the Premises;

ii. a promissory note dated, January 6, 2006, in the principal amount of $26,000 (the "**Second Note**") in favor of the LBMC in connection with the purchase of the Premises;

iii. a first mortgage in favor of LBMC, dated January 6, 2006, securing the obligations under the First Note (the "**First Mortgage**"), which was recorded with the City of New York on January 20, 2006;

iv. a second mortgage in favor of LBMC, dated January 6, 2006, securing the obligations under the Second Note (the "**Second Mortgage**"), which was recorded with the City of New York on January 20, 2006; and

v. various truth in lending documents which, among other things, revealed (v) the costs and fees associated with the loans; (w) that the proceeds of the First and Second Notes were to be used to finance 100% of the purchase price for the Premises; (x) that the obligations thereunder would be secured by mortgages on the Premises; (y) that LBMC was affiliated with Washington Mutual Bank, F.A ("**WaMuFA**") and a wholly owned subsidiary of Washington Mutual, Inc. (together with WaMuFA, "**WaMu**"); and (z) that the servicing obligations with respect to the Loan for the Mortgages were being immediately transferred to WaMu.

d. The Debtor's last payment on the First Note was made in September 2007. As this was an adjustable rate loan, the following payments have not been made as of April 30, 2009:

| | |
|---|---|
| 5 payments @ 899.74 (10/07-2/08) | $4,498.70 |
| 6 payments @ 984.96 (3/08-8/08) | $5,909.76 |
| 3 payments @ 912.46 (9/08-11/08) | $2,737.38 |
| 3 payments @ 928.27 (12/08-2/09) | $2,784.81 |
| 2 payments @ 915.92 (3/09-4/09) | $1,831.84 |
| Total Past Due Principal and Interest | $17,762.49[3] |

e. As set forth in a payoff statement generated by JPMorgan as servicer, the principal and interest balance due on the First Note, as of April 30, 2009, is 118,271.34 (plus such other fees and charges as are reflected therein). (A true and accurate copy of the Payoff Statement is annexed to the accompanying affirmation of Jay Teitelbaum as Exhibit A).

f. There is a balance due on the Second Note.

g. Public records (ACRIS) reveal that a common charges lien has been filed against the Premises.

h. On October 10, 2008, the Debtor commenced this case.

i. The Debtor's schedules and amended schedules contain the following admissions:

　　i. The Debtor's residence and homestead is 1735 Purdy Street Apt 1-D, Bronx, New York and <u>not</u> the Premises;

---

[3] This number does not include late fees and other charges properly due under the First Note, but which can be disregarded for purposes hereof.

  ii. the Premises is encumbered by a First Mortgage and a Second Mortgage granted to LMBC in the aggregate amount of $130,000 (Schedules A and D);

  iii. there is little or no equity in the Premises;

  iv. the Debtor intends to surrender the Premises; and

  v. the Debtor has insufficient assets and income to cure the arrearages and make current payments on the First Note.

j. WaMu is the successor to LBMC;

k. JPMorgan is successor to WaMu (as, among other things, servicer of the Loan) pursuant to agreements (identified below) with the FDIC as Receiver of WaMu;

l. On November 14, 2008, JPMorgan, as servicer of the First Note and Mortgage filed the Lift Stay Motion.

## The Debtor's Objection to the Motion Is Frivolous

2. The Debtor's boiler plate objection to the Lift Stay Motion dated December 2, 2008 (the "**Objection**") alleges a litany of objections and defenses without a scintilla of factual support and no regard for the facts of this case. Following is a side by side comparison of the Debtor's contentions and the actual facts and law.

| Debtor's Allegations | The Facts: JPMorgan's Response |
|---|---|
| <u>Illegal Charges added to Balance</u>: "Movant upon information and belief" charged, collected or assessed improper fees and expenses to the Loan and has failed to properly apply payments received from the Debtor. (Objection p.2) | Late charges in the proof of claim filed with this Court were assessed from and after October 2007 (the date the Debtor stopped making payments). The Debtor had not made a payment of principal or interest for one year prior to the commencement of this case and has made no post petition payments. Exhibit A to the Grigg Affidavit is a payment history which reflects a total of $32.86 in fees for two late payments prior to the time the Debtor stopped making payments in October 2007. |
| <u>Failure of Contractual Condition Precedent</u>: Movant failed to provide the Debtor with a pre-petition Notice of Default and intent to accelerate or other notice to avoid a motion for relief from the stay (Objection, p. 2) | Pre-petition foreclosure proceedings were commenced against the Debtor and no objection to the notice of such proceeding was lodged; (ii) the Debtor had not made a payment of principal or interest for more than one year prior to the commencement of this case; (iii) the Debtor has made no post-petition payments; (iv) the Debtor admitted her intention to surrender the Premises; and (v) notice of the Lift Stay Motion was provided as required under the Bankruptcy Rules. |

