| UNITED STATES BANKRUPTCY COURT | Hearing Date: January 7, 2010 |
| SOUTHERN DISTRICT OF NEW YORK | Hearing Time: 10:00 a.m. |

---------------------------------------------------------- x
                                                    : Case No. 08-14106 (REG)
In re                                       : Chapter 7
                                                    :
SILVIA NUER,                           :
                                                    :
                        Debtor.              :
---------------------------------------------------------- x

**MEMORANDUM OF LAW OF THE UNITED STATES TRUSTEE IN
SUPPORT OF SANCTIONS AGAINST J.P. MORGAN CHASE BANK,
<u>NATIONAL ASSOCIATION</u>**

**TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE**:

       Diana G. Adams, the United States Trustee for the Southern District of New York (the "United States Trustee"), respectfully submits this memorandum of law in support of the request of Silvia Nuer (the "Debtor") for sanctions against J.P. Morgan Chase Bank, National Association ("Chase") in connection with Chase's Motion for Relief from Stay (the "Motion For Stay Relief") as servicer for Deutsche Bank National Trust Company ("Deutsche"), as Trustee for Long Beach Mortgage Trust 2006-2 ("Long Beach Trust"), with respect to a mortgage (the "Mortgage") as to property located at 1651 Metropolitan Avenue, 7C, Bronx, NY 10462 (the "Property").

**I.     SUMMARY OF ARGUMENT**

       The United States Trustee supports the Debtor's request for sanctions. Chase has filed documents that appear to be either patently false or misleading in connection with the Motion For Stay Relief. In the Motion For Stay Relief, Chase took the position that it was acting only as the servicer of the Mortgage. Chase at the same time attached documents which supported a different position. Specifically, an assignment showed that Chase held the Mortgage and was assigning that Mortgage to Deutsche. Not only was the assignment dated post-petition, but it was signed only a few days before Chase filed the Motion For Stay Relief. The assignment was also prepared several years after the last actual assignment of the Mortgage. When afforded

opportunities to correct this matter, Chase, through supplemental filings, continued to produce documents that were confusing and contradictory, and presented an affirmation submitted by a witness who apparently had no direct or personal knowledge of the facts or the chain of ownership of the Mortgage. However, what is clear is that, whether created through inadvertence or a deliberate act, the assignments created by Chase in connection with the Motion For Stay Relief appear to be false or misleading.

This is not the first time that Chase's conduct with regard to motions for relief from the stay has been questioned in a bankruptcy case. Although Chase has recently taken remedial steps to address concerns expressed by courts in connection with other cases, based on Chase's past and current conduct, the United States Trustee supports the Debtor's request for sanctions in order to deter further conduct such as that seen in this case.

## II.    FACTS

The Debtor filed for Chapter 7 bankruptcy relief on October 10, 2008 (the "Filing Date"). See Declaration of Greg M. Zipes dated January 4, 2010 (the "Zipes Decl.") Ex. A (docket). The Debtor is a home health aide. See Zipes Decl. Ex. B (Debtor's Schedule I). She listed a total of $1,700 in unsecured debt. Id., Schedule F. She further listed the Property as being in a foreclosure proceeding. Id., Statement of Financial Affairs at Question 4.[1] David R. Kittay was appointed as interim Chapter 7 trustee and now serves as the permanent trustee pursuant to 11 U.S.C. § 702.

Chase filed the Motion For Stay Relief on November 17, 2008. See Zipes Decl. Ex. C. Chase identified itself as the servicer of the Mortgage (top of page one to the application). The Motion For Stay Relief had as an attachment copies of the original note and mortgage held by Long Beach Mortgage Company. Id., Ex. A.

---

[1] Upon information and belief, the Property was not the Debtor's residence but she intended to move to the Property.

2

Chase also attached an assignment that appeared to show that Chase assigned its rights *as mortgagee* to Deutsche, as trustee for Long Beach Mortgage Trust 2006-2. The assignment was signed by Scott Walter as "Attorney in Fact" for Chase (the "Walter November 1 Assignment"). See Zipes Decl. Ex. D. It was signed on November 1, 2008, after the Filing Date. However, the Motion For Stay Relief did not otherwise refer to Chase as the owner of the mortgage, but rather as the servicer.

