IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------x

IN RE:
                     Chapter 7
                     Case # 08-14106(REG)
SYLVIA NUER,

       Debtor.

---------------------------------x

HELD AT:   Law Offices of Linda M. Tirelli
           202 Mamaroneck Avenue
           White Plains, New York 10601
           October 6, 2009
           1:39 p.m.

           Examination before Trial of the
REPRESENTATIVE OF JP MORGAN CHASE BANK, NA,
by CHARLES HERNDON, pursuant to Court Order,
held at the above time and place before a
Notary Public of the State of New York.

J & L REPORTING SERVICE
of Westchester, Inc.
200 East Post Road
White Plains, New York 10601
(914) 682-1888
Lisa Dobbo, Reporter

APPEARANCES:

LAW OFFICES OF LINDA M. TIRELLI
  Attorney for the Debtor
  Office & Post Office Address
  202 Mamaroneck Avenue
3rd Floor
  White Plains, New York 10601
  BY:  LINDA M. TIRELLI, ESQUIRE

TEITELBAUM & BASKIN, LLP
Attorneys for
JP Morgan Chase Bank, NA
Office & Post Office Address
3 Barker Avenue, 3rd Floor
White Plains, New York 10601
BY:  JAY TEITELBAUM, ESQUIRE

OFFICE OF US TRUSTEE
33 Whitehall Street, Floor 21
New York, New York 10004
  BY:  GREG ZIPES, US TRUSTEE

---

3

IT IS HEREBY STIPULATED AND
AGREED, by and between the attorneys for the
respective parties herein, that the sealing
and filing of the within deposition be
waived; that such deposition may be signed
and sworn to before any officer authorized
to administer an oath, with the same force
and effect as if signed and sworn to before
the officer before whom said deposition is
taken.

       IT IS FURTHER STIPULATED AND
AGREED, that all objections, except as to
form, are reserved to the time of trial.

