TEITELBAUM & BASKIN, LLP
Attorneys for JPMorgan Chase Bank, N.A.
as servicer for Deutsche Bank National
Trust Company, as Trustee for Long
Beach Mortgage Trust 2006-2
3 Barker Avenue, Third Floor
White Plains, NY 10601
(914) 437-7670
Jay Teitelbaum
jteitelbaum@tblawllp.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------
In re                                     :      Chapter 7
                                          :
SILVIA NUER,                              :      Case No. 08-14106 (REG)
                                          :
                    Debtor.               :
-------------------------------------------------------

## RESPONSE OF JPMORGAN CHASE BANK, N.A. IN OPPOSITION TO DEBTOR'S MOTION TO STRIKE

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

JP Morgan Chase Bank, N.A. ("**JPMorgan**"), as successor servicer to

Washington Mutual Bank, F.A.("**WaMu**"), for Deutsche Bank National Trust Company, as

Trustee ("**Deutsche Bank**") for Long Beach Mortgage Trust 2006-2 (the "**Trust**"), for its

opposition to the Debtor's motion, dated February 6, 2010, to strike (the "**Motion to Strike**")

JPMorgan's letter, dated January 28, 2010 (the "**Withdrawal Letter**") withdrawing JPMorgan's

motion, dated November 7, 2008, for relief from the stay ((Docket No. 7, as amended and

supplemented by Docket Nos. 28 and 32, the "**MFR**"), respectfully states:

1) The Motion to Strike needlessly multiplies the litigation in this case based upon a total

disregard for recent proceedings before this Court and the facts of this case.

2) At a status conference held on January 7, 2010, JPMorgan sought leave to file motions to

disqualify counsel for the Debtor and for summary judgment with respect to the MFR.

After more than 2 hours, the Court granted JPMorgan leave to file its motions, but made

certain observations concerning whether the motions should be filed and how the issues

in this case should proceed. (A copy of the relevant pages of the January 7 Transcript is

annexed hereto for the convenience of the Court).

3) The Court clearly articulated the need to bifurcate the MFR from the sanctions issues in

order to mitigate continuing losses to the lender and to permit the sanctions issue to

proceed. (Tr. at pp.51 and 57).

4) Upon consideration of the Court's comments concerning case management and the

efficient use of the Court's time, JPMorgan agreed to withdraw its request to file the

disqualification motion and represented to the Court that it expected to withdraw the

MFR in anticipation of filing a new motion for relief in the event the parties were unable

to consensually resolve a loan modification or a consensual turnover of the premises. (Tr.

at p.58).

5) Honoring the representations made to this Court, on January 8, 2010, the undersigned

provided Debtor's counsel with a mortgage loan modification package. However, as of

the filing of the Withdrawal Letter, no documents had been received in support of a loan

modification and there were no ongoing settlement discussions concerning the MFR. As

of the date of this filing, no documents in support of a loan modification or other

consensual resolution of the MFR have been received.

6) Consistent with this Court's comments at the January 7 status conference, and the

representations made to this Court, the Withdrawal Letter clearly stated that it was

without prejudice to the ongoing request for sanctions by the Debtor as joined by the

United States Trustee. Indeed, since the filing of the Withdrawal Letter, JPMorgan

continued to treat the sanctions request as a contested matter. The Debtor's discovery

requests were responded to and documents were produced to the Debtor and the United

States Trustee. JPMorgan has also advised the United States Trustee and counsel for the

Debtor that it is seeking to produce witnesses in response to deposition notices, but

schedules have not been confirmed.

7) Nevertheless, the Debtor filed the Motion to Strike, seemingly in direct conflict with the facts, the January 7 conference, and the interests of the Debtor.

8) After the production of approximately 1380 pages of documents, and as will be more fully addressed in subsequent proceedings, the evidence is that no false or fraudulent documents were produced in support of the MFR and there is no basis for the imposition of sanctions. The MFR accurately described (x) the creditor as Deutsche Bank, as Trustee for the Trust, and as the holder of the Note and duly recorded Mortgage; (y) the movant as JPMorgan as successor servicer for the Trust; and (z) the basis for the relief sought, including the Debtor's undisputed failure to make a payment on the note and mortgage since September 2007 and the Debtor's undisputed intent to surrender the premises which were never the Debtor's residence.

9) Despite Debtor's mischaracterizations, the sole reason for the filing of the Withdrawal Letter was to comply with the Court's concerns - - dispose of the motion for relief as efficiently as possible and proceed with the issues related to sanctions. (Tr. at p. 56).

10) The same cannot be said for the Motion to Strike. There is no logical reason for the Debtor to oppose the withdrawal of the MFR, which was the procedure suggested by this Court. (Tr. at pp. 50-51).

