UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

1

2
-------------------------------------------------
*In re:*                              Case No. 08-14106 *(reg)*

3          SILVIA NUER,                   New York, New York
                                         May 12, 2009
4                           *Debtor.*
-------------------------------------------------

5          TRANSCRIPT OF CHAP 7 HEARING ON OBJECTION TO MOTION

6          FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND

7              CROSS APPLICATION FOR A PROTECTIVE ORDER

               BEFORE THE HONORABLE ROBERT E. GERBER

8                  UNITED STATES BANKRUPTCY JUDGE

9     A P P E A R A N C E S :

10     *For Debtor:*                     DAVID BRUCE SHAEV, ESQ.
                                         350 Fifth Avenue, Suite 7210
11                                       New York, New York 10118-7210
                                         (212) 239-3800
12

13     *For Debtor*                      LINDA M. TIRELLI, ESQ.
                                         202 Mamaroneck Avenue, 3rd Fl.
14                                       White Plains, New York 10601
                                         (914) 946-0860; (914) 946-0870
15

16     *For J.P. Morgan:*               JAY TEITELBAUM, ESQ.
                                         VANESSA ALESSANDRA PORCINA, ESQ.
                                         Teitelbaum & Baskin, LLP
17                                       3 Barker Avenue, 3rd Floor
                                         White Plains, New York 10601-1509
18                                       (914) 437-7670; (914) 437-7672 fax

19     *For David Kittay,*              JUDITH L. SIEGEL, ESQ.
       *Chapter 7 Trustee:*             Kittay & Gershfeld, PC
20                                       100 White Plains Road, 2nd Floor
                                         Tarrytown, New York 10591
21                                       (914) 332-8000; (914) 332-8001

22     *Transcription Service:*         A-1 Transcripts
                                         837A Midland Avenue
23                                       Yonkers, New York 10701
                                         A1Transcripts@optonline.net
24                                       (877) 777-5133

25
               *Proceedings recorded by electronic sound recording.*
                *Transcript produced by transcription service.*

Silvia Nuer - 5/12/09                                    2

1        THE COURT:  All right.  Silvia Nuer!  I'll get

2   appearances and then I have a couple of preliminary comments.

3        MR. SHAEV:  David Shaev, Your Honor, co-counsel on

4   behalf of the Debtor.

5        THE COURT:  Okay, Mr. Shaev.

6        MS. TIRELLI:  Good morning, Your Honor; Linda Tirelli,

7   co-counsel on behalf of the Debtor.

8        THE COURT:  Right.

9        MR. TEITELBAUM:  Good morning, Your Honor; Jay

10   Teitelbaum, Teitelbaum & Baskin for J.P. Morgan Chase.  And I

11   have one of my associates here, Vanessa Porcina.

12        THE COURT:  Right, Mr. Teitelbaum.

13        MS. SIEGEL:  Good morning, Judge; Judy Siegel from

14   Kittay & Gershfeld.  I represent David Kittay, the Chapter 7

15   Trustee.

16        THE COURT:  Good morning, Ms. Siegel.  All right, have

17   seats everybody.  Folks, I've reviewed all your papers, and I

18   have problems with each of your positions, but especially the

19   bank's.

20        Folks, Mr. Shaev and Ms. Tirelli, you've got a

21   contested matter.  You have a right to discovery in a contested

22   matter as of right, but there's a lot of law in this district

23   that says you don't use a 2004 once you have a contested matter.

24   So, I guess the question is, is there any reason why I shouldn't

25   deem your motion -- deem this as simply you asking for the

Silvia Nuer - 5/12/09                                    3

1  discovery as a matter of contested matter of discovery, and then

2  consider it a motion for a protective order?

3       Mr. Teitelbaum, I cannot for the life of me see any

4  basis upon which the Debtor is not entitled to information

5  concerning the entirety of this loan, including, among other

6  things, matters relating to agency, authority to act, ownership

7  of the loan, and anything of that sort.

8       And I cannot for the life of me see why it would take

9  you about eight seconds to hand over the loan file in this, plus

10 all the documents showing the appointment of the servicer, an

11 agency to act in this matter, plus anything else related to

12 this.  So, you'd better help me, Mr. Teitelbaum.  I'll hear from

13 you first.

