REYERO033010.txt

```
 1
 2     UNITED STATES BANKRUPTCY COURT
 3     SOUTHERN DISTRICT OF NEW YORK
 4     _____
 5     In re:                    ) Chapter 7
 6                               ) No. 08-14106(REG)
 7     SILVIA NUER,              ) VOLUME I
 8                 Debtor        )
 9     _____)
10
11
12            Deposition of RONALDO REYES, taken in
13            Orange County, California, commencing
14            at 9:22 A.M., Tuesday, March 30, 2010,
15            before Kellie Mitchell, CSR No. 7273.
16
17
18
19     PAGES 1 - 129
20
21
22
23
24
25
```

1

REYER0033010.txt

1    APPEARANCES OF COUNSEL:
2
3    FOR CHASE AND DEUTSCHE BANK AS TRUSTEE:
4    (VIA SKYPE)
5
6        TEITELBAUM & BASKIN, LLP
7        BY: JAY TEITELBAUM, ESQ.
8        3 Barker Avenue
9        Third Floor
10       White Plains, New York  10601
11       (914) 437-7670
12       E-MAIL:  jteitelbaum@tblawllp.com
13
14   FOR THE U.S. TRUSTEE: (VIA SKYPE)
15
16       U.S. TRUSTEES OFFICE
17       BY: GREG ZIPES, ASSISTANT U.S. TRUSTEE
18       33 Whitehall Street
19       21st Floor
20       New York, New York  10004
21       (212) 510-0500 ext 227
22       E-MAIL:  Greg.zipes@usdoj.gov
23
24
25

2

REYER0033010.txt

2
3    FOR THE DEBTOR: (VIA SKYPE)
4
5        LAW OFFICES OF LINDA TIRELLI
6        BY:  LINDA TIRELLI, ESQ.
7             - and -
8
9             APRIL CHARNEY, ESQ.
10       202 Mamaroneck Avenue
11       Third Floor
12       White Plains, New York  10601
13       (914) 946-0860
14       E-MAIL:  WestchesterlegaI@aol.com
15
16
17
18
19
20
21
22
23
24
25

3

1    APPEARANCES OF COUNSEL (CONTINUED):

I N D E X
VOLUME I

REYER0033010.txt

1

2

3

UST/REYES EXHIBITS
RONALDO REYES

4    NUMBER    DESCRIPTION    IDENTIFIED

Page 4

---

TUESDAY, MARCH 30, 2010

4

5

6    WITNESS    EXAMINATION

7

8    RONALDO REYES

9

10    (By Mr. Zipes)    6

11    (By Ms. Charney)    57

12    (By Mr. Zipes)    118

13

14

15

16

17

18

19

20

21

22

23

24

25

4

---

REYER0033010.txt

1    Affidavit of Ronaldo Reyes.    24

2    March 5, 2010 cover letter and
      complete loan file information.    26

3    Fixed/Adjustable Rate Note.    38

4    Collateral File Checklist.    40

5    Assignment of Mortgage.    50

6    Recording and Endorsement Cover Page.    51

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

---

ORANGE COUNTY, CALIFORNIA, TUESDAY, MARCH 30, 2010

9:22 A.M.

-o0o-

RONALDO REYES,

having been administered an oath, in accordance with

Page 5



REYERO033010.txt

```
 7   C.C.P. Section 2094, testified under penalty of
 8   perjury as follows:
 9
10
11                      EXAMINATION
12   BY MR. ZIPES:
13       Q.   Good morning, Mr. Reyes.  My name is Greg
14   Zipes, that is Z I P E S.  I'm with the office of
15   the United States Trustee.  And we're holding this
16   deposition by Skype.  There is a court reporter
17   present with you, I understand.
18            And I just want to get a few housekeeping
19   matters out of the way.  I'm asking questions.  You
20   should wait to hear my questions in full before you
21   try to answer.  You need to verbalize your answers.
22   And if your attorney objects, you can still answer
23   the questions.  But if you don't understand a
24   question posed by me, you could ask me to repeat it.
25            So do you understand that, Mr. Reyes?
```

```
 1       A.   Yes.
 2       Q.   As I stated, we're conducting this
 3   deposition by Skype and by telephone.  It's
 4   important that you not review any documents,
 5   BlackBerry's or anything else under oath that I
 6   can't see and without me knowing about it.
 7            Do you understand that?
```

REYERO033010.txt

```
 8       A.   Yes.
 9       Q.   Mr. Reyes, you are not testifying from
10   your office today; is that correct?
11       A.   Yes.
12       Q.   And you are testifying from your home?
13       A.   Yes.
14       Q.   Can you state the town where you are
15   located?
16            MR. TEITELBAUM:  Objection.  You don't
17   have to answer that question.  For the record, this
18   is Jay Teitelbaum.  Mr. Reyes is testifying from
19   home because the institution where he works Deutsche
20   Bank has security measures in place that do not
21   allow the download of Skype or for him to bring a
22   personal computer and tie it into their computer
23   system or via wireless internet.  So we are doing
24   this from Mr. Reyes' home.  Mr. Reyes will provide
25   his business address and that is it.
```

```
 1            He has provided to the court reporter, and
 2   I would like the court reporter to confirm she has
 3   reviewed Mr. Reyes' driver's license and his
 4   Deutsche Bank ID to confirm his identity.
 5            THE REPORTER:  Yes.
 6            MR. TEITELBAUM:  Would the court reporter
 7   just confirm that?
 8            THE REPORTER:  Yes.  And it is the same
 9   person.
```

REYER0033010.txt

10          MR. ZIPES:  Is the driver's license a
11   valid license?
12          THE REPORTER:  Yes.
13          BY MR. ZIPES:
14     Q.   Okay.  I guess I'll ask the witness?
15     A.   Yes.
16     Q.   It's a California license?
17     A.   Yes.
18     Q.   And you are currently an employee at the
19   Deutsche Bank?
20     A.   Yes.
21     Q.   Is that the full name of the company you
22   work at?
23     A.   No.
24     Q.   What is the full name of the company?
25     A.   Deutsche Bank National Trust Company.

8

1      Q.   When I refer to Deutsche Bank, though, I'm
2    referring to your company; is that acceptable?
3      A.   Yes.
4      Q.   What is your business address?
5      A.   1761 East St., Andrew Place, Santa Ana,
6    California 92705.
7      Q.   And on whose behalf are you appearing
8    today?  Deutsche Bank?
9      A.   Yes.
10     Q.   You are not appearing on behalf of anybody

else today; correct?          REYER0033010.txt

11          MR. TEITELBAUM:  Objection.
12          MR. ZIPES:  You can answer.
13          THE WITNESS:  Correct.
14          BY MR. ZIPES:
15     Q.   Did you review any documents, Mr. Reyes,
16   prior to today's deposition?
17     A.   Yes.
18     Q.   What did you review and when?
19     A.   The Pooling and Servicing Agreement
20   related to Long Reach Mortgage Loan Trust 2006-2.
21   The mortgage loan purchase agreement.
22     Q.   Anything else?
23     A.   The mortgage file related to the borrower

9

Nuer.

1      Q.   Anything else?
2      A.   The contents of the binder that you
3    referred to earlier.
4      Q.   Ust's binder?
5      A.   Yes.
6      Q.   When did you review these documents last
7    that you just referred to?
8      A.   Yesterday.
9      Q.   Who did you review them with, if anybody?
10     A.   Counsel.
11     Q.   Did you review them with anybody other
12   than counsel?

REYER0033010.txt

13    A.    No.
14    Q.    Prior to reviewing them for this
15    deposition when was the last time you had reviewed
16    these documents, if at all?
17    A.    I don't recall.
18    Q.    Do you recall reviewing them at some
19    point?
20    A.    During the course of business I have
21    reviewed the Pooling and Servicing Agreement for
22    Long Beach 2006-2.
23    Q.    Mr. Reyes, have you been deposed in the
24    last two years?
25    A.    Yes.

10

REYER0033010.txt

1    Q.    How often? How many times have you been
2    deposed?
3    A.    I don't recall.
4    Q.    Can you give me an estimate? More than
5    five? Fewer than five?
6    A.    More than five.
7    Q.    More than ten?
8    A.    I don't know.
9    Q.    Have you -- so you understand what being
10    under oath is; correct?
11    A.    Yes.
12    Q.    Have you ever testified in court in the
13    last two years?

Page 10

REYER0033010.txt

14    A.    Yes.
15    Q.    How many times have you testified in
16    court?
17    A.    Three times.
18    Q.    Tell me are you employed by any Deutsche
19    Bank affiliates?
20    MR. TEITELBAUM: Objection.
21    You can answer the question.
22    THE WITNESS: I have signing authority for
23    Deutsche Bank Trust Company Americas.
24    BY MR. ZIPES:
25    Q.    Okay. Let me back up a little bit here.

11

when did you -- what is your level of schooling?
1
2    A.    I have an economic's degree from UCLA.
3    Q.    When did you get that degree?
4    A.    June 1989.
5    Q.    Did you go to college right after high
6    school?
7    A.    Yes.
8    Q.    Do you have any post college degrees or
9    education?
10    A.    No.
11    Q.    Do you hold any professional licenses?
12    A.    No.
13    Q.    Okay. I'm going to ask you generally,
14    after college, how many places did you work at, and
15    I'm trying to get a sense of it so I can find out if

Page 11

REYER0033010.txt

16  I need to get more in depth with respect to some of
17  these places of business.  How many different
18  companies did you work at other than Deutsche Bank
19  after college?
20      A.  Five.
21      Q.  All right.  Let's start with Deutsche
22  Bank, how long have you been at Deutsche Bank?
23      A.  Since May of 1998.
24      Q.  All right.  Prior to that time did you
25  have a job for more than two years, one of those

12

1  five jobs that you referred to, five companies?
2      A.  Yes.
3      Q.  Okay.  So tell me where you worked for
4  more than two years prior to being at Deutsche Bank?
5      A.  I worked at Security Pacific National Bank
6  which later merged into Bank of America.
7      Q.  Okay.  How long did you work there and
8  what was your job function?
9      A.  Seven years.
10      Q.  Did you hold more than one position there?
11      A.  Yes.
12      Q.  Okay.  Why don't you tell me what your
13  last position there was, your title and what you
14  did?
15      A.  My last position at Bank of America was an
16  internal auditor position.

REYER0033010.txt

17      Q.  Tell me what you did as for your internal
18  auditor position?
19      A.  We conducted retail banking audits in the
20  Western United States.
21      Q.  It required you to travel?
22      A.  Yes.
23      Q.  What was the time period for this
24  position?
25      A.  From 1995 to 1998.

13

1      Q.  Was that the job you had previous to --
2  the last job you had previous to joining Deutsche
3  Bank?
4      A.  Yes.
5      Q.  Good.  That eliminates some questions,
6  then.  Okay.  Tell me about Deutsche Bank.  What was
7  your first -- what is your current title at Deutsche
8  Bank?
9      A.  Vice president.
10      Q.  Uh-huh.  And that's it?
11      A.  Yes.
12      Q.  What are your job responsibilities right
13  now and how long have you had these job
14  responsibilities?  I'm asking a compound question
15  which is not appropriate, but we're trying to cut
16  here --
17      MR. TEITELBAUM:  Trying to move it along.
18      MR. ZIPES:  Yeah.

REYER0033010.txt

19      THE WITNESS: I manage employees in
20  Deutsche Bank Mortgage Backed Securities group. I
21  have managed employees since 2001.
22  BY MR. ZIPES:
23      Q.  You've had this position since 2001 at
24  Deutsche Bank? VP?
25      A.  I have managed employees since 2001;

14

however, I was granted the vice president
designation in December of 2005.
3      Q.  Let's just focus on this time period 2005
4  to present, has your job required you to do any
5  traveling?
6      MR. TEITELBAUM: Objection.
7      Go ahead, you can answer.
8      THE WITNESS: Yes.
9
10  BY MR. ZIPES:
11      Q.  Why do you travel as part of your job?
12      MR. TEITELBAUM: Objection. For the
13  record, it's just totally irrelevant.
14      But you can answer the question.
15      THE WITNESS: I have traveled on business
16  due to new business closings, conf- --
17      MR. TEITELBAUM: Hang on a second. If
18  someone has got a BlackBerry that is beeping, it's
19  just coming through the speaker, so you may want to

Page 14

REYER0033010.txt

20  just put it on silent.
21      THE WITNESS: Sorry. That was mine. I'm
22  sorry. I'll put it away.
23      MR. TEITELBAUM: Sorry. Go ahead.
24      THE WITNESS: Yes, I have traveled for new
25  business closings, conferences, depositions and

15

trials.
2  BY MR. ZIPES:
3      Q.  Are you in charge of a specific
4  geographical area?
5      A.  No.
6      Q.  You could appear throughout -- well, tell
7  me what your department does or what you oversee
8  exactly?
9      A.  We provide trustee and mortgage document
10  services for securitization trusts.
11      Q.  What is your understanding of what a trust
12  is?
13      MR. TEITELBAUM: Objection.
14      You can answer the question.
15      Let me just -- is it in the context of
16  Mr. Reyes' employment?
17      MR. ZIPES: Yes.
18      MR. TEITELBAUM: Okay. Go ahead.
19  BY MR. ZIPES:
20      Q.  You mentioned the word "trust" so I just
21  want to know what it is. Tell me what a trust is in

Page 15

REYER0033010.txt

22  the context of your employment?
23  A.  In the context of my employment a trust
24  has segregated assets in the case of securitization
25  mortgage pools.

16

1  Q.  Do you deal with mortgage, residential
2  mortgage only?
3  A.  No.
4  Q.  As you describe what you do, do you
5  oversee that on behalf of Deutsche Bank or do you
6  work for someone who oversees that operation?
7  A.  I oversee administrators who administer
8  trust accounts.
9  Q.  Are you in a particular department or
10  division of Deutsche Bank?
11  A.  Yes.
12  Q.  what is the name of that division or what
13  shall I call it division? Department?
14  A.  It's referred to as Structured Finance
15  Group.
16  Q.  So you stated that you oversee individual
17  administrators?
18  A.  Yes.
19  Q.  And who do you report to?
20  A.  David Co, C O.
21  Q.  Is he in the Structured Finance Group as
22  well?

Page 16

REYER0033010.txt

23  A.  Yes.
24  Q.  What is his position?
25  A.  Director.

17

1  Q.  All right. And who does he report to?
2  Does he report to someone in the Structured Finance
3  Group as well?
4  MR. TEITELBAUM: objection.
5  You can answer.
6  THE WITNESS: Yes.
7  BY MR. ZIPES:
8  Q.  So what is the name of the person he
9  reports to?
10  A.  Gary Vaughan, V A U G H A N.
11  Q.  And what is his position?
12  MR. TEITELBAUM: objection.
13  You can answer.
14  THE WITNESS: Managing director.
15  BY MR. ZIPES:
16  Q.  Does he report to someone within the
17  Structured Finance Group?
18  A.  Yes.
19  Q.  Okay. Before I ask you who that is, how
20  many more levels, if you know, are within the
21  Structured Finance Group?
22  A.  I know of at least three more levels above
23  that level. I don't know.
24  Q.  So does -- tell me your immediate -- I'll

Page 17

REYER0033010.txt

18

25        -- excuse me -- call his supervisor David Co, does

1   he oversee people in your position or does he
2   oversee administrators as well? Or tell me what he
3   does?
4            MR. TEITELBAUM: Objection to form.
5        Objection, relevance.
6            Go ahead.
7            THE WITNESS: David Co manages the trust
8        and custodial administration businesses.
9            (Lost sound on Skype.)
10           THE WITNESS: Sorry, we have momentarily
11       lost volume there.
12  BY MR. ZIPES:
13       Q. Okay. I'm sorry. You mentioned you had
14  signing authority for different Deutsche Bank
15  entity, can you please tell me again what the name
16  of that entity was?
17           MR. TEITELBAUM: Objection, relevance.
18           Go ahead.
19           THE WITNESS: Deutsche Bank Trust Company
20  Americas.
21           MR. TEITELBAUM: Before you ask the next
22  question, I just want to make sure my objections are
23  being -- they are coming through; right, Ronaldo?
24           THE WITNESS: Yes, Jay.
25           MR. TEITELBAUM: Thank you.

Page 18

REYER0033010.txt

19

1            MS. CHARNEY: Would it be helpful if we
2        just gave him a standing objection to relevancy?
3            MR. TEITELBAUM: No, it's okay.
4            MR. CHARNEY: I think that is basically
5        what Judge Gerber did at the February hearing.
6            MR. TEITELBAUM: It's okay. I appreciate
7        it. Thank you.
8            MS. CHARNEY: Okay. Well, I would
9        appreciate it when you make your objections you
10       don't say it's not relevant, which is what you've
11       done a couple times so that concerns me as far as
12       leading the witness. So just relevance, just leave
13       it at the word would be helpful.
14           MR. TEITELBAUM: I'll state my objections
15       the way I see fit. I appreciate it.
16           And just for clarity, Ms. Charney, I would
17       like to know which one of the two of you is going to
18       be conducting this deposition?
19           MS. CHARNEY: Me.
20           MR. TEITELBAUM: Thank you. So you are
21       going to be handling the deposition?
22           MS. CHARNEY: Yes.
23           MR. TEITELBAUM: Okay. Thank you.
24           THE REPORTER: Okay. Who was speaking?
25       This is the reporter.

Page 19

20

REYER0033010.txt

```
 1          MR. TEITELBAUM:  That was Ms. Charney.
 2          THE REPORTER:  Okay.  Well, I don't know
 3  that.  I can't see you.  I need you to identify who
 4  you are.
 5          MR. TEITELBAUM:  She's being picked up on
 6  the mic but not on video right now.  All right.  So
 7  we'll be more careful.  We apologize.  Before
 8  someone speaks they'll state their name.  Sorry to
 9  interrupt.  I just wanted to make sure we were all
10  being heard.
11      BY MR. ZIPES:
12  Q.  And, Mr. Reyes, you heard the name Silvia
13  Nuer before today; correct?
14  A.  Yes.
15  Q.  What is your understanding of Deutsche
16  Bank's connection to the Silvia Nuer case?
17          MR. TEITELBAUM:  Objection.
18          Go ahead.
19          THE WITNESS:  It's a foreclosure matter.
20      BY MR. ZIPES:
21  Q.  What is -- I didn't ask that question the
22  best way.  What is Deutsche Bank's -- what is
23  Deutsche Bank's connection to the Silvia Nuer case,
24  the mortgage?
25          MR. TEITELBAUM:  The loan.
```

Page 20

21

REYER0033010.txt

```
 1          THE WITNESS:  Deutsche Bank National Trust
 2  Company acts as trustee of Long Beach Mortgage Loan
 3  Trust 2006-2.  The Nuer loan is a part of the pool
 4  of loans that are the assets of that trust.
 5      BY MR. ZIPES:
 6  Q.  Okay.  I'll call it the Silvia Nuer loan,
 7  is that a good way of referring to your file?
 8  A.  Yes.
 9  Q.  Okay.  So when did you personally start --
10  first see the Silvia Nuer loan?
11  A.  Yesterday.
12  Q.  Okay.  Again, I'm not being clear.  Let me
13  refer to it as a mortgage file, is that okay?
14  A.  Yes.
15  Q.  When was the first time you personally
16  worked on any matters relating to the Silvia Nuer
17  mortgage file during your employment at Deutsche
18  Bank?
19          MR. TEITELBAUM:  Objection.  Greg, when
20  you say worked on --
21          MS. TIRELLI:  This is Ms. Tirelli.  State
22  your name for the reporter.
23          MR. TEITELBAUM:  The court reporter has my
24  name.  Jay Teitelbaum.  She knows that.
25          THE REPORTER:  I know that.  I just don't
```

Page 21

22

REYER0033010.txt

```
 1   understand the ladies. You need to distinguish,
 2   please --
 3            MS. TIRELLI: This is Ms. Tirelli. I am
 4   just asking that Jay adhere to what we just agreed
 5   to that everybody will state their name before
 6   speaking.
 7            MR. TEITELBAUM: And I'm going to ask that
 8   if Ms. Charney is going to be doing the deposition,
 9   that Ms. Charney speak. The question is frankly,
10   and the objection is a little bit confusing in that
11   it's assuming that Mr. Reyes has responsibility for
12   doing something with respect to this loan as opposed
13   to reviewing the documents in connection with this
14   deposition. So if you want to clarify that, that's
15   fine.
16            MR. ZIPES: I think my question was clear,
17   but if that is a clearer -- if you understand
18   counsel's question the way he phrased it, that is
19   fine.
20            THE WITNESS: Repeat the question, please.
21   BY MR. ZIPES:
22        Q. Let me just start again. You are familiar
23   with the Silvia Nuer mortgage file; correct?
24        A. Yes.
25        Q. When did you first personally review the
```

23

REYER0033010.txt

```
 1   Silvia Nuer mortgage file?
 2        A.    Yesterday.
 3        Q.    What do you consider to be the Silvia Nuer
 4   mortgage file?
 5        A.    The documents that Deutsche Bank National
 6   Trust Company as trustee received effective the
 7   closing date of Long Beach 2006-2 which is March
 8   7th, 2006.
 9        Q.    Okay. Mr. Reyes, I sent a binder there
10   which should be before you, it's the UST -- I call
11   it the UST, United States Trustee Exhibit Binder, do
12   you have that?
13        A.    Yes.
14            MR. ZIPES: Okay. I'll ask that you turn
15   to what I marked as Index No. 6 and I'll ask the
16   court reporter to mark that as UST Exhibit 1.
17            MR. TEITELBAUM: UST/Reyes 1.
18            MR. ZIPES: Yes. I think we are doing it
19   that way. UST/Reyes 1.
20            THE REPORTER: Okay.
21            (UST/Reyes Exhibit 1 was marked for
22   identification and is bound separately.)
23   BY MR. ZIPES:
24        Q.    Okay. Mr. Reyes, I'll ask that you review
25   that document and ask you if you recognize this
```

24

REYER0033010.txt

```
 1   document.
 2        A.    Yes.
 3        Q.    What is this document?
```

REYE00330i0.txt

 4    A.   Affidavit of Ronaldo Reyes.
 5    Q.   In the Silvia Nuer case. Just for
 6 identification purposes, in the Silvia Nuer case.
 7 And that is dated February 22nd, 2010, if you look
 8 at the last page?
 9    A.   Yes.
10    Q.   Did you review any documents in the Silvia
11 Nuer file before preparing or signing this
12 affidavit?
13    A.   Yes.
14    Q.   Okay.  I might not have been clear with my
15 question before, what documents did you review in
16 preparing this affidavit?
17    A.   I reviewed our system of record.
18    Q.   And when I was referring to the Silvia
19 Nuer file before, I was referring to any document in
20 the file.  My question before was when did you first
21 review the Silvia Nuer mortgage file?  And I believe
22 you said yesterday.  So I'm trying to get
23 clarification on this.
24    A.   Yes.
25    Q.   You are keeping to your answer?

                                                25

 1
 2    A.   Yes.
 3         MR. ZIPES:  Okay.  Why don't you turn to
 4 exhibit -- what I have marked as UST Exhibit 7 and
   we'll mark this for identification purposes as

---

REYE00330i0.txt

 5         (UST/Reyes Exhibit 2 was marked for
 6 identification and is bound separately.)
 7         MR. TEITELBAUM:  Just for clarity, are you
 8 including my cover letter in that?
 9         MR. ZIPES:  For now I'm including the
10 cover letter, yes.  I'll wait for the reporter.
11         THE REPORTER:  We're done.
12    BY MR. ZIPES:
13    Q.   Mr. Reyes, do you see that it's a letter
14 and certain documents attached to it?
15    A.   Yes.
16    Q.   This is a letter dated March 5th, 2010,
17 from Jay Teitelbaum.  Do you see that on the first
18 page?
19    A.   Yes.
20    Q.   Before reviewing this yesterday did you
21 see this letter?
22    A.   No.
23    Q.   Okay.  Turn the page and you can take a
24 little time if you want, but I have what is marked

                                                26

---

UST/Reyes 2.

25 little time if you want, but I have what is marked
 1 Bates stamped 1381 through 1383.  Do you see that?
 2    A.   Yes.
 3    Q.   Do you know what this document or
 4 documents are?
 5    A.   Yes.  This is Deutsche Bank National Trust
 6 Company's system of record with respect to the Nuer

REYER0033010.txt

```
 7   loan.
 8        Q.    Can you tell from these is it one document
 9   or is it more than one document here?
10        A.    It is three pages.
11        Q.    Three pages, but I'm asking is it all the
12   same?  Because you have to assume I'm starting from
13   first base here.  So is this one complete document
14   or is this different documents here?
15            MR. TEITELBAUM:  You are at home plate.
16   You haven't gotten to first yet.
17            THE WITNESS:  This is a printout of our
18   system of record with respect to the Nuer loan.
19            BY MR. ZIPES:
20        Q.    So in answer to my question, it's a single
21   document; correct?  These three pages?
22            MR. TEITELBAUM:  Objection.  Objection.
23            You can answer.
24            THE WITNESS:  Again, it's the system of
25   record.
```

27

```
 1        BY MR. ZIPES:
 2        Q.    All right.  When was this document
 3   generated, can you tell from this document?
 4        A.    The first two pages, I don't know.  The
 5   last page it was generated on 3/3/2010.  That is the
 6   system of record as far as when it was printed.
 7        Q.    So let's focus on the third page which is
```

REYER0033010.txt

```
 8   1383, is that the page you are looking at so we're
 9   clear?
10        A.    Yes.
11            MR. TEITELBAUM:  For the record, the Bates
12   numbers have been put on these documents by my firm
13   for identification purposes.  Those are not Deutsche
14   Bank numbers.
15            MR. ZIPES:  Right.  That needs to be made
16   clear.  This is titled on top "Loan Inventory."
17   correct?  Just so we're on the same page.
18            THE REPORTER:  I am sorry.  This is titled
19   what?
20            THE WITNESS:  Loan inventory.
21            BY MR. ZIPES:
22        Q.    We're still at UST 2 at the moment.  And
23   we're focusing on what is Bates stamped 1383.  At
24   the top of that there is "Loan Inventory." Correct?
25        A.    Yes.
```

28

```
 1        Q.    Okay.  So is this document up-to-date as
 2   of 3/3/2010?
 3        A.    3/3/2010 was the system run date.  That is
 4   the date we printed the report.
 5        Q.    So would this represent the most
 6   up-to-date information as of 3/3/2010?
 7        A.    Yes.
 8        Q.    Okay.  Now, I don't know if it was clear
 9   to me, are these other two documents 1381, Bates
```

REYER0033010.txt

10 stamped 1381 and Bates stamped 1382 are those part
11 of the same run?
12        MR. TEITELBAUM:  Sorry.  what do you mean
13 by run?
14        MR. ZIPES:  Is this the same document?
15 was all of this run on 3/3/2010?
16        THE WITNESS:  I don't recall now the exact
17 run date of the first two documents.
18 BY MR. ZIPES:
19        Q.  Okay.  Did you personally -- were you
20 personally involved in running -- let's start with
21 1383 which is the loan inventory page, were you
22 personally involved with running that?
23        A.  I requested the report be run.
24        Q.  Did you personally run this report?
25        A.  No.

29

REYER0033010.txt

1       Q.  Did you personally -- well, tell me, did
2 you at any point prior to yesterday review this
3 report?
4       A.  Yes.
5       Q.  Okay.  When did you review it?  And,
6 again, we seem to be talking about two different
7 documents right now so I'm focusing at this moment
8 on the loan inventory, that page.  Okay?
9       A.  Yes.
10       Q.  When did you personally review this

REYER0033010.txt

11 document?
12        A.  3/3/2010.
13        Q.  All right.  Let me turn to the other two
14 documents 1381 and 1382.
15        A.  Yes.
16        Q.  Were you involved in the generation of --
17 is it one document or two documents?  It says on top
18 of 1381 "Complete Loan File Information."  Are these
19 two pages part of one document?
20        A.  It's one report, yes.
21        Q.  Okay.  Were you involved in generating
22 this report?
23        A.  I requested it.  I requested that it be
24 run.
25        Q.  And you testified that you don't know when

30

REYER0033010.txt

13 and I'm hearing that you have reviewed these earlier
14 than that?
15    MR. TEITELBAUM: Objection. That wasn't
16 his testimony. You asked a specific question about
17 the original mortgage file. And he answered it.
18 BY MR. ZIPES:
19    Q. So that we're clear, when I was referring
20 to the original mortgage document, what did you
21 believe that I was referring to, Mr. Reyes?
22    A. The mortgage file as defined in the
23 Pooling and Servicing Agreement.
24    Q. And tell me what that is?
25    A. Pursuant to Section 2.01 of the Pooling

1 and Servicing Agreement it specifies the documents
2 that the trustee is supposed to receive effective
3 the closing date of the trust.
4    Q. Okay. So turning to UST's 2, other than
5 these reports -- I'm calling them a report, you call
6 them -- was there any other part of the Nuer file
7 that you reviewed prior to yesterday's date?
8    MR. TEITELBAUM: Objection.
9    THE WITNESS: As I stated previously, I
10 did review the system of record that we have with
11 respect to the Nuer loan.
12 BY MR. ZIPES:
13    Q. Okay. I'm sorry. I wasn't clear about

REYER0033010.txt

14 that. So other than the documents that are referred
15 to in UST 2 have you reviewed any other documents in
16 connection with the Silvia Nuer file prior to
17 yesterday?
18    A. No.
19    Q. Let's stay on UST Exhibit 2 for the moment
20 and the first page which is Complete Loan File
21 Information after Jay's, Mr. Teitelbaum's letter.
22    A. Yes.
23    Q. Going down to the line -- do you see
24 "Classification Attribute changes"?
25    A. Yes.

REYER0033010.txt

1    Q. What does this information represent
2 there? In general terms. I don't need specifics.
3 I just want to know what it is generally?
4    A. Maintenance updates made by the custody
5 administrator.
6    Q. Is a custody administrator a Deutsche Bank
7 employee?
8    A. Yes.
9    Q. Are all updates of whatever kind reflected
10 in this classification attribute changes?
11    A. I'm sorry. repeat the question, please?
12    Q. Are all changes of any kind in this file
13 reflected in this column "Classification Attribute
14 Changes"?
15    A. Maintenance changes are reflected. The

REYER0033010.txt

16    other sections of this report reflect other
17    information such as when the loan file was withdrawn
18    from our physical custody. So there are other
19    sections in this report that reflect what has
20    occurred with the Nuer loan while it has been in the
21    physical custody of Deutsche Bank.
22    Q.    Okay.   What is the name of the title -- if
23    a document has been withdrawn from the custody of
24    Deutsche Bank, where is that reflected on this loan
25    file information report?

33

1    A.    Under Loan File Withdrawal Information and
2    Loan File Withdrawal History.
3    Q.    Okay.   So these two sections would reflect
4    any time the files have left Deutsche Bank's
5    custody; correct?
6    A.    Correct.
7    Q.    Okay.   Can you tell from this when they --
8    when the files left Deutsche Bank's custody?
9    A.    The Nuer mortgage file last left Deutsche
10    Bank's physical custody on September the 3rd, 2009,
11    and it has not since been returned.
12    Q.    And that "Sent To" column shows where it
13    was sent to; correct?   Chase 780 Delta Drive,
14    Monroe, Louisiana?
15    A.    Correct.
16    Q.    Would it be the entire file that was sent?

REYER0033010.txt

17    Is there a way of telling from this or specific
18    documents?
19    A.    It's the entire mortgage file as defined
20    in the Pooling and Servicing Agreement.
21    Q.    Okay.   And prior to that when -- I'm
22    reading this it looks like July 1st, 2009?
23    A.    Correct.
24    Q.    And "changed on:" You see that Line 7/24?
25    Would that represent when it came back?

34

1    A.    Yes.   That is when the file was returned.
2    Q.    Does that date represent when it was
3    actually returned or does that reflect when someone
4    made an entry regarding its return?
5    A.    That is the date that the file according
6    to our system of record was returned and the entry
7    was made.
8    Q.    Okay.   Is there somewhere on this loan
9    file report that would indicate if someone actually
10    looked at what was in the file?
11    A.    Yes.   Under "Loan File Transactions" the
12    initial review, the initial loan review was done on
13    1/13/2006.
14    Q.    Okay.   So the loan file transaction would
15    generally tell whenever someone pulled up, for lack
16    of a better word, pulled the file up to look at it?
17    A.    Yes.
18    Q.    Is there any where else on this loan file

REYER0033010.txt

19    report that would indicate, for example, under
20    Classification Attribute changes, would there be
21    something here that would show when someone has
22    reviewed the file?
23        A.   Yes.  For example, on 1382 the last entry
24    Classification Attribute changes March 7, 2006, that
25    represents the date that that loan went into the

Page 34

---

35

1    securitization trust Long Beach 2006-2.
2        Q.   I don't need to know your codes
3    necessarily, but can you tell from this how you were
4    able to say that?
5        A.   Because that code was the last time that
6    it was in a custodial relationship only.  And then
7    if you look on the front page of our report Complete
8    Loan File Information the issue LB0602 refers to
9    this trust Long Beach 2006-2.
10       Q.   Can I tell that from this report or do you
11   know that from some other information?
12       A.   From my working knowledge.
13       Q.   Okay.  So this report doesn't reflect the
14   Long Beach 2 trust, I'll call it the last trust that
15   the mortgage was placed in?
16            MR. TEITELBAUM:  Object.
17            Go ahead.
18            THE WITNESS:  It does reflect it because
19   this complete loan file information also has the

---

REYER0033010.txt

1    number was the servicer's loan number.
2        Q.   Okay.  So -- is there any where based upon
3    this sheet or otherwise that would tell you that
4    someone looked at the original file for the time
5    period starting after -- do you know when the
6    bankruptcy filing date on this case was?
7        A.   No.
8        Q.   If I represented to you that in October of
9    2008 -- first of all, if I told you if the filing
10   date was October the 30th, 2008, would you now be
11   able to find on this document anywhere a reference
12   to that bankruptcy filing?
13            MR. TEITELBAUM:  Objection.
14            THE WITNESS:  No, because this is a system
15   of record of Deutsche Bank.
16   BY MR. ZIPES:
17       Q.   Okay.  So did anyone pull this file to
18   look at the originals between the time of October
19   2008 and July of 2009?
20       A.   Anyone at Deutsche Bank?
21       Q.   Anybody at all?  If you can tell from

Page 35

---

REYER0033010.txt

20   loan numbers up top.
21   BY MR. ZIPES:
22       Q.   Right.
23       A.   Those are the loan numbers -- well, the
24   originator's loan number I believe is the loan
25   number that is on the note.  And the secondary loan

36

REYE0033010.txt

Page 36

22   this?
23        A.    Well, the file was withdrawn on July 1st,
24   2009, we sent it to Chase.
25        Q.    Okay.    Before that time period in between

1    October of 2008 and July 1st, 2009, did anyone at
2    Deutsche Bank pull this file?
3         A.    Our records don't reflect that.
4         Q.    Did anybody other than Deutsche Bank have
5    access to these documents between October of 2008
6    and July 1st, 2009?
7         A.    No.
8         MR. ZIPES:    Let me direct your attention
9    to what is marked in the Index book, Index No. 4 and
10   we'll mark that as UST/Reyes 3.
11        (UST/Reyes Exhibit 3 was marked for
12   identification and is bound separately.)
13        THE REPORTER:    Okay.
14   BY MR. ZIPES:
15        Q.    Okay.    I'll represent to you that this
16   document was provided by Chase's counsel pursuant to
17   a document request.    It's not a complete set of what
18   he sent us, but this is 1 through -- if you look at
19   the bottom there it's Bates stamped, Chase's Bates
20   stamps 1 through 7?
21        A.    Yes.
22        Q.    I'll represent to you that these documents

REYE0033010.txt

37

1    Fixed/Adjustable rate note?
2         A.    Yes.
3         Q.    Strike that.
4         MR. TEITELBAUM:    By the way, Ronaldo, this
5    is Jay, if at any time you need a break, restroom or
6    anything, just please speak up.
7         MR. ZIPES:    Yeah.    We're assuming.    Please
8    let us know.
9         THE WITNESS:    Yes.
10        MR. TEITELBAUM:    That goes for the court
11   reporter, too.
12   BY MR. ZIPES:
13        Q.    Okay.    Let me move on here to -- I'm
14   sorry.    Sticking with UST/Reyes 3, do you know what
15   this document is?
16        A.    Yes.
17        Q.    What is this document?
18        A.    This is the Fixed/Adjustable rate note.
19        Q.    For?
20        A.    The borrower Nuer.
21        Q.    Have you seen this document before
22   yesterday?
23        A.    No.
24        Q.    Did you see it yesterday?

Page 37

REYE0033010.txt

38

23   were sent pursuant to a document request by Chase on
24   or about May 7th, 2009.    Well, let me direct your
25   attention to Bates stamp 1.    And you see the

REYER0033010.txt

39

25        A.    Yes.

REYER0033010.txt

38

1         Q.    Is there any way to tell from UST Exhibit
2    whether Deutsche Bank provided documents copies of
3    its file in this case before July of 2009?
4         A.    Our system of record indicates that the
5    first withdrawal of the mortgage file was on July
6    1st, 2009.
7         Q.    So if these documents were provided by
8    discovery in this case in May, they would not have
9    come from the Deutsche Bank file, that is one thing
10   you can confirm for us?
11        A.    Yes.
12        Q.    Let me turn your attention to what I have
13   marked as UST Exhibit in the index book, I'm
14   sorry --
15        A.    6?
16        Q.    No. 5.
17        A.    No. 5.  Okay.
18        MR. ZIPES:  And we'll mark that as UST
19   Exhibit 4.  UST/Reyes 4.
20        (UST/Reyes Exhibit 4 was marked for
21   identification and is bound separately.)
22   BY MR. ZIPES:
23        Q.    And, Mr. Reyes, I'll represent to you,
24   again, that this was provided by Chase in a
25   discovery request on or about February 4th, 2010.

REYER0033010.txt

40

1    It's not the complete set of what was provided that
2    day, but I'll just ask that you flip it over, it's
3    probably folded over for you?
4         A.    Yes.
5         Q.    And you see at the bottom it's Bates
6    stamped 12517  Do you see that?
7         A.    Yes.
8         Q.    What does this document represent, this
9    page Collateral File Checklist, if you know?
10        A.    I don't know.
11        Q.    Okay.  Turning the page to what is Bates
12   stamped 12527?
13        A.    Yes.
14        Q.    On top of it it says "Release
15   Transmittal." Do you see that?
16        A.    Yes.
17        Q.    Do you know what this document represents?
18        A.    No.
19        Q.    And turning the page to 1253 the note?
20        A.    Yes.
21        Q.    This appears to be the same note as what I
22   showed you before under UST Exhibit 3.  Have you
23   seen this note before?
24        A.    Yes.
25        Q.    And the first time -- is it the same

41

REYER033010.txt

1   document as I referred to at UST Exhibit 3?

2        A.    Yes.

3        Q.    It is.    Okay.    Is there any way you can

4   tell whether this document or any of these documents

5   listed at UST Exhibit 4 which starts with the Long

6   Beach Mortgage actually came from the Deutsche Bank

7   files?    Was there any marking on them, for example?

8        A.    We last released the mortgage file on

9   September 3rd, 2009.

10       Q.    Is that your answer?

11       A.    There are no markings on this

12  fixed/adjustable rate note.    It's a copy.

13       Q.    Okay.    Turning to what I marked -- what

14  has been marked as Bates stamp 1252, you testified

15  that you hadn't seen this page before.    Is this a

16  Deutsche -- let me ask a more general question.

17  Does this look like a Deutsche Bank produced

18  document?

19       A.    No.

20       Q.    Okay.    Let me take you back to

21  Mr. Teitelbaum's letter with the report that we were

22  referring to earlier.    It's in the book at UST Index

23  Book 7, but it's UST/Reyes 2.    Are you there?

24       A.    Yes.

25       Q.    Is there any way you can tell from this

42

Page 40

---

REYER033010.txt

1   printout that the loan file information printout

2   what exactly was in -- is in the file, the Deutsche

3   Bank file?

4        A.    I'm sorry.    I don't understand the

5   question.

6        Q.    In other words, there might be a note in

7   the file.    You refer to the PSA agreement before, I

8   believe.    I believe.    And I believe you referred to

9   the note in connection with that.    So I'm asking you

10  if you can tell from this report, the complete loan

11  file information, what exactly is in the Deutsche

12  Bank file?

13       A.    Oh, yes.    If you go to 1383.

14       Q.    Okay.

15       A.    So, for example, a little bit more than

16  halfway down the note we noted that we -- the "O"

17  stands for we have the original note.

18       Q.    So "O" stands for original on this?

19       A.    Yes.

20       Q.    Okay.

21       A.    The mortgage deed of trust we have the

22  original.

23       Q.    Hold on.    You just broke up a little bit

24  there.

25       A.    I am sorry.    Right under Note

43

Page 41

REYER0033010.txt

1  mortgage/deed of trust, we have the original.

2    Q.   Would that be the original mortgage?

3    A.   Yes.

4    Q.   And I see Title Policy, you have the

5  original title policy as well, am I reading that

6  right?

7    A.   Yes.

8    Q.   Would this indicate how many pages the

9  note was?

10   A.   No.

11   Q.   So all this tells you is that you have a

12 note, it doesn't necessarily tell you any further

13 information?

14   MR. TEITELBAUM:   Objection.

15   THE WITNESS:   It has further information.

16 BY MR. ZIPES:

17   Q.   Well, let's just focus on the note for the

18 moment, if we can.   What else does -- and we're

19 looking at the loan inventory which is Bates stamped

20 1383.   What other information can you tell me about

21 the note on this?

22   A.   For example, under "Mortgage/Deed of

23 Trust" there is an item called "Endorsement".

24   Q.   Right.

25   A.   "BLK" stands for blank.   We noted that the

44

1  endorsement on the note was made to blank.

REYER0033010.txt

2    Q.   So just to be clear, that would indicate

3  that in your -- that the note that you had would

4  have had an endorsement on it?

5    A.   Yes, to blank.

6    Q.   Okay.   And let me turn your attention back

7  to what we marked as UST Exhibit 4.   Do you know

8  what an endorsement in blank is, first of all,

9  Mr. Reyes?

10   A.   Yes.

11   Q.   What is that?   I'm just -- understanding

12 you are not a lawyer, but what is your

13 understanding?

14   A.   In securitization trusts when right title

15 interest in a mortgage is conveyed to the trustee

16 the note is endorsed in blank typically by the

17 originator or seller.

18   Q.   And if you turn, as I said, to UST 4 and

19 you turn to what is marked as Bates stamps 1256, do

20 you see that?

21   A.   Yes.

22   Q.   Is that an example of an endorsement?

23   A.   Yes.   That is an example of the

24 endorsement to blank.

25   Q.   And not to beat a dead horse here, but you

45

1  didn't see this document before yesterday; correct?

2  The actual document?

3    A.   Correct.

REYER0033010.txt

4       Q.      Can you -- turning back to UST 7, I do
5    appreciate that Mr. Teitelbaum specifically sent me
6    a letter identifying these documents.  Is there any
7    way you can tell from the loan inventory page who at
8    Deutsche Bank indicated that the note and mortgage
9    were there along with the endorsement?
10      A.      I have to refer you to the -- I apologize,
11   I have to refer you back to the complete loan file
12   information.
13      Q.      Okay.
14      A.      We reviewed the file initially on 1/13/06
15   under Loan File Transactions.  1382.
16      Q.      1/13/06.  I see, 13 -- what is -- I see.
17   So please go on.  I think you are going to tell me
18   here.
19      A.      At that point in time we had noted that we
20   already had the original note with the endorsement
21   to blank.  And I refer you above under Loan File
22   Inventory History where we received the original
23   mortgage on 3/31/06 and the original title on
24   4/3/06.  So we had the original note since the
25   initial loan file review.

46

REYER0033010.txt

1       Q.      And, again, can you tell who was the
2    person who knew that at Deutsche Bank?
3       A.      On 1/13/06 under Loan File Transactions,
4    over to the right created by, that is the ID of the

Page 44

5    employee that did the initial review.
6       Q.      So if I needed to get that name from you,
7    you would be able to get me that name; correct?
8               MR. TEITELBAUM:  Objection.
9               You can answer.
10              THE WITNESS:  Yes.
11   BY MR. ZIPES:
12      Q.      All right.  Let's just so I'm clear about
13   what was in the loan inventory, what else was in the
14   Deutsche Bank file before it was turned over in
15   September of 2009?  I'm sorry.  Let me make sure I'm
16   getting those dates right.  Yeah, September 2009.
17      A.      The mortgage file that we released with
18   respect to Nuer in September of 2009 to Chase would
19   have contained all of the contents of the mortgage
20   file including the original mortgage note endorsed
21   to blank, the original mortgage, the assignment to
22   blank and the original title policy.
23      Q.      Okay.  How would you know about the
24   assignment?  How do you know from this that the
25   assignment was also turned over?  I am looking at

47

1    the loan inventory page, but if you are looking at a
2    different page?
3       A.      I'm apologize.  I am looking at the loan
4    inventory page towards the bottom, seven up from the
5    bottom under item Assignment.
6       Q.      Right.

Page 45

REYERO033010.txt

7      A.    BLK the assignment.  If you look to the
8   right, please, the From Assignment was Long Beach
9   Mortgage Company.
10     Q.    And I'm almost certain I asked this
11  question before, but the October -- between October
12  2008 and July of 2009, at least all of the originals
13  that you referred to in this file have remained in
14  the custody of Deutsche Bank; correct?
15     A.    Correct.
16     Q.    Can you tell from this sheet or either of
17  these sheets, either the report or what I call the
18  loan inventory, what Deutsche Bank's relationship is
19  to the Nuer loan?
20     A.    Yes.
21     Q.    And tell me how and what that is?
22         MR. TEITELBAUM:  Objection to form.
23         You can answer.
24         THE WITNESS:  On the first page 1381 the
25  issue L80602 that is our internal identification for

Page 46

48

---

REYERO033010.txt
8   you enter in 664156Z out will pop out Long Beach
9   Trust 2?
10     A.    Yes.  And the borrower name.  Yes.  That
11  is how our system of record worked.  If you plug-in
12  that number, yes, that is what pops up.
13     Q.    And you are representing to me that today,
14  again, I'm not asking for it at the time, but that
15  is what that number would show?
16     A.    Yes.
17     Q.    Okay.  Now, is there any information on
18  this document that would show Deutsche Bank's
19  connection to this case?  In other words, what is
20  it, is it the owner?  The trustee?  And, again, I'm
21  just asking based upon this document.  Trustee?
22  Custodian?  Another compound question, but --
23         MR. TEITELBAUM:  Objection to form.
24         You can answer.
25         THE WITNESS:  Again, this is an internal

49

---

1   Long Beach Mortgage Loan Trust 2006-2.  The loan
2   numbers that we reference on this complete loan file
3   information report are the loan numbers that are
4   reflected on the original mortgage note.
5   BY MR. ZIPES:
6      Q.    Okay.  Just give me one second.  Okay?
7      A.    Yes.
8      Q.    All right.  I'm going to very quickly take
9   you through two documents right now. US1 -- what I

Page 47

---

1   document.  We know that by the issue reference
2   L80602 that that refers to Long Beach Mortgage Loan
3   Trust 2006-2 and we know that we act as trustee for
4   that securitization trust.
5   BY MR. ZIPES:
6      Q.    Okay.  Just give me one second.  Okay?
7      A.    Yes.
8      Q.    All right.  I'm going to very quickly take
9   you through two documents right now. US1 -- what I

Page 47

REYER0033010.txt

1   Q.   When did you see this document?  When did
2   you first see this document?
3   A.   Yesterday.
4   Q.   Would you be able to tell me if this
5   document was part of the Deutsche Bank file based
6   upon the loan information, loan file information or
7   otherwise?
8   A.   This document was not a part of the
9   mortgage file that we sent.
10       MR. ZIPES:  Okay.  Let me move on to what

Page 48

REYER0033010.txt

1   A.   Yes.
2   Q.   Is this document a part of the Deutsche
3   Bank file?
4   A.   No.
5   Q.   Okay.  Mr. Reyes, just so the record is
6   clear, because I may not have fully understood.  I
7   think we're talking about the same thing now, but
8   when I asked you -- when you were referring to the
9   Deutsche Bank file of the Nuer loan, you were
10  referring to the information contained in the
11  Complete Loan Information Page and also the -- what
12  I'm calling the Loan Inventory, you had different

Page 49

10  have in the book as UST 2 in the index number, and
11  we'll mark that as UST/Reyes 5.
12       (UST/Reyes Exhibit 5 was marked for
13  identification and is bound separately.)
14       THE REPORTER:  Okay.
15       MR. ZIPES:  Yes.  Is it marked?
16       THE WITNESS:  Yes, I marked it.
17  BY MR. ZIPES:
18  Q.   Okay.  Good.  You'll see, Mr. Reyes, that
19  is an Assignment of Mortgage on top.  Do you see
20  that?
21  A.   Yes.
22  Q.   And it's signed by Scott Walter?
23  A.   Yes.
24  Q.   Have you seen this document before at all?
25  A.   Yes.

50

11  is UST exhibit -- in the book is UST Exhibit 3 and
12  we'll mark that as UST/Reyes 6.
13       (UST/Reyes Exhibit 6 was marked for
14  identification and is bound separately.)
15       THE REPORTER:  Okay.
16  BY MR. ZIPES:
17  Q.   Okay.  You guys are very fast.  I'll ask
18  that you flip through this document.  First of all,
19  the first page of this, do you see how it says
20  "Recording And Endorsement Cover Page Page 1 of 4"?
21  A.   Yes.
22  Q.   And as you flip through to the third page,
23  you will see there is an Assignment of Mortgage?
24  A.   Yes.
25  Q.   And that is signed by Ann Garbis?

51

REYEB0033010.txt

```
13  words for both of those, but I think we're on --
14  we're referring to the same documents at this point;
15  is that accurate?
16          MR. TEITELBAUM:  Objection to form.
17          Go ahead.
18          THE WITNESS:  Yes.
19          MR. ZIPES:  Okay.  Let me just take one
20  second and then I think I'm done.
21          MR. TEITELBAUM:  Off the record.
22          (Discussion held off record.)
23  BY MR. ZIPES:
24      Q.  Mr. Reyes, I guess my final set of
25  questions are looking at the complete loan file
```

52

```
 1  information would this under Classification
 2  Attribute Changes or otherwise, would this show you
 3  if -- strike that.  I think the record is clear.
 4  Thank you.  So I'm done with my questioning.
 5          Do you want to switch over?
 6          MR. TEITELBAUM:  We're going to take a
 7  quick recess here so that we can just play musical
 8  chairs and take a quick break.  So it might be a
 9  good time for you on your end if you need to take a
10  quick break to do so.  Why don't we just -- we'll
11  resume in a minute or two.
12          MR. ZIPES:  Okay.  Thank you, Mr. Reyes.
13          THE WITNESS:  Thank you.
```

Page 50

REYEB0033010.txt

```
14          (Recess taken.)
15  BY MR. ZIPES:
16      Q.  Let's go on the record.  Mr. Ronaldo --
17          MR. TEITELBAUM:  Reyes.
18  BY MR. ZIPES:
19      Q.  Mr. Reyes.  I apologize for that.
20  Mr. Reyes, turning to UST/Reyes 2, I had asked you
21  if any documents had been pulled, words to that
22  effect, between October 2008 and July of 2009.  Do
23  you recall when I said that?
24      A.  Yes.
25      Q.  And I just wanted to make sure it was
```

53

```
 1  clear when I said pulled, not just physically,
 2  electronically or any other way, was there any --
 3  were these documents pulled in any way in between
 4  that time period?
 5      A.  Not according to our system of record.
 6          MR. ZIPES:  Okay.  That is the only
 7  question I had.
 8          And, Jay, can you -- I don't know if we
 9  clarified on the record who you represent here and
10  what your capacity is for representing Mr. Reyes.
11  Can you just state that?
12          MR. TEITELBAUM:  Sure.  I thought we did.
13  This is Jay Teitelbaum from the Law Firm of
14  Teitelbaum & Baskin.  We are the attorneys for JP
15  Morgan Chase as servicer and in that capacity we are
```

Page 51

REYER0033010.txt

16 counsel for Deutsche Bank as trustee for the Long
17 Beach Mortgage Trust 2006-2 for which Chase is
18 servicing. Okay?
19    MS. CHARNEY: And this is April Charney.
20 Just confirming with Mr. Teitelbaum that you are
21 appearing as the attorney for the deponent as an
22 employee for Deutsche Bank National Trust Company?
23    MR. TEITELBAUM: In his -- yes, in his
24 capacity as trustee for the trust.
25    MS. CHARNEY: So you are here, just to
Page 52

1 clarify in my own mind, you are the attorney of
2 record for Chase as servicer, and you are the
3 attorney of record for Deutsche Bank National Trust
4 Company for whom Chase is an agent?
5    MR. TEITELBAUM: I'm not going to -- I
6 stated what my representation is. If that is not
7 acceptable to you, then I can't help you. I stated
8 who I am representing. Okay? You want to move to
9 ask the witness some questions because I'm not under
10 oath?
11    MS. CHARNEY: Well, I know. But I need
12 for the record to clarify who you are representing
13 in this case.
14    MR. TEITELBAUM: I just said I represent
15 Chase as servicer and in that capacity we are
16 representing Deutsche Bank as trustee for the trust
54

REYER0033010.txt

17 because Chase is the servicer and has the
18 obligations under the various agreements to
19 represent the trustee in connection with matters
20 relating to mortgages under the Pooling and
21 Servicing Agreement. So we represent, if it makes
22 your life easier, Mr. Reyes in his capacity as an
23 employee of Deutsche Bank which is the trustee for
24 the trust 2006-2.
25    MS. CHARNEY: So Deutsche Bank --
55

1    MR. TEITELBAUM: I'm not answering another
2 question on this. Please start asking the witness
3 questions.
4    MS. CHARNEY: I just need to make Clear --
5    MR. TEITELBAUM: I am not answering -- you
6 can make Clear whatever you need to make clear. I
7 am putting on the record I'm not answering another
8 question of yours.
9    MS. CHARNEY: I appreciate that. But I'm
10 going to ask one more, which is can you clarify that
11 you represent Deutsche Bank National Trust Company
12 in a status other than as the lawyer for Chase which
13 is an agent of Deutsche Bank National Trust Company?
14    MR. TEITELBAUM: Ask your question of the
15 witness, please.
16    MS. CHARNEY: Well, I still don't see that
17 Deutsche Bank National Trust Company is represented
18 here today. So unless you want to clarify that,
Page 53

REYER0033010.txt

1
2            EXAMINATION
3     BY MS. CHARNEY:
4        Q.   Good afternoon, Mr. Reyes.  I'm April
5     Charney.  I'm a lawyer with Jacksonville Area
6     Legal-Aid in Jacksonville, Florida, so you know who
7     I am.  And I'm here today as Co-Counsel for the
8     Debtor Mrs. Nuer.  And I applied to proceed pro hoc
9     vitae which means by leave of the court because I'm
10    a lawyer from Florida and I'm not licensed in this
11    state.  So that is who I am.  And I'm going to ask
12    you some questions somewhat related to what you were
13    just asked, but also additionally I'm going to talk
14    to you some about the or ask you questions about the
15    specific terms of the Pooling and Servicing
16    Agreement.
17             But first, I have some preliminary
18    questions which is do you spell your name more than
19    one way?
20       A.   No.

Page 54

REYER0033010.txt

1     Backed Securities that spelled your name as -- your
2     first name as R E N A L D O, is that you?
3             MR. TEITELBAUM:  Objection.  Can you
4     please identify, for the record, how Mr. Reyes'
5     signature in a matter wholly unrelated to this
6     matter has any relevance to Mrs. Nuer or the loan in
7     this case?
8             MS. CHARNEY:  Well, you can reserve your
9     objection.
10            But, Mr. Reyes, you can answer the
11    question.
12            MR. TEITELBAUM:  Objection.  I'm referring
13    to Pages 31 and 32 of the March 18th transcript from
14    Judge Gerber where he says to the extent practices
15    in the industry or relations between various parties
16    impacted upon Ms. Nuer, they are fair game for
17    discovery.  If they are wholly unrelated to anything
18    affecting Ms. Nuer, my ruling now subject to some
19    showing of relevance of which I am now unaware is
20    that it is not discoverable.
21            And I'm directing the witness not to

Page 55

19    Mr. Teitelbaum, I'm going to reserve that issue to
20    the court as to whether you are being disingenuous
21    in your statement as to who you represent here
22    today.
23            MR. TEITELBAUM:  Please ask the witness
24    your questions.
25

56

20       Q.   Would you spell your name, please?
21       A.   R O N A L D O.  Last name R E Y E S.
22       Q.   Mr. Reyes, if I found some documents on
23    file with the SEC that you signed as an assistant
24    vice president for Deutsche Bank National Trust
25    Company as trustee of an Ameriquest Mortgage Asset

57

REYER0033010.txt

1   up.
2       MS. CHARNEY:  Okay.  Then we are going to
3   have to take a break.  Let me just state for the
4   record so you understand.  I have the right to take
5   this gentleman's deposition.  And I have a right to
6   determine if he uses aliases.  And I have a right to
7   determine enough information through this deposition
8   to determine his reliability and credibility.  That
9   is my job as a lawyer.  So if I want to ask him if
10  he spells his name another way, and I have a
11  document that I have referred to to indicate that it
12  is relevant because he signed using a different
13  spelling of his name as an assistant vice president
14  of Deutsche Bank National Trust Company, I think
15  that is clearly relevant.
16      MR. TEITELBAUM:  Well, you haven't shown
17  me that document.
18      MS. CHARNEY:  Would you like to call the
19  judge?
20      MR. TEITELBAUM:  You haven't shown me that
21  document.

Page 56

REYER0033010.txt

1   to show the document.  I've asked him if he has
2   spelled his name a different way and signed with
3   documents as an assistant vice president for
4   Deutsche Bank National Trust Company on file with
5   the SEC.  I'm happy to show the document, but that
6   is irrelevant that is not related to the question.
7   I just want to know if he spells his name more than
8   one way.
9       MR. TEITELBAUM:  He answered that
10  question.
11      MS. CHARNEY:  And I'm clarifying because I
12  have documents to show that he does spell or there
13  is a mistake in the document and I'm trying to
14  clarify which it is.
15      MR. TEITELBAUM:  I'm looking at over your
16  shoulder at the document and I don't see Mr. Reyes'
17  handwritten signature on it.
18      MS. CHARNEY:  Again, are you going to
19  stick with your --
20      MR. TEITELBAUM:  I am going to -- if your
21  issue here is to determine the --
22      MS. CHARNEY:  Let me ask the question
23  again.
24      MR. TEITELBAUM:  Wait.  Let me finish.  If
Page 57

REYER0033010.txt

22  answer the question based upon the ruling of judge
23  Gerber.
24      MS. CHARNEY:  Okay.  Do we know if Judge
25  Gerber is in chambers today so we can call him?

58

    MS. TIRELLI:  We can certainly call him

REYER0033010.txt

23      MS. CHARNEY:  You directed the witness not
24  to answer.  Are you sticking with that?  We'll take
25  a break right now and call the judge.  I don't have

59

REYES0033010.txt

60

25  your questioning here is to determine the witness'

1   credibility. I will allow the witness to answer a
2   line of questions. However, to the extent that we
3   run afield of what Judge Gerber ruled on March 18th,
4   I am perfectly happy to contact chambers and deal
5   with those issues on a telephonic conference, if
6   necessary. So if you want to ask your question
7   again, go ahead, but what I'm telling you is that
8   this is because of your statement that it's relating
9   to the witness' credibility and identification. So
10  go ahead.
11  BY MS. CHARNEY:
12      Q. Mr. Reyes, is your name spelled
13  differently for filings that you have filed with the
14  SEC where you have signed as an assistant vice
15  president for Deutsche Bank National Trust Company
16  as trustee?
17      MR. TEITELBAUM: And before you answer,
18  can I ask a question? Has this document that you
19  are referring to been produced to the parties as
20  Judge Gerber ordered when he ordered the telephonic
21  deposition that the documents be produced to the
22  parties before the deposition?
23      MS. CHARNEY: I'm introducing a
24  document. I'm asking him if it's the same person
25  and his name is spelled differently.

Page 58

REYES0033010.txt

61

1       MR. TEITELBAUM: I'm asking you a very
2   simple question. Has the document been previously
3   produced as ordered by the judge?
4   BY MS. CHARNEY:
5       Q. Mr. Reyes, please answer the question.
6       MR. TEITELBAUM: Go ahead. Answer the
7   question. And I'm going to note for the record that
8   the document has not been produced to me so I do not
9   know what you are referring to.
10      Go ahead.
11      THE WITNESS: I'm sorry, can you please
12  repeat the question?
13  BY MS. CHARNEY:
14      Q. Do you know whether you have signed
15  documents that have been filed with the SEC in your
16  capacity as assistant vice president for Deutsche
17  Bank National Trust Company where your first name is
18  spelled R E N A L D O?
19      A. Not to my knowledge.
20      Q. How long have you been employed as an
21  assistant vice president at Deutsche Bank National
22  Trust Company?
23      MR. TEITELBAUM: Objection. That wasn't
24  the testimony.
25  BY MS. CHARNEY:

Page 59

REYES0033010.txt

62

REYER0033010.txt

1          Q.     You can answer.
2          A.     I was an assistant vice president at
3    Deutsche Bank National Trust Company from
4    approximately 2002 to 2005.
5          Q.     So during the years from including the
6    years 2002, 2003, 2004 you were an assistant vice
7    president for Deutsche Bank National Trust Company?
8          A.     And through December '05 until I became a
9    vice president.
10         Q.     Mr. Reyes, have you had occasion to
11   purchase property in Florida --
12         MR. TEITELBAUM:  Objection.
13   BY MS. CHARNEY:
14         Q.     -- during the time that you've been an
15   employee of Deutsche Bank National Trust Company?
16         MR. TEITELBAUM:  And you are referring to
17   his capacity how?  As an individual?
18         MS. CHARNEY:  As a person?  Yes.  You
19   know, you are interrupting my questions and that is
20   not your job, Mr. Teitelbaum.  I'll ask the question
21   again.
22         Mr. Reyes, since you've been an employee
23   of Deutsche Bank National Trust Company have you as
24   an individual purchased property in Florida?
25         MR. TEITELBAUM:  Objection.  I direct the

63

Page 60

REYER0033010.txt

1    witness not to answer the question.
2          MS. CHARNEY:  Then we need to have a
3    conference.
4          MR. TEITELBAUM:  Then we need to have a
5    conference with the judge.  You can go into another
6    room.  I'm not going into another room.
7          MR. ZIPES:  I'm not going to be involved
8    with this telephone conference with the judge.  I
9    don't think the judge is going to take kindly to the
10   telephone conference at this point.
11         MS. CHARNEY:  Are you directing -- again,
12   the purpose of my question is to determine the
13   credibility and reliability of this witness'
14   testimony.  So I'm trying to determine if this is
15   another person that is related to Mr. Reyes who had
16   dealings with property involving Deutsche Bank
17   National Trust Company and JP Morgan Chase in
18   Florida.  And I'm also intending to ask him about
19   Nevada.
20         MR. TEITELBAUM:  We can -- we might as
21   well call the judge because the witness is not
22   answering questions about properties he may have
23   purchased in his individual capacity.
24         MS. CHARNEY:  Involving his employer.
25         MR. TEITELBAUM:  If it doesn't involve

64

Page 61

REYER0033010.txt

1   this loan, it does not involve Mr. Reyes answering
2   the question.
3       MR. ZIPES: I have a suggestion. Ask your
4   questions, let him object, and then we're going to
5   take a break.
6   BY MS. CHARNEY:
7       Q. Mr. Reyes, I have to ask you for the
8   record, although I expect Mr. Teitelbaum to object,
9   the same question with respect to whether you as an
10  individual have purchased property in the State of
11  Nevada involving your employer Deutsche Bank
12  National Trust Company and/or JP Morgan Chase during
13  the term of your employment at Deutsche Bank
14  National Trust Company?
15      MR. TEITELBAUM: Objection. Direction not
16  to answer the question based upon the Judge's March
17  18th rules.
18      MS. CHARNEY: Could you state some other
19  basis for your objection having to do with one of
20  the rules of evidence that we --
21      MR. TEITELBAUM: I have a ruling of the
22  court. And because in New York the practice is that
23  relevance is not a basis to direct the witness not
24  to answer. However, based upon a ruling of the
25  court that says that with respect to Ms. Nuer

Page 62

65

REYER0033010.txt

2   you were not there, but I assume you've read the
3   transcript if you've come into this case, the judge
4   directed his ruling to Ms. Nuer and counsel for
5   Ms. Nuer that unless the matter bears directly upon
6   this loan and Ms. Nuer it is not discoverable absent
7   some showing of relevance which needs to be shown to
8   the court. That is the basis for my objection and
9   the basis for my direction to the witness not to
10  answer the question.
11      MS. CHARNEY: Okay. And just so you are
12  aware, the direction of my question is to the
13  witness' credibility having nothing to do with
14  Ms. Nuer's loan.
15      MR. TEITELBAUM: All due respect --
16      MS. CHARNEY: Only to the witness.
17      MR. TEITELBAUM: Okay. Ask your questions
18  and I'll make my objections.
19  BY MS. CHARNEY:
20      Q. Mr. Reyes, have you purchased foreclosed
21  properties in the State of Nevada and Florida?
22      MR. TEITELBAUM: Objection. Direction not
23  to answer the question. March 18th ruling of Judge
24  Gerber.
25  BY MS. CHARNEY:

Page 63

66

1   specifically, and we were all there, Ms. Charney,

1       Q. Mr. Reyes, are you taking -- you have to
2   answer the question either yes or no or some other
3   way. I understand that your counsel is directing

REYER0033010.txt
4 you not to answer, but you actually have to answer
5 something.
6 MR. TEITELBAUM: No, you don't have to
7 answer the question if I'm directing you not to
8 answer the question.
9 BY MS. CHARNEY:
10 Q. Then, Mr. Reyes, the question is: Are you
11 refusing to answer that question on the basis of the
12 direction from your attorney not to answer the
13 question?
14 MR. TEITELBAUM: Mr. Reyes is not refusing
15 to answer anything. He is following the advice of
16 counsel.
17 BY MS. CHARNEY:
18 Q. Is that what you are doing, Mr. Reyes?
19 You are refusing to answer the question on the basis
20 of advice of counsel?
21 MR. TEITELBAUM: Direction not to answer
22 the question. The witness has been directed not to
23 answer the question.
24 Mr. Reyes, are you willing to -- are you
25 following my advice and not answering the question?

67

1 THE WITNESS: Yes.
2 MR. TEITELBAUM: Thank you.
3 BY MS. CHARNEY:
4 Q. Mr. Reyes, are you familiar with the
Page 64

REYER0033010.txt
5 foreclosure lawsuit that was filed against Silvia
6 Nuer on March 20, 2008?
7 A. No.
8 Q. Do you know or do you have any records
9 within the scope of your employment at Deutsche Bank
10 National Trust Company that would inform you as to
11 why a foreclosure action was filed against Ms. Nuer
12 at a time when you've already testified this loan
13 was in the trust for which Deutsche Bank National
14 Trust Company is the trustee?
15 A. No.
16 MR. TEITELBAUM: I'm sorry. I don't
17 understand the question.
18 BY MS. CHARNEY:
19 Q. Mr. Reyes, do you -- does Deutsche Bank
20 National Trust Company have a relationship with
21 Washington Mutual Bank as successor by merger to
22 Long Beach Mortgage Company?
23 MR. TEITELBAUM: Objection. You can
24 answer.
25 THE WITNESS: With respect to the Nuer

68

1 matter Deutsche Bank National Trust Company as
2 trustee as well as Washington Mutual as servicer is
3 party to the Pooling and Servicing Agreement.
4 BY MS. CHARNEY:
5 Q. Mr. Reyes, if you know, on March 20th,
6 2008, did Washington Mutual Bank exist?
Page 65

REYER0033010.txt

7    A.    To my knowledge, yes.
8    Q.    As of that date on March 20, 2008, from
9    the records that you testified to already today do
10   you have any information to inform you that the loan
11   file maintained by your office was transferred
12   electronically, by mail or in any other fashion to
13   anyone prior to March 20, 2008?
14   A.    I don't understand the question.
15   Q.    Based on the records that you have in
16   front of you today that you've already testified to,
17   can you identify any entity that your employer
18   Deutsche Bank National Trust Company transferred the
19   loan, your company's loan data to -- the Nuer loan
20   data to any entity before March 20, 2008?
21   A.    The Nuer loan became a part of the Long
22   Beach 2006-2 trust effective the closing date of
23   March 7, 2006.
24   Q.    I appreciate that, but it's not responsive
25   to the question. But let's assume that was -- can

69

---

REYER0033010.txt

1    we refer to that as the boarding date for the loan?
2    March 6, 2000 --
3    A.    March 7th.
4    Q.    Sorry. March 7th, 2006?
5    MR. TEITELBAUM: Objection to the form.
6    If you want to define what boarding means?
7    BY MS. CHARNEY:

Page 66

---

REYER0033010.txt

8    Q.    You can answer the question, if you can.
9    A.    The mortgage pool which the depositor
10   under the Pooling and Servicing Agreement conveyed
11   all right, title and interest to the trustee
12   included the Nuer loan effective March 7, 2006.
13   Q.    And from that date through March 20th,
14   2008, was your company's Nuer loan file transmitted
15   by fax, by mail, electronically, in person, in any
16   form or fashion to anyone between those two dates?
17   A.    As I testified earlier, I am only aware of
18   the release of the mortgage file pursuant to our
19   system of record.
20   Q.    And that date again was?
21   A.    I have to pull the exhibit. This is
22   Exhibit 2. We released the mortgage file to Chase
23   on 7/1/2009. It was returned on 7/24/09. And we
24   again released the mortgage file to Chase on
25   September 3rd, 2009.

70

---

REYER0033010.txt

1    Q.    If you know, between the March 7th, 2006
2    date and the July 1, 2009 date, is there any other
3    entity that would have access to this loan file, the
4    Nuer loan file before you released the file on
5    July 1, '09 to Chase?
6    A.    Yes.
7    Q.    Please explain.
8    A.    From my working knowledge it is typical in
9    securitization trust that a servicer also has copies

Page 67

REYER0033010.txt

```
10   of the note and other related documents.
11        Q.   And that is from your knowledge of your
12   company's policies and procedures?  Yes?
13             MR. TEITELBAUM:  Objection.
14             THE WITNESS:  No.  As I stated, it's from
15   my working knowledge that for a servicer to service
16   a mortgage file they have certain records such as a
17   copy of the note Deutsche Bank as trustee maintains
18   the original.
19   BY MS. CHANEY:
20        Q.   And who is the servicer with respect to
21   the Nuer loan?
22        A.   The named Master Servicer under the
23   Pooling and Servicing Agreement is Long Beach
24   Mortgage Company.  The Sub Servicer is Washington or
25   was Washington Mutual.
```

Page 68

```
 1        Q.   Then it would -- your testimony indicates
 2   to me, and correct me if I'm wrong, that actually
 3   more than one entity has a copy of the loan file,
 4   that would be at least Deutsche Bank National Trust
 5   Company and the custodian under the Pooling and
 6   Servicing Agreement; is that correct?
 7             MR. TEITELBAUM:  Objection.
 8             You can answer.
 9             THE WITNESS:  As I stated, Deutsche Bank
10   National Trust Company as trustee maintains the
```

Page 69

REYER0033010.txt

```
11   original loan documents.  From my working knowledge
12   servicers may have a copy of the loan documents for
13   servicing purposes.
14   BY MS. CHANEY:
15        Q.   Do you know whether the servicer's copy
16   would be the same as the loan file maintained by
17   Deutsche Bank National Trust Company?
18        A.   Yes.
19        Q.   It's not a hard copy, is it?
20        A.   The original is a hard copy which we
21   maintain.
22        Q.   Would the servicer have a paper copy of
23   the file based on your working knowledge?
24        A.   Yes.
25        Q.   The file that you maintain for Deutsche
```

71

```
 1   Bank National Trust Company on the Nuer loan for the
 2   mortgage contains an assignment in blank; is that
 3   correct?
 4        A.   Correct.
 5        Q.   And you have no other record of an
 6   assignment of the mortgage in your file?
 7        A.   Correct.
 8        Q.   Do you have an independent file maintained
 9   by your employer that shows what file the servicer
10   has regarding the Nuer loan?
11        A.   No.
12        Q.   So you don't know whether the servicer has
```

72

REYER0033010.txt

13 had other assignments or other documents relating to
14 the Nuer mortgage or the Nuer note; is that correct?
15    A.   Other than the two assignments that I saw
16 yesterday.  I refer to the exhibit from earlier
17 today Exhibit 5 and Exhibit 6 which I first saw
18 yesterday.
19    Q.   Your testimony is that the Nuer loan file
20 that Deutsche Bank National Trust Company has came
21 from the original custodian Long Beach Mortgage
22 Company; is that correct?
23        MR. TEITELBAUM:  Objection.
24        You can answer, if you know.
25        THE WITNESS:  Yes, I would refer to Long

Page 70

73

1 Beach Mortgage Company as the originator and seller.
2 BY MS. CHARNEY:
3    Q.   Is your testimony the chain of custody of
4 your company's loan -- Nuer loan file came from the
5 hands of the originating lender through the
6 custodian which is Long Beach Mortgage Company to
7 Deutsche Bank National Trust Company?
8    A.   My testimony is as the Pooling and
9 Servicing Agreement and Mortgage Loan Purchase
10 Agreement define the conveyance of the mortgage
11 loans including the Nuer loan from Long Beach
12 Mortgage Company to Long Beach Securities Corp. to
13 Deutsche Bank National Trust Company as trustee.

REYER0033010.txt

14    Q.   With respect to what you just mentioned
15 Long Beach Securities Corporation, can you identify
16 any document in your company's file that shows Long
17 Beach Securities Corporation in the chain of title
18 on the mortgage?
19        MR. TEITELBAUM:  Objection.
20        THE WITNESS:  Yes.  The underlying
21 Mortgage Loan Purchase Agreement and Pooling and
22 Servicing Agreement are documents that Long Beach
23 Securities Corp. is party to.
24 BY MS. CHARNEY:
25    Q.   Now, that is an umbrella agreement,

74

1 Mr. Reyes; correct?
2        MR. TEITELBAUM:  Objection.
3        THE WITNESS:  I don't know what you mean.
4 BY MS. CHARNEY:
5    Q.   Well, thus far in the deposition we're
6 referring to specific assignments which take a
7 mortgage and transfer it from one entity to another;
8 is that correct?
9        MR. TEITELBAUM:  Objection.
10        THE WITNESS:  Yes.  And as I described --
11 BY MS. CHARNEY:
12    Q.   That answers my question, but let me ask
13 you another question now.  With respect to your
14 answer as to the same question of whether we have
15 assignments tracking the transfer to Long Beach

Page 71

REYER0033010.txt

16 Securities Corporation you defaulted to this
17 agreement as opposed to an assignment; is that
18 correct?
19       MR. TEITELBAUM: Objection. And I am
20 going to direct the witness not to answer the
21 question because you are asking for legal
22 conclusions and you are making certain legal
23 assumptions as to the necessity for a written
24 assignment under New York law with respect to the
25 transfer of a mortgage and note.

Page 72

---

75

BY MS. CHARNEY:
1       Q.   Well, you can answer -- you are directing
2 him not to answer on what basis?
3
4       MR. TEITELBAUM: You are asking him -- you
5 are making a legal assumption --
6       MS. CHARNEY: Well, maybe I'll rephrase
7 the question. Mr. Reyes --
8       MR. TEITELBAUM: Let me finish my
9 statement. You are making a legal assumption as to
10 the method pursuant to which a mortgage under New
11 York law is to be conveyed. And it's an incorrect
12 legal assumption in addition. Maybe it is because
13 you are from Florida. But the fact of the matter is
14 that you are making a legal assumption. Mr. Reyes
15 has testified with respect to the documents with
16 which he deals in his capacity as trustee as to his

---

REYER0033010.txt

17 understanding. If that is not sufficient, you can
18 ask the same question a half a dozen times and the
19 answer is not going to change.
20 BY MS. CHARNEY:
21       Q.   Mr. Reyes, let me try to ask the question
22 another way, since your counsel seems to want to
23 interfere a lot here.
24       MR. TEITELBAUM: Objection.
25       Go ahead.

76

---

BY MS. CHARNEY:
1
2       Q.   Is there anything other than the mortgage
3 purchase agreement that identifies a transfer of the
4 mortgage from Long Beach Mortgage Company to Long
5 Beach Securities Corporation?
6       A.   To answer your question, the Pooling and
7 Servicing Agreement in Section 2.01 states that one
8 of the documents in the mortgage file that the
9 trustee is to receive is an assignment to blank. We
10 did receive an assignment to blank from Long Beach
11 Mortgage Company.
12       Q.   Correct me if I'm wrong, but my
13 understanding is that the transfer pursuant to the
14 Pooling and Servicing Agreement has to come from the
15 originating lender to the custodian and then to the
16 trustee; is that correct?
17       MR. TEITELBAUM: Objection. You have the
18 document and it's not correct.

Page 73

REYE0033010.txt

19  BY MS. CHARNEY:
20      Q.    Mr. Reyes --
21          MR. TEITELBAUM:  No.  No.  You have
22      the document.  And if you want to refer to the
23      document specifically rather than try to trick the
24      witness, then do that.  The document in Section 2.1
25      that the witness is referring to and the mortgage

page 74

77

1   loan agreement specify the method pursuant to which
2   the documents shall move.  If you want to make
3   reference to those documents, please do so.  I'm
4   going to direct the witness not to answer the
5   question.
6   BY MS. CHARNEY:
7       Q.    Mr. Reyes, would you describe how and when
8   Long Beach Securities Corporation obtained an
9   ownership interest of the Nuer mortgage?
10      A.    Per the note that was presented as an
11  exhibit earlier Long Beach Mortgage Company was the
12  originator of that note.
13      Q.    I'm talking about the mortgage, Mr. Reyes?
14      A.    The mortgage was also an original document
15  that we received effective the closing date.  We
16  have a copy of -- well, we have the -- we are
17  custodian for the original mortgage.
18      Q.    I'll try to make it simpler.  On what date
19  did the mortgage get transferred from Long Beach

78

20  Mortgage Corporation to Long Beach Securities
21  Corporation?  Just the mortgage?
22          MR. TEITELBAUM:  Objection.  You are
23  assuming the mortgage got transferred separately
24  from the note.
25  BY MS. CHARNEY:

REYE0033010.txt

1       Q.    Can you answer the question, Mr. Reyes?
2       A.    Yes.  As the mortgage loan purchase
3   agreement contemplates the transfer of the mortgage
4   loans will be effective the closing date.  That
5   closing date under the Pooling and Servicing
6   Agreement is the date that all right title interest
7   in the mortgage loans is conveyed to the trustee.
8       Q.    So you are talking about the closing date
9   under Section 2 of the Pooling and Servicing
10  Agreement?
11      A.    Closing date is a defined term under the
12  Pooling and Servicing Agreement.
13      Q.    Now, Mr. Reyes, let me ask you, at the
14  time that Deutsche Bank National Trust Company as
15  trustee acquires ownership of the mortgage, the loan
16  has to be current and not in default; is that
17  correct?
18          MR. TEITELBAUM:  Objection.  And I'm going
19  to ask the question right now as to how the
20  conveyance from the originator to either Long Beach
21  Securities or the trust effects the right

page 75

REYERO033010.txt

79

1    BY MS. CHARNEY:

2        Q.    Mr. Reyes, you can answer the question, if

3    you can?

4        MR. TEITELBAUM:    I'm directing the witness

5    not to answer the question.    If you want to ask

6    questions about how this transaction or how these

7    facts effect Ms. Nuer and this loan, please do so.

8        MS. CHARNEY:    Ms. Nuer has raised in her

9    papers with the court the allegation of fraud on the

10   court by your client.    And on that basis the issue

11   of fraud on the court relates to the failure of this

12   trust to take ownership of this loan within the

13   terms of its own Pooling and Servicing Agreement.

14   And so on that basis if at the time that your client

15   filed a proof of claim saying one thing to the court

16   when it was fully aware that things were actually

17   another way going to material matters of ownership

18   of the loan and the right to have standing and real

19   party in interest to pursue motion for relief from

20   stay, that is an issue brought on the court reserved

21   by Ms. Nuer's pleadings.

22        MR. TEITELBAUM:    We have a factual

Page 76

22    economically or legally of Ms. Nuer in this case?

23    And unless you can provide that to me, I'm going to

24    direct the witness not to answer the question and

25    then we can call the judge.

80

1        Mr. Teitelbaum.    And at this point, you are

2    interrupting this deposition to the point that we

3    can't have a deposition.    I have tried to be really

4    patient, but I am only asking questions that are

5    strictly relevant to the issue of whether there has

6    been a fraud on this court.    And Ms. Nuer as a

7    debtor in this bankruptcy has standing to raise that

8    issue.

9        MR. TEITELBAUM:    That is fine.    I'm not

10   disagreeing with you on that.

11   BY MS. CHARNEY:

12       Q.    Then I'll ask the question, again,

13   Mr. Reyes --

14       MR. TEITELBAUM:    But --

15       THE WITNESS:    Excuse me.

16   BY MS. CHARNEY:

17       Q.    -- pursuant to the Pooling and Servicing

18   Agreement can Deutsche Bank National Trust Company

19   take ownership of this loan on a date when it's in

20   default, in a payment default?

21       A.    I don't know.

22       Q.    Mr. Reyes, you testified that you have a

23   degree in economics; correct?

24       A.    Yes.

Page 77

23    disagreement as to what is relevant to those issues.

24        MS. CHARNEY:    I think that, you know, the

25    court is the arbitrator of what is relevant,

REYER003DO10.txt                                                                 81

25        Q.   And you testified that within the scope of

1    your employment you work in the structured finance
2    group for Deutsche Bank National Trust Company;
3    correct?
4         A.   Correct.
5         Q.   And that within your employment duties you
6    manage custodial trusts and handle administrative
7    services for the trust?
8         A.   Yes.
9         Q.   Would you agree that within the scope of
10   your employment and your responsibilities as a vice
11   president for Deutsche Bank National Trust Company
12   in the structured finance group that you should know
13   whether this trust can acquire an ownership interest
14   in the Nuer loan at a time when it was in a payment
15   default status?
16        MR. TEITELBAUM:  Can I just ask, and I'm
17   going to -- wait.  I'm going to object.  And I'm
18   going to make the observation that Ms. Tirelli has
19   the Pooling and Servicing Agreement.  She's attached
20   it to her pleadings.  You are asking the witness
21   from his recollection with respect to specific terms
22   of that document without showing it to him.  If you
23   would like to show him the document, perhaps he can
24   assist you in answering the question.
25        BY MS. CHARNEY:

REYER003DO10.txt                                                                 82

1         Q.   Mr. Reyes, first of all, you have the
2    exhibit as part of Ms. Nuer's documents that were
3    presented to you today prior to the deposition.
4    It's No. 6, tabbed 6.
5         MR. TEITELBAUM:  But for the record, those
6    documents were delivered to the court reporter.  And
7    Mr. Reyes has not had an opportunity to see them.
8    they have not been referred to by you during this
9    deposition.  I have not had an opportunity to see
10   them prior to today.  Although the U.S. Trustee and
11   Chase did exchange as ordered by the court documents
12   they were prepared to use at this deposition with
13   all parties.  Ms. Nuer did not provide with the
14   direction of the court in that regard.  So if you
15   want to direct Mr. Reyes to a specific document
16   delivered to him today, please do so.
17        BY MS. CHARNEY:
18        Q.   Mr. Reyes, in your affidavit that you
19   signed, did you testify to the court that you were
20   familiar with the Pooling and Servicing Agreement
21   involved in this action?
22        MR. TEITELBAUM:  You might refer to the
23   one that has been marked already.
24        MR. ZIPES:  It is UST/Reyes 1.
25        BY MS. CHARNEY:

REYER003DO10.txt                                                                 83

REYER0033010.txt

1    Q.    One moment. I just had it. I put it
2  aside. Here we go. Mr. Reyes, do you have a copy
3  of your affidavit? It's under tab -- it's No. 1 on
4  the Nuer documents. And it is also No. 6 in the
5  U.S. Trustee's exhibits that were presented to you.
6        MR. TEITELBAUM: The document was
7  previously marked, just for clarity, as UST/Reyes 1
8  earlier today. And I just think for the sake of
9  having one document reviewed, let's try to stick
10 with that document.
11 BY MS. CHARNEY:
12      Q.    If you could review your affidavit,
13 Mr. Reyes, and Paragraph 3. Is it correct that you
14 swore under oath in Paragraph 3 that Deutsche Bank
15 is the trustee under a Pooling and Servicing
16 Agreement dated as of March 1, 2006; correct?
17      A.    Yes.
18      Q.    Did you review that Pooling and Servicing
19 Agreement?
20      A.    Yes.
21      Q.    And it lists according to your affidavit
22 Long Beach Securities Corp. as the depositor; is
23 that correct?
24      A.    Yes.
25      Q.    Do you have any document in your files on

Page 80

84

REYER0033010.txt

1  behalf the Deutsche Bank National Trust Company
2  aside from the Mortgage Loan Purchase Agreement that
3  references a transfer of the Nuer loan from Long
4  Beach Securities Corp. as the depositor to Deutsche
5  Bank National Trust Company?
6        MR. TEITELBAUM: Objection.
7        You can answer.
8        THE WITNESS: It's not required under the
9  Pooling and Servicing Agreement. The Pooling and
10 Servicing Agreement allows for the assignment in
11 blank from Long Beach Mortgage Company which we did
12 receive.
13 BY MS. CHARNEY:
14      Q.    Now, you are indicating familiarity with
15 the Pooling and Servicing Agreement, so I'll ask you
16 again, does the Pooling and Servicing Agreement
17 allow for such a transfer on a date when the loan,
18 the underlying mortgage loan is in a payment default
19 status?
20      MR. TEITELBAUM: Objection. Assuming
21 facts not in evidence. You are assuming that the
22 loan was in payment default.
23      MS. TIRELLI: She didn't say that.
24 BY MS. CHARNEY:
25      Q.    Can you answer the question, Mr. Reyes?

Page 81

85

REYER0033010.txt

1       A.      I don't know.

2       Q.      Why don't you know?

3               MR. TEITELBAUM:  Objection.

4               THE WITNESS:  An originator may make

5       representations and warranties.  Under the Pooling

6       and servicing Agreement they are accepted upon their

7       face.  All that is required under the Pooling and

8       Servicing Agreement for us to accept the loan is

9       under 2.01 that we perform a review of the mortgage

10      file.

11              BY MS. CHARNEY:

12      Q.      Can you tell me when Deutsche Bank

13      National Trust Company made that review?

14      A.      Yes.  As I stated earlier, referring to

15      Exhibit UST 2 the initial loan review was performed

16      by Deutsche Bank National Trust Company on

17      1/13/2006.

18      Q.      And the origination date of the loan is

19      January 6, 2006; correct?

20      A.      If I may look at the note, I don't know

21      off the top of my head the actual loan origination

22      date.  Yes, I see that the note is dated January 6,

23      2006.

24      Q.      So then based on that, your testimony,

25      Mr. Reyes, is that the loan was originated on the

86

REYER0033010.txt

2       through an assignment in blank to the custodian Long

3       Beach Mortgage -- excuse me -- Long Beach Securities

4       Corporation within those five days prior to the

5       transfer of the mortgage to Deutsche Bank National

6       Trust Company?

7               MR. TEITELBAUM:  Objection.

8               You can answer.

9               THE WITNESS:  Again, I refer you to the

10      Mortgage Loan Purchase Agreement and the Pooling and

11      Servicing Agreement.  The conveyance of the mortgage

12      loans occurs in both documents concurrently on the

13      closing date March 7, 2006.  And we received an

14      assignment in blank pursuant to the Pooling and

15      Servicing Agreement.

16              BY MS. CHARNEY:

17      Q.      Mr. Reyes, under section -- Article II,

18      Section 2.01 subsection (d) of the Pooling and

19      Servicing Agreement Deutsche Bank National Trust

20      Company as the trustee had to receive an original

21      recorded assignment of the mortgage showing a

22      complete chain of assignment from the originator to

23      the person assigning the mortgage to the trustee or

24      in blank; is that correct?

25      A.      Yes, that is what that section states.

87

1       6th of January 2006, transferred the mortgage

1       Q.      Do you have an original recorded

2       assignment showing a complete chain of assignments

3       from the originator to the person that assigned the

REYER0033010.txt

4  mortgage to Deutsche Bank national Trust Company?
5      A.   I'm sorry.   Repeat the question, please?
6      Q.   Do you have in your files of your employer
7  the original recorded assignment or assignments
8  showing a complete chain of assignments from the
9  originator to the person assigning the mortgage to
10  Deutsche Bank National Trust Company?
11          MR. TEITELBAUM:   Objection.   If you are
12  going to read a clause please read it to the end.
13  BY MS. CHARNEY:
14      Q.   Mr. Reyes, can you answer the question?
15      A.   Yes.   As I stated before, under this
16  section (d) we may receive an assignment in blank.
17      Q.   I appreciate that.   But I'm looking for an
18  original recorded assignment.   Do you have one?
19          MR. TEITELBAUM:   Objection.
20          THE WITNESS:   Section (d) states that we
21  may receive an original recorded assignment or an
22  assignment and there is the clause that after a
23  complete chain of assignments from the originator to
24  the person who assigned the mortgage or to the
25  trustee or in blank.   We received the assignment in

88

---

1  blank.
2  BY MS. CHARNEY:
3      Q.   So correct me if I'm wrong, but your
4  testimony is, then, if you have an unrecorded

Page 84

---

REYER0033010.txt

5  assignment in blank from an originating lender on
6  the date of origination without evidence of a
7  transfer to the custodian that that is all you have
8  to have under your Pooling and Servicing Agreement
9  to show that Deutsche Bank National Trust Company is
10  the owner of the nuer loan?
11          MR. TEITELBAUM:   Objection.   I'm trying to
12  follow your assumptions in your statement and maybe
13  you can do it again.   I just didn't follow all of
14  that.
15  BY MS. CHARNEY:
16      Q.   Mr. Reyes, did you understand the
17  question?
18      A.   Can you please repeat the question?
19      Q.   Is it your testimony that under the
20  Pooling and Servicing Agreement under section
21  Article II, Section 2.01 sub (d) that Deutsche Bank
22  National Trust Company does not need an original
23  recorded assignment showing a complete chain of
24  assignments from the originator to the person
25  assigning the mortgage to Deutsche Bank National

89

---

1  Trust Company?
2      A.   Yes.   Because that subsection (d) is also
3  consistent with the underlying Mortgage Loan
4  Purchase Agreement.   In the underlying Mortgage Loan
5  Purchase Agreement under Section 4, Romanette (iv),
6  it's the same language where the assignment in blank

Page 85

REYER0033010.txt

7   is contemplated in the Mortgage Loan Purchase
8   Agreement and the Pooling and Servicing Agreement.
9       Q.   Mr. Reyes -- bear with me -- Mr. Reyes,
10  what is the date of the assignment of the Nuer
11  mortgage from the person assigning the mortgage to
12  Deutsche Bank National Trust Company?
13      MR. TEITELBAUM:  Objection to form.
14      Go ahead.
15      THE WITNESS:  If you are referring to the
16  assignment in blank I will have to pull that exhibit
17  to tell you the date.  I am looking at the colored
18  copy of the mortgage file for which we act as --
19  Deutsche Bank acts as trustee and custodian.  It's
20  Bates stamped 1605.  The assignment of mortgage to
21  blank from Long Beach Mortgage Company, it is dated
22  1/12/2006.
23      BY MS. CHANEY:
24      Q.   Mr. Reyes, was this an assignment of
25  mortgage from Long Beach Mortgage Company to Long

90

1   Beach Securities Company?
2       A.   Again, it is an assignment in blank which
3   is contemplated in the Mortgage Loan Purchase
4   Agreement and the Pooling and Servicing Agreement.
5       Q.   Well, is it an assignment to Long Beach
6   Securities Company or to Deutsche Bank National
7   Trust Company?

Page 86

REYER0033010.txt

8   answered.
9       MR. TEITELBAUM:  Objection.  Asked and
10      One more time.  Go ahead.
11      THE WITNESS:  As I stated earlier, both
12  the Mortgage Loan Purchase Agreement and Pooling and
13  Servicing Agreement contemplate an assignment in
14  blank.  The transfer of the mortgage loans to the
15  trustee is contemplated in the Mortgage Loan
16  Purchase Agreement effective the closing date as
17  well as the Pooling and Servicing Agreement.
18      BY MS. CHANEY:
19      Q.   Mr. Reyes, I'll ask you one more time.
20  The assignment of mortgage that you just referred to
21  that is dated January 12th, 2006, from Long Beach
22  Mortgage Company in blank which is an assignment of
23  the Nuer mortgage is that an assignment to Long
24  Beach Securities Company or to Deutsche Bank
25  National Trust Company?  Or both?  Or neither?

91

1       MR. TEITELBAUM:  Objection.
2       THE WITNESS:  Again --
3       BY MS. CHANEY:
4       Q.   It is -- you can answer the question.
5       A.   Again, the conveyance of the mortgage
6   loans under the Mortgage Loan Purchase Agreement and
7   the Pooling and Servicing Agreement occurs
8   concurrently on the same date.  That is why the
9   assignment in blank is contemplated in these

Page 87

REYER0033010.txt

10  documents. This is typical of securitization
11  documents.
12      Q. Mr. Reyes, is it typical of what you see
13  in the securitization documents that you work with?
14  Is that what you are saying?
15      A. Yes. And it is stated specifically in the
16  matter that is at hand, as I stated, the conveyance
17  of the mortgage loans under the Mortgage Loan
18  Purchase Agreement and the Pooling and Servicing
19  Agreement occur concurrently effective the closing
20  date. And both documents contemplate an assignment
21  of mortgage to blank.
22      Q. By concurrently do you mean
23  simultaneously?
24      A. I mean on the closing date as defined in
25  the Mortgage Loan Purchase Agreement and the Pooling

92

1   and Servicing Agreement.
2       Q. Mr. Reyes, could you state chronologically,
3   in order how you believe the transfer of this
4   mortgage, the Nuer mortgage, went from the date of
5   origination until the present day?
6       A. My knowledge is only based on the
7   documents at hand. So the mortgage according to the
8   note -- I have to refer back to the date, I don't
9   remember the date now, but there is a date on the
10  note, that is the date that the loan was originated.

Page 88

11      Q. January 6, 2007?
12          MR. TELTELBAUM: '6.
13      BY MS. CHARNEY:
14      Q. I'm sorry, January 6, 2006.
15      A. Okay. So that is when the loan
16  originated. Now, under the Mortgage Loan Purchase
17  Agreement where Long Beach Securities Corp. is the
18  purchaser and Long Beach Mortgage Company is the
19  seller and as both documents meaning the Pooling and
20  Servicing Agreement and Mortgage Loan Purchase
21  Agreement reference one another, Long Beach
22  Securities Corp. is also the depositor under the
23  Mortgage Loan Purchase Agreement -- I apologize, is
24  the depositor under the Pooling and Servicing
25  Agreement. The Mortgage Loan Purchase Agreement

93

1   contemplates the conveyance of mortgage loans on the
2   closing date in the Mortgage Loan Purchase Agreement
3   between Long Beach Securities Corp. and Long Beach
4   Mortgage Company. As well, the Pooling and
5   Servicing Agreement contemplates a closing date
6   which is the effective date that the depositor Long
7   Beach Securities Corp. conveys all right title and
8   interest to the trustee. That is what I mean when I
9   state that it occurs on the same day. That is the
10  date the closing date that both documents
11  contemplate the conveyance of the mortgage loans
12  ultimately to the trustee. And as I stated earlier,

Page 89

REYER0033010.txt

13    it is supported by both documents contemplating an
14    assignment of mortgage in blank.
15        Q.    Then, Mr. Reyes, based upon what your
16    testimony just was, you have to refer to the content
17    of the Pooling and Servicing Agreement and the
18    Mortgage Loan Purchase Agreement to give content and
19    context to that assignment of mortgage in blank; is
20    that correct?
21        A.    I don't know what you mean.
22        Q.    Well, let me ask it this way: If you just
23    look at that assignment of mortgage in blank who is
24    that mortgage assigned to?
25        A.    It's to blank.

94

1        Q.    Can you make any sense of who that
2    mortgage is assigned to without referencing an
3    extraneous document those being the Pooling and
4    Servicing Agreement for one; is that correct?
5            MR. TEITELBAUM:  Objection.
6            THE WITNESS:  I don't know how to answer
7    your question other than it has to be taken in
8    content because we are talking about the Nuer loan
9    which Deutsche Bank holds all right title and
10    interest to under the Pooling and Servicing
11    Agreement.
12    BY MS. CHARNEY:
13        Q.    And according to what you are also

REYER0033010.txt

14    testifying, you have to also reference the content
15    of the Mortgage Loan Purchase Agreement to make any
16    understanding that Long Beach Securities Company
17    acquired an interest in this loan in the mortgage
18    and was able to pass that interest to Deutsche Bank
19    National Trust Company; is that correct?
20        A.    One has to refer to all of these documents
21    because the Nuer loan is securitized and is part of
22    a mortgage pool that has been securitized.  That
23    mortgage pool is an asset of this trust Long Beach
24    2006-2.
25        Q.    Now, let me ask you this question:  The

95

1    electronic list of loans that is filed with the SEC
2    and that is part of your records at Deutsche Bank
3    National Trust Company is the only documentation
4    that you have to show that the Nuer loan is a part
5    of the collateral loans under this Pooling and
6    Servicing Agreement.
7            MR. TEITELBAUM:  Is that a question?
8    BY MS. CHARNEY:
9        Q.    Is that correct?
10        A.    Say it again, please.
11        Q.    The only document that Deutsche Bank
12    National Trust Company has to tie the Nuer loan to
13    Deutsche Bank National Trust Company is the
14    electronic list of loans that is filed with the SEC?
15        A.    No.  We have the original note endorsed in

REYER0033010.txt

16 blank. The note is a negotiable instrument. We
17 have the note. We have possession of the note. And
18 the original mortgage. And the original title
19 policy.
20    Q.    Let's just -- your know, I haven't talked
21 about the note one time, Mr. Reyes. I'm talking
22 about the mortgage.
23         MR. TEITELBAUM: Objection. Okay.
24 Separate the note and the mortgage.
25 BY MS. CHARNEY:

96

1    Q.    So let's stick -- let's talk about the
2 transfer of the mortgage. All right. Let's just
3 assume for the minute that we are talking law here
4 for a minute, because you can sue on a money note
5 all day long and not have a secured interest in real
6 property. So let's just talk about the mortgage
7 here for one moment. Not talking about whether and
8 when the note traveled. I'm just talking about the
9 Nuer mortgage. Is there any document aside from the
10 electronic listing of loans that Deutsche Bank
11 National Trust Company has to show that the Nuer
12 loan is part of this trust?
13         MR. TEITELBAUM: Objection, again.
14         THE WITNESS: Yes. There are other
15 documents. We do have the --
16 BY MS. CHARNEY:

Page 92

17    Q.    And what are those documents?
18    A.    We have the original mortgage. We have
19 the assignment in blank.
20    Q.    Now, okay. Let's stop right there. How
21 does the original mortgage show an interest in
22 Deutsche Bank National Trust Company?
23         MR. TEITELBAUM: Objection. You are
24 asking for a legal conclusion.
25 BY MS. CHARNEY:

97

1    Q.    You can answer the question, Mr. Reyes.
2         MR. TEITELBAUM: He's not a lawyer. No,
3 he can't.
4         THE WITNESS: Again, we have the
5 assignment of mortgage in blank.
6 BY MS. CHARNEY:
7    Q.    Okay. Now, that is the second document.
8 Show me in the mortgage or the assignment in blank
9 anything that shows an interest in the mortgage in
10 Deutsche Bank National Trust Company?
11         MR. TEITELBAUM: Objection. You are
12 assuming legal issues that don't exist.
13 BY MS. CHARNEY:
14    Q.    Mr. Reyes, you can answer the question.
15    A.    Again, my understanding of the Pooling and
16 Servicing Agreement is that all right title interest
17 in the mortgage loan including the Nuer loan was
18 conveyed to the trustee effective the closing date.

Page 93

REYER0033010.txt

19  And we received the documents under Section 2.01
20  that we were supposed to receive with respect to the
21  mortgage file.
22          MR. TEITELBAUM: Before you ask your next
23  question, I just want to take a two-minute recess.
24  Not to confer with the witness, I just want to take
25  a two-minute recess.

98

1          MS. CHARNEY: That's fine. Mr. Reyes,
2  we're taking a break for two minutes in case you
3  didn't get the message.
4          THE WITNESS: Thank you.
5          (Discussion held off record.)
6  BY MS. CHARNEY:
7     Q.   Okay. Mr. Reyes, I'm continuing on now
8  looking at the Pooling and Servicing Agreement. Now
9  I'm looking at Article II, Section 2.01(f)?
10    A.   Okay. Let me go to it, please. Okay. F
11  as in Frank. I'm there.
12    Q.   You see there is that top little paragraph
13  that says the original lender's title insurance
14  policy?
15    A.   Yes.
16    Q.   And then there is a big long paragraph
17  right after that that starts with the word "except"?
18    A.   Yes.
19    Q.   Under this provision of the Pooling and

Page 94

REYER0033010.txt

20  Servicing Agreement except for loans which are MERS
21  loans -- and this is not a MERS loan, the Nuer loan,
22  we are agreed this is not a MERS loan, a mortgage
23  Electronic Registration Systems loan?
24    A.   Yes.
25    Q.   So if this is not a MERS loan, it says:

99

1  "Except with respect to any Mortgage Loan
2  for which MERS is identified on the
3  mortgage or on a properly recorded
4  assignment of the mortgage as the
5  mortgagee of record, the Master Servicer,
6  in its capacity as Seller, shall promptly
7  (and in no event later than thirty (30)
8  Business Days, subject to extension upon a
9  mutual agreement between the Master
10  Servicer and the Trustee), following the
11  later of the Closing Date and the date of
12  receipt by the Master Servicer of the
13  recording information for a Mortgage
14  submit or cause to be submitted for
15  recording, at no expense to the Trust
16  Fund, the Trustee or the Depositor, in the
17  appropriate public office for real
18  property records, each assignment referred
19  to in Section 201(c) and (d) above."
20  is that correct? I'm reading -- that is
21  what it says?

Page 95

REYER0033010.txt

1          Q.    And we don't have a properly recorded

2     assignment of the mortgage?

3          MR. TEITELBAUM:    Objection.

4     BY MS. CHARNEY:

5          Q.    Is that correct?

6          MR. TEITELBAUM:    Objection.

7          Go ahead.

8     BY MS. CHARNEY:

9          Q.    Is that correct, Mr. Reyes?

10         A.    I disagree.    I point you further, if you

11    take that sentence all the way through, there is a

12    notwithstanding clause.

13         "Notwithstanding the foregoing, the

14    Assignments shall not be required to be

15    completed and submitted for recording with

16    respect to any Mortgage Loan if each

17    Rating Agency does not require recordation

18    in order for such Rating Agency to

19    assign the initial ratings to the Class A

20    Certificates, the Mezzanine Certificates,

21    and the Class B Certificates and the Other

22    NIM notes and the initial shadow rating to

Page 96

23         the insured NIM notes, without giving

24         effect to any insurance policy issued by

25         the NIMS insured."

100

1          MR. TEITELBAUM:    Before the next question,

2     I'm going to put an objection on the record that I

3     object to the methodology employed by the examiner

4     here in reading parts of the clause and not reading

5     the entire clause in a blatant attempt to trick the

6     witness.    And I'm going to direct counsel from

7     Florida to New York law as cited by Judge Glenn in

8     the case in re Kimbatiwalla 2010 West Law 694-166

9     dated March 1, 2010, at Starr 3 through I think 4

10    where Judge Glenn cites two cases under New York law

11    that says a mortgage can be assigned in two ways:

12    By delivering the bond and mortgage by the assignor

13    to the assignee with the intention that all

14    ownership interest thereby transferred; or by

15    written instrument of assignment.

16         I'm going to direct the witness not to

17    answer any further questions in this regard.    Move

18    on to your next area.    Put it on the list of things

19    to discuss with Judge Gerber.

20    BY MS. CHARNEY:

21         Q.    Mr. Reyes, do you know whether that

22    notwithstanding provision under subsection (f)

23    applies to the Nuer loan?

24         A.    It applies to these -- it applies to this

Page 97

101

22         A.    Yes, that is what it says.

23         Q.    So this is not a MERS loan, the Nuer loan

24    is not a MERS loan; is that correct?

25         A.    That's correct.

25        mortgage pool including the Nuer loan.

1        Q.   Now, I'm going to go back and ask you a
2   question I asked you before, is there any document
3   other than the electronic transfer information
4   submitted as an exhibit to the Pooling and Servicing
5   Agreement that in any way identifies the Nuer loan
6   as within this pool?
7             MR. TEITELBAUM:   Objection.   Asked and
8   answered.
9             You can answer it again.
10            THE WITNESS:   Yes.
11   BY MS. CHARNEY:
12       Q.   And what document would that be?
13       A.   As I stated earlier, under Section 2.01 we
14   received the required documents.   And Section 2.01
15   is identical to Section 4 of the underlying Mortgage
16   Loan Purchase Agreement.
17       Q.   Is there any document, Mr. Reyes, I'll ask
18   you again, aside from the electronic listing of
19   loans that in any way ties the Nuer loan to this
20   Pooling and Servicing Agreement or to the Mortgage
21   Loan Purchase Agreement?
22       A.   Yes.
23            MR. TEITELBAUM:   I'm sorry.   Go ahead.
24            THE WITNESS:   Yes, as I stated, we
25   received the documents, the mortgage file documents

1   as required --
2   BY MS. CHARNEY:
3        Q.   I'm asking you -- you are testifying about
4   receipt of a document that you have no personal
5   knowledge of.   You are testifying from Deutsche
6   Bank's records, electronic records; correct?
7        A.   Yes, but we physically had possession of
8   the file and we conducted a review of the original
9   mortgage loan documents and those mortgage loan
10  documents do exist.
11       Q.   Point me, please, Mr. Reyes, to any
12  document that refers to the Nuer loan as being a
13  part of this pool?
14       A.   Again, I refer you to the Mortgage Loan
15  Purchase Agreement, the Pooling and Servicing
16  Agreement, the mortgage file which Deutsche Bank
17  National Trust Company as trustee holds.
18       Q.   Mr. Reyes, is there a document that ties
19  the Nuer loan to this pool?
20            MR. TEITELBAUM:   One second.
21   BY MS. CHARNEY:
22       Q.   Please one document.   Please, just tell me
23  which document it is.   The only one that I have
24  evidenced at all is an electronic data recording
25  populated by we haven't determined yet, but I'm

REYER0033010.txt

1   asking you is there any other document that connects
2   the Nuer loan to this securitization?
3       MR. TEITELBAUM: Before you answer the
4   question, same thing, again, with all respect we're
5   caught in a loop here, do you want an answer to the
6   question? Because there is a document in the
7   witness' possession that if you choose to show it to
8   him it would refresh his recollection. And it's
9   been provided to you. It's been provided to the
10  witness. And if you are looking for an answer as
11  opposed to playing games here, let's move on. And
12  when Mr. Reyes has referred to the Mortgage Loan
13  Purchase Agreement which refers to other schedules
14  annexed thereto. All right?
15      BY MS. CHARNEY:
16      Q.   Mr. Reyes, I'm asking you the question,
17  again. Is there any document that you can reference
18  that ties the Nuer loan as being a part of this
19  pool?
20      A.   Yes. In addition to the agreements there
21  is a mortgage loan schedule, and as I testified
22  earlier, the loan number on that -- the loan numbers
23  referred to on that mortgage loan schedule match the
24  loan number on our system of record which also
25  matches the actual loan number on the Nuer note.

REYER0033010.txt

1       Q.   And this document that you are referring
2   to is a document created by Deutsche Bank National
3   Trust Company; correct?
4       A.   The system of record, yes.
5       Q.   And it's a document created after the
6   filing of the Pooling and Servicing Agreement;
7   correct?
8       A.   I believe that our system of record
9   predates the filing of the Pooling and Servicing
10  Agreement. I refer you to the initial loan review
11  which occurred prior to the March 7, 2006, closing
12  date. We performed the initial loan review on
13  1/13/2006.
14      Q.   At the time, then, Mr. Reyes, according to
15  your testimony when you did an initial review of
16  this loan, January 13, 2006; is that your testimony?
17      A.   Yes. That is when the initial loan review
18  was performed by Deutsche Bank.
19      Q.   There was no Pooling and Servicing
20  Agreement in existence on that date; is that correct
21  Mr. Reyes?
22      A.   At that point, yes, that's correct.
23      Q.   So at that point when you did the initial
24  loan review there could be no document that would
25  tie the Nuer loan to a March 1, 2006, Pooling and

REYER0033010.txt

1   Servicing Agreement?

2       A.   As I said earlier, the Mortgage Loan

3   Purchase Agreement contemplates a closing date for

4   Long Beach Mortgage Loan Trust 2006-2 and effective

5   the closing date the Nuer loan along with many other

6   loans were conveyed to the trustee under the Pooling

7   and Servicing Agreement.

8       Q.   And that is your testimony.  And my

9   question is: the only data you have to make that

10  statement is your own internal records of Deutsche

11  Bank National Trust Company?

12      A.   No.  And we held the original mortgage

13  loan documents also as required under the Pooling

14  and Servicing Agreement.

15      Q.   The Pooling and Servicing Agreement did

16  not exist when you did your initial loan review; is

17  that correct, Mr. Reyes?

18           MR. TEITELBAUM:  Objection.

19           THE WITNESS:  Yes.  In my last answer I

20  agree with you, but what I'm referring to is the

21  closing date.  Again, the mortgage loans including

22  the Nuer loan were conveyed to the trustee in the

23  securitization trust known as Long Beach 2006-2

24  effective the closing date.

25  BY MS. CHARNEY:

Page 102

107

REYER0033010.txt

2   Deutsche Bank National Trust records, can you tell

3   me how I can determine or how Judge Gerber can

4   determine that this Nuer loan wasn't put in a

5   different pool outside of Deutsche Bank National

6   Trust Company's private internal records?

7            MR. TEITELBAUM:  Objection.

8            THE WITNESS:  Outside of the context of

9   our system of record, the Pooling and Servicing

10  Agreement, the Mortgage Loan Purchase Agreement and

11  the mortgage file that we hold in custody, I don't

12  know what you mean outside of those bounds.

13  BY MS. CHARNEY:

14      Q.   Well, on January 13 when Deutsche Bank

15  National Trust Company, according to your testimony

16  did the initial loan review of the Nuer loan, what

17  determined outside of your company's internal record

18  that this loan went into this pool as opposed to

19  another pool?

20      A.   Our system of record indicates that this

21  loan is a part of this pool Long Beach 2006-2.

22      Q.   So let's assume for the minute that we

23  can't rely on your internal system of record, is

24  there any other record that we can look at to follow

25  your testimony?

108

1       Q.   Now, Mr. Reyes, aside from your internal

Page 102

1            MR. TEITELBAUM:  Objection.  I'm going to

2   direct the witness not to answer the question for I

3   don't know how many times.  You haven't established

Page 103

REYER0033010.txt

4    that these documents and the books and records are
5    in any manner, shape and form unreliable. In point
6    of fact, Ms. Nuer's amended objection which was
7    filed with the court includes exhibits --
8         MS. CHARNEY: Well, Mr. Teitelbaum, if it
9    would need to be amended orally or officially to
10   conform to the evidence that is determined through
11   discovery, obviously, that is what we're doing.
12        MR. TEITELBAUM: No. No. No. Let me
13   finish.
14   BY MS. CHARNEY:
15        Q. Mr. Reyes --
16        MR. TEITELBAUM: Ms. Tirelli next to her
17   pleading is the electronic database that you've been
18   referring to, and in that database on one of the
19   last pages to Exhibit C is the loan number. Move on
20   to the next area of inquiry because we're done. You
21   are not -- Ms. Nuer is not even a party --
22        MS. CHARNEY: Mr. Teitelbaum, please don't
23   try to intimidate me.
24        MR. TEITELBAUM: I'm not.
25        MS. CHARNEY: The words "we're done" is

109

1    disrespectful and inappropriate in a deposition.
2         MR. TEITELBAUM: I suggest you move on.
3         MS. CHARNEY: Are we done for today? No
4    I'm not done with this line of inquiry.

Page 104

REYER0033010.txt

5         MR. TEITELBAUM: Then this deposition is
6    over. Okay? Either you move on or the deposition
7    is over?
8    BY MS. CHARNEY:
9         Q. Mr. Reyes, I'm going to ask you another
10   question about the Pooling and Servicing Agreement
11   and the Mortgage Loan Purchase Agreement.
12        MR. TEITELBAUM: Is it the same question
13   that you've asked for the past hour?
14   BY MS. CHARNEY:
15        Q. With respect to the Mortgage Loan Purchase
16   Agreement, is there any language in that agreement
17   that references the Nuer loan?
18        A. Yes. It refers to -- I don't have the
19   exact definition, but it does refer to mortgage
20   loans and that there will be a schedule of mortgage
21   loans.
22        Q. Does it refer to the Nuer loan, the
23   Mortgage Loan Purchase Agreement?
24        MR. TEITELBAUM: By name? Silvia Nuer?
25   Is that your question?

110

1         MS. CHARNEY: Mr. Teitelbaum, please.
2         MR. TEITELBAUM: Is that your question?
3    BY MS. CHARNEY:
4         Q. Mr. Reyes, can you answer the question?
5         A. Again, at the point of the Mortgage Loan
6    Purchase Agreement it contemplates conveying

Page 105

REYER0033010.txt

7    mortgage loans to Long Beach 2006-2 the trust for
8    which Deutsche Bank National Trust Company acts as
9    trustee.
10    Q.  When the Mortgage Loan Purchase Agreement
11    was filed, was it filed with a list of loans with
12    the SEC?
13            MR. TEITELBAUM:  Objection.
14    BY MS. CHARNEY:
15    Q.  Can you answer the question, Mr. Reyes?
16    A.  I don't know if it was filed with a
17    schedule of the loans with the SEC.
18    Q.  Do you know whether a list is -- all
19    right.  So I'll ask you, again.  You don't know
20    whether there was a list of loans filed with the
21    Mortgage Loan Purchase Agreement.  So can you
22    identify anything in the Mortgage Loan Purchase
23    Agreement that evidences the Nuer loan being
24    involved under the Mortgage Loan Purchase
25    Agreement --

Page 106

111

1            MR. TEITELBAUM:  Wait.
2    BY MS. CHARNEY:
3    Q.  -- or subject to the Mortgage Loan
4    Purchase Agreement?
5            MR. TEITELBAUM:  Stop.  Objection.  Asked
6    and answered.  I'm directing the witness not to
7    answer.  And if you do not want to move on to the

REYER0033010.txt

8    next area of inquiry, the deposition is over.
9    Seriously, end of discussion.  If you want to move
10    on to the next area of inquiry, fine.  If you want
11    to stay on this inquiry, the deposition is over.
12    BY MS. CHARNEY:
13    Q.  Mr. Reyes --
14    A.  I apologize to interrupt.  We've
15    momentarily lost the connection for about five
16    seconds there.  So we're back on.  We just lost the
17    connection.  We just noticed, you know.
18            THE REPORTER:  We didn't get your last
19    question.
20            THE WITNESS:  Yeah.  Sorry.
21    BY MS. CHARNEY:
22    Q.  I'll ask it again.  Do you know whether
23    there is a loan schedule that identifies loans sold
24    under the Mortgage Loan Purchase Agreement?
25    A.  Yes.

112

1    Q.  And do you know whether that loan schedule
2    was filed as part of the Mortgage Loan Purchase
3    Agreement or subsequent to the filing of the
4    Mortgage Loan Purchase Agreement?
5            MR. TEITELBAUM:  Filing of the Mortgage
6    Loan where?  Filing of the Mortgage Loan Purchase
7    Agreement where?
8    BY MS. CHARNEY:
9    Q.  Mr. Reyes, can you answer the question?

Page 107

REYER0033010.txt

10    A.    I don't understand to whom the filing was
11  made.
12    Q.    With the SEC?
13    A.    I don't know.
14    Q.    So you don't know if there is anything in
15  the Mortgage Loan Purchase Agreement that references
16  the Nuer loan as being one of the loans on a closing
17  schedule?
18    MR. TEITELBAUM:  Objection.
19  Mischaracterizing the testimony.
20  BY MS. CHARNEY:
21    Q.    Is that correct?
22    A.    Again, the Mortgage Loan Purchase
23  Agreement contemplates transferring mortgage loans
24  on the closing date to the Long Reach 2006-2 Pooling
25  and Servicing Agreement.  And there is a mortgage

113

1   loan schedule which is applicable to the Long Beach
2   2006-2 Trust and that mortgage loan schedule
3   includes the Nuer loan.
4     Q.    Outside of the assignment in blank from
5   the originating lender, is there any assignment of
6   the mortgage or any document that identifies the
7   transfer under the Mortgage Loan Purchase Agreement
8   or the Pooling and Servicing Agreement of the Nuer
9   loan -- of the Nuer mortgage to Deutsche Bank
10  National Trust Company?

REYER0033010.txt

11    MR. TEITELBAUM:  Objection.  Asked and
12  answered.  I'm directing the witness not to answer.
13  Move on to the next area.
14    MS. CHARNEY:  Well, we either need to call
15  the judge or --
16    MR. TEITELBAUM:  Well, fine, let's do
17  that.  Then let's do that.  It's absolutely fine.
18  We've spent almost two hours --
19    MS. CHARNEY:  Mr. Zipes, it's your
20  initiating deposition, I think this is relevant
21  inquiry especially since this witness has already
22  testified that you can't look at an assignment in
23  this particular case without referencing the Pooling
24  and Servicing Agreement and the Mortgage Loan
25  Purchase Agreement and I think Mr. Teitelbaum is way

114

1   out of line.  And I'm just trying to do my job to
2   show the lack of that -- essentially to show that
3   Deutsche Bank National Trust Company was fully aware
4   at the time that it filed documents with this
5   bankruptcy court that it did not own this loan in
6   any form that was legal or sufficient to give it
7   standing or real party in interest to file a motion
8   for relief from stay.
9     MR. TEITELBAUM:  We're done with the
10  deposition.  Ronaldo, the deposition is over.  The
11  deposition is over.  The deposition is over.  The
12  deposition is over.

REYE0033010.txt

13    Ronaldo, thank you for your time.

14    MR. ZIPES:  We are going to take two

15    minutes.  Give me two minutes to see if I can clear

16    this up.  The record will reflect the deposition is

17    not over right now.  If you give me two minutes I'll

18    speak with counsel right now.

19    MR. TEITELBAUM:  This line of questioning

20    is not resuming.

21    MR. ZIPES:  Just give us two minutes.

22    (Discussion held off record.)

23    MR. CHANEY:  Are we on the record, Court

24    Reporter?

25    MR. TEITELBAUM:  Yes, we are on the

115

1    record.  If you are not moving on to your next line

2    of inquiry, then the examination is over.

3    MS. CHANEY:  Well, I have to inquire so

4    we're going to have to go to the judge because you

5    have so compromised this deposition.

6    MR. TEITELBAUM:  Don't even go there.

7    That's fine.  You will make your record and we'll be

8    very content just to submit the transcript of the

9    deposition to the judge and let him rule on whose

10    compromised the examination.  I am prepared to

11    proceed with this deposition if you are prepared to

12    move on to the next line of inquiry off of was this

13    mortgage conveyed to the pool.  Period, end of

Page 110

REYE0033010.txt

14    story.  It's that simple.

15    MS. CHANEY:  Well, just for the record,

16    the witness has testified that I can look to certain

17    documents to tie the Nuer loan into this pool.  And

18    I'm asking him now that he's listed those documents

19    to show me in those documents where it refers to the

20    Nuer loan.  And your stopped him so many times now

21    from answering relevant inquiry that you have

22    compromised an ability to have a deposition here.

23    MR. TEITELBAUM:  If that is your position,

24    then the deposition is fine.  It's over.

25    MS. CHANEY:  And not only that, I think

116

1    at this point I have to raise the issue to the court

2    that you are so conflicted as to who you represent

3    here --

4    MR. TEITELBAUM:  Okay.  The deposition is

5    over.  We're off the record.  You can go to the

6    judge.

7    MS. CHANEY:  Give this back to you.

8    THE REPORTER:  Are we done?  This is the

9    reporter.

10    MR. TEITELBAUM:  The examination is

11    concluded.  If the debtor wishes to seek a

12    Protective Order or a Motion to Compel with the

13    court, they can do so.  We've made the witness

14    available from twelve o'clock P.M. Eastern time till

15    3.35.  The debtor showed up approximately 20 minutes

Page 111

REYER0033010.txt

16    late to the examination. We all waited patiently.
17    The debtor has wasted or spent even the last hour
18    and 40 minutes asking one single line of
19    questioning. The examination is over. And I will
20    note the debtor has refused despite invitation to
21    move on to other areas of inquiry relevant as set
22    forth in the Judge's March 18th ruling. I would
23    like an expedited copy of the transcript, please.
24        THE REPORTER: Anybody else?
25        MR. TEITELBAUM: And I'll send you my

117

1    E-mail information. Other parties will send you
2    whatever you need.
3        (Discussion off the record.)
4        MR. ZIPES: I ask everybody to remain here
5    just a second. I have to make a phone call and I'll
6    be back.
7        MR. TEITELBAUM: Examination is over or
8    not or do you have further questions?
9        MR. ZIPES: I might have further
10    questions. Is there a phone that I can use here?
11        (Recess taken.)
12        MR. TEITELBAUM: Ronaldo, Mr. Zipes has a
13    few follow-up questions for you.
14
15        EXAMINATION (CONTINUING)
16    BY MR. ZIPES:

Page 112

REYER0033010.txt

17    Q. Okay. I understand that matters are going
18    to be put before the judge and my intention is not
19    to interfere with that aspect. I just want some
20    clarification to some questions, again, without
21    prejudice to anybody else's rights here.
22        Mr. Reyes, who is the owner according to
23    the documents that you reviewed, who is the actual
24    owner of the Nuer mortgage?
25    A. Deutsche Bank National Trust Company as

118

1    trustee for the benefit of the certificate holders
2    of Long Beach 2006-2.
3    Q. So where does Long Beach Trust 2 fit into
4    the chain of title? If at all?
5    A. The trust is the trust for which we act as
6    trustee.
7    Q. Okay. So I'll ask you, again, because
8    maybe I'm not understanding your term when you say
9    "owner of the mortgage." Why don't you turn to what
10    we marked as UST/Reyes 5. It's an assignment of
11    mortgage signed by Scott Walter. Do you see that?
12    A. One moment, please. Okay. I see it now.
13    Q. Okay. So referring to this, not referring
14    to this, Long Beach Mortgage Trust 2006-2 is that
15    the owner of the Nuer mortgage?
16    A. As it states there the assignee is
17    Deutsche Bank National Trust Company as trustee for
18    Long Beach Mortgage Loan -- as trustee for Long

Page 113

REYER0031010.txt

119

19  Beach Mortgage Trust 2006-2.
20      Q.   Well, this says that Deutsche -- at least
21  this says Deutsche Bank National Trust Company is
22  trustee?
23      A.   Yes.
24      Q.   And I'm asking who is the owner of the
25  Nuer mortgage?

1       A.   Deutsche Bank National Trust Company as
2   trustee.
3       Q.   Where does Long Beach Mortgage Trust
4   2006-2 fit in to the ownership chain, if any?
5       A.   We act as trustee for that trust.  I would
6   point you to --
7       Q.   Go ahead.  Go ahead.
8       A.   In my testimony I've been referring to
9   Section 2.01 of the Pooling and Servicing Agreement,
10  what I'm referring to in 2.01 of the Pooling and
11  Servicing Agreement it's titled "Conveyance of
12  Mortgage Loans."
13          "The Depositor, concurrently with the
14  execution and delivery hereof, does hereby
15  transfer, assign, set over and otherwise
16  convey to the Trustee without recourse for
17  the benefit of the Certificateholders all
18  the right, title and interest of the
19  Depositor, including any security interest

Page 114

REYER0031010.txt

120

20  therein for the benefit of the Depositor,
21  in and to the Mortgage Loans identified on
22  the Mortgage Loan Schedule, the rights of
23  the Depositor under the Mortgage Loan
24  Purchase Agreement all other assets
25  included or to be included in REMIC 1."

1           And so on.  That is what I have been
2   testifying to today.  So it speaks for itself.
3       Q.   Okay.  So your testimony is that it is
4   what it is?
5           MR. TEITELBAUM:  Objection.
6           THE WITNESS:  It is the trustee.  What I
7   was referring to is that is what the document
8   states.
9   BY MR. ZIPES:
10      Q.   Okay.  And so you mentioned that Long
11  Beach Mortgage Trust 2006-2 is a beneficiary?
12          MR. TEITELBAUM:  Object.  Go ahead.
13  BY MR. ZIPES:
14      Q.   Tell me.  Go ahead.
15      A.   I didn't say that.  I said that it is the
16  trust for which we act as trustee.
17      Q.   You use the word "trustee" -- I'm actually
18  not trying to trick you in any way here.  You use
19  the word "trustee" for Deutsche National Bank and
20  then you also refer to it as the owner, can an owner
21  also be a trustee?

Page 115

22
23
24
25
   MR. TEITELBAUM: Objection. Legal

REYE80033010.txt
conclusion.
BY MR. ZIPES:
   Q.   Okay.   If you understand that term from a

121

1 nonlegal standpoint?
2    MR. TEITELBAUM: Objection. It does call
3 for a legal conclusion.
4    THE WITNESS: I don't understand from a
5 legal standpoint what you mean, but I do understand
6 what I just stated from a business standpoint and
7 from my understanding of securitization trusts. All
8 right, title and interest in the mortgage loans
9 including the Nuer loan is conveyed to the trustee
10 as I read from Section 2.01.
11 BY MR. ZIPES:
12    Q.   Okay.   Now, with respect to the assignment
13 of mortgage, do any of your records reflect that
14 there was an assignment of mortgage on November 1st,
15 2008?
16    A.   No.
17    Q.   Okay.   Do any of your records reflect that
18 -- I think you just testified with respect to the
19 PSA; correct?
20    A.   Yes.
21    Q.   Do any of your records reflect that --
22 okay.   I have no further questions.

23 REYE80033010.txt
24    MR. TEITELBAUM: Mr. Reyes, I'm going to
25 ask you one or two questions so we have a complete
   record for the court.

122

1    MS. CHARNEY: No. We're objecting.
2    MR. TEITELBAUM: You don't have to be
3 here. You can do whatever you want.
4    MS. CHARNEY: You are on my time.
5    MR. TEITELBAUM: No, you are on your time.
6    MS. CHARNEY: I'm objecting, then, because
7 I still want to ask questions and you've directed
8 the witness not to answer anymore --
9    MR. TEITELBAUM: I have offered for you --
10    MS. CHARNEY: You also directed me to move
11 to a different place when I'm representing my client
12 and I get to choose where I get to question the
13 witness.
14    MR. TEITELBAUM: I'm sorry. What does
15 that mean?
16    MS. CHARNEY: So if you are going to
17 continue the deposition then I'm going to move and
18 start asking the questions.
19    MR. TEITELBAUM: I'm sorry. What do you
20 mean by move to a different place?
21    MS. CHARNEY: You are telling me I can't
22 ask any more questions about tying -- how the Nuer
23 loan is tied in to the pooling and servicing
24 Agreement?

REYER0033010.txt                                                123

25          MR. TEITELBAUM:  That's correct.

1           MS. CHARNEY:  Then you don't get to ask
2  any more questions at this point.
3           MR. TEITELBAUM:  You know what, that's
4  fine.  You know what, we'll have the record before
5  -- actually, I disagree with you because Mr. Zipes
6  asked --
7           MS. CHARNEY:  You know, I don't really
8  want to hear that.
9           MR. TEITELBAUM:  That's fine.  Before
10 anybody goes, I have two questions for you,
11 Mr. Reyes.
12          MS. CHARNEY:  No.  I'm sorry --
13 BY MR. TEITELBAUM:
14     Q.   Mr. Reyes, with respect to --
15          MS. CHARNEY:  -- this deposition was
16 concluded by you --
17 BY MR. TEITELBAUM:
18     Q.   Mr. Reyes --
19          MS. CHARNEY:  -- with the exception -- but
20 we're not consenting to you, Counsel --
21          MR. TEITELBAUM:  That's fine.  Then I want
22 to know if the parties will consent and stipulate to
23 the fact that the document which has been marked as
24 Reyes' Exhibit 2 is a business record of Deutsche
25 Bank?  If the parties stipulate, then I have no

Page 118

REYER0033010.txt                                                124

1  questions.
2           MS. CHARNEY:  We're not stipulating.  You
3  cancelled this deposition.  You can't have it both
4  ways.
5           MR. TEITELBAUM:  You know what, the judge
6  will decide which ways we have it.
7           Mr. Reyes, a question for you, sir --
8           MS. CHARNEY:  No.  I'm sorry.
9  BY MR. TEITELBAUM:
10     Q.   U.S. Trustee's Exhibit 2 --
11          THE REPORTER:  You know what, I cannot get
12 you both down at the same time.  So please, I am
13 getting pissed off right now.  I am sorry, ma'am, I
14 cannot hear you.  And I am not taking you down right
15 now.  I can't hear you.
16          MS. CHARNEY:  Mr. Teitelbaum has closed
17 and stopped this deposition and so we are going off
18 the record.  Thank you very much.
19          MR. TEITELBAUM:  I am going to state for
20 the record without asking the witness any questions
21 the purpose for which I was going to speak to the
22 witness --
23          MS. CHARNEY:  Did you want to --
24          MR. TEITELBAUM:  Wait.
25          MS. TIRELLI:  You want to make your

Page 119

125

REYER0033010.txt

1    record, you make your record.
2        MS. CHARNEY:  We are off the record.
3        MR. TEITELBAUM:  No, we are not off
4    record.
5        MS. TIRELLI:  You concluded it, Jay.  You
6    don't remember that?
7        MR. TEITELBAUM:  I concluded -- I
8    concluded the examination --
9        MS. CHARNEY:  Whatever, Jay.  And we know
10   how far you will get with Judge Gerber on this.
11       MR. TEITELBAUM:  For the record, the
12   purpose of my examination was to establish whether
13   UST/Reyes 2 is a business record of the U.S.
14   Trustee's office.  The parties have determined that
15   I should not do that.  We will reserve that issue,
16   thank you.  The deposition is now concluded.
17
18           (TIME NOTED:  12:50 P.M.)
19
20
21
22
23
24
25

Page 120

126

REYER0033010.txt

1
2
3
4
5
6        I declare under penalty of perjury
7    under the laws of the State of California
8    that the foregoing is true and correct.
9        Executed on _____, 2010,
10   at _____, California.
11
12
13   _____
14       SIGNATURE OF THE WITNESS
15
16
17
18
19
20
21
22
23
24
25

Page 121

127

REYER0033010.txt

1    STATE OF CALIFORNIA    )
2                          ) SS:
3    COUNTY OF LOS ANGELES  )
4
5        I, KELLIE MITCHELL, C.S.R. NO. 7273, do
6    hereby certify:
7
8        That the foregoing deposition testimony of
9    RONALDO REYES was taken before me at the time and
10   place therein set forth, at which time the witness
11   was placed under oath and was sworn by me to tell
12   the truth, the whole truth, and nothing but the
13   truth;
14
15       That the testimony of the witness and all
16   objections made by counsel at the time of the
17   examination were recorded stenographically by me,
18   and were thereafter transcribed under my direction
19   and supervision, and that the foregoing pages
20   contain a full, true and accurate record of all
21   proceedings and testimony to the best of my skill
22   and ability.
23
24       I further certify that I am neither
25   counsel for any party in said action, nor am I
1    related to any party to said action, nor am I in any
2    way interested in the outcome thereof.

Page 122

128

REYER0033010.txt

2
3
4
5        IN WITNESS WHEREOF, I have subscribed my name
6    this 31st day of March, 2010.
7
8
9
10
11                       KELLIE MITCHELL, C.S.R. NO. 7273
12   _____
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 123

129