UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------

*In re:*                                  Case No. 08-14106 *(reg)*

      SILVIA NUER,                      New York, New York
                   *Debtor.*   February 23, 2010

----------------------------------------

TRANSCRIPT OF CHAP 7 HEARING RE
PRETRIAL CONFERENCE ON MOTION FOR RELIEF
FROM STAY AS TO THE PROPERTY LOCATED AT
1651 METROPOLITAN AVENUE 7C, BRONX, NY 10462 FILED BY
AMY E. PRZEWOZNY ON BEHALF OF J.P. MORGAN CHASE BANK
NATIONAL ASSOCIATION AS SERVICER FOR DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS TRUSTEE FOR
LONG BEACH MORTGAGE TRUST 2006-2.
(Motion Withdrawn)
BEFORE THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

A P P E A R A N C E S :

| | |
|---|---|
| *For Debtor* | LINDA M. TIRELLI, ESQ. |
| | 202 Mamaroneck Avenue, 3rd Fl. |
| | White Plains, New York 10601 |
| | (914) 946-0860; (914) 946-0870 |
| | |
| *For J.P. Morgan:* | JAY TEITELBAUM, ESQ. |
| | Teitelbaum & Baskin, LLP |
| | 3 Barker Avenue, 3rd Floor |
| | White Plains, New York 10601-1509 |
| | (914) 437-7670; (914) 437-7672 fax |
| | |
| *For David Kittay,* | JUDITH L. SIEGEL, ESQ. |
| *Chapter 7 Trustee:* | Kittay & Gershfeld, PC |
| | 100 White Plains Road, 2nd Floor |
| | Tarrytown, New York 10591 |
| | (914) 332-8000; (914) 332-8001 |
| | |
| *For the UST Office:* | GREG MICHAEL ZIPES, ESQ. |
| | 33 Whitehall Street |
| | New York, New York 10004-2112 |
| | (212) 510-0500 |
| | |
| *Transcription Service:* | A-1 Transcripts |
| | A1Transcripts@optonline.net |

*Proceedings recorded by electronic sound recording.*
*Transcript produced by transcription service.*

*In re Silvia Nuer - 2/23/10*                                           2

1          THE COURT:  Silvia Nuer.

2          MS. SIEGEL:  Judy L. Siegel, (indiscernible) David

3    Kittay --

4          THE COURT:  I need quiet on my telephone or I am going

5    to disconnect it.

6          MS. SIEGEL:  No, I just wanted to make my appearance.

7    I am sorry, Judge.

8          THE COURT:  Who is on the phone, please?

9          MS. SIEGEL:  This is Judy Siegel.  I represent David

10   Kittay in this matter.

11         THE COURT:  Well it's either you're speaking too

12   softly or it's too noisy in my courtroom or both, Ms. Siegel.

13   Bear with me a second.

14         MS. SIEGEL:  I can try to speak louder.

15         THE COURT:  Okay.

16         MS. SIEGEL:  This is Judy Siegel.  I represent David

17   Kittay as the Chapter 7 Trustee.

18         THE COURT:  Right, Ms. Siegel.

19         MS. SIEGEL:  Yes.

20         THE COURT:  Okay.  For Ms. Nuer?

21         MS. TIRELLI:  Good morning, Your Honor.  It's Linda

22   Tirelli representing the Debtor, Ms. Nuer.

23         THE COURT:  Okay.  Ms. Tirelli?

24         MS. TIRELLI:  Your Honor at the last conference --

25         THE COURT:  Wait, just a second.  I've got Mr. Zipes

*In re Silvia Nuer - 2/23/10*                                          3

1   and Mr. Teitelbaum.

2          MR. TEITELBAUM:  Thank you, Your Honor.

3          THE COURT:  All right.  So we have five participants.

4   All right.  Go ahead, Ms. Tirelli.

5          MS. TIRELLI:  Thank you, Your Honor.  At the last

6   conference on January 7, the Court --

7          THE COURT:  Wait.  If Ms. Siegel wants to hear you on

8   the phone, I need you to come to the main microphone, please.

9   Ask the others to do likewise.

10         MS. SIEGEL:  Thank you, Judge.

11         MS. TIRELLI:  Ms. Siegel, can you hear me now?

12         MS. SIEGEL:  Yes, thank you, Ms. Tirelli.

13         MS. TIRELLI:  Okay.  Again, Your Honor, at the last

14  status conference on January 7, the Court encouraged the parties

15  to come together and attempt a stipulation to try to bifurcate

16  the claims.  It was at that conference that opposing counsel

17  admitted that actually a couple of the legal documents

18  previously tendered by JP Morgan Chase in this case were, in

19  fact, false or at the very least factually inaccurate.  I'm

20  specifically speaking about the assignments of mortgage signed

21  by Mr. Scott Walter and the other one signed by Ann Garbis,

22  respectively.

23         Since that last conference, I have actually renoticed

24  the depositions of those parties, as well as another 30(b)(6)

25  witness of Chase, again which is something that the Court

*In re Silvia Nuer - 2/23/10*                                              4

1    encouraged us to continue with at the depositions.  I've gotten

2    no cooperation whatsoever from Chase and from Mr. Teitelbaum

3    with regard to the dates and the depositions.  At this point, I

4    am not clear whether or not we have depositions going forward on

5    Friday, the 26th or not because my emails are not being

6    responded to.  I do -- I would like the Court to address that

7    issue at some point during today's conference if you would.

8           We have another problem that's actually come to my

9    attention or I have discovered very recently and that's

10   regarding the endorsement which now appears on the back of a

11   note.  The endorsement on the back was not disclosed by opposing

12   counsel when he allegedly first had possession of the original

13   documents.  It was back in July that I was told the original

14   documents were in the possession of Mr. Teitelbaum's office.  He

15   had them in his safe.

16          I noticed the depositions of the various parties and I

17   asked to come and view the documents and examine them.  At that

18   time, I was told "No, I sent them back."  I asked, "Why would

19   you send them back?"  And I've gotten no response.

20          The deposition of Mr. Herndon, Charles Herndon went

21   forward.  Mr. Herndon testified that he had never seen the

22   original documents.

23          THE COURT:  He is the guy down from Jacksonville.

24          MS. TIRELLI:  Yes, Your Honor.

25          THE COURT:  Or up from Jacksonville.

*In re Silvia Nuer - 2/23/10*                                                 5

1          MS. TIRELLI:  Yes, I believe it's Jacksonville.  He's

2     from Florida; yes.

3          THE COURT:  Uh-huh.

4          MS. TIRELLI:  It's -- the original documents, again I

5     did not get to view those until a couple of weeks after the

6     deposition of Mr. Herndon.  If it pleases the Court, I am not a

7     forensic handwriting expert by any means, however I want to say

8     that the -- I have with me today, the stamped endorsement which

9     now appears on the back of the note is signed by somebody by the

10    name of Kimberly Smith as an officer of Long Beach Mortgage

11    Company and then there's the Vice President Jess Almazar (ph.)

12    -- I'm sorry, Almaze (ph.)

13         I want to just show the Court that the signature of

14    Kimberly Smith on the back of the note does not match the

15    signature of the same Kimberly Smith which is on an assignment

16    of mortgage, also submitted in this case dated January 12, 2006.

17    May I approach to --

18         THE COURT:  You may.  I have to confess to you, I am

19    not a handwriting expert and I am not going to make findings of

20    fact today, even if I were, but you can show me.  Your point, I

21    take it, is that they're so dramatically different that even a

22    non-expert could tell that they're different signatories?

23         MS. TIRELLI:  Your Honor, it's not even close.  The

24    signature of Kimberly Smith on that assignment of mortgage and

25    the signature of Kimberly Smith on the back of that -- on that

*In re Silvia Nuer - 2/23/10*                                             6

1   endorsement, that endorsement in blank, they do not appear to be

2   the same.  I have not had the chance to have them analyzed.

3   I've actually requested --

4            THE COURT:  I take your point.

5            MS. TIRELLI:  Thank you, Your Honor.  I have requested

6   double-sided color copies of the originals and I have been

7   denied that request.  I was given the opportunity to go back to

8   Mr. Teitelbaum's office to take photographs of the documents and

9   I am not a photographer either, Your Honor, and, you know,

10  they're just not as good as I think a true, you know, color

11  copy, double-sided original would be or copy of the original

12  rather.  So I do want to bring that to the Court's attention.

13           In response to my renoticing the depositions or I

14  should say serving amended notices of deposition, Mr. Teitelbaum

15  responded by stating certain objections and trying to limit the

16  scope of the depositions.  You know, I think that we need to

17  discuss exactly what the scope is.

18           He's also attempted to now withdraw the motion on --

19  for relief from stay which is, of course, a contested matter

20  under 9014.

21           THE COURT:  I thought you were opposing the motion for

22  relief from the stay.  I would have thought you would be doing

23  handsprings if he were attempting to withdraw the motion for

24  relief from the stay.

25           MS. TIRELLI:  Well, Your Honor, if he is going to

*In re Silvia Nuer - 2/23/10*                                        7

1   withdraw the motion for relief from stay, I think that what the

2   Court discussed, at least at the last conference, the way I

3   understood it, you wanted -- we were going to have some sort of

4   stipulation which would protect the rights and remedies of the

5   various individuals.  If he is withdrawing the entire motion and

6   then says in his objections that I have no standing now because

7   the Debtor, you know, has no standing to object because there's

8   no motion on board, I've also told that there's been no harm

9   done here despite the fact that there's fraudulent documents

10  submitted.  I just think that we need to have some sort of

11  boundaries and discuss exactly, you know, how this motion is

12  going to be withdrawn.

13          THE COURT:  Refresh my recollection vis-a-vie what was

14  at one time a major aspect of this which is you had a Debtor

15  client who had taken down the Chase loan to move into a new

16  condo and then as best I recall the facts, because of another

17  actually or allegedly forged document or a backdated document, I

18  forgot the specifics, the Condo Association didn't give its

19  approval.  The Debtor couldn't move in.  She couldn't afford to

20  pay for two mortgages or some combination of that and

21  ultimately, I thought that we were going to have some kind of

22  work out situation in which Chase was going to modify the

23  mortgage so she could afford to move into the condo.  What is

24  the state of play on that phase of it and don't be diplomatic if

25  I got the facts garbled; correct me.

*In re Silvia Nuer - 2/23/10*                                                8

1          MS. TIRELLI:  Yes, Your Honor.  Actually at the

2    closing, this is actually a mortgage that originated with Long

3    Beach Mortgage Company which is -- has since been securitized.

4    I think that at one point, WaMu was actually servicing it.  At

5    the time that we filed the bankruptcy, Washington Mutual was

6    listed as a creditor, Chase was not.  Chase had never given us

7    notice under RESPA to identify themselves as now the substitute

8    servicers or the new servicer of the loan.

9          So when Chase came on board with this motion for

10   relief from stay, I of course needed to really look at these

11   documents and make sure that they had right or didn't have right

12   to put claim to this property.

13          In terms of what's going on now, Your Honor again, I

14   am not getting any response from Mr. Teitelbaum's office.  My

15   last two emails have not been responded to.  I am not sure if

16   these depositions are going forward or if they're not going

17   forward.

18          THE COURT:  I don't want to sound like a dinosaur but

19   I was brought up in the days when people called each other on

20   the telephone.  Do people still communicate that way?

21          MS. TIRELLI:  Yes, Your Honor.  I did call Mr.

22   Teitelbaum on the telephone and at that time I was told your

23   client has no damages.  We're withdrawing the claims.  She's got

24   no reason to come for sanctions.  Attorneys fees are not

25   considered damages and do whatever you have to do.  That's the

*In re Silvia Nuer - 2/23/10*                                            9

1    response that I got on the phone, Your Honor.

2           So I don't see anybody here willing to come to the

3    table and that's really what I was trying to do in the spirit of

4    trying to develop some sort of a stipulation or come to some

5    sort of stipulation as to allowing them perhaps to withdraw

6    their claim but, you know, again just have the parameters set

7    for how we're going to proceed in terms of sanctions and damages

8    would be considered.

9           THE COURT:  All right.  I want to hear next from Mr.

10   Teitelbaum and then I want to get the US Trustee's perspective

11   from Mr. Zipes.

12          MS. TIRELLI:  Thank you, Your Honor.

13          THE COURT:  Right.

14          MR. TEITELBAUM:  Good morning, Your Honor.  Jay

15   Teitelbaum, Teitelbaum & Baskin for JP Morgan Chase.

16          Your Honor, speaking of boundaries first, and I know

17   this was a status conference so I probably don't have to do this

18   but I do want to lodge the objection to the submission of

19   evidence at a status conference without any prior notice by

20   someone who has professed not to be an expert with respect to

21   handwriting and making statements and comments with respect to

22   handwriting.  So for whatever that is worth, Your Honor, I will

23   lodge that objection.

24          I would also object, Your Honor, to the continued

25   representation of the documents, the Walter and the Garbis

*In re Silvia Nuer - 2/23/10*                                    10

1    assignment documents as false or fraudulent.  I would also

2    object, Your Honor, to the representations of lack of

3    cooperation.  Over the course of this motion for relief from the

4    stay with respect to an uncontested debt in a Chapter 7 case of

5    104 thousand dollars on property which the Debtor in her

6    schedule stated that she was going to surrender and therefore

7    not make any further payments on and with respect to which the

8    Debtor had not made any payments for over a year prior to the

9    petition date, and more than 30 days post-petition, we are here

10   arguing about allegedly false and fraudulent documents after the

11   production of nearly 1,400 pages of documents in response to

12   document requests, the submission yesterday of approximately a

13   50 page response to the sanctions motion with evidentiary

14   support, three -- four affidavits -- well three affidavits by

15   fact witnesses, the Baum Law Firm, Ann Garbis, Renaldo Reyes

16   (ph.) of Deutsche Bank, the Custodian and Trustee, and Judith

17   Gries (ph.), a senior person at JP Morgan as to the practices

18   and policies of JP Morgan Chase in connection with motions for

19   relief.

20        Your Honor, we have submitted to the US Trustee,

21   copies of all of the documents produced and to Ms. Tirelli.  We

22   have submitted authenticated certificates of incumbency for Ms.

23   Garbis evidencing her authority to have executed the documents

24   and authenticated power of attorney for Mr. Walter to have

25   executed the assignment as attorney-in-fact for JP Morgan Chase.

*In re Silvia Nuer - 2/23/10*                                         11

1    He was not and is not an employee of JP Morgan.  He is an

2    outside contractor that JP Morgan hires in connection with

3    defaulted matters.

4            Notwithstanding all of those -- that document

5    production, we still stand here, Your Honor, trying to defend if

6    you will, negative implications.  We have produced documents.

7    We have produced witnesses.  The statement that there has been

8    no cooperation is just patently false, Your Honor.  The

9    documents are there.  Ms. Tirelli was provided access to my --

10   at my office to the original loan documents.  She demanded

11   copies, color copies.  I don't have a color copier in my office.

12   I offered that she could come back and take photographs, Your

13   Honor.  I was not willing or inclined to send original mortgage

14   and note documents out to some third party to be copied.  She

15   apparently remains unsatisfied with that.

16           But the fact of the matter is, Your Honor, the

17   original documents were at my office.  They are at my office and

18   I can bring them to court and I will bring them to court at the

19   appropriate time when we have a full evidentiary hearing on this

20   matter.  And to the extent we may need a handwriting person or

21   the person who actually signed the endorsement, we will do that.

22   There is nothing being hidden here, Your Honor.

23           What the case will show in point of fact after the

24   submission of all of these documents and all of this time and

25   all of this money, what was alleged in a four page motion for

*In re Silvia Nuer - 2/23/10*                                                12

1    relief from the stay was accurate.  The motion was made by JP

2    Morgan Chase as servicer for Deutsche Bank as Trustee for the

3    Trust and we have defined all of those terms obviously and Your

4    Honor was familiar with them.  Those facts are irrefutable.

5           Was there a mistake?  Yes, there was a mistake.  Did I

6    admit there was a false or fraudulent document submitted?

7    Absolutely not.  What was the mistake?  The mistake was the

8    submission of the Walter assignment in connection with the

9    motion for relief.  And as we have laid out, Your Honor, that

10   was law office mistake.  There were two assignments executed.

11   The first was the Walter assignment and it was returned to the

12   Baum firm as Scott Walter, attorney in fact.  The Baum firm

13   knowing the law in the State of New York and recording

14   practices, knew it needed a power of attorney to record that

15   assignment.  It therefore went back to LPS and said we need a

16   power of attorney.

17          Instead of getting a power of attorney back, LPS

18   obtained the assignment of Ann Garbis, a vice president at JP

19   Morgan.  That assignment was returned and recorded.  The

20   mistake, if you will, Your Honor, was at least two -- was two

21   things; one, by mistake the Walter assignment was attached to

22   the motion for relief.  And yes, it committed -- it resulted in

23   some confusion but as we've laid out, in the subsequent

24   pleadings filed by Ms. Grigg of the Baum firm, we've addressed

25   those issues.

*In re Silvia Nuer - 2/23/10*                                    13

1          Was there also confusion as a result of the fact that

2    the four page motion for relief did not fully elaborate on the

3    labyrinth of transactions which led from the loan being

4    originated in 2006 by Long Beach Mortgage to Deutsche Bank as

5    Trustee for a syndicate as the current holder of a negotiable

6    instrument under the Uniform Commercial Code and under

7    appropriate law?  Your Honor, the local rules and our local

8    bankruptcy rules in connection with 4001 require parties to

9    identify the chain, Your Honor.  That was done.  That was done.

10   There was only one recorded assignment of mortgage in this case

11   and that was -- I'm sorry, there was only one recorded mortgage

12   and that was Long Beach Mortgage in January of 2006, originated

13   the mortgage and caused the mortgage to be recorded with the New

14   York City Register of Deeds.  This was more than two years

15   before Chase got even involved in this by virtue of WaMu going

16   into receivership and Chase acquiring substantially all of the

17   assets and the servicing and the rights and obligations of WaMu.

18   That all happened well before Chase got involved in the case,

19   Your Honor.

20          What was the other mistake?  The other mistake was not

21   identifying more fully why Chase was identified as the assignor.

22   And it's simple.  And it's laid out in our papers and there's

23   evidentiary support.  Long Beach Mortgage, by virtue of a series

24   of mergers and acquisitions was merged into WaMu, Washington

25   Mutual.  WaMu as we know in September of 2008 went into

*In re Silvia Nuer - 2/23/10*                                    14

1    receivership and Chase acquired substantially all of the assets

2    and we've submitted the asset purchase agreement and the

3    affidavits at the FDIC in that regard.

4           The practice in New York -- first of all I will start

5    with the law, the law in New York does not require a written

6    assignment of a mortgage for it to be conveyed.  We've laid that

7    out; very simple.  The note is a negotiable instrument.  It was

8    payable to Long Beach -- order of lender, Long Beach Mortgage.

9    That note was endorsed in blank and physically delivered as per

10   the affidavit of Mr. Reyes.  And this has all been provided.

11          The note was transferred as a negotiable instrument.

12   It's currently held by Long Beach -- by Deutsche Bank.  The

13   mortgage pursuant to an assignment to blank executed by and

14   blank, meaning there was no assignee identified, was executed by

15   Long Beach Mortgage and physically delivered, together with the

16   mortgage to the Trustee.

17          And the original loan docs including the note, the

18   assignment and the mortgage --

19          THE COURT:  By Trustee, you meant the securitization

20   trustee?

21          MR. TEITELBAUM:  The -- I'm sorry, Deutsche Bank as

22   Trustee, yes, for the Trust, Your Honor -- were physically

23   delivered as evidence by at least two things; (1), the fact that

24   those documents were actually physically delivered by the

25   Deutsche Bank as Trustee and custodian to JPM as servicer at my

*In re Silvia Nuer - 2/23/10*                          15

1   request and (2), the affidavit of Mr. Reyes.  And there are

2   documents as well, Your Honor, which evidence it and those are

3   the loan mortgage schedules.

4          Now, Your Honor, the fact of the matter is that there

5   is no dispute here that Deutsche Bank is the holder as alleged

6   in the motion and there is no dispute that JP Morgan is the

7   servicer as alleged in the motion.  And there is no dispute that

8   there was a lack of adequate protection warranting relief from

9   the automatic stay in this Chapter 7.  Those things are not

10  disputed at all.

11         And so, Your Honor, I am a little bit surprised --

12  actually I shouldn't be surprised by anything in this case

13  anymore -- I'm a little bit confused when Ms. Tirelli files an

14  objection to our letter withdrawing the MF -- the motion for

15  relief frankly, precisely in the manner in which we were all

16  here on January 7 and discussed.  My letter to this court

17  withdrawing that motion for relief specifically preserved the

18  rights of the parties to continue with the sanctions piece of

19  this case but as there was no dispute on the motion for relief,

20  and probably as importantly, Your Honor, to address the issue of

21  lack of cooperation, on January 8, I sent to Ms. Tirelli a loan

22  modification package requesting that her client complete it and

23  send it back to me, so that we can see if in fact there was

24  anything that we could do to help her.  To date, I don't have a

25  response.  I don't have a single document in response.

*In re Silvia Nuer - 2/23/10*                                16

1      So the point being, we did exactly what we represented

2  to this court we were going to do.  The next day I emailed out a

3  settlement -- the first prong of a settlement piece which was

4  give us this information to see if your client can afford to

5  modify and take on this loan; no response.  No proposal to

6  consent to relief from the stay.  So taking what we discussed on

7  January 7 which was I believe a prudent suggestion by the Court,

8  rather than file a motion for summary judgment on the motion for

9  relief, I suggested that I withdraw and we'll file a clean one.

10      I get in response to that a motion to strike my letter

11 and another request for sanctions under 1927.  We filed a

12 response, Your Honor.  The response is four pages but it's about

13 30 pages long because I attached the relevant portions of the

14 transcript from the January 7 hearing.  So I am not going to

15 belabor that point but I must say, if there's been any

16 multiplicity of litigation in this case, it's not been by Chase.

17 It has not been by Chase.  And if there has been a lack of

18 cooperation and a lack of willingness to recognize undisputed

19 facts, it's not by Chase.

20      THE COURT:  All right.  Pause please, Mr. Teitelbaum.

21 I should have interrupted you a while ago.

22      Ms. Tirelli alleges that she is trying to schedule

23 depositions and that an element of your alleged non-cooperation

24 is that you haven't made deposition witnesses available.  Do you

25 dispute that allegation?

*In re Silvia Nuer - 2/23/10*                    17

1       MR. TEITELBAUM:  I absolutely do, Your Honor; no

2   surprise.  The fact of the matter is, Ms. Tirelli noticed three

3   depositions.  The first deposition is of Ms. Garbis, Helen Ann

4   Garbis, a vice president at JP Morgan Chase.  I remain willing

5   and able to produce her and in fact, have had conversations, I

6   do believe in using the telephone, with Mr. Zipes on this

7   because Ms. Tirelli had offered up Mr. Zipes' office for the

8   deposition.  The parties had scheduled about an hour to an hour

9   and a half for Ms. Garbis' deposition.  Ms. Tirelli also noticed

10  and I remain prepared to produce --

11      THE COURT:  Well pause, please.  So what happened to

12  that deposition?

13      MR. TEITELBAUM:  Well I just want to tie two other

14  depositions together because it's relevant, Your Honor.  That

15  deposition is -- was anticipated to take about an hour to an

16  hour and a half based on the scheduling because there were three

17  depositions noticed for the same day, an hour and a half apart.

18  The second deposition was noticed for Mr. Scott Walter --

19      THE COURT:  That's Garbis?

20      MR. TEITELBAUM:  That's Ms. Garbis; yes.

21      THE COURT:  What's her first name?

22      MR. TEITELBAUM:  It's Helen.

23      THE COURT:  Okay.  Go on.

24      MR. TEITELBAUM:  The second deposition notice was of

25  Scott Walter and the deposition notice, Your Honor, identifies

1  Mr. Walter as -- and I don't want to misstate exactly what it

2  says -- Scott Walter, of JP Morgan Chase Bank.  Your Honor, in

3  good faith I and other people at JP Morgan contacted LPS with

4  whom Mr. Walter is employed to try to get him to testify without

5  the need for a subpoena.  He is not an employee of JP Morgan

6  Chase or any Chase entity.  This deposition notice doesn't work

7  under the law.  There needs to be a subpoena.  We've been trying

8  to cooperate and I've advised Mr. Zipes of this.  And as of

9  yesterday --

10          THE COURT:  Is Walter willing to appear or not?

11          MR. TEITELBAUM:  Your Honor, that's --

12          THE COURT:  One thing that is frustrating me is that

13  people speak to the underlying realities in one moment and then

14  they talk about the requirements of law on the other.  Is Walter

15  willing or unwilling to appear without a subpoena?

16          MR. TEITELBAUM:  As a result of my efforts frankly,

17  Your Honor, yes he is but he is required -- his employer is not

18  willing to have my firm which is representing Chase, represent

19  him.  They have suggested they will make him available on March

20  19 for a deposition and that is why, Your Honor, the deposition

21  noticed for the 26th of February at my -- I had made a request

22  that that be adjourned, so that we could conduct two or three

23  depositions at once rather than travelling into lower Manhattan

24  on three separate occasions for an hour to an hour and a half

25  depositions.

*In re Silvia Nuer - 2/23/10*                                    19

1      Now, Your Honor, the third deposition is of a 30(b)(6)

2  witness.  Your Honor, we filed an objection to that deposition

3  notice and the reason that we filed an objection to that

4  deposition notice is that the deposition notice seeks a 30(b)(6)

5  witness of Chase with respect to "all of the allegations in the

6  motion for a termination of the stay including how payments were

7  applied, how accounts were handled," none of which are relevant

8  in this case because the Debtor has admitted all of the

9  underlying obligations with respect to the relief from stay.

10 Your Honor, we've --

11      THE COURT:  Is that your only basis for refusing to

12 produce the witness?

13      MR. TEITELBAUM:  Your Honor, the Debtor has

14 withdrawn --

15      THE COURT:  There is an underlying motion for

16 sanctions and whether or not Chase is continuing to act to seek

17 stay relief, there are at least seemingly issues as to the prior

18 conduct of Chase before we got to this point and before you were

19 hired, Mr. Teitelbaum.

20      MR. TEITELBAUM:  Your Honor -- and we have not tried

21 to avoid any discovery on that issue but the underlying issues

22 with respect to the sanctions relate to the issues of the

23 assignment and the question --

24      THE COURT:  Might I be the ultimate judge of what the

25 underlying issues are?

*In re Silvia Nuer - 2/23/10*                                    20

1      MR. TEITELBAUM:  Your Honor, yes, but -- but I would

2  say, Your Honor, that the Debtor has withdrawn the issues

3  relating to everything but the standing and the assignment.  And

4  similarly, the US Trustee's Office is only looking at those

5  issues.

6      So, Your Honor, there is nothing contested if you will

7  about how Chase applied payments in this loan.  There is nothing

8  contested in this case about how suspense accounts were handled

9  in this loan.  There is nothing contested in this case about the

10  determination of the validity of the claim against the Debtor in

11  this case.  All of these things -- all of these issues, Your

12  Honor, are identical to the very -- one of the very first

13  discovery requests that was served by the Debtor when these

14  issues were at contest.  They've since been withdrawn.

15      And I think as Your Honor has correctly pointed out,

16  there really is no dispute on the merits of the motion for

17  relief from the stay here.  The issue here is whether Chase did

18  something improper in connection with the preparation of the

19  assignments and in connection with its representations to this

20  court in that regard.  And, Your Honor, we've maintained and we

21  continue to maintain there was a mistake and there was

22  confusion.  There was no fraud.  There was no intent to mislead

23  and in point of fact, there were no violations under Rule

24  9011(b)(1), (2) or (3).  And as this court -- as the Second

25  Circuit has held in *Highgate*, the claims are not susceptible of

*In re Silvia Nuer - 2/23/10*                    21

1    1927 damages unless there's clear evidence that the claims were

2    utterly meritless and that is not the case here, Your Honor.

3         And frankly, we are prepared -- rather than having

4    this sort of to and fro, we'll have an evidentiary hearing and

5    let the facts show what they may and we'll put on the witnesses.

6    We've identified the witnesses.  We've produced 1,400 pages of

7    documents.  We frankly have nothing to hide here.

8         THE COURT:  All right.  Mr. Zipes?

9         MR. ZIPES:  Greg Zipes from the US Trustee's Office.

10   Judge, this is a matter that has taken on a life of its own

11   obviously.  As of about a week ago, Judge, my office had

12   expected that the case was going to produce two witnesses on

13   February 26 which is Friday; the first is Ms. Garbis and the

14   second is Mr. Walter.

15        About a week ago, Mr. Teitelbaum informed me that

16   Chase wasn't going to do that and my office spent some time

17   trying to figure out whether there was an illness or if there

18   was some issue with someone who was being produced.  Just

19   yesterday we were able to determine that Ms. Garbis is available

20   for the 26th and Mr. Walter may or may not be.  I just heard for

21   the first time in court that he is available on March 19 and

22   that's the date that JP Morgan Chase is producing him.

23        Judge, we agree that an evidentiary hearing is

24   appropriate but discovery obviously has to take place before

25   that and depositions are appropriate before that.   I'm hearing

*In re Silvia Nuer - 2/23/10*                              22

1   from Chase that there was no -- that there was some minor

2   mistake here.  I think with all due respect, that's something

3   this court can decide whether it was an innocent mistake or

4   whether or it was something more than that.  We do have an

5   acknowledgement as of the January 7 hearing date that these

6   assignments were not factually accurate and that's what Chase

7   said at that hearing.  It wasn't what we're hearing today that

8   there was -- that -- I am not sure what the argument is.

9           In any event, we -- Judge, we dispute that the

10  assignments had proper information on them; the assignee and the

11  assignor, among other things, don't appear to be the accurate

12  parties.  These were documents submitted in connection with a

13  motion to vacate which was put before this court.  That motion

14  is being withdrawn by JP Morgan Chase which is appropriate in my

15  office's view in light of the problems with it.

16          The sanctions issue we had thought until last night

17  when papers were filed by Chase were being bifurcated.  I had a

18  chance to read quickly the 45 page submission of Chase

19  yesterday.  In it they're apparently arguing that there's no

20  issue before the Court right now because they withdrew the

21  motion.  That wasn't my understanding of the facts on the

22  ground.  So if there is a problem with bifurcating at this

23  point, my office needs to know so we can file the appropriate

24  motion or do what we need to do to make sure the sanctions issue

25  is before this court.

*In re Silvia Nuer - 2/23/10*                                        23

1        I don't know if Chase can speak to that right now but

2   as a threshold matter, we need to know whether Chase is taking

3   the position that there's nothing before this court at this

4   point because if it is, my office has to be guided accordingly.

5        Judge, we had expected, although my office is not

6   involved with the actual negotiations between the Debtor and the

7   bank on the underlying mortgage, we had expected Chase to engage

8   in negotiations with the Debtor to see if something can be

9   worked out and that apparently hasn't taken place, Judge.  That

10  is an issue that is of concern to my office having heard it.

11       In addition, there may be other documents here as Ms.

12  Tirelli has shown my office yesterday.  There may not be issues

13  with other documents that may or may not contain false

14  information.  Judge, it's just important to get motions to

15  vacate in these Chapter 7 cases with proper information in them,

16  so that the Court can make determinations of whether the relief

17  is granted.  My office has already said we don't oppose motions

18  as a blanket rule.  That wouldn't be appropriate but when

19  assignments are attached that seek to justify a chain of title

20  and those assignments are not accurate, that is a material

21  problem with the case.  And again, we don't have to argue now

22  whether it was an inadvertent mistake or whether there was

23  something more.  Mr. Teitelbaum obviously takes the position

24  they were not major mistakes.  We need discovery and we're

25  prepared to go forward on the 26th with respect to Ms. Garbis.

1   We had indicated with Mr. Teitelbaum that if there was a problem

2   with Mr. Walter on the 26th, we could discuss having both

3   depositions moved as long as they both took place in an

4   expeditious manner.  And we're hearing now the 19th is

5   potentially a date of -- for Mr. Walter.  We would be happy to

6   have a further dialogue with respect to that but Judge, it needs

7   to move forward at this point.  We have -- we thought we had

8   firm dates as of last week for depositions.  Those dates were

9   canceled in effect by Chase.

10         My office has not served formal notices of depositions

11  because we believe that Chase -- we didn't have an issue with

12  Chase.  We may have to reconsider that but I think for today's

13  purposes, Judge, we need some indication from Chase whether

14  they're taking a position that there's nothing before the Court

15  at this point because if that's their position, my office needs

16  to respond to it.  And so, we're prepared to go forward.  We

17  intend to go forward with depositions, whether it's on the 26th

18  or otherwise.

19         THE COURT:  Okay.  Ms. Siegel, do you want to weigh in

20  in any way?

21         MS. SIEGEL:  (Indiscernible) is that I have been in

22  contact with Ms. Tirelli both by email and phone and as part of

23  her moving forward with Chase with respect to renegotiating, she

24  attempted -- is attempting to get an appraisal, an independent

25  appraisal of the value of that second apartment, the one that

*In re Silvia Nuer - 2/23/10*                                    25

1    she has not yet moved into.  There's been a problem with keys.

2    I personally have spoken on the phone with the lawyer for the

3    Condo Association.

4         THE COURT:  Just a minute.

5         MS. SIEGEL:  I don't know what that is, Judge.

6         THE COURT:  Ms. Siegel, you may continue to speak.

7    Everybody else who is on the phone is going to put their phones

8    on mute or I am going to tell Court Call to disconnect everybody

9    except Ms. Siegel.  Go on, Ms. Siegel.

10        MS. SIEGEL:  I'm sorry.  So, Your Honor, I have spoken

11    to counsel.  There's been communication back and forth with

12    myself and counsel to the Condo as well as with Ms. Tirelli and

13    the Condo, and the last -- when I spoke to Ms. Tirelli

14    yesterday, she had been informed that they would be getting the

15    keys, I believe yesterday or today, so that they could get their

16    independent appraiser in to do its evaluation of that apartment.

17    I mean I think the value of that apartment is somewhat critical

18    to any negotiations the Debtor would be having with Chase.

19        And I can tell you from my end that, in fact, she has

20    been working towards getting the keys so that she could get an

21    independent appraiser in there.  So to the extent that Chase

22    feels there's been no movement, there actually has been effort

23    on behalf of Ms. Tirelli.

24        THE COURT:  All right.

25        MS. SIEGEL:  And with respect to the depositions, Your

*In re Silvia Nuer - 2/23/10*                    26

1   Honor, I mean from the Trustee's perspective, it's just part of

2   a pattern of defendants and litigants just constantly not

3   wanting to cooperate with Debtors and Trustees.  It's just an

4   ongoing problem I see all of the time.

5            THE COURT:  Okay.

6            MS. SIEGEL:  I don't opine as to this particular one.

7   As Your Honor knows, the Trustee is particularly involved in

8   this case because he thinks it represents a global problem

9   within the Trustee and bankruptcy system.  I mean yes, I am

10  disappointed that Chase isn't going to put their witnesses

11  forward also now but it's just part of an ongoing problem we see

12  all of the time.

13           THE COURT:  All right.

14           MS. SIEGEL:  And not specifically with Chase.

15           THE COURT:  All right.  Folks, I have a full courtroom

16  and we're only part of the way through a very lengthy calendar

17  today.  I am not going to be making any factual findings today.

18  This is not a hearing but what this proceeding has shouted out

19  to me is that the process it not working the way it's supposed

20  to and while I am not in a position to agree with many of the

21  things that Ms. Tirelli said, I think Chase has gotten me

22  materially concerned about the means by which it has proceeded

23  in this matter.

24          The fact that Chase or the originator of this

25  syndicated deal may have caused somebody to advance funds which

*In re Silvia Nuer - 2/23/10*                                          27

1    ultimately were taken down, has never been the issue in this

2    case.  The issue as Mr. Zipes has articulated both today and in

3    earlier proceedings has been that in serving as agent for the

4    facility, Chase has submitted documents to the Court which were

5    inaccurate and I am making no findings as to the scienter

6    associated with that, and I will not today decide if I ever do,

7    the extent to which Chase's behavior in this case -- and I will

8    state for everybody in the courtroom who may not be fully

9    conversant with this, so it wasn't Mr. Teitelbaum, it was a law

10   firm who Mr. Teitelbaum has taken over for -- has not been

11   appropriate and then there is an issue which I may or may not

12   eventually reach as to whether this is symptomatic of something

13   that's endemic in the consumer loan community.

14        I will state for the fourth time that I am making no

15   findings as to that and I am not making a determination as to

16   whether this case should be considered separately or independent

17   from -- or together, excuse me, with the matters as to which Ms.

18   Siegel is articulating concerns.  I note she is the Chapter 7

19   Trustee's lawyer.  She is not a Debtor.  She doesn't have the

20   same interest in this that a Debtor would.  She has a different

21   more institutional concern, as of course does Mr. Zipes.

22        Certain things are plain and obvious to me, too.  If

23   you're agreed in your letter that the withdrawal of the motion

24   for relief from the stay would be without prejudice to the

25   Debtor's rights or the US Trustee's rights to approve sanctions,

*In re Silvia Nuer - 2/23/10*                                           28

1   I cannot for the life of me, Mr. Teitelbaum, understand why

2   Chase isn't willing to stipulate to that unless this is some

3   kind of a tactical desire on Chase's part to play hardball or to

4   fight Winston Churchill-style on this matter.

5          One way or another whether you enter into a stip or

6   not, the withdrawal of the motion for relief from the stay is

7   not going to affect the liability, if any, for Chase's

8   sanctions.  You will get me less upset if you enter into the

9   stip but one way or another, that's the way we're going to go

10  forward.

11         MR. TEITELBAUM:  Your --

12         THE COURT:  Sit down, please.  I will let you be heard

13  after I am done.  Second, I will be the judge of what is

14  material in the context of the dispute between Chase and the US

15  Trustee and Chase and the Debtor's counsel on the issues that

16  are before us.  But I learned about 40 years ago in the first

17  week that I got out of law school that what is relevant for

18  discovery purposes isn't necessarily the same thing as that

19  which is relevant at trial.  And Chase will produce a 30(b)(6)

20  issues (sic) on all matters as to which Chase has knowledge

21  concerning this loan without prejudice to the rights of any

22  party to argue at trial on any motion before me that it's not

23  relevant.  And all three of the witnesses will be produced.  I

24  don't care whether they're produced individually or together but

25  they're going to be produced for deposition on or before the

*In re Silvia Nuer - 2/23/10*                                    29

1   19th of March.

2         Now I have sounded and if I've been sounded that way

3   it's because I have been upset at Chase but I also have

4   reservations about over reaching on your part, Ms. Tirelli in

5   certain matters which may be beyond the scope of what we should

6   be doing but I will hear the specifics of them in context.

7         Certainly -- I don't know if you need to be a

8   handwriting expert to scratch your head and wonder whether the

9   two signatures both purporting to be that of Kimberly Smith were

10  executed by the same person.  One has words that look like Smith

11  and one looks like it has a bunch of scratchings going around in

12  a circle.  I will let a handwriting expert decide whether

13  they're the same or not but certainly I am ruling that it is an

14  appropriate matter for discovery if somebody wants to ask

15  questions about that.

16        Now, Mr. Teitelbaum, not by way of reargument, I'll

17  hear what you had to say but we need to move on and I am going

18  to expect it to be much briefer than what I heard from you

19  before.

20        MR. TEITELBAUM:  Very, very quickly, Your Honor, to

21  address your issue.  We do stipulate and we did so agree in our

22  letter and there's nothing in any pleading that we filed to

23  suggest otherwise that the withdrawal of the motion for relief

24  is without prejudice to the rights of all parties to contest the

25  sanctions issue and obviously the jurisdiction and right of this

*In re Silvia Nuer - 2/23/10*                               30

1    court to hear and determine those issues.  And I will so

2    stipulate on the record.

3              And we disagree with the characterization by Mr. Zipes

4    that we tried to pull something in those papers.  They were very

5    thoughtfully and carefully drafted to deal with the sanctions

6    issue on the merits.

7              THE COURT:  All right.

8              MR. TEITELBAUM:  All right.  With respect, Your Honor,

9    to the depositions, we can work with a schedule.  Again, I will

10   inform LPS of the Court's ruling and they've advised me they

11   will produce someone.

12             On the 30(b)(6), Your Honor, my sense of it is, it's

13   not going to be one person.  It -- there isn't going to be one

14   person that could answer the myriad of issues that have been

15   raised.  We will do our best.  We intend, frankly, to produce a

16   witness from the Baum firm to testify as to what happened in

17   connection with the MFR.

18             THE COURT:  That would be wise.

19             MR. TEITELBAUM:  That -- well, Your Honor, that's why

20   we submitted the affidavit of the Baum firm.  Again, we're not

21   trying to hide the ball here.  So we will do all of those

22   things, Your Honor, and we will proceed, as I said, to an

23   evidentiary hearing where bare allegations don't sway this

24   court.  Thank you.

25             THE COURT:  All right.  AGT Acquisition?

*In re Silvia Nuer - 2/23/10*                                      31

1          MS. SIEGEL:  Your Honor, shall I hang up?

2          THE COURT:  Ms. Siegel?

3          MS. SIEGEL:  Your Honor, can I disconnect the phone

4    then?

5          THE COURT:  Yes, you may.

6          MS. SIEGEL:  Thank you, Judge.  Bye-bye.

7          MS. TIRELLI:  Thank you, Your Honor.

8          (Matter conclude as of 10:53:30 a.m.)

9                          - o0o -

CERTIFICATION


I, Linda Ferrara, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated:  February 24, 2010

_____
Signature of Approved Transcriber