| | |
|---|---|
| Failure to Comply With Applicable Fannie Mae Freddie Mac/Ginnie Mae Guidelines; Failure to pursue effective foreclosure prevention strategies; Failure to avoid filing the Motion by not contacting the attorney by the 30th day after the delinquency. (Objection pp.3-4). | The Loan is a sub-prime loan, not a Fannie Mae, Freddie Mac or Ginnie Mae loan. Thus, there is no basis to claim that the Fannie Mae Freddie Mac/Ginnie Mae guidelines are applicable. The Debtor has failed to make a single payment in 18 months and has no ability to pay and no intent to keep the Premises. There is not a single specific factual reference to improper conduct by any servicer. Permissive foreclosure prevention, *assuming arguendo* applicable, is not a defense to non-payment or foreclosure. There is no requirement that the Debtor be provided with 30 days advance notice of the Lift Stay Motion. The Debtor does not dispute that all notices required by the Bankruptcy Rules and the Rules of this Court were given. |
| Failure of Good Faith and Fair Dealing: There is not a single specific allegation of how JPMorgan or any predecessor servicer failed to act in good faith. (Objection, pp. 4-5). | The Debtor has failed to honor her fundamental contractual obligation—repayment of the Loan on the terms agreed upon. |

| | |
|---|---|
| <u>Unclean Hands:</u> Counsel claims violations of Section 362(a) and 506 of the Bankruptcy Code, Bankruptcy Rule 2016, the Federal Fair Debt Collections Practices Act and New York Unfair Debt Collection Statutes. (Objection, pp. 5-6). | Not a single specific act is alleged in support of the claims. Thus JPMorgan is left to speculate as to the intent.<br><br>There has been no section 362 violation. Since the commencement of this case, no acts have been taken to collect the Loan, other than the filing of the Lift Stay Motion and recording an assignment dated November 1, 2008 of the First Mortgage. Since the First Mortgage was duly recorded in January 2006, there is no dispute that the recording of an assignment of a duly perfected mortgage is not a violation of the stay. *See,* Bankruptcy Code §541(d); *In re Cedar Funding, Inc.,* 398 B.R. 346 (Bankr. N.D. Ca. 2008); *In re Lemons & Associates, Inc.,* 67 B.R. 198, 215 (Bankr. D. Nev.1986); 124 Cong. Rec. S.17, 413 (Oct. 16, 1978). Congress has protected the secondary mortgage market from precisely the types of baseless claims asserted by the Debtor.<br><br>There has been no section 506(b) violation. As set forth in the appraisals and valuations submitted in support of the Motion (Application Exhibit C and Grigg Affidavit Exhibit B, the First Note is fully |

|  | secured and permitted to accrue interest and charges under section 506(b). Bankruptcy Rule 2016 is applicable only to parties seeking compensation from the estate. JPMorgan is not seeking such compensation. |
|---|---|
| Conspiracy Regarding Allegedly Forged Documents and Improper Checks: The Debtor claims that her attorney breached his duty to her by, among other things, representing both the buyer and seller, collecting excessive fees and not identifying an alleged fraudulent document relating to the Condo Association waiving its right of first refusal with respect to the sale. (Objection pp. 6-7). | Assuming that the Debtor's conclusory statements of fraud state a claim or defense under both New York law and Fed. R. Civ. P. 9, there is not a single fact alleged that implicates any party other than the Debtor's attorney, the seller and perhaps the condo association. The Debtor signed a HUD-1 Statement which identified to the Servicer and LBMC that the Debtor had reviewed all payments and receipts.[4] |

---

[4] *Assuming arguendo* that the Debtor's statements could be construed to state a claim against LBMC, there is no dispute that such a claim or defense cannot be asserted against any subsequent transferee of the First Note and First Mortgage as a holder in due course. *See Welt v. Abrams*, 832 F. Supp. 88 (S.D.N.Y. 1993); *Provident Bank v. Community Home Mortgage*, 498 F. Supp. 558 (E.D.N.Y. 2007); *In re Apponline.Com, Inc.*, 321 B.R. 614, 624-625 (E.D.N.Y. 2004).

| | |
|---|---|
| <u>No HUD Counseling Notice:</u> The Debtor alleges that she was not afforded home ownership counseling pursuant to 12 U.S.C. 1701x (c)(5). (Objection p.7). | The First Note and First Mortgage are not HUD Loans and therefore the cited provision, 12 U.S.C. 1701x (c)(5), is inapplicable. *Assuming arguendo* that the HUD regulations are relevant, the notice to "eligible homeowners" applies to a homeowner if "(A) the home loan is secured by property that is the principal residence . . . of the homeowner. . . ." 12 U.S.C. 1701x (c)(4). The Premises is not the principal residence of the Debtor. |
| <u>Failure to Produce the Original Note:</u> (Objection p.8) | There is no legal requirement for the production of the original note. In addition, Fed R. Evid. 1003 provides that duplicates are admissible to the same extent as the original unless (1) a genuine issue of fact is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original. There is no such claim in this case. *Cf., Thomas v. Rubenstein*, 818 N.Y.S. 2d 516 (2d Dep't 2006) (in action on a note, best evidence rule does not require production of original note where the contents of the note are not in dispute). |

| | |
|---|---|
| General Claims and Defenses Based Upon the Original Loan Transaction: The Debtor identifies the following possible reasons for this Court to deny the Motion: (i) factual contentions in the Lift Stay Motion not based upon a reasonable review of the records; (ii) payment defaults based upon a misapplication of payments; (iii) misapplication of post petition payments; (iv) factual contentions in the Lift Stay Motion not supported by evidence; and (v) the Lift Stay Motion was filed for an improper purpose . | First, none of the possible reasons listed as part of a boiler plate form objection are supported by a single factual allegation. Moreover, the Debtor's list ignores the facts of this case. The Debtor has not made 18 payments as of April 30. There have been no pre or post petition payments to misapply and the Debtor has not alleged any such misapplication. The Lift Stay Motion was made to permit JPMorgan to collect a just debt. The undisputed facts as set forth above require that the Lift Stay Motion be granted. None of these claims may be asserted against JPMorgan, which acquired substantially all of the assets of WaMu, as well as the mortgage loan servicing obligations and rights in connection with the Loan, on or about September 25, 2008. (Grigg Supplement Exhibit D). Not only is there not a single claim that JPMorgan acted improperly, but pursuant to the Purchase and Assumption Agreement (as defined below), JPMorgan specifically did not assume any liability associated with any borrower claims related in any way to any lending or loan purchase |

|  | activities of WaMu. *See* Purchase and Assumption Agreement, among the FDIC, Receiver of Washington Mutual Bank, FDIC and JPMorgan Chase Bank, N.A., dated as of September 25, 2008, Section 2.5. (A true and accurate copy of the relevant provisions of the Purchase and Assumption Agreement is annexed to the Teitelbaum Affirmation as Exhibit B). In addition, 15 U.S.C.A. §1641 (e) and (f) preclude the Debtor's claims and defenses from being asserted against an assignee or a servicer. *See Williams v. Saxon Mortgage Services*, 2007 WL 3124470 (S.D. Ala. 2007). |
|--|--|

### **Standing**

3. There is no material dispute regarding standing. The pleadings filed with the Court in support of the Lift Stay Motion, documents produced to the Debtor, and documents available on the website of the Securities and Exchange Commission with respect to the LBMLT2006-2 demonstrate that (i) the First Note and Mortgage were transferred by LBMC to DBank as Trustee of the LBMLT2006-2; (ii) until on or about September 25, 2008, WaMu was the servicer of the Loan; (iii) LBMC is a wholly owned subsidiary of WaMu; and (iv) on or about September 25, 2008, JPMorgan assumed all obligations of WaMu as a servicer of mortgage loans.

4. As a matter of law, a servicer of a mortgage has standing to enforce the terms of that mortgage, including the ability to commence a foreclosure action and obtain relief from the automatic stay. *See MERS v. Coakley*, 41 A.D.3d 674 (2d Dep't 2007) (servicing agent has standing to bring foreclosure); *Fairbanks Capital v. Nagel*, 289 A.D.2d 99 (1st Dep't 2001) (servicing agent has standing to bring foreclosure action); *In re Conde Dedonato*, 391 B.R. 247 (E.D.N.Y. 2008) (loan servicer has standing as creditor); *see also Greer v. O'Dell*, 305 F. 3d 1297, 1302-03 (11th Cir. 2002) (loan servicer as agent for disclosed principal is a real party in interest with standing); *In re Wooberry*, 383 B.R. 373, 379 (Bankr. D. S.C. 2008) (loan servicer has standing to seek relief from stay).

5. JPMorgan has produced to the Debtor the documents filed in support of the Lift Stay Motion. In addition, JPMorgan has produced to the Debtor the additional documents and information identified in the letters of Natalie Grigg to Linda Tirelli dated March 16 and March 31, 2009. (True and accurate copies of Ms. Grigg's letters are annexed to the Teitelbaum Affirmation as Exhibit C).

6. Based upon the foregoing, there is no good faith basis for the Debtor to continue to object to standing.

## Argument

### The Debtor's Objections, Claims, Defenses and Discovery Requests Should Be Limited To the Issue of Standing

7. As demonstrated above, the Debtor has failed to state a specific objection, claim or defense to the Lift Stay Motion. Nevertheless, the Debtor seeks an order pursuant to Bankruptcy Rule 2004 to conduct far reaching, burdensome and unnecessary discovery.

8. It is not disputed that the scope of Rule 2004 discovery is very broad. *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *In re Kelton*, 389 B.R. 812, 820 (Bankr. D. Ga. 2008). However, the boundaries are not endless. Upon a motion to quash a subpoena issued pursuant to a

2004 order or upon an objection to an application for a 2004 subpoena, the applicant has the burden of showing good cause for the discovery. *In re Metiom*, 318 B.R. 263, 268 (S.D.N.Y. 2004).

9. Where the discovery is not relevant to the basic issue before the court, good cause cannot be shown and the requested discovery should be denied as burdensome and harassing. *In re Enron*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citing *In re Mittco, Inc.*, 44 B.R.35 (Bankr. Wis. 1984)); *In re Hilsen*, 2008 WL 2945996 (Bankr. S.D.N.Y. 2008) (the discovery sought pursuant to Rule 2004 must have a reasonable nexus to the debtor and the administration of the case); *In re Johns-Manville*, 42 B.R. 362, 354 (S.D.N.Y. 1984) (recognizing that even Rule 2004 fishing expedition must have a relationship to the administration of the estate).

10. As discussed above, the only issue now even arguably relevant to the Lift Stay Motion is standing. The Premises have little or no value to the estate and are not necessary to the administration of the estate. There are no claims even alleged against JPMorgan or any predecessor servicer. There is no potential liability on the part of JPMorgan as successor to WaMu. The continued prosecution of such patently baseless claims, objections, defenses and discovery is an improper abuse of the Bankruptcy Process.

11. JPMorgan requests that this Court strike all of the objections, claims, and defenses asserted by the Debtor, other than with respect to the issue of standing, and deny the Rule 2004 Application, except to the extent that the Debtor seeks reasonable discovery that JPMorgan has standing to prosecute the Lift Stay Motion.

12. In this regard, JPMorgan would respond to the Debtor's document request as annexed to the Application as follows:

    a. JPMorgan objects to each of Debtor's Requests 1 through 4 as they are overbroad and burdensome to the extent the Debtor seeks the production of "Any and all documents, computer records, reports or other information . . ."

JPMorgan has produced or will produce documents which demonstrate the chain of possession of the First Mortgage and First Note from LBMC to DBank as Trustee under the LBMLT 2006-2; and the chain of servicers from LBMC to WaMu to JPMorgan.

b. JPMorgan objects to Requests 5 through 7 on the ground that the requests are not reasonably related to ascertaining the standing of JPMorgan as successor servicer to WaMu for DBank, trustee under the LBMLT 2006-2 as holder of the First Mortgage and First Note and , the chain of corporate ownership of LBMC. JPMorgan has produced or will produce documents which demonstrate the chain of possession of the First Mortgage and First Note from LBMC to DBank as Trustee under the LBMLT 2006-2; and the chain of servicers from LBMC to WaMu to JPMorgan and the chain of corporate ownership of LBMC..

c. In response to Request No. 8, although the Pooling and Servicing Agreement is a publicly available document (as the Debtor has been advised in Ms. Grigg's March 16, 2009 letter), an electronic copy of this agreement will be produced.

d. JPMorgan objects to Requests 9 through 13 on the ground that the requests are not reasonably related to ascertaining the standing of JPMorgan as servicer for DBank as trustee under the LBMLT 2006-2 as holder of the First Mortgage and First Note.

e. In response to Requests 14 and 15, copies of the First Note and First Mortgage have already been produced and are annexed to the Lift Stay Motion.

f. JPMorgan objects to Requests 16 through 20 on the ground that the requests are not reasonably related to ascertaining the standing of JPMorgan as servicer for

DBank as trustee under the LBMLT 2006-2 as holder of the First Mortgage and First Note.

13. In addition, to the extent that JPMorgan is directed to produce any documents objected to herein, JPMorgan reserves the right to seek a further protective order with respect to particular documents which JPMorgan may determine to be proprietary and confidential.

## Conclusion

For all of the foregoing reasons, JPMorgan respectfully requests that this Court (i) strike each of the claims, defenses and objections set forth in the **Objection**, other than with respect to the issue of the standing of JPMorgan to prosecute the Lift Stay Motion in its capacity as servicer; (ii) deny, in part, the Rule 2004 Application and direct that the Rule 2004 discovery sought be limited to the issue of standing as set forth in the objections above; and (ii) grant such other and further relief as may be proper.

Dated: May 3, 2009

**TEITELBAUM & BASKIN, LLP**
Attorneys for JPMorgan Chase Bank, N.A. as servicer for Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Trust 2006-2

By: /s/ Jay Teitelbaum
Jay Teitelbaum
3 Barker Avenue, Third Floor
White Plains, New York 10601
(914) 437-7670
jteitelbaum@tblawllp.com