The Debtor filed an objection on December 12, 2008, raising issues as to Chase's standing among other problems with the Motion For Stay Relief (the "Debtor Objection"). See Zipes Decl. Ex. E, ¶ 7. The Debtor also sought sanctions in the event that the Court denied the Motion For Stay Relief on one or more of the grounds identified in the Debtor Objection. Id., at pages 8-9.

Chase responded with an affidavit dated January 30, 2009 signed by Chase's outside counsel, and not an officer or employee of Chase, asserting that Chase had standing because the "application in support of the Motion for Relief clearly identifies that J.P. Morgan is making the Application as the servicer for Deutsche, J. P. Morgan does not claim to be the holder of the Note and Mortgage." (the "Chase Affidavit in Support"). See Zipes Decl. Ex. F, ¶ 39.

After the Debtor filed an amended objection on February 3, 2009 questioning the Walter November 1 Assignment, among other things, Chase filed an undated supplemental affirmation, again signed by Chase's outside counsel (the "Supplemental Affirmation"). The Supplemental Affirmation stated that Mr. Walter had the authority to sign the Walter November 1 Assignment on behalf of Chase pursuant to a limited power of attorney (the "Limited Power of Attorney"). See Zipes Decl. Ex. G (Supplemental Affirmation), ¶ 3. That limited power of attorney listed Scott Walter as an employee of LPS Default Solutions, Inc. ("LPS") and not of Chase. See Zipes Decl. Ex. H (Limited Power of Attorney).

In the Supplemental Affirmation, Chase then reported that its outside law firm prepared a second assignment that was executed on November 1, 2008 by Ann Garbis, an actual Chase

3

employee (the "Garbis November 1 Assignment"). See Zipes Decl. Ex. G (Supplemental Affirmation), at ¶ 3; Zipes Decl. Ex. I (Garbis November 1 Assignment). The Garbis November 1 Assignment again showed that Chase assigned its rights *as mortgagee* to Deutsche, as trustee for Long Beach Mortgage Trust 2006-2.

According to the Supplemental Affidavit, the Mortgage has been owned by three different entities:

(a) The loan originated with Long Beach Mortgage Company. See Zipes Decl. Ex. G (Supplemental Affirmation), at ¶ 13.

(b) The loan was transferred to the Long Beach Securities Corporation. Id, at ¶ 14.[2]

(c) The current holder of the Mortgage is Long Beach Mortgage Trust 2006-2. Id., at ¶ 17.

In addition, Chase stated that Deutsche is, and has been at all relevant times, the trustee of the Mortgage. Id., at ¶ 14. Washington Mutual Bank was described as the original servicer of the Mortgage. Id., at ¶ 15. Chase, acting as receiver for Washington Mutual Bank, became the successor in interest to Washington Mutual Bank and "the loans and interests in loans were transferred from the former Washington Mutual Bank to JPMorgan Chase Bank, National Association, without the need for a loan-specific assignment." Id., at ¶ 16.

*The October 6, 2009 Deposition of a Chase Employee*

On October 6, 2009, the Debtor's counsel and the United States Trustee took the deposition of Mr. Charles Herndon, an operations manager of Chase (hereinafter, the "Tr.") in order to clarify Chase's role in the case. By prior agreement between Chase and the United States Trustee, Mr. Herndon was produced in order to explain Chase's standing in connection with the Motion For Stay Relief (Tr. at 8, Lines 5-11) and the chain of ownership with respect to the Mortgage (Id., Lines 15-19). See Zipes Decl. Ex. J (relevant portions of the Tr.).

---

[2]The Motion For Stay Relief did not refer to the Long Beach Securities Corporation as an assignee of the Mortgage.

4

Mr. Herndon testified that he had no personal knowledge of, and did not participate in, the preparation of the Motion For Stay Relief. Id., at 137: 8-14. Mr. Herndon described his job at Chase as providing "litigation support" (Id., at 5: 9-10) and stated that he had been deposed approximately 75 times. Id. at 5: 14-15. Mr. Herndon first learned of the Motion For Stay Relief approximately one month before the date of the deposition. Id., at 16: 2-3.

Mr. Herndon described the chain of title as passing through three entities, consistent with the Supplemental Affirmation. The original lender in connection with the loan was the Long Beach Mortgage Company, as evidenced by the Note and Mortgage listing Long Beach Mortgage Company as the initial owner. Id. at 141: 24-25; 142: 1-3. The Motion For Stay Relief contained both the Note and Mortgage. Id. at 140: 13-25; 141: 18-23.

Next, Mr. Herndon testified that Long Beach Securities Corporation bought the Mortgage. Mr. Herndon acknowledged that the Motion For Stay Relief did not contain a reference to the Long Beach Securities Corporation or any documentation in connection therewith. Id., at 142: 5-14; 143: 18-22. However, Mr. Herndon testified that he knew that Long Beach Securities Corporation purchased the Mortgage because he had reviewed a mortgage loan purchase agreement dated February 24, 2006 between Long Beach Securities Corp. as purchaser and Long Beach Mortgage Company as seller (the "Mortgage Loan Purchase Agreement"). Tr. 142: 19-22. See Zipes Decl. Ex. K (excerpts from the Mortgage Loan Purchase Agreement).

The third owner of the Mortgage, according to the testimony, was the Long Beach Mortgage Trust 2006-2. Id. at 145: 15-20. Mr. Herndon based his knowledge of this assignment on the system notes of Chase as well as the pooling and servicing agreement dated March 1, 2006 (the "PSA"). Id. at 148: 16-20. The PSA was identified as Debtor's Exhibit 2. Id. at 149: 3-4. See Zipes. Decl. Ex. L (excerpts from the PSA). Mr. Herndon stated that the PSA had a reference to the Mortgage on Exhibit A. Id. at 151: 5-22.

5

### III.  ARGUMENT

**Sanctions Are Appropriate Under Bankruptcy Rule 9011**
**And The Court's Inherent Authority**

Inaccurate representations about the moving party's status as a holder may constitute a violation of Fed. R. Bankr. P. 9011 and may warrant sanctions under 28 U.S.C. § 1927.  Given the tangle of inconsistent and incomplete documents introduced into evidence purporting to establish Chase as the servicer of the Mortgage, which required intensive scrutiny of hundreds of pages of documents, sanctions are appropriate.  See In re Nosek, 386 B.R. 374 (Bankr. D. Mass. 2008) (sanctions imposed because confusing documents submitted in connection with a motion to vacate the automatic stay, among other reasons).

This case does not represent an isolated example of misconduct by Chase in the Southern District of New York, as demonstrated by the Schuessler, Pawson, and Humphrey cases described in further detail below.

Bankruptcy Rule 9011 provides:

(b) Representations to the Court.  By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; . . .

Fed. R. Bankr. P. 9011;  In re Rainbow Magazine, Inc., 77 F.3d 278, 282 (9th Cir. 1996) ("Rule 9011 allows a bankruptcy court to sanction attorneys, parties and individuals that file bad-faith documents before the court."); see also Local Rule 9011-1(a) of the United States Bankruptcy Court for the Southern District of New York ("All pleadings, motions, and other papers that are submitted for filing shall be signed by an attorney of record in the attorney's own name or, if there is no attorney, by the party.").

Here, the misconduct of Chase includes the attachment of the Walter November 1 Assignment (Zipes Decl. Ex. D) and the Garbis November 1 Assignment (Zipes Decl. Ex. I).

6

Chase's own witness could not explain the Walter November 1 Assignment. Tr. at 154: 12-25; 155: 2-6.

The Court and a debtor are entitled to insist that a moving party establish its standing in a motion for relief from stay through the submission of an accurate history of the chain of ownership of the mortgage. Absent such proof, relief from the stay is unwarranted. In re Hayes, 393 B.R. 259, 268 (Bankr. D. Mass. 2008).

Courts in the Southern District of New York have discussed the need for secured lenders to provide accurate information in filings before the Court or else "[t]he debtor and his/her family may lose their home, and the debtor and other creditors may lose significant equity in foreclosure." In re Gorshtein, 285 B.R. 118, 122 (Bankr. S.D.N.Y. 2002); In re Fagan, 376 B.R. 81, 87 (Bankr. S.D.N.Y. 2007); cf. In re Parsley, 384 B.R. 138, 142-143 (Bankr. S.D. Tex. 2008) (in view of "long-standing policy protecting homesteads in Texas," bankruptcy court "makes every effort to ensure that motions to lift stay seeking to foreclose on homesteads contain accurate information regarding payments made by the debtor"). Chase must file a Motion For Stay Relief which contains accurate information.

Southern District of New York Local Bankruptcy Rule 4001-1(c) contains further requirements for motions to vacate the stay. It requires the submission of a worksheet with the following documents:

> (1) Copies of documents that indicate Movant's interest in the subject property, including any assignments in the chain from the original mortgagee to the current moving party.
>
> (2) Copies of documents establishing proof of standing to bring a motion.

> (3) Copies of documents establishing that movant's interest in the real property or cooperative apartment was perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property or cooperative apartment is located in.

S.D.N.Y. R. Bankr. P. 4001-1(c) (2008) (attaching worksheet).

The Motion For Stay Relief fails to provide adequate documentation showing the chain of ownership of the Mortgage or documents establishing proof of standing of Chase, which, if attached, may have prevented some of the subsequent confusion in the case. As stated above, three entities owned the Mortgage. Those were as follows:

(a) The loan originated with Long Beach Mortgage Company. See Zipes Decl. Ex. G (Supplemental Affirmation), at ¶ 13.

(b) The loan was transferred to the Long Beach Securities Corporation on February 24, 2006. Id., at ¶ 14.

(c) The current holder of the Mortgage is Long Beach Mortgage Trust 2006-2 pursuant to the PSA on March 1, 2006 . Id., at ¶ 17.

However, Chase attached no documents to the Motion For Stay Relief showing proof of ownership by Long Beach Securities Corporation (owner as of February 24, 2006), see Supplemental Affirmation at ¶ 14. In addition, the only document Chase attached to the Motion For Stay Relief demonstrating its connection to the Mortgage, the Walter November 1 Assignment, was apparently inaccurate. The Motion For Stay Relief attached the Walter November 1 Assignment. See Zipes Decl. Ex. D. This document was inaccurate for two reasons. First, as stated above, Chase was never a holder of the Mortgage. Second, Deutsche was the trustee and not the holder the Mortgage.[3] At Mr. Herndon's deposition, he was asked as

---

[3] As argued by the Debtor, the recording of these assignments after the Filing Date appear to violate 11 U.S.C. § 362(a)(4), which forbids "any act to create, perfect, or enforce any lien against property of the estate. . . ."

follows, in reference to the Walter November 1 Assignment:

> Q. Do you see that line assignor JPMorgan Chase Bank National Association?
> A. Yes, sir.
> Q. And the assignee is Deutsche Bank National Trust Company as trustee for Long Beach Mortgage Trust 2006-2; do you see that?
> A. Yes, sir.
> Q. What is your understanding of what's being assigned here?
> A. My understanding it's [sic] assigning the mortgage.
> Q. So, how does that – I'm just trying to understand the chain of title, is there another piece of this chain of title of who owned the mortgage?
> A. Not that I'm aware of, no, sir.
> Q. Can you explain this document?
> A. No sir. . .

Tr. at 154: 12-25; 155: 2-6.

To be clear, Chase's designated representative could not identify why Chase was listed as the owner in this assignment. Chase compounded the problem by attaching the Garbis November 1 Assignment to additional pleadings. See Zipes Decl. Ex. G (Supplemental Affirmation), at ¶ 3; Zipes Decl. Ex. I (Garbis November 1 Assignment). The Garbis November 1 Assignment again showed that Chase assigned its rights *as mortgagee* to Deutsche, as trustee

for Long Beach Mortgage Trust 2006-2. This chart shows the unsupported assignments:

| ECF Filing Date | Mortgage Holder | Mortgage Servicer | Related Chase Document | Signatory on Attached Assignment | Notes |
|---|---|---|---|---|---|
| 11/17/2008 | Deutsche Bank, as trustee for Long Beach Mortgage Trust 2006-2 | J.P. Morgan Chase Bank, N.A. | Motion For Stay Relief | Scott Walter, "Attorney in Fact" signed Assignment from J.P. Morgan Chase, N.A. to Deutsche Bank on 11/1/2008 | |
| 02/23/09 | Deutsche Bank, as trustee for Long Beach Mortgage Trust 2006-2 | J.P. Morgan Chase Bank, N.A. | Supplemental Affirmation in Support of Motion For Stay Relief | Ann Garbis, J.P. Morgan Chase Bank, N.A. Vice President signed Assignment from J.P. Morgan Chase, N.A. to Deutsche Bank on 11/1/2008 | Attached limited power of attorney lists Scott Walter as employee of LPS Default Solutions, Inc. |

As Judge Morris stated in Schuessler,

> [b]efore moving for relief from stay, a secured creditor's analysts and supervisors should do more than simply forward data to the next station or entity involved in the process. Someone must consider the specific facts in each individual case and conclude that relief from stay is actually necessary and warranted. Where affidavits are submitted under penalty of perjury, this Court expects that the facts asserted have been carefully researched and, to the best of the party's knowledge, are not only true but complete enough to be an accurate characterization.

In re Schuessler, 386 B.R. 458, 491 (Bankr. S.D.N.Y. 2008).

Part of the problem here may stem from the same generic problem identified by Judge Morris in Schuessler, to wit: Mr. Herndon, Chase's designated representative in connection with the Mortgage's chain of ownership, had no personal knowledge of the Motion For Stay Relief.

Tr. at 137: 8-14. He is apparently a Chase litigation specialist. Id. at 5: 9-10. He reviewed the documents showing the various assignments, but there was no testimony that his job actually included preparing motions to vacate the stay. Yet, Chase designated him as the most appropriate witness in this case. Further, when the Debtor filed the Debtor Objection, Chase responded with an affidavit and affirmation prepared by outside counsel, also presumably with no personal knowledge of the facts and circumstances of the assignments. See Zipes Decl. Ex. G (supplemental affirmation). Finally, Mr. Walter, who signed the Walter November 1 Assignment on behalf of Chase, was not even a Chase employee. In summary, Chase did not submit an affidavit of someone with personal knowledge about Chase's relationship to the Mortgage, based upon Chase's own records.

Where a pleading or submission from a party violates one or more of the provisions of Bankruptcy Rule 9011(b), Bankruptcy Rule 9011(c) permits the Court, "after notice and a reasonable opportunity to respond," to "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated [Bankruptcy Rule 9011(b)] or are responsible for the violation." Such sanction "may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Bankruptcy Rule 9011(c)(2).

The Motion For Stay Relief did not clearly describe the chain of ownership of the Mortgage. The Walter November 1 Assignment and the Garbis November 1 Assignment do not appear to have any basis in fact. Chase has specifically denied that its standing was based upon the ownership of the Mortgage, stating that the "application in support of the Motion for Relief clearly identifies that J.P. Morgan is making the Application as the servicer for Deutsche, J.P Morgan does not claim to be the holder of the Note and Mortgage." See Zipes Decl. Ex. F (Chase Affidavit in Support), ¶ 39. The Court should impose sanctions for the submission of

11

inaccurate documents in connection with the Motion For Stay Relief, which have confused the record and multiplied litigation.

This Court has additional bases to impose sanctions. Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct. In re Rainbow Magazine, Inc., 77 F.3d 278, 283-84 (9th Cir. 1996). This Court therefore has the power to award the sanctions suggested above under its inherent authority as well as Bankruptcy Rule 9011. Further, "[t]he plain meaning of [Section 105(a)] endorses monetary sanctions at least insofar as they deter future misconduct - especially when that language is construed broadly, as the Second Circuit has emphasized that it should be." In re Schuessler, 386 B.R. at 493 (citing Grand Street Realty, LLC v. McCord, 2005 WL 2436214, * 7 (E.D.N.Y. Sep. 30, 2005). In considering whether monetary or other sanctions should be imposed here, it is relevant to look at three recent cases in the Southern District of New York where (as here) actions taken by Chase in connection with motions seeking relief from the stay have been found woefully deficient.

### *IN RE SCHUESSLER*

As already stated above, in In re Schuessler, Chase filed a motion for relief from the stay that failed to contain relevant information about the debtor's failure to make postpetition mortgage payments. In re Schuessler, 386 B.R. at 487. Bankruptcy Judge Cecilia Morris found Chase's pleadings to be sanctionable, as "[w]hether deliberately or inadvertently, the process utilized by Chase Home Finance in this case stands in the way of important rights afforded to debtors under the Bankruptcy Code, including the right to the protection of the automatic stay pursuant to 11 U.S.C. § 362(a), and the essential concept of a 'fresh start.'" Id. at 491. Judge Morris denied Chase's motion and awarded the debtors their fees and costs in connection with Chase's motion. Id. at 493.

### *IN RE PAWSON*

In the case of In re Pawson (Case No. 05-18439 (MG)), Bankruptcy Judge Martin Glenn on August 13, 2008 "So Ordered" a stipulation between Chase and the debtor resolving a motion

by the debtors pursuant to 11 U.S.C. § 105 and 28 U.S.C. § 1927 alleging improper filings in that case by Chase (Doc. No. 18). As set forth at the August 13, 2008 hearing (Aug 13 Tr.) (transcript is Doc. No. 21), Chase agreed to pay the debtors $50,000. Aug. 13 Tr. at 41: 1-4. See Zipes Decl. Ex. M (relevant portions of the Aug. 13 Tr.).

Chase filed a letter (the "Chase Letter") dated January 9, 2009 with the Court (Doc. No. 30) after the United States Trustee conducted informal discovery in connection with improper filings by Chase in that case. In the Chase Letter, Chase outlined certain voluntary steps to ensure the accuracy of its pleadings in future bankruptcy cases. These steps include: (i) the retention of a consultant to review motions to vacate the stay before they are filed and (ii) advance notice by letter to debtors warning that Chase intends to file a motion to vacate the stay. At a court hearing on January 22, 2009 (transcript is at Doc. No. 31), Judge Glenn, in directing that the letter be filed, stated that "[n]o action the Court is taking today makes [the procedures] mandatory, but the Court will also be mindful if the procedures are changed and any issues arise in the future." Jan. 22 Tr. at 6: 4-6.[4]

### *IN RE HUMPHREY*

In In re Humphrey (Case No. 08-23404 (ASH)), Chase, as successor in interest to Washington Mutual Bank, filed a motion to vacate the stay (the "Chase Humphrey Motion") (Doc. No. 9). Bankruptcy Judge Adlai S. Hardin, Jr. imposed sanctions on Chase NA after finding that Chase NA filed false documents in connection with the Chase Humphrey Motion.

---

[4]In connection with Pawson, Chase has changed its procedures in connection with motions to vacate the stay. Specifically, the firm of Teitelbaum and Baskin, LLP has been retained by Chase to specifically review all pleadings filed by Chase in the Southern District of New York. This Motion For Stay Relief was filed before the new procedures were in place. The United States Trustee reserves her right to seek sanctions against Steven J. Baum, P.C. (the "Baum Firm"), which filed the Motion For Stay Relief. In this regard, the United States Trustee notes that the Baum Firm represented Chase in the In re Humphrey. Further, the Baum Firm was counsel in cases in which courts have found sanctionable conduct. IndyMac Bank F.S.B. v. Yano-Horoski, 2009 N.Y. Slip Op. 29491, 2009 WL 4544742, (N.Y. Sup. Ct. Nov. 19, 2009) (Ind. No. 2005-17926).

At a hearing on February 24, 2009, Judge Hardin stated that "I view this as very serious. Your firm and your client, whether it's WAMU or Chase, submitted a false affidavit, a false certification as to non-payment; demonstratively false, and violated the automatic stay. That's really serious." Feb. 24 Tr. at 7: 21-25. (Doc. No. 24). By order dated March 27, 2009, Judge Hardin denied the Chase Humphrey Motion and imposed a sanction of $15,000, among other penalties, on Chase NA (Doc. No. 29). After the February 24, 2009 hearing, the United States Trustee filed a motion for a Bankruptcy Rule 2004 examination and, with the consent of Chase NA, has taken the examination of Chase's vice president in charge of all its national residential mortgages in which the borrowers file for bankruptcy relief.

## IV. CONCLUSIONS

This case does not represent an isolated example of misconduct by Chase in the Southern District of New York, as demonstrated by the Schuessler, Pawson, and Humphrey cases. Rule 9011(c)(2) indicates that a sanction imposed for a violation of the rule will be limited to that amount which is sufficient to deter repetition of the conduct. Schwartz v. Kujawa (In re Kujawa), 270 F.3d 578, 584 (8th Cir.2001); see Levey v. Kesser Cleaners Corp., 2007 WL 2177048 * 5 (E.D.N.Y. July 27, 2007) (affirming the decision of the Honorable Dennis E. Milton).

While, as reflected in the Pawson case, it appears that Chase has taken certain remedial actions in connection with its filings in bankruptcy cases, it also appears that the remedial actions may not be sufficient to remedy the institutional method of handling bankruptcy cases and thus a more meaningful deterrent should be imposed. The United States Trustee recommends a monetary sanction against Chase.

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Motion For Stay Relief; and (b) impose sanctions on Chase.

Dated: New York, New York
January 4, 2010

                              Respectfully submitted,

                              DIANA G. ADAMS
                              UNITED STATES TRUSTEE

By:   /s/ Greg M. Zipes
        Greg M. Zipes
        Trial Attorney

        33 Whitehall Street
        21st Floor
        New York, New York 10004-2112
        Tel. No. (212) 510-0500