---

4

1                C. HERNDON
2       CHARLES HERNDON, residing at
3  C/O 7301 Baymeadows Way,
4  Jacksonville, Florida 32256,
5  having been duly sworn by
6  Notary Public, Lisa Dobbo
7  testified as follows:
8  EXAMINATION BY MS. TIRELLI:
9      Q.  Good afternoon and welcome.
10        State your name for the record,
11  please and spell it.
12     A.  Charles, C-H-A-R-L-E-S,
13  Herndon, H-E-R-N-D-O-N.
14     Q.  What is your business address,
15  Mr. Herndon?
16     A.  7301 Baymeadows, one word, Way,
17  Jacksonville, Florida 32256.
18     Q.  What business is at that
19  address?
20     A.  JP Morgan Chase.
21     Q.  How long have you worked at JP
22  Morgan Chase?
23     A.  I've worked at Chase since they
24  acquired Washington Mutual, September 2008.
25     Q.  What's your title there?

```
                    5
 1            C. HERNDON
 2      A.    Operations unit manager.
 3      Q.    Is this a servicers division of
 4  JP Morgan Chase?
 5      A.    Yes, ma'am.
 6      Q.    What exactly is your division
 7  or department that you're working for?
 8      A.    I work for risk research.
 9      Q.    What does that entail exactly?
10      A.    Litigation support.
11      Q.    Have you ever been deposed
12  before?
13      A.    Yes, ma'am.
14      Q.    How many times?
15      A.    Approximately seventy-five.
16      Q.    In what capacity?
17      A.    Through work.
18      Q.    Of the same as what you're
19  doing now, in other words?
20            MR. TEITELBAUM:  Objection.
21      A.    Yes, ma'am.
22      Q.    Were these seventy-five
23  different cases or did seventy-five
24  depositions?
25      A.    Primarily -- there may have
```

```
                    6
 1            C. HERNDON
 2  been one or two cases I was deposed more
 3  than once but approximately seventy-five
 4  different cases.
 5      Q.    Could you list them?
 6      A.    No, ma'am.
 7      Q.    You're familiar with the
 8  process of deposition and you understand you
 9  keep your voice up and the court reporter
10  cannot take nods and shakes of the head, you
11  understand that; right?
12      A.    Yes, ma'am.
13      Q.    If you ask me to repeat
14  something I want to make should you
15  understand the question.  I do not want you
16  to guess.  I don't want you to assume
17  anything.  I want you to answer from your
18  own personal knowledge; do you understand?
19      A.    Yes, ma'am.
20      Q.    For the record, I'm Linda
21  Tirelli and I represent the debtor, Sylvia
22  Nuer.  She's not present today.  She may be
23  coming today.
24            Also present for the record is Jay
25  Teitlebaum who represents Chase Bank and
```

```
                    7
 1            C. HERNDON
 2  Greg Zipes, US Trustee.
 3            I want to give you copy of the Notice
 4  of Deposition and request for production of
 5  documents that was served in this case.
 6            MR. TEITELBAUM:  Okay.
 7            MS. TIRELLI:  If we can get
 8      that marked as an exhibit.
 9            (Whereupon, Debtor's Exhibit 1,
10      Notice of Deposition, was marked for
11      Identification.)
12      Q.    Mr. Herndon, you now have in
13  front of you what's marked as Debtor's 1
14  which is the Notice of Deposition and
15  request for production of documents.
16            Have you seen this document prior to
17  today?
18      A.    Looks similar to a document
19  I've seen.  I couldn't attest to whether
20  this is a document or not.
21      Q.    Have you reviewed this prior to
22  today?
23      A.    Not -- no, ma'am.
24      Q.    But you're here to testify to
25  the matters that were requested to be
```

```
                    8
 1            C. HERNDON
 2  testified before in that document today;
 3  correct?
 4            MR. TEITELBAUM:  Objection.
 5      Based on discussions, the scope of
 6      this -- based on discussions with the
 7      office of trustees office and you,
 8      Mr. Herndon, and your notice was here
 9      to testify with respect to the issue
10      of the standing in connection with
11      the motion from remove from the stay.
12      That's the motion he was presented
13      with today.
14            We advised you there was no one
15      witness who can testify to every
16      aspect of your deposition.
17            MS. TIRELLI:  I do agree it may
18      take more than one witness to get
19      everything answered.
20      Q.    My question is merely, have you
21  ever seen this document before, Mr. Herndon?
22            MR. TEITELBAUM:  No, your
23      question was whether he was here to
24      testify to issues in your Notice of
25      Deposition.
```

C. HERNDON

1 whether there's improprieties whether on the
2 debtor's side or creditor's side. We
3 sometimes file papers whether or not we
4 think it's appropriate or not, so with that,
5 I listened to the testimony and I just have
6 a few questions.
7     Let me just ask you, it sounded as I
8 listened here you have no personal knowledge
9 about the motion to vacate that was filed in
10 this case and the documents that were filed
11 in this case by JP Morgan Chase; is that
12 accurate?
13     A.  I have no personal knowledge.
14     Q.  But you're produced today in
15 order to tell us about the chain of title
16 among other things in this case; is that
17 your understanding why you're here today?
18     A.  Yes.
19     Q.  Presumably you can tell that to
20 us today; correct, if I ask you some
21 questions about it?
22     A.  I can do my best.
23     Q.  That's all we can ask. I might
24 be repeating a little bit what we have heard

C. HERNDON

1 before but I'll move on quickly, so let's
2 start we had a note and mortgage in this
3 case; correct?
4     A.  Yes, sir.
5     Q.  That note and mortgage was
6 held, if I understood your testimony
7 correctly, by Long Beach Mortgage Company
8 initially?
9     A.  They're the originator, yes,
10 sir.
11     Q.  Then you testified, I believe
12 it went to Long Beach Security Corporation;
13 correct?
14     A.  Long Beach Securities.
15     Q.  Then from there it went to
16 Deutsches Bank National Trust, it just went
17 from one, two, three, is that your
18 understanding what happened here in terms of
19 ownership?
20     A.  That's my understanding.
21     Q.  Have you personally seen the
22 documents that would show this chain of
23 title, I call it chain of title but these
24 three owners of the note and mortgage?

C. HERNDON

1     A.  I seen what I believe to be
2 documents, yes, sir.
3     Q.  Let me ask you, you're not
4 going to have personal knowledge by way of
5 these motions but I'm going to ask you if
6 you seen a document attached to JP Morgan
7 Chase documents that was filed in this case,
8 I have a binder and I'm going to direct your
9 attention what I marked as UST Exhibit 15.
10         (Handed)
11     Q.  I actually put a yellow sticky
12 on it.
13         MR. TEITLEBAUM:  You want to
14     mark this?
15         MR. ZIPES:  I'll mark it as
16     UST-1.
17         Look at it and I'll represent
18 to you, Jay, this is the initial
19 motion for termination of automatic
20 stay filed by JP Morgan Chase
21 National Association dated --
22         MR. TEITLEBAUM:  The sticky is
23 on one page of that.
24         MR. ZIPES:  The entire

C. HERNDON

1 document, but the motion is dated
2 November 14th, 2008 and it's signed
3 by Maron Buczkowsi of Stephen J.
4 Baum, PC law firm and it's a motion
5 to terminate.
6         I'll represent, Jay, that I
7 pulled this off the document and
8 there's a series attached as Exhibit
9 A to this motion, and just flip about
10 --
11         MR. TEITLEBAUM:  We got it.
12     Q.  Exhibit A, these are the
13 documents represented by JP Morgan Chase to
14 show the chain of title in this case.
15         If you turn to the first page of
16 Exhibit A there's a fixed adjustable rate
17 note. Do you see that on top there?
18     A.  Yes, sir.
19     Q.  This shows on -- it's dated
20 January 6th, 2006?
21     A.  Yes, sir.
22     Q.  And this shows the borrowers
23 promise to pay a hundred four thousand
24 dollars to Long Beach Mortgage Company; do

141

C. HERNDON

Q. you see that?
A. Yes, sir.
Q. Would this be a document you looked at to establish that Long Beach Mortgage Company is the initial owner of this document, of the note and mortgage?
A. Well, I did look at this document, yes, sir.
Q. Is this how you formed your basis that JP Morgan -- that Long Beach Mortgage Company was the initial owner of the mortgage company and note?
A. They're the initial lender, yes, sir.
Q. Is there any other documents you would have referred to?
A. Well, the mortgage, the actual mortgage.
Q. If you turn a little bit further, I think it's there.
A. Yes, sir, it's further in there.
Q. But these would have been the two documents you would have looked at to

142

C. HERNDON

establish that, that Long Beach Mortgage Company was the initial owner?
A. Yes, sir.
Q. You also testified that Long Beach Securities Corporation was the next owner of this.
   As you flip through Exhibit A, I couldn't see anything at least in Exhibit A, it's not to say you haven't reviewed something. I couldn't see anything in Exhibit A that shows ownership to Long Beach Security; is that correct?
A. I don't know.
Q. But, there is -- did you review a note and mortgage similar to this that shows it went to Long Beach?
A. Not in those.
Q. What did you review?
A. I believe it was entitled a mortgage loan purchase agreement. I think that was the title.
Q. Again, you're not personally familiar with what's been filed but do you know -- you're not specifically familiar

143

C. HERNDON

with everything but do you happen to know if the mortgage loan document that you're referring to now was attached as a document in the bankruptcy proceeding by JP Morgan Chase at anytime?
   MR. TEITLEBAUM: Just give me a second.
   Off the record.
   (Whereupon, a discussion was held off the record.)
   MR. ZIPES: I just ask that you review your files and see if it's been filed in some way with the court. I can represent to you that I didn't see it but that's not to say --
   MR. TEITLEBAUM: My recollection is that it is not part of the filing that was made by the Baum office in connection with the MFO. What I'm trying to recollect and give me half a second -- I don't believe it was attached to any of the pleadings filed thus far in the case.

144

C. HERNDON

   MR. ZIPES: I would ask you produce that document and it may have been produced already.
   MR. TEITLEBAUM: Well, it was produced to Ms. Tirelli. I'm happy to send you copy of it.
   MR. ZIPES: Would you mind because I don't have it. Would you mind giving it to the witness and just having him see that and testify that's what he reviewed.
   MR. TEITLEBAUM: Sure. If you'd like, do you want to make copy of it so we can mark it as an exhibit?
   MS. TIRELLI: Sure.
   MR. ZIPES: Off the record.
   (Whereupon, a discussion was held off the record.)
   MR. ZIPES: Let's move on while we're waiting for copy to the third owner of this property which is Deutsches Bank.
Q. Can you, again I'll refer you

C. HERNDON

A. Yes, sir.

Q. Have you seen any proof that there was a recording of the Long Beach Securities Corp from or Long Beach Mortgage Trust 2006-2 in any of your review of the documents?

MR. TEITLEBAUM: Excuse me, proof of recording of the transfer?

MR. ZIPES: The transfers.

A. I mean, there's -- the documents, Exhibit 2 and Debtor's Exhibit 2 and UST Exhibit 2, I don't know whether these documents need to be recorded.

Q. That wasn't my question. I'm asking if you seen any documents evidencing any recordings of these assignments.

A. Not that I can recall.

Q. So, let me turn you back to UST Exhibit 1 for a moment and this is the motion to vacate the stay which you don't have a lot of personal knowledge about but to make it a little easier I put a little sticky, that's my little sticky, this was

C. HERNDON

filed as part of the motion to vacate the stay and this is the assignment of mortgage; do you see that?

A. Yes, sir.

Q. So, this assignment of mortgage -- what is an assignment of mortgage in your understanding?

A. It is assigning a mortgage from one -- from one entity to another or one person to another.

Q. Do you see that line assignor JP Morgan Chase Bank National Association?

A. Yes, sir.

Q. And the assignee is Deutsches Bank National Trust Company as trustee for Long Beach Mortgage Trust 2006-2; do you see that?

A. Yes, sir.

Q. What is your understanding of what's being assigned here?

A. My understanding it's assigning the mortgage.

Q. So, how does that -- I'm just trying to understand in chain of title, is

C. HERNDON

there another piece of this chain of title of who owned the mortgage?

A. Not that I'm aware of, no, sir.

Q. Can you explain this document?

A. No, sir. This was prepared at the request of counsel -- of foreclosure or bankruptcy counsel, default counsel and I was not involved in creation of this document.

Q. It appears to be assignment of the mortgage, so correct?

A. That's what it's titled, yes, sir.

Q. Let me turn to the servicers of the note and mortgage.

We went through chain of title here, the servicers. I think you testified before that WaMu was a servicer of the note and mortgage and JP Morgan sort of took over the servicing, that's your understanding of JP Morgan Chase's involvement in the case

A. Yes, sir.

Q. Is that the totality of the servicers with respect to this note and

C. HERNDON

mortgage throughout the life of it?

A. Well, again, it was originated by Long Beach Mortgage Company, Washington Mutual became servicer and then JP Morgan Chase, yes.

Q. So, when did WaMu become the servicer of the mortgage?

A. In January of 2006.

Q. What document did you review to reach that conclusion?

A. There's a reference in here specifically indicating -- I apologize.

Q. That's fine.

MR. TEITLEBAUM: Want to help him move it along?

MR. ZIPES: I'm just asking the witness what he reviewed.

MR. TEITLEBAUM: Do you want to make copies of these two letters?

MR. ZIPES: We'll mark those as UST Exhibit 3. Do we want to interrupt the flow?

MR. TEITLEBAUM: It directly answers your question. Can we get