11) To the extent that the Debtor claims that JPMorgan did not comply with Fed. R. Civ. P. 41, the Debtor is wrong and is unnecessarily multiplying litigation and motion practice. Bankruptcy Rule 9014(c) clearly provides that the Court may direct that certain "7000 Rules" do not apply in contested matters. The voluntary withdrawal of the MFR was consistent with the express representations made to the Court in response to the Court's clearly stated intention to minimize motion practice on the relief from stay and deal with the sanctions issue. (Tr. at p.56). On January 7, the Debtor did not state any opposition to this process. If the Debtor is now insisting upon more motion practice contrary to the

stated intention of the Court and all parties who appeared before the Court on January 7,

JPMorgan requests that the Court simply memorialize its suggested approach in the form

of an order approving the withdrawal of the MFR on the terms set forth in the

Withdrawal Letter.

## Conclusion

12) There is no legal, factual or rational basis for the filing of the Motion to Strike or the

imposition of sanctions against JPMorgan, pursuant to 28 U.S.C. §1927[1] or Bankruptcy

Code §105. To the contrary, the filing of the Withdrawal Letter was wholly consistent

with the representations made to the Court and observations made by the Court as to how

this matter should proceed.

13) JPMorgan expressly reserves its rights to seek fees and expense from counsel for the

Debtor, pursuant to 28 U.S.C. §1927 and Bankruptcy Code §105, in connection with the

ongoing filing of such frivolous pleadings.

**WHEREFORE,** JPMorgan respectfully requests that the Motion to Strike be denied in

all respects, including with respect to the award of sanctions, and that the Court grant

JPMorgan such other and further relief as may be appropriate.

Dated:  White Plains, New York
        February 9, 2010

TEITELBAUM & BASKIN, LLP
Attorneys for JPMorgan Chase Bank, N.A.
as servicer for Deutsche Bank National
Trust Company, as Trustee for Long
Beach Mortgage Trust 2006-2

By: /s/ Jay Teitelbaum
3 Barker Avenue, Third Floor
White Plains, NY 10601
(914) 437-7670
jteitelbaum@tblawllp.com

---

[1] It appears that the Motion to Strike incorrectly refers to 28 U.S.C. §1928

**JANUARY 7, 2010 TRANSCRIPT**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------

*In re:*                                    Case No. 08-14106 *(reg)*

         SILVIA NUER,                        New York, New York
                              *Debtor.*      January 7, 2010

--------------------------------------------------------

TRANSCRIPT OF CHAP 7 HEARING RE PRETRIAL CONFERENCE ON

MOTION FOR RELIEF FROM STAY AS TO THE PROPERTY LOCATED AT

1651 METROPOLITAN AVENUE 7C, BRONX, NY 10462 FILED BY

AMY E. PRZEWOZNY ON BEHALF OF JPMORGAN CHASE BANK NATIONAL

ASSOCIATION AS SERVICER FOR DEUTSCHE BANK NATIONAL TRUST

COMPANY, AS TRUSTEE FOR LONG BEACH MORTGAGE TRUST 2006-2

BEFORE THE HONORABLE ROBERT E. GERBER

UNITED STATES BANKRUPTCY JUDGE

A P P E A R A N C E S :

| | |
|---|---|
| *For Debtor* | LINDA M. TIRELLI, ESQ. |
| | 202 Mamaroneck Avenue, 3rd Fl. |
| | White Plains, New York 10601 |
| | (914) 946-0860; (914) 946-0870 |
| | |
| *For J.P. Morgan:* | JAY TEITELBAUM, ESQ. |
| | Teitelbaum & Baskin, LLP |
| | 3 Barker Avenue, 3rd Floor |
| | White Plains, New York 10601-1509 |
| | (914) 437-7670; (914) 437-7672 fax |
| | |
| *For David Kittay,* | JUDITH L. SIEGEL, ESQ. |
| *Chapter 7 Trustee:* | Kittay & Gershfeld, PC |
| | 100 White Plains Road, 2nd Floor |
| | Tarrytown, New York 10591 |
| | (914) 332-8000; (914) 332-8001 |
| | |
| *For the UST Office:* | GREG MICHAEL ZIPES, ESQ. |
| | 33 Whitehall Street |
| | New York, New York 10004-2112 |
| | (212) 510-0500 |
| | |
| *Transcription Service:* | A-1 Transcripts |
| | A1Transcripts@optonline.net |

*Proceedings recorded by electronic sound recording.*
*Transcript produced by transcription service.*

*In re Silvia Nuer - 1/7/10*                                      8

1   were some inconsistencies in the document where they said Chase

2   is the Creditor.  And then they submitted the Walter assignment,

3   which said Chase was assigning the document to the bank.

4          These documents are not factually accurate.  Was it

5   nefarious?  Was it to fabricate a transaction?  No.  It was --

6   and this is going to be -- and I acknowledge, this section here,

7   unless we can get this resolved to the satisfaction of the Court

8   and the Trustee, is going to be a question of fact.  And the

9   Court is going to want to know what the heck happened, because

10  these are very serious issues.

11          MR. TEITELBAUM:  But the belief was --

12          THE COURT:  Pause, please, Mr. Teitelbaum.  You are

13  still looking for summary judgment.  I take it implicit in your

14  point is that while you see issues of fact relevant to the

15  sanction, and what remedial action is appropriate, your

16  contention is that the acknowledged deficiencies don't go to

17  relief from the stay, they only deal with issues as to which the

18  U.S. Trustee's Office and/or the Debtor and/or the Trustee --

19  the case trustee, would be in essence on offense against Chase.

20          MR. TEITELBAUM:  That is the position because Your

21  Honor -- and if it were easier, if you will, to simply withdraw

22  the original motion for relief and file a very simple one, which

23  lays out exactly what the facts are, there would really be no

24  issue.  I didn't want to do that.

25          THE COURT:  Well, pause, please.  Because insofar as

*In re Silvia Nuer - 1/7/10*                                    9

1    it might deal with the narrow issue of whether relief from the

2    stay is or is not appropriately granted, there would be no

3    problem as you say.

4            In terms of the institutional concerns that have been

5    articulated by the U.S. Trustee's Office, and the fact that

6    there must be hundreds, if not thousands of Debtors who don't

7    have the benefit of counsel, who get this stuff done to them all

8    the time, that's a huge issue from the prospective of a

9    bankruptcy judge.  And while I can't speak for the Office of the

10   U.S. Trustee, I sense that that's something that was in her head

11   when her office filed that response.

12           MR. TEITELBAUM:  Your Honor, I want to, as Your Honor,

13   say this, delicately if you will.

14           THE COURT:  Sure.

15           MR. TEITELBAUM:  I appreciate that concern.  And Chase

16   does.  And that's why Chase has taken the steps that it's taken.

17   And those have been listed and testified to the Office of the

18   U.S. Trustee.  But with respect to what has been "Done to

19   Debtors" I respectfully would suggest for example in this case,

20   this Debtor got the money.  This Debtor borrowed the money to

21   buy an apartment, the money went to the seller.  Things happened

22   outside of the control of Chase or the lenders as it were.  The

23   Debtor never moved into the apartment.  The Debtor hasn't made a

24   payment on this note since September of 2007.  The Debtor hasn't

25   made a payment to the co-op board.  There are tens of thousands

*In re Silvia Nuer - 1/7/10*                                    23

1    the discharge having taken place, the motion for relief in the

2    stay was moot, and impliedly that you didn't even need relief

3    from the stay to proceed with the foreclosure.

4         MR. TEITELBAUM:  I don't know if I read 362 the same

5    way with respect to if it's still property of the -- if the

6    trustee hasn't abandoned the property, I don't know think you

7    fall under that subsection of 362.

8         THE COURT:  You answered my question, because you're a

9    pretty good lawyer.  Probably at least as good as she is.  And

10   that's not a point that you're continuing to press.

11        MR. TEITELBAUM:  No, Your Honor.  And frankly we were

12   considering -- and I've had discussions with the trustee's

13   office as to why this property is still property of the state if

14   it's intrinsically got no value.  If it's to keep this alive,

15   okay.  But we recognize that point.  I'm not pushing that point

16   unless and until the property is abandoned in addition to the

17   discharge.

18        THE COURT:  I hear you.  Now, apropos that, I want to

19   ask a question to all of the stakeholders in the case, which I

20   guess is everybody other than Mr. Zipes.  But you're up there

21   first.  If she is not living there, and I well understand the

22   desire of any Debtor to stay living in one's home; and if all

23   agree that the property is under water; and if the Debtor

24   indicated when she first filed her petition back in I think it

25   was approximately October of 2008 that she intended to abandon;

*In re Silvia Nuer - 1/7/10*                                    24

1  and even if there was then some equity in the property, I

2  suspect that the equity has since evaporated by reason of the

3  accrual of interest even at the original rate putting aside

4  whether this was a predatory loan or not; is it possible from

5  your perspective -- and I don't want you to talk about

6  settlement discussions -- to work out some kind of stip. under

7  which the property is relieved from the constraints of the

8  automatic stay and can be marketed or sold or taken in

9  foreclosure or whatever with a stipulation that all parties'

10 rights are reserved vis-à-vis the sanction, and any rights

11 against Chase, so that in essence we're preserving everybody's

12 rights on the issues that I see as most critical, while at the

13 same time allowing Chase in substance to mitigate damages?

14         MR. TEITELBAUM:  Your Honor, that was essentially the

15 reason for the summary judgment motion on the issue for relief

16 from the stay, because we do believe the two issues to be

17 discrete.  I would certainly be prepared to do such a

18 stipulation whereby whether it's a deed-in-lieu or a

19 foreclosure, whatever the title company will require to the

20 clean-up title so it can be conveyed to a third-party and the

21 third party.  That would work for the bank and we would work for

22 with the other parties and the court on the sanctions piece in

23 addressing the issues of the initial pleading.

24         THE COURT:  Mm-hm.  Well, you're one of only several

25 parties who would have to weigh in on this.  But I appreciate

*In re Silvia Nuer - 1/7/10*                                25

1   the --

2          MR. TEITELBAUM:  Well, from the bank's perspective,

3   we're not trying to get away from what is really of utmost

4   concern to us and the Court is the propriety of the pleadings

5   that are filed before this Court not only in this case, but in

6   every case.  And that's my job, and that's Chase's obligation,

7   and Chase's commitment to the Court.

8          THE COURT:  Okay.  Thank you.  Ms. Tirelli.

9          MS. TIRELLI:  Good morning, Your Honor.  I guess I

10  want to first address my status as being admitted to this court

11  -- being admitted to practice in this court.  I am in fact

12  licensed in the State of Connecticut, as well as in the federal

13  district of Connecticut, which enabled me to become admitted in

14  the Southern District of New York.

15         THE COURT:  I'm sorry; I didn't hear the last.

16         MS. TIRELLI:  That's what enabled me to become

17  admitted to the Southern District of New York, which is why I'm

18  here before you.  I did make my admissions -- in other words

19  where I'm admitted known to the trustee at the onset of this

20  case.  They wanted me to produce my certificate of good

21  standing.  I did so back at the beginning of the case.  The

22  trustee, meaning David Kittay, did in fact file a motion asking

23  me to be appointed as counsel to the estate, as well as the

24  counsel to the Debtor.

25         Chase voiced no objection at that time.  After that

*In re Silvia Nuer - 1/7/10*                                    43

1   stay that appears to not make sense that people aren't entitled

2   to ask about that if the Debtor has no problem with the stay

3   being vacated.

4        My office thinks it's very important to have motions

5   that make sense before the Court. And are fully documented. If

6   there's an assignment that's missing, there should be an

7   explanation as to why that assignment is missing. And then we

8   can all move onto other areas of the law that are perhaps more

9   relevant or germane to or interesting even, Judge.

10       But we are before this Court on this case because

11  there were these assignments which Chase acknowledges. I don't

12  know if they would call them false. They wouldn't call them

13  false. But they were made up. And my office would call them

14  false. So, we are dealing with that in this case and we're

15  dealing with a bigger issue as well.

16       THE COURT: Mm-hm.

17       THE COURT: Now, I take it -- if I heard you right,

18  Mr. Zipes, you're articulating what I would call institutional

19  or systemic concerns. I take it it's those concerns that are of

20  importance to your office and that you don't much care whether

21  the Debtor and Chase ultimately sever the issue of relief from

22  the stay so long as the institutional issues and the matter of

23  sanctions survive without prejudice to anybody's rights?

24       MR. ZIPES: That's right, Your Honor, with one caveat

25  that in this case if there is a factual issue that the Debtor

*In re Silvia Nuer - 1/7/10*                                      44

1   wishes to raise we would hope that Chase would work with the

2   Debtor to the extent that's possible so that the Debtor is not

3   incurring unnecessary legal fees in fighting that.  If it's a

4   simple motion to vacate the stay where the Debtor hasn't been

5   paying, period, that's one matter.  But if there's some story

6   behind that -- and my office is not taking a position on that,

7   but if there's some story behind that, we would expect the

8   secured creditor to work with the Debtors to the extent that

9   they can to make sure that that issue is resolved or is

10  addressed in some way.

11          THE COURT:  Mm-hm.  Okay.  Thank you.  Mr. Teitelbaum,

12  would you like to be heard --

13          MR. ZIPES:  Judge, I'm sorry.  I wanted to make one

14  further point about Mr. Tirelli and her standing --

15          THE COURT:  Sure.

16          MR. ZIPES:  -- for the Court.  My office obviously

17  would treat that with great seriousness if an attorney is

18  appearing before this Court that's not licensed.  And in fact

19  Mr. Teitelbaum was referring to a Westchester case *Castio* (ph)

20  where there was a problem with the attorney.  My office is

21  concerned if that's the case.

22          We have had discussions with Mr. Teitelbaum because we

23  treat what he says very seriously, and I think we're left with a

24  non-resolution at this point.  My office hasn't completed

25  decided where it comes down on the issue of where an attorney is

*In re Silvia Nuer - 1/7/10*                                   45

1   not licensed in New York State.

2           We have local rules, bankruptcy rules, that allow

3   attorneys to appear before you if they're admitted in the

4   Southern District of New York, District Court. Now, those rules

5   in turn don't require New York State license. So, it's not --

6   it can't per se rule that knocks out Ms. Tirelli here. It would

7   have to be some issue -- underlying issue with her

8   representation here. My office hasn't seen that, but if Mr.

9   Teitelbaum believes that there's an issue, as always we're open

10  to hearing it. We just haven't heard it. We actually applaud

11  when Debtors' attorneys actually spend time and look at the

12  issue more in depth in a situation like this. So, Judge, that's

13  all I have. I'll sit down.

14          THE COURT: Okay. Mr. Teitelbaum, would you like to

15  comment?

16          MR. TEITELBAUM: For briefly if I may, Your Honor.

17  Perhaps most importantly hopefully I did not misspeak. I do

18  acknowledge as Mr. Herndon testified that the two assignments

19  factually did not accurately reflect the state of affairs. In

20  other words that Chase was at the time the owner of the mortgage

21  and was assigning it to the trustee, because at all times, the

22  trustee was the owner -- the trust was the owner of the note

23  through the trustee.

24          But not acknowledging that that was prepared with

25  fraudulent intent or to deceive the Court. What I think I said,

*In re Silvia Nuer - 1/7/10*                                    46

1   and what I stand by and what we'd hopefully be able to prove is

2   that there was a mistake of fact based upon the view by the

3   attorneys and Chase apparently of the underlying facts.  And

4   they believe this document at the time to be necessary and

5   truthful.  It turned out not to be.

6          So, maybe it's a distinction without a difference.

7   I'm not trying to figure you know figure out how many angels we

8   can put on the head of a pin.  I just want to be clear that I'm

9   not acknowledging that there was an intent to deceive anybody in

10  preparing this document.  I acknowledge that the document was

11  factually inaccurate and I think it remains to be determined

12  what the ultimate facts were that led to that.  And I just

13  wanted that to be clear, Your Honor.

14         With respect to the issue I think that Your Honor

15  raised on sanctions, do we address this case, do we need to

16  address and go forward.  If I can just be heard very briefly on

17  that.

18         In the *Parson*, Judge Glenn did not require a stip.

19  the U.S. Trustee's office asked Chase to prepare a stip.  I just

20  want to put a little flavor on this.  But a letter -- and it was

21  more than aspirations.  It was what Chase had presently intended

22  to do, and has in fact done and gone beyond.  And we can make

23  that letter available to the Court if you don't already have it.

24  It is a matter of public record.

25         The concern that we have, and have expressed to the

*In re Silvia Nuer - 1/7/10*                                         47

1   U.S. Trustee's Office in connection with our agreements to do

2   the best that we can, and to in fact go well beyond what's

3   required in the local rules for the filing of relief from stay,

4   is you know what I'll call the IBM Order, if you will, of way

5   back when --

6           THE COURT:  A consent decree.

7           MR. TEITELBAUM:  Yeah.  Because we've committed.  If

8   the UST's office and frankly if the judges of this court wanted

9   to bolster the local rules so there was an even playing field

10  for everybody as to what the rules are to file a motion for

11  relief from the stay in this jurisdiction, that's great, and

12  that's what we would commit to do.  And in fact Chase does that

13  in other jurisdictions.  It confers with the bench and bar, and

14  it works on procedures.  And we've offered to do that.

15          What we have a real problem with is being held to a

16  different standard than everybody else.  We're prepared to play

17  by the rules; we're prepared to go even the rules that we're

18  committed to do, but the issue of a consent decree has not been

19  in the realm of what we were willing to do with the U.S.

20  Trustee's office.  I just want to be frank with you as to why we

21  are where we are on that.

22          You know we can identify for the Court the procedures

23  that Chase has implemented.  And in fact, Your Honor is right,

24  we agree, someone that knows something about the facts of the

25  case should be signing the affidavits.  And there are people

*In re Silvia Nuer - 1/7/10*                                            48

1   that have been engaged at Chase, and policies have been put in

2   place so that the motion is actually reviewed from a factual

3   perspective.  Not a legal memo of law.  Obviously, that's the

4   lawyer's job.

5          The checklist that we have now, and we've provided the

6   checklist, is far more extensive than the worksheet required

7   under the local bankruptcy rules.  And again, the proof is

8   somewhat in the pudding, knock wood.  We actually -- I think

9   Judge Morris actually granted a motion for relief from the stay

10  that we recently filed.  And the motion was reviewed by office,

11  it was prepared by -- I don't remember which outside firm.

12  Reviewed by my office back and forth, corrections made, things

13  tweaked, filed, Judge Morris approved it.  I don't remember the

14  name of the case.

15         Unlike the Judge -- and this is to address your other

16  point, Your Honor -- the case with Judge Drain voided the

17  mortgage.  That was a pretty extreme case from my understanding

18  of the facts.  The lawyers were not compliant with producing the

19  documents and couldn't even produce the mortgage and note.

20  We've done that.  So, this is a very different case in that

21  regard.  I'm not minimizing the importance, but you raised it,

22  so I just wanted to address the fact that we actually located

23  the original note and mortgage.  I have it in my office.  So, we

24  could prove our case.

25         And I favor, if you will, severing the two issues of

*In re Silvia Nuer - 1/7/10*                    49

1   relief from stay. I'm sort of indifferent if we withdraw the

2   motion, file a clean one, or just sort of treat it as file a

3   motion for summary judgment, laying out what the facts are and

4   move forward from here. I'm not looking to make more work for

5   anybody.

6          And finally, Your Honor, if the Court is inclined on

7   Ms. Tirelli with respect to her continued representation, you

8   know bringing another lawyer in as co-counsel, I think it would

9   be difficult. Mr. Shaev withdrew for whatever reasons he

10  withdrew from this case. He was originally involved. Frankly,

11  I think you're just going to be looking at Chase to pay more

12  legal fees in all candor. And that doesn't serve anybody's

13  interest.

14         So, if it is -- and I think we've all acknowledged the

15  matter of the Court's discretion. If the Court so finds that

16  Ms. Tirelli is doing an appropriate job under these

17  circumstances, let's move forward and deal with the meat here.

18  Really what I believe to be the meat, which is the sanctions of

19  the case. Thank you, Your Honor.

20         THE COURT: All right. Thank you, Mr. Teitelbaum.

21  I'd like everybody to sit in place for a second, please.

22         (Long pause in hearing.)

23         THE COURT: All right, folks, our original agenda

24  where we have to initially keep our eye on the ball was to

25  address the concerns and requests made by Mr. Teitelbaum in his

*In re Silvia Nuer - 1/7/10*                    50

1   letter of early December. But I think it would be desirable, if

2   not essential to go beyond the matters that Mr. Teitelbaum

3   originally brought us all here to address to see whether certain

4   matters that he would like to address, ultimately could be

5   short-circuited and how we could best address the totality of

6   the matters that could be addressed to keep the legal fees downs

7   for all and to put our efforts into what is most productive in

8   terms of satisfying the various parties' concerns, including the

9   concerns of a judge, both in this case, and going forward.

10          The two matters for which you, Mr. Teitelbaum, wanted

11  authority to file a motion, were to disqualify and to seek

12  summary judgment. On the first, disqualification, it appears,

13  based on undisputed facts that Ms. Tirelli is duly licensed in

14  Connecticut, both state and federal, and is appropriately

15  admitted in the Southern District of New York, and authorized to

16  appear in bankruptcy cases.

17          It that hadn't been so, either because she had been

18  disbarred in New York, such as in the *Schmoil Klein* matter, or

19  that she simply hadn't gotten the necessary prerequisites to

20  appear in this Court, a motion of the character you would want

21  to make would be, if not quite a slam dunk, a very strongly

22  likely winner. But this is different. In essence you're

23  relying upon the discretionary authority of a court to step in

24  akin to what Judge Bernstein did.

25          If you want to make such a motion, I would let you,

1  but I would discourage you from doing it, because I think that
2  in the exercise of my discretion I would ultimately conclude
3  that factors that have to be weighed in the totality as part of
4  any discretionary determination, such as the benefits of knowing
5  the facts, the benefits of having a long familiarity with the
6  matter, the fact that even amongst those lawyers, who are
7  licensed in New York, there is a wide spectrum of skill, and it
8  is normal for lawyers to practice and to litigate with the need
9  to address the law of other states.

10        The motion while permissible is not likely to be a
11  good expenditure of money.  And in my case management
12  responsibility, I want matters to proceed on the assumption that
13  either that motion wouldn't be made or would not be granted if
14  made.  So, while technically speaking, I'm giving you permission
15  to make it, I'm discouraging you from doing so.

16        On the matter of summary judgment, if such a motion
17  were made, it would have about an even money chance of being
18  successful on summary judgment.  Although ultimately if the bank
19  wanted to proceed with it's motion for relief from the stay
20  either on a clean slate or after an evidentiary hearing, it's
21  likelihood of succeeding would eventually get to be very, very,
22  high.  I don't know if it's productive to say that it would be a
23  90 percent chance of being ultimately successful or even higher.
24        But in the absence of some consensual resolution, it
25  appears to me that with competent lawyering which the bank now

1   has that motion is ultimately going to win one way or the other.

2   And while my preference would be, Mr. Teitelbaum, that you

3   simply do a new clean motion, unaffected or uninfected by the

4   earlier things, because of my sense that the motion is

5   ultimately going to be successful and that the bank is

6   ultimately going to be taking the property, I wonder whether

7   going through the expense of a summary judgment motion is a good

8   expenditure of money.

9           Again, technically speaking, I grant permission to

10  make it, but I think that the process is better accomplished by

11  short-circuiting the process.

12          Now, I forgot who suggested the idea of allowing time

13  for a dialogue to take place.  I think that's a good one.  I

14  could not authorize a summary judgment motion without first

15  allowing Ms. Tirelli and Mr. Zipes to depose the two people

16  whose names I keep forgetting.  Arbus (sic) was that one?

17          MS. TIRELLI:  Garbis.

18          THE COURT:  Garbis.

19          MS. TIRELLI:  And Scott Walter.  Ann Garbis.

20          THE COURT:  And Walter, right.  So, that would cause

21  delay in dealing with the summary judgment part.  But their

22  testimony is really relevant more for the sanctions prong and

23  the remedial measures prong than it is for whether or not relief

24  from the stay is ultimately granted.  Because I think that

25  unless the evidence that Mr. Zipes brought to my attention is

*In re Silvia Nuer - 1/7/10*                                      53

1   untrue, and unless I heard Mr. Teitelbaum wrong, everybody

2   agrees that the facts that were then put forward were inaccurate

3   and the real issue is scienter, intent, due care, whether people

4   should be in a position where they keep doing what those guys

5   did or what the lawyers who asked them to do it told them to do.

6   And those are really ultimately relevant in my mind more to the

7   sanctions and remedial measures prong than to the entitlement to

8   relief from the stay prong.

9          As my earlier questions telegraphed and what I just

10  said confirms, I think it is highly desirable for the four

11  parties here to come into a stip. under which the relief from

12  the stay issues are severed from the sanctions/remedies issues

13  with full reservations of rights to all concerned.  I think that

14  getting the property, producing income or value of some sort as

15  quickly as possible is in the interest of all concerned.

16         I do believe that Ms. Tirelli and especially Mr. Zipes

17  have -- and for that matter the Chapter 7 Trustee -- Ms. Siegel

18  is speaking on his behalf -- have articulated institutional

19  concerns that ultimately I can't responsibly ignore and that I

20  really need to deal with.  But I don't think that we need to

21  keep the property in limbo while that's going on.  So, I would

22  encourage, though I won't insist, the four of you to work out

23  some kind of stip. that separates the foreclosure of the

24  underlying property from the claims vis-à-vis sanctions and the

25  remedial measures.

1    It is also the case that while I need to consider and

2    approve any settlement you guys might reach from the

3    institutional perspectives that I care about, what I mainly care

4    about is appropriate sanctions for what happened, and especially

5    remedial messages going forward.  And what happens to the

6    property is not a major element of the concerns that I care

7    about.

8         Now, if you have had discussions about making this

9    property available to the Debtor or working out a swap of her

10   other apartment for this, or anything else you might do, or any

11   payment or allowance to the Debtor, I have an open-mindness to

12   all of those things.  But what I want you folks to see if you

13   can do is to see that if the property in question isn't going to

14   be occupied by the Debtor, we can separate these issues to

15   mitigate damages for all concerned.

16        Now, implicit in all of this if you are, all four of

17   you, of a mind to come up with some kind of a stip. to sever the

18   two kingdoms of issues that we have to discuss, we still have to

19   work out a mechanism to see what an appropriate sanction would

20   be if one can be agreed upon and be acceptable to me, or

21   alternatively to tee that up for judicial determination.

22        As I indicated for that purpose, I think we do need to

23   get the testimony of the two folks who executed those

24   assignments and most likely the people at the Baum firm who took

25   the actions that they did.  I suppose they can ask to remain

*In re Silvia Nuer - 1/7/10*                                    55

1   moot, and I will rule upon any such contentions. Staying moot

2   has the potential of subjecting  the lawyers involved to

3   substantial monetary risks, but certainly I'll consider that as

4   well.

5          The sanctions matter is one which you may or may not

6   be able to consensually resolve to my satisfaction. I would

7   invite you to try. I care about a monetary sanction at least in

8   part. But I care even more about curative measures going

9   forward.

10         And while, Mr. Teitelbaum, your client may be unhappy

11  about the notion of a consent decree, a consent decree might be

12  -- especially if you plan to do it anyway -- a lot cheaper than

13  paying the damages or sanctions that might otherwise be imposed.

14  But I'm going to give you a full hearing on your contention that

15  this was an innocent mistake.

16         The problem though is that if it turns out that

17  appropriate measures were not in place, to avoid errors of this

18  character, we might be in a position where the Baum firm was

19  acting in reckless disregard of the interest of Debtors. And

20  for that matter the Chapter 7 Trustees who rely upon the

21  accuracy of the information that's presented to them. So that

22  you can't necessarily assume that because people didn't do it

23  out of malice that's going to be ending the issue.

24         As I said, however, my principal concern is insuring

25  that I and the other judges in this district don't have to deal

*In re Silvia Nuer - 1/7/10*                                        56

1   with these problems again.  And that measures that I gather that

2   you've taken -- you personally have taken to reduce or eliminate

3   problems of this character become university so that the judges

4   in this district don't have to deal with further motions or

5   issues of this type.

6          A matter of huge concern to me is that a very major

7   percentage of the Chapter 7 Debtors whom I see on motions for

8   relief from the stay with full recognition that in this largely

9   commercial district, we here at Bowling Green get only a slice

10  of the total universe.  A huge number of them don't have

11  lawyers.  They don't have the Ms. Tirelli's, they don't have the

12  Mr. Shaev's, who know what to look for.

13         And the Chapter 7 Trustees, when they look at the

14  numbers, and I imagine there's an array of different ways they

15  do their jobs; but in many cases, they're going to look to see

16  whether there's money for the unsecured creditor community.  And

17  If they don't see that, they're not going to be as focused on

18  the underlying concerns that I have and the U.S. Trustee's

19  Office has, accept in those rare instances.  And this Chapter 7

20  Trustee may be one of them where they are willing to put more

21  effort into it.

22         I want to see that we can minimize the amount of

23  motion practice here, and deal what I and the U.S. Trustee's

24  Office really care about.  So, here's what I want to happen.

25  Mr. Teitelbaum, you can and should decide whether you want to

*In re Silvia Nuer - 1/7/10*                                    57

1   accept my invitations, which are not orders to not bother with

2   the disqualification motion, and to make the summary judgment

3   motion if you wish, but to also consider whether you simply want

4   to make a new clean motion of your own.

5            And I also want the parties to put their noodles

6   together to see if you can sever the matter of sanctions and

7   stay relief.  Get a stip. that allows Chase, as servicing agent

8   through Deutsche Syndication Trust Number -- whatever it is --

9   to take title to the property.  And to deal with the matter of

10  sanctions separately.  And then to see if we can work out some

11  kind of settlement that I could approve, that I could

12  responsibly approve to avoid matters of this character going

13  forward.  And if it does do that, the amount of monetary

14  sanction that I would be of a mind to impose would be much, much

15  smaller.

16           And what I what I think I would like you folks to do

17  is to proceed with the discovery which we're going to need to do

18  in any event, and for you to have a follow-up status conference

19  with me in roughly the 30-day range, unless anybody wants it

20  sooner to give me an update on the state of your thinking on the

21  matters that I've addressed.

22           Technically speaking, leave to file both motions as

23  requested by you, Mr. Teitelbaum, is granted.  However, I would

24  encourage further proceedings in accordance with the guidance

25  that I've given you today.

*In re Silvia Nuer - 1/7/10*                                    58

1      Okay.  Not by way of re-argument, are there any

2   further matters anybody would like to raise?

3           MR. TEITELBAUM:  Your Honor --

4           THE COURT:  Mr. Teitelbaum.

5           MR. TEITELBAUM:  -- very quickly, just to put

6   everyone's mind at ease, we will take Your Honor's

7   recommendation, if you will.  We want to try to move forward in

8   as efficient way as possible.  I will withdraw the request for

9   filing of the motion for disqualification so that we can focus

10  on the more important issues.  So, that this way we can focus.

11  It doesn't go to the merits of it, but recognizing what's

12  important here, let's try to focus on that.

13          With respect to the summary judgment motion, Your

14  Honor, my recommendation to my client, number one, is we try to

15  meet and confer about a stip. if we can resolve it.  If we can't

16  resolve it, I think what I would suggest, Your Honor, is I would

17  write a brief letter to the Court saying we've tried, we can't,

18  I'll file a motion for summary judgment.  Probably what I'll do

19  is withdraw without prejudice based on Your Honor's

20  recommendation via motion.  And as timely as possible file a new

21  one.  But we'll advise the court if that happens prior to the 30

22  days or at that time.

23          So, Your Honor, we would adopt your suggestions and

24  approach and obviously on the issues of sanctions we're going to

25  proceed and I will order a copy of the transcripts so all

*In re Silvia Nuer - 1/7/10*                                          59

1   parties concerned, can read the words that Your Honor spoke

2   today.  Thank you.

3           THE COURT:  Okay.  Subject to anybody else's ability

4   to be heard, that sounds very reasonable to me.  Ms. Siegel?

5           MS. SIEGEL:  Your Honor, all I would request --

6           THE COURT:  Come to the mic, would you please?

7           MS. SIEGEL:  Sure.  I'm sorry.  All I would request

8   since the Trustee has already spent over $20,000 monitoring this

9   because he feels that this is a more global issue that he's

10  concerned with, is that I be able to appear telephonically at

11  the next status conference?

12          THE COURT:  Oh, you bet.

13          MS. SIEGEL:  Thank you, Judge.

14          THE COURT:  You bet.  Anything else, anybody?

15          MR. ZIPES:  Judge --

16          THE COURT:  Mr. Zipes?

17          MR. ZIPES:  I would just state that to the extent that

18  my office concludes or the parties conclude that there's a law

19  firm issue here as well, that our rights are fully reserved in

20  that regard.

21          THE COURT:  You've got a reservation of rights on it.

22  I do hope and expect that anything further that might affect

23  them, that you tell them in advance so that they have an

24  opportunity to be here and represented.

25          MR. ZIPES:  Most certainly, Your Honor.

*In re Silvia Nuer – 1/7/10*                                60

1          THE COURT:  Okay.

2          MR. TEITELBAUM:  Thank you, Your Honor.

3          THE COURT:  All right.  Thank you, folks.  We're

4   adjourned.

5          MS. TIRELLI:  Thank you, Your Honor.

6                        - o0o -

CERTIFICATION

I, Rochelle V. Grant, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated:   January 14, 2010

A-1 Transcripts
837A Midland Avenue
Yonkers, New York 10704