14      MR. TEITELBAUM:  Thank you, Your Honor.  Good morning.

15 Jay Teitelbaum of Teitelbaum & Baskin.  In point of fact, Your

16 Honor, we have produced about three hundred pages of documents,

17 which include the serving agreement from Long Beach Mortgage

18 Corp. to WaMu.  We've produced the document from the FDIC

19 pursuant to which WaMu was taken over by J.P. Morgan Chase,

20 including the servicing obligations.

21      Your Honor, we've also produced a redacted schedule

22 for the pooling and servicing agreement.  And it's redacted to

23 eliminate the names of all the people who are not Ms. Nuer that

24 were in this pooling and servicing agreement, together with the

25 email chain that shows that this came from Deutsche Bank's --

Silvia Nuer - 5/12/09                                        4

1  from the Trust, reflecting that the loan docs went into the

2  pooling servicing agreement.

3         Your Honor, we believe that we've actually produced

4  the documents, which not only demonstrate the chain of title, if

5  you will, but also the servicing agreements.  What we have

6  objected to, in point of fact, is the production of every other

7  document that is extraneous to proving what needs to be proven

8  for standing in this case.

9         Your Honor, we've also, I believe, demonstrated in our

10 papers in the chart, that the pleadings that have been filed in

11 connection with this case relating to matters extraneous to

12 standing are pleaded upon information and belief have no basis

13 in fact or law.

14        THE COURT:  Isn't that for me to decide, rather than

15 you?

16        MR. TEITELBAUM:  Well, Your Honor, that's why we move

17 for a protective order on those issues to hopefully have you

18 decide those issues.  And this was a motion teed up by the

19 Debtor to seek this discovery.  And while we did not take the

20 position, Your Honor, with respect to whether a 2004 is

21 appropriate in a contested matter, as opposed to when an

22 adversary is commenced, the law on that is obviously very clear.

23 I took the precaution, Your Honor, of filing the motion for a

24 protective order and saying you know there are even limits to a

25 fishing expeditions under 2004.

Silvia Nuer - 5/12/09                                5

1          And Your Honor, so what we've tried to do is say,

2    we're happy to and we've already produced to the Debtor the

3    documents related to the standing issue.  And Your Honor, if I

4    may take a moment and just direct you just by way of example to

5    what we have in our pleadings in the chart.  Just by way of

6    example; it's pleaded in the papers that the Debtor sustained

7    damages because there were illegal charges added to the loan

8    balance.

9          Well, the fact of the matter is, Your Honor, in

10   connection with the original motion for relief from the stay

11   attached to Ms. Griggs' affidavit, and that's already been

12   produced yet again, was a payment history.  And what that showed

13   was in the history of this loan, which was originated in January

14   of '06, there were $32 in late charges.  The Debtor has not made

15   a payment in over 18 months, September of '07.

16         There are allegations in here that post-petition

17   payments were misapplied.  Your Honor, if I had written a

18   pleading like this, you'd throw me in jail.  I mean there's no

19   basis in fact for this.  They've alleged that post-petition

20   payments were misapplied.  There hasn't been a payment for more

21   than a year pre-petition and since the petition date.

22         Your Honor, there are allegations --

23         THE COURT:  Who signed that pleading?

24         MR. TEITELBAUM:  I believe that was Ms. Tirelli, Your

25   Honor.  Then it goes on to say that we have violated the stay.

Silvia Nuer - 5/12/09                                                 6

1   How?  Don't know.  But the point of fact, Your Honor, the

2   mortgage was given on January 2006, recorded with the City of

3   New York, and we've provided all these documents and they are

4   actually part of the Court file; recorded mortgages on January

5   20, 2006.

6           Yes, there was a subsequent assignment to try to clean

7   up some issues, but the case law is clear.  Not only the case

8   law, but 541(d) is clear that a subsequent assignment is not a

9   violation of the stay.  Your Honor, that's pleaded.

10          There's also a claim that we violated 506.  Your

11  Honor, I don't know how, but the fact of the matter is that the

12  property we put forth in our paper is worth between 137 and

13  $148,000.  The amount that we're owed J.P. Morgan -- actually

14  Deutsche Bank as Trustee, under two mortgages -- we only moved

15  for relief from the stay on the first -- the balance on the

16  first mortgage is about $119.  So, we're over secured.  506

17  allows the accrual of post-petition interest charges, etcetera.

18  So, Your Honor, I'm not sure where that comes from.

19          We've also identified the fact that the Debtor says we

20  violated Fanny Mae, Freddie Mac and Ginny Mae guidelines.  The

21  Debtor knows this is a subprime loan.  It's not a Fanny Mae

22  loan; it's not a Freddie Mac loan; it's not a Ginny Mae loan.

23  Those guidelines are not applicable to this situation.  But yet,

24  they've alleged we've violated them.

25          Moreover, Your Honor, they have alleged that we

Silvia Nuer - 5/12/09                                    7

1   violated the HUD Counseling requirements and they cite a very

2   specific statute.  Had they only read the statute, they would

3   have seen that it's inapplicable.  The statute they cited is 12

4   U.S.C. 1701x(c)(5) for the proposition that we failed to give

5   counseling under the HUD.

6          Well, first of all it's not a HUD loan.  Secondly, the

7   definition of the person entitled to this counseling is an

8   eligible homeowner, which is defined in the statute as "A

9   homeowner is entitled to this if the home loan is secured by

10  property that is the principal residence."

11         Your Honor, in the Debtor's schedule she acknowledges

12  and admits this isn't her residence.  She lives at a different

13  residence on Purdy Street.  So, the HUD statute isn't

14  applicable.  These are the types of things that we -- and when I

15  say we, Your Honor, it's not unique to this case, unfortunately.

16  This is sort of an epidemic that banks are bad.

17         And what I'm trying to say is, yeah, there are

18  problems; there are issues with these servicings and with these

19  pooling and servicing agreements, and Mr. Shaev knows I've been

20  involved in a lot of these.  And when they're messed up, we try

21  to resolve them.  But this one isn't.  But this one has still

22  got the same boilerplate objection to a relief from stay motion

23  that loans that are deserving of them do.

24         And the problem is, Your Honor, with the caseload and

25  the workload at the courts and everything else, it's very

Silvia Nuer - 5/12/09                                          8

1  difficult to discern what's real, what's not real.  And Your

2  Honor, we've really taken the position here that we have to

3  demonstrate to Your Honor, that there are times when there are

4  problems; mortgages aren't recorded, loans are -- you know

5  payments aren't tendered, aren't received properly.  This ain't

6  one of them; all right?

7          This is a situation where the Debtor frankly has

8  failed to make payments for 18 months, has filed pleadings with

9  this court that says I intend to surrender the premises.

10         We have three liens on the property; the first lien,

11 $119,000.  And by the way, Your Honor, I backed out the charges

12 that sometimes are offensive to court's.  You know the

13 maintenance things.  We're talking principal and interest here

14 on the first loan.  The second loan is $26,000.  Not a payment

15 has been made.

16         The condo association has filed a lien of record --

17 and we've provided that -- of $10,000.  There's roughly 155,000

18 plus of liens on this property that have a value based on

19 valuations provided by J.P. Morgan here between 137 and 148,000.

20 For the life of me, Your Honor, I don't know why we're here.

21         This property has no value to the estate, the Debtor

22 can't make any payments to cure; it's not the Debtor's

23 residence.  We're here on an issue that -- and I recognize we

24 have to prove standing to get relief from the stay, and we've

25 done that, Your Honor.

Silvia Nuer - 5/12/09                                                9

1          J.P. Morgan filed this pleading as servicer for

2     Deutsche Bank as Trustee.  We believe that we've shown Mr.

3     Shaev, and we've offered to discuss this with him further that

4     Deutsche Bank is the holder, and that J.P. Morgan is the

5     servicer.

6          Your Honor, the proof is in -- frankly, this is what's

7     astounding to me.  I acknowledge, it's difficult, and it takes

8     more than an exec., it's unfortunate, to get documents from the

9     bank.  But it didn't take me more than that to get it off the

10    SEC website.  The 10K's and 10Q's and the pooling and servicing

11    agreement that are filed in connection with this trust attached

12    to them the subservicing agreement between Long Beach Mortgage

13    and WaMu.

14         There are certificates and certifications filed by

15    WaMu as servicer of this Trust.  I mean these are publicly

16    available documents that had the Debtor done 15 seconds of

17    research would have seen this is a legitimate situation.  This

18    isn't even a situation where the mortgage went through 38

19    permutations and was sold 38 different times.  This is a

20    situation, it went into this Trust, it sits in that Trust, it

21    lays in that Trust today.  The thing that changed was Long Beach

22    Mortgage was the original servicer.

23         On the day of the closing -- and we've provided this

24    document to the Debtor as well -- the Debtor signed and

25    initialed a notification.  Your servicing is being transferred

Silvia Nuer - 5/12/09                    10

1  to Washington Mutual.  I mean we've produced it.  And I have it

2  here today.  The Debtor signed it.

3          Washington Mutual filed its servicing requirements

4  under the SEC guidelines and has been the servicer.  The Debtor

5  acknowledged in her pleadings it filed with this court that the

6  debt was there and Washington Mutual was the servicer.  When

7  Washington Mutual failed in September of '05, and J.P. Morgan

8  Chase stepped in, there's an agreement.  We've provided that

9  agreement.  The agreement says J.P. Morgan is acquiring the

10  assets of Washington Mutual and all servicing obligations.

11          THE COURT:  All right, Mr. Teitelbaum, I'm beginning

12  to understand the picture.

13          MR. TEITELBAUM:  Thank you.

14          THE COURT:  I'm going to let you speak on anything

15  that, after your opponents have had a chance to be heard, you

16  still need to say, but I want to hear from the other side.

17          MR. TEITELBAUM:  Thank you.

18          THE COURT:  I don't know if I'm going to hear from Mr.

19  Shaev or Ms. Tirelli.  The pleadings that you signed, Ms.

20  Tirelli, may or may not be relevant to the discovery dispute

21  that I have now.  But I need you to start by telling me how you

22  could make an accusation that post-petition payments were

23  misapplied when there were no post-petition payments.

24          MS. TIRELLI:  Your Honor, I would have to certainly go

25  back and look to amend the pleadings if that is the case.  I can

Silvia Nuer - 5/12/09                                    11

1   say that the statement regarding the payments that I was

2   provided from opposing counsel has in fact the wrong the loan

3   account number across it.  So, I cannot even verify that his

4   accounting for the loan is accurate or even pertains to our

5   situation here.

6          I would also like to speak to this being or not being

7   the Debtor's primary residence.  Your Honor, at the time the

8   Debtor purchased this home, it was intended to be her primary

9   residence.  However, there was a fake document -- a falsified

10  document produced at the closing.  And what that false document

11  was, was in fact a right of first refusal, which is supposed to

12  be signed off by the condominium association.

13         When the Debtor, after the closing, went to register

14  with condominium association, she was denied even to be allowed

15  on the property, because in fact that document was fake.

16         For two years, this Debtor paid on this note trying to

17  get this straightened out; trying to figure out who it was that

18  produced this document at the closing.  By information and

19  belief, it seems to be the bank's attorney, which actually filed

20  this document with the Registrar of the City of New York.

21         I don't believe that these ancillary issues are

22  necessarily what we're here to discuss today with regard to our

23  2004 request, although I'm certainly willing to address them and

24  defend my pleadings.  This certainly would have been her primary

25  residence, and in fact she would love to have this as a primary

Silvia Nuer - 5/12/09                          12

1   residence.  In fact a two-bedroom condo versus the one-bedroom

2   condo that she owned previously, which she was hoping to sell,

3   and was not able to.  She was forced into a situation where she

4   had to carry two properties until we could get this straightened

5   out with WaMu, and whoever their successors are.

6          The other thing I do want to point out; with regard to

7   this assignment that was produced conveniently by the bank, I

8   certainly have some reservations with regard to the authenticity

9   of that document and also perhaps the motive for the bank in

10  producing it.

11         The initial assignment that was provided to me by

12  attorney Steven Baum's office was signed by I believe Mr. Scott

13  Walter.  In my amended -- I'm sorry, in the supplement to my

14  objection to the motion for relief from stay, I produced for the

15  Court in fact three, if not four, additional assignments also

16  signed by Mr. Scott Walter claiming to be either vice president

17  or some sort of signatory of other banks within a very short

18  period of time.  That is certainly one party we would certainly

19  like to hear from.

20         He has a very interesting resume claiming to be

21  signatory for a number of different banks.  We just really have

22  questions about that assignment.  Of course the bank will

23  conveniently say well we don't need that assignment anyway.  And

24  in so responding, they actually produced now another assignment

25  from a Ms. Ann Garvis this time.  And we have reservations

Silvia Nuer - 5/12/09                    13

1   regarding that one as well.

2          But I do want to focus today, if we may, back onto

3   this 2004 issue that we have with regard to our right to

4   discovery.  I think there are enough questions presented by the

5   documents that have been produced so far that we can't trust

6   anything that comes from Chase Bank at this point.

7          THE COURT:  All right.  I'm going to assume from what

8   you didn't say that, unless Mr. Shaev is going to help you on

9   this; that you're not proceeding under 2004 anymore.  That this

10  is all about contested matter discovery.

11         MR. SHAEV:  That's correct, Your Honor.

12         THE COURT:  Okay.

13         MR. SHAEV:  It's a contested matter.

14         THE COURT:  Now, I need from one of you to tell me --

15  I am not going to make a Chapter 7 Trustee in this District or a

16  Chapter 7 Debtor search Edgar files or go on -- be held to find

17  stuff that may have been filed with the SEC.  But what I am of a

18  mind to do is to say that to the extent stuff hasn't been

19  produced, it has to be produced.  But the converse is that if

20  you already got it, it doesn't have to be produced again.  So,

21  why don't one of the two of you tell me what you asked for that

22  you didn't get.

23         MR. SHAEV:  Well, I'll attempt to do that, Your Honor.

24  What happened is this; on Thursday evening, Mr. Teitelbaum

25  emailed to counsel at least to my email ten different emails

Silvia Nuer - 5/12/09                    14

1   with attachments.  Some time Friday avenue I finally figured out

2   that these were a set of five emails with emails and documents

3   that were hundreds of pages long.  And there is also a duplicate

4   letter on each email and a duplicate list on each email.

5          Why we're having problems is that there's nothing in

6   these emails stating which document request this is in response

7   to.  So, it's sort of a puzzle trying to say document number

8   one, is this their response to document request number 18, 17,

9   15 or whatever the case might be.

10         If this is in fact all of the documents that Chase is

11  able to produce in response to our requests, then I will

12  probably need to do request for admissions to that affect, and

13  we could move on.

14         MR. TEITELBAUM:  Your Honor, may I respond?

15         THE COURT:  Yes, when Mr. Shaev is done.  Are you

16  done, Mr. Shaev?

17         MR. SHAEV:  Well, as to what we were served, if Your

18  Honor would like, we can go through a very brief history of this

19  motion and show why, and what the various -- what we think the

20  defects are in what Chase did.  Because Chase is stating and

21  admitting that they are the servicer in this matter and nothing

22  else.  We believe them that they are the servicer in this

23  matter.  We also believe that they're not the party in interest;

24  they're not the holder of the note; and do not have standing in

25  this matter.  There's been no agency proven.

Silvia Nuer - 5/12/09                    15

1       Throughout the various documents -- I should say

2  statements provided by Chase, and I can go through them one by

3  one, and point out that they show Chase as servicer.  At one

4  time as Creditor.  But never --

5       THE COURT:  Well, forgive me for interrupting you, Mr.

6  Shaev; today is not the motion for relief from the stay.  Nor,

7  is it the time for me to decide the merits, if any, of mortgage

8  fraud or wrongful acts by one or more of the people in the chain

9  of origination of this mortgage.  Today I have a discovery

10 dispute, which is why I had only budgeted 15 minutes for it.

11      I am inclined -- I was going to say subject to your

12 rights to be heard but this seems so obvious to me.  I'm only

13 deciding the discovery dispute today.  I'm going to give the

14 borrower's side a reservation of rights on borrower allegations

15 of lender misconduct or originator misconduct, and I'm going to

16 give the lender's side a reservations of rights on Rule 11

17 violations and the like.

18      What I need to get my arms around is the extent to

19 which I should deny a litigant in a matter before me the

20 opportunity to get the opposing party's documents, which if you

21 articulate it that way, really gets down to, have we got them

22 all?  Which is something I'm not going to micromanage.  Or is

23 there anything that was requested that's so unrelated to the

24 broad scope authorized under Rule 26 of the Federal Rules that I

25 should deny a litigant the ability to get the documents.  Isn't

Silvia Nuer - 5/12/09                          16

1   it that simple, Mr. Teitelbaum?  Now, I'll hear your reply.

2          MR. TEITELBAUM:  Thank you so much, Your Honor.  It

3   really is that simple.  And quite frankly, Your Honor, I can

4   give you specific examples.  First, we provided the documents in

5   five separate emails because we did not want to burden or blow

6   up anybody's email system by putting too much in one.  We did

7   that as a courtesy, Your Honor.

8          We then also provided the documents by hand, the next

9   day when Debtor's counsel -- frankly, the only person that

10  seemed to have a problem with opening the documents -- said I

11  have a problem opening the documents and you gave me the same

12  document over and over again, which wasn't true because I cc

13  myself on every email and the documents are sequentially

14  numbered, and they were correctly attached.  Be that as it may,

15  we provided a courtesy copy.

16         Your Honor, what we've done is we've laid out specific

17  objections to the specific requests.  And let me start perhaps

18  with the easy ones.  If we have addressed -- if we're trying to

19  address here the issue of do we have standing, what the

20  Debtor --

21         THE COURT:  Forgive me, Mr. Teitelbaum, I'm not going to go

22  either now or at any time, category by category on this.  This is a

23  discovery dispute.  And you're representing a bank, and I have a host

24  of related issues concerning this loan.  The allegations against your

25  client may be total garbage, but I can't make that determination until

Silvia Nuer - 5/12/09                        17

1  each side has had the opportunity to prove it's case.

2          Now the very fact that a lawyer of your quality is

3  appearing on this matter, rather than the folks that I usually see

4  representing the lender on consumer relief from stay matters, causes

5  me to believe that there are matters of a sophistication where a

6  prudent client would hire you.  And I very much want to hear what you

7  have to say on the merits, but the short answer, unless you have

8  something else to tell me, is that you don't have to produce what you

9  produced again to the extent that you complied with Rule 34.  But if

10 there's anything you haven't produced, you have to produce it.

11         And Rule 34(e) talks about how you have to make the

12 production.  A party must produce documents as they're kept in the

13 usual course or must organize and label them to correspond to the

14 categories in the request.  You don't have to do any more than that,

15 but you're not going to do less than that.

16         MR. TEITELBAUM:  Your Honor, I believe -- two things.

17 First, I suppose thank you for the issue of why Chase would retain us.

18 In point of fact, Chase has retained our firm in connection with the

19 matters as a matter of policy to try to assist Chase in addressing

20 issues related to relief from stay.  We are actually working with the

21 U.S. Trustee's Office on that.

22         In point of fact, attached to our document production is a

23 schedule of every document produced.  And each one of these documents

24 related specifically to the issue of standing, Your Honor.  And we

25 objected to the remaining documents, such as the handbook for how a

Silvia Nuer - 5/12/09                          18

1   custodian works; things of that nature.  Which we haven't produced,

2   Your Honor, on the grounds, that again we filed the motion for a

3   protective order.  My understanding of the law is relevant or likely

4   to lead to the discovery of relevant admissible evidence.

5          Even if we assume for the moment that all of the issues

6   that are pleaded in the objection are relevant, on the issue of

7   standing, what the Debtor has asked for is any and all documents,

8   computer records, reports, or other information related to the loan.

9   Your Honor, that is --

10     THE COURT:  You're moving for relief from stay on a loan.

11  Why is that so unreasonable, Mr. Teitelbaum?  Forgive me for raising

12  my voice.  But I've never heard a contention by a lender that it is

13  not responsible for handing over all of the documents relating to its

14  loan.

15     MR. TEITELBAUM:  Your Honor, the reason I believe that it

16  is unreasonable is we proved ownership of the loan by Deutsche Bank,

17  agency servicing, we've proven standing.  If we've proven by

18  admissions of the Debtor that the Debtor hasn't made payments on the

19  loan for 18 months and can't make payments and that we've proven that

20  the value of the property is less than the aggregate amount of all of

21  the loan, and that the property isn't even the Debtor's residence,

22  Your Honor, I believe that what we have shown is cause for relief from

23  the stay.

24          The issue is, is any of the other information that they're

25  requesting frankly relevant to that issue.  And we believe, Your

Silvia Nuer - 5/12/09                                    19

1   Honor, that it is not.  And I understand Your Honor's frustration; I'm

2   just trying to address it and be real reasonable in what we've

3   produced.

4         THE COURT:  You know -- okay.  I have a reputation for not

5   cutting people off.  And that is one of my failings, as well as what

6   some may perceive as a strength.  At this point, I'm going to cut you

7   off.

8         Here is my ruling, folks.  To the extent, but only the

9   extent to which Chase -- excuse me -- J.P. Morgan has not previously

10  produced documents in the form required under Rule 34 of the Federal

11  Rules, as made applicable to bankruptcy matters under Rule 9014, it

12  will produce them.  The production is to be made by one of the two

13  means authorized and required under Rule 34.

14        This production is without prejudice to the movant's rights

15  on the merits to get relief from the stay and without prejudice to the

16  lender's rights to seek Rule 9011 and Rule 11 sanctions for

17  allegations that did not have a sufficient basis in fact.

18        Allegations of the type that post petition payments were

19  misapplied, where no post petition payments were made, if ultimately

20  proven, Ms. Tirelli, are going to be one of the closest to slam dunk

21  bases for Rule 11 sanctions that I've seen in a long time.  But if you

22  can show a good faith basis for allegations of that character, that

23  will be fine.

24        But for the avoidance of doubt, folks, the issues as to

25  standing and equity in the property and any other bases for relief

Silvia Nuer - 5/12/09                    20

1    from the stay are not before me today.  This is a discovery dispute.

2    And under Rule 26, a Debtor is entitled to the documentation with

3    respect to the Debtor's loan.  And I'm not going to make Debtor's or

4    their counsel, or for that matter, Chapter 17 Trustees or their

5    counsel, get stuff of the internet.  Of course if and to the extent

6    documents that are produced to them manually or those that were

7    obtained in the internet, that's just fine.  In fact, that's the way

8    it needs to be done.

9          Now, Mr. Teitelbaum, I understand your frustration as to

10   why you think you should ultimately when, but that's not what I'm

11   deciding today.  I'm deciding whether a lender has to produce

12   documents.  And the lender ain't gonna hide the ball on this.  To the

13   extent that it hasn't they're going to be produced.

14         Now, Mr. Shaev, think you better ride shotgun with Ms.

15   Tirelli, to guide her through the bankruptcy process, because I'm

16   going to hold your side to the rules.

17         MR. SHAEV:  I understand, Your Honor.

18         THE COURT:  Okay.

19         MR. SHAEV:  One question --

20         THE COURT:  And amongst those rules of course is Rule 11.

21   Go ahead.

22         MR. SHAEV:  One question; in our request for a 2004

23   examination, Chase has requested in this production of documents, that

24   we authenticate their documents.  I don't know how.  We'd never do

25   that without --

Silvia Nuer - 5/12/09                          21

1        THE COURT:  Rule 34 requires the production of documents.

2    It places burdens and obligations upon the producing party.  This

3    ruling is, to state the obvious, without prejudice to the borrower's

4    side's rights to depose Chase, Deutsche Bank, the originator, whoever

5    was handing over documents to the Debtor to sign and the like, and is

6    likewise without prejudice to Chase's ability to depose Ms. Nuer.

7        MR. SHAEV:  We will consent on the record right now to

8    that.  They're requesting it; we have no problem with that.

9        THE COURT:  All right.  Now, maybe she can authenticate it,

10   maybe she can't.  But of course Chase has the right to depose her just

11   like everything else I said today.  Each of you has the ability to

12   make the best case you wish to make.

13       And of course that would be the time at which -- you know I

14   did this as a second year associate, folks, about three weeks after I

15   was admitted to the bar.  Is that your signature on this document?

16   Did you sign this document on or about the date that it bears?  Did

17   you drop this document into the mail?  Whatever, you know the drill.

18       MR. SHAEV:  Your Honor, we're talking about many documents,

19   of course, not signed by the Debtor.

20       THE COURT:  Well, that's something as to which both sides

21   can have a reservation of rights.  Okay.  I'm going to so order the

22   record, unless somebody wants a paper record.

23       If you want to mandamus me, Mr. Teitelbaum, you can take it

24   up to the District Court.

25       MR. TEITELBAUM:  No, Your Honor; we accept your ruling.

Silvia Nuer - 5/12/09                                    22

1   Thank you.  For your time today.

2             THE COURT:  All right.  Fair enough.

3             MR. TEITELBAUM:  Thank you, Your Honor.

4             (Whereupon, the matter was concluded at this time.)

5                             - oOo -

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION

1

2

3        I, Rochelle V. Grant, certify that the foregoing is a

4   correct transcript from the official electronic sound recording

5   of the proceedings in the above-entitled matter.

6

7   Dated:  May 15, 2009

8

9                        Signature of Approved Transcriber

10

11                            Rochelle V. Grant
                             Typed or Printed Name

12

13

14

15

16

17

18

19

20

21

22

23

24

25