```
                    UNITED STATES BANKRUPTCY COURT
1                   SOUTHERN DISTRICT OF NEW YORK

2   ----------------------------------------
    In re:                               : Case No. 08-14106 (reg)
3             SILVIA NUER,               : New York, New York
                            Debtor.      : March 18, 2010
4   ----------------------------------------

5        CHAP 7 MATTER - TRANSCRIPT RE TELEPHONE CONFERENCE RE

6      DISCOVERY DISPUTE; MOTION FOR PROTECTIVE ORDER PURSUANT TO

7             SECTION 105 AND BANKRUPTCY RULE 7026(C)

         BEFORE THE HONORABLE ROBERT E. GERBER
8
                  UNITED STATES BANKRUPTCY JUDGE
9
    A P P E A R A N C E S :
10
     For Debtor                   LINDA M. TIRELLI, ESQ.
                                  202 Mamaroneck Avenue, 3rd Fl.
11                                White Plains, New York 10601
                                  (914) 946-0860; (914) 946-0870
12

13    For J.P. Morgan:            JAY TEITELBAUM, ESQ.
                                  Teitelbaum & Baskin, LLP
14                                3 Barker Avenue, 3rd Floor
                                  White Plains, New York 10601-1509
15                                (914) 437-7670; (914) 437-7672 fax

16

17    For the UST Office:         GREG MICHAEL ZIPES, ESQ.
                                  33 Whitehall Street
18                                New York, New York 10004-2112
                                  (212) 510-0500
19

20                                MICHAEL P. CASH, ESQ.

21

     Transcription Service:       A-1 Transcripts
22                                A1@Court-Transcripts.net

23

          Proceedings recorded by electronic sound recording.
24           Transcript produced by transcription service.

25
```

*In re Silvia Nuer - 3/18/10*                                                    2

1          THE COURT:  I have everybody.

2          MR. TEITELBAUM:  Your Honor, this is Jay Teitelbaum.

3          THE COURT:  All right, Mr. Teitelbaum.

4          MS. TIRELLI:  Good morning, Your Honor.  This is Linda

5  Tirelli.  How are you?

6          MR. ZIPES:  And Greg Zipes from the US Trustee's

7  Office.  Good morning.

8          THE COURT:  All right.

9          MR. CASH:  Your Honor, Mike Cash is on the line.

10         THE COURT:  Mr. Cash is on the line?

11         MR. CASH:  I'm on the line, Your Honor.

12         THE COURT:  All right.  Thank you, Mr. Cash.  All

13  right.  I think where we left off last night, we were going to

14  deal with the issues that involved Mr. Cash.  Mr. Zipes, do you

15  want to be heard first?

16         MR. ZIPES:  Yes, Your Honor.  I regret having to bring

17  this discovery matter to the Court's attention, I will attempt

18  to be extremely brief here.  The bottom line is that in this

19  case, LPS executed one of the assignments that are at issue as

20  concerns my office.  The assignment, it contained incorrect

21  information.  We had actually worked cooperatively with Chase

22  and what I thought until two days ago, with LPS, as well in

23  arranging for depositions without the need for formal notices of

24  deposition or subpoenas.

25         LPS' litigation counsel was involved with the

*In re Silvia Nuer - 3/18/10*                                                    3

1   negotiation on or about February 24 and February 25.  My one --

2   the one request that was conveyed to me by LPS was that they

3   receive a subpoena which my office sent them by email and our

4   letter documents that sending out the subpoena.

5          Mr. Cash apparently got involved, he's outside

6   counsel, a little bit afterwards although maybe not.  The fact

7   is that the arrangement was with LPS and Chase by the way was

8   involved with all of this, as well and I think they would

9   confirm what I am saying right now.

10         At some point, we had also asked for one document

11  which was the operative agreement between LPS and Chase.  The

12  reason we wanted that document and were very precise with our

13  request is because we weren't sure where LPS fits into this

14  whole picture, whether LPS is a client of Chase or Chase is a

15  client of LPS, LPS is a client of Steven J. Baum, for example.

16  We just needed the answer to that.

17         Again, I had no inkling that there was even the issue

18  with this until I contacted Mr. Cash after the deadline had

19  passed for receiving the document.  It was kind of an innocent,

20  what's up, when I am getting it and that's when we started

21  having this run in about service of the subpoena.

22         Judge, we have left it -- I have left it with Mr. Cash

23  that he could think whatever he wants to think about the

24  subpoena.  He was going to show up as a volunteer and he could

25  tell you whatever he wanted to say in that regard.  As far as I

*In re Silvia Nuer - 3/18/10*                                                    4

1    was concerned, there was a subpoena served on LPS.

2            And LPS did appear in our office on the 16th.  Many of

3    my questions were not answered and Ms. Tirelli's questions were

4    not answered either.  I don't think the Federal Rules of

5    Evidence were in effect at that deposition.  And, for example,

6    Mr. Cash directed his client not to answer several questions of

7    mine dealing with these basic questions.

8            And I should add, Judge, that -- and Mr. Teitelbaum

9    can confirm this, I pretty much stuck to what I said I would do

10   in this case in terms of depositions and asking questions and

11   timing and everything else.  So the whole experience was a bit

12   of a surprise to me that it led to that.

13           But the bottom line, Judge, is that we served a

14   subpoena at that deposition, as well on LPS and we served

15   Walter.  I don't think there's any question that that subpoena

16   was served in this district and to the extent that there was any

17   question about it, although I don't think there really was.

18   Judge, I want to be positive and--

19           THE COURT:  Pause, please, Mr. Zipes.  When you said

20   in this district, were you referring to the Southern District of

21   New York or the Southern District of Texas?

22           MR. ZIPES:  Oh, I am sorry, Judge.  The deposition was

23   in our office right here in New York, so that's where the

24   deposition -- that's where the subpoena was served.

25           THE COURT:  Uh-huh.

*In re Silvia Nuer - 3/18/10*                                                      5

1           MR. ZIPES:  But, Judge, I want to move this along and

2    just find out where everybody stands.  What I need is Mr. Walter

3    under oath under the Rules of Evidence.  And if I need to -- if

4    we want to squabble over service of subpoena or not, to me I

5    thought Chase was acting in good faith.  I thought -- and wanted

6    to move this process along.  Everybody just wants answers to

7    questions here.

8           I could tell you, Judge, that what happened at the

9    deposition, I could overlook if actually my questions were

10   answered.  I wouldn't be standing on ceremony right now over

11   some of the comments made at that deposition.  But, in fact, I

12   think basic questions were not answered.  We need those answers

13   and if Mr. Cash and LPS are adhering to their position that

14   service was not proper, we need to figure out what to do.  For

15   example, the LPS attorney, in house attorney who agreed to this

16   is the person that was involved with this and if it's a matter

17   of he said, she said, with respect to service of the subpoena,

18   that person may -- we may need that person under oath to talk

19   about it.

20          And for that matter, Mr. Teitelbaum was there, as well

21   and I would actually hope that Mr. Teitelbaum steps to the plate

22   here and confirms what I was saying about our overall posture

23   about discovery and how we got to this point.  But, Judge, I

24   need this deposition to go forward.  It shouldn't be a big deal.

25   This is not a huge case and that's where my office stands.

*In re Silvia Nuer - 3/18/10*                                                6

1          One other point, Judge, and that is with respect to

2    this document, there was some back and forth between me and Mr.

3    Cash about deeming it confidential.  Judge, my office has no

4    problem with a confidentiality agreement in principle but there

5    has to be an underlying reason for it and this was an agreement,

6    I haven't seen it but it was between two separate parties.  It

7    was an internal document.  It's not as though there were

8    thousands of pages of documents that LPS is producing here that

9    there might be a mistake in the discovery process.  I'm amenable

10   to a confidentiality agreement but it works both ways.  If it

11   really is not subject to confidentiality or under a good faith

12   argument, I don't see why I should have to sign that.

13         And again, I don't even know what the document says at

14   this point but Chase is also a party here.  I'm looking into how

15   to get it from Chase because again, I had no inkling that there

16   was even an issue with this.  And so, Judge, we have the

17   subpoena outstanding.  We have two subpoenas outstanding, one of

18   which I've had -- there's absolutely no question that that was

19   served in a proper manner in this district on Mr. Walter.  And

20   it's unfortunate we had to do it that way but we did.

21         But the other one, as well.  There's a matter of

22   adhering to an agreement with respect to discovery and adhering

23   to the Federal Rules of Evidence once we're in a deposition.

24   Chase has adhered to the Rules of Evidence in the depositions

25   that we've had so far.  Mr. Teitelbaum has lodged objections on

*In re Silvia Nuer - 3/18/10*                                                    7

1  the basis of relevance and then allowed the witness to answer

2  the question.  For example, Mr. Cash directed his client not to

3  answer our basic questions on numerous occasions.  And as I told

4  Mr. Cash, I didn't think I would be more than an hour and a half

5  in doing it.  I still think an hour and a half is about what it

6  would take.  This is an important witness.  We need him in

7  person unlike perhaps Mr. Reyes who we discussed yesterday.  I

8  need him in person.  I need him to be there.  It's dealing with

9  his affidavit, something that he signed.

10        And so my office, we'll defer to the Court on whatever

11  it wants to do in this regard but I am hoping that we don't have

12  motion practice and litigation practice here.  My office is

13  prepared to do what's necessary in that regard.

14        THE COURT:  All right.  I will hear next from Mr.

15  Teitelbaum and then from Mr. Cash.

16        MR. TEITELBAUM:  Good morning, Your Honor, Jay

17  Teitelbaum.  A couple of things; I would agree with Mr. Zipes

18  that he has attempted to proceed in good faith and move his

19  depositions along swiftly and had done so up until frankly the

20  Walter deposition.  There's where we sort of part ways a bit.

21        As I started to say yesterday, I was at the

22  deposition.  Chase used its efforts to get LPS to attend the

23  deposition for Mr. Walter to address the issues with respect to

24  the assignment, not an affidavit, the assignment of mortgage

25  which he executed.  We can -- we've ordered an expedited copy of

*In re Silvia Nuer - 3/18/10*                                          8

1   the transcript.  We should have it tomorrow or Monday and the

2   Court can see it.  Mr. Walter identified his signature,

3   identified the procedures pursuant to which he signed the

4   document and answered all of those questions, I believe without

5   any objection.

6          It is true that Mr. Cash did direct the witness not to

7   answer certain questions that went to the business practices of

8   LPS.  For example, the identity of LPS' clients, how LPS is

9   paid, how much it charges; things of that nature were asked.

10  And based on this Court's ruling yesterday with respect to the

11  scope of discovery, it was well beyond anything that is relevant

12  to this case and those questions were in point of fact asked by

13  both Mr. Zipes and Ms. Tirelli.

14         THE COURT:  Now pause please, Mr. Teitelbaum, because

15  I don't know whether that was -- first of all, of course, that

16  was before I ruled on additional information you would get or

17  what Ms. Tirelli would get but my ruling was on the extent to

18  which it would affect this client.  If there are general rules

19  that affected this client, this Debtor, that's not within the

20  scope of my ruling.

21         MR. TEITELBAUM:  Judge, I --

22         THE COURT:  So continue but don't proceed on an

23  erroneous premise, please.

24         MR. TEITELBAUM:  Thank you, Your Honor.  With respect

25  to your -- let me see if I can address my understanding of the

*In re Silvia Nuer - 3/18/10*                                              9

1   ruling because in fact that was one of the reasons I did ask the

2   follow-up yesterday that I did on the call because I did want to

3   understand the scope of the ruling in that it relates to this

4   client, in other words, Ms. Nuer's loan and the concern was

5   frankly, sort of a back door to get into the business practices

6   of both Chase and LPS that have nothing to do with the issues

7   that have been raised in pleadings before this Court.

8          THE COURT:  Well pause please, Mr. Teitelbaum.  For

9   the avoidance of doubt, my ruling was the business practices

10  that didn't have any affect on Ms. Nuer are not the kinds of

11  things for which you are going to have make further production.

12         MR. TEITELBAUM:  Thank you.

13         THE COURT:  But if there were business practices

14  applicable generally that did or could have born on her, then

15  they are producible.  That's the distinction I am making.

16         MR. TEITELBAUM:  That actually did or could have?

17         THE COURT:  Yes.

18         MR. TEITELBAUM:  Well --

19         THE COURT:  Now that's the distinction between Rule 26

20  discovery and admissibility in trial under Rules 401 and 402.

21         MR. TEITELBAUM:  Your Honor, I -- Rule -- as I

22  understood Rule 26, the discovery needs to relate to the claims

23  or defenses.  If there is no claim or defense made, for example,

24  with respect to fees charged or amounts due, it would seem

25  appropriate that the procedures relevant to those types of

*In re Silvia Nuer - 3/18/10*                    10

1   issues are not discoverable.

2          THE COURT:  That wasn't my ruling, Mr. Teitelbaum.

3          MR. TEITELBAUM:  I understand.  I am raising it now

4   because I was seeking clarification on it and again, would hope

5   to get clarification that if it's not at issue before this

6   Court, it's not appropriate discovery under Rule 26.

7          THE COURT:  That isn't the understanding that I have

8   acquired of Rule 26 discovery over the last 40 years, Mr.

9   Teitelbaum and certainly over the last 10 during which I have

10  been a judge.  We're going to deal with the LPS issues --

11         MR. TEITELBAUM:  May I (indiscernible).

12         THE COURT:  -- and stick with --

13         (Cross-talk.)

14         THE COURT:  No, you can't talk over me, Mr.

15  Teitelbaum.

16         MR. TEITELBAUM:  I'm sorry.

17         THE COURT:  We're going to deal with the LPS issue and

18  if you're looking for further clarification on my ruling

19  yesterday, we'll come back to that.

20         MR. TEITELBAUM:  Thank you.  The other point on LPS as

21  I understood what Mr. Zipes just said, his inquiry into the

22  actual underlying document is where LPS fits into the

23  transaction.  I would suggest, Your Honor, and I am going to

24  acknowledge that Chase does have a copy of this agreement which

25  is quite voluminous and is marked private, confidential and does

1    obligate it's -- WaMu is the party, Washington Mutual, not

2    Chase, obligate a party in receipt of a request for production,

3    to so advise LPS and allow LPS to seek an appropriate protective

4    order if necessary.

5          I don't think that's necessary.  If I understood what

6    Mr. Zipes is saying, he wants to know where LPS fits into the

7    transaction.  That's probably about two or three paragraphs in a

8    70 plus page document that describes the scope of services and I

9    would submit that either a redacted version or, you know, for

10   Mr. Zipes to review in confidence, would address his very

11   specific issue without getting into the private business

12   practices of LPS as to how it conducts its business.

13         THE COURT:  What kind of a competitive thread is the

14   United States Department of Justice?

15         MR. TEITELBAUM:  It is not the DOJ, Your Honor.  It's

16   the Debtor's attorney is going to see a copy of this and it

17   becomes a public document.

18         THE COURT:  All right.  And you think you can make a

19   Section 107 showing?

20         MR. TEITELBAUM:  Well, Your Honor, I -- it's LPS'

21   document.  I am going to leave that to them but I have made a

22   suggestion, Your Honor, that given what Mr. Zipes said, there

23   are probably two or three paragraphs within that document that

24   will answer that question.  And it seems that in good faith, we

25   should be able to agree to show those provisions and address his

*In re Silvia Nuer - 3/18/10*                    12

1    concerns and his questions.

2           One last point is Mr. Zipes noted that this is not a

3    huge case.  It is a very important and big case for Chase and I

4    want the Court to -- and Mr. Zipes to appreciate that and that

5    is why we are litigating this matter to the best ability that we

6    can and to the fullest extent that we can to protect and

7    preserve the rights of the client here.  It is a big case.  It's

8    an important case.  Parties are seeking sanctions against the

9    bank.  Parties are disclosing information to newspapers.

10   Articles are appearing in this -- about this case in the

11   newspapers.  It is very, very serious.

12          THE COURT:  All right.  Am I correct that this is a

13   contract between Chase and LPS?

14          MR. TEITELBAUM:  No, it is a contract dated 2004

15   between Loan Default Services, a predecessor to LPS and

16   Washington Mutual.  As the Court is aware, Washington Mutual

17   went to receivership and its assets were acquired by Chase.  And

18   Chase continued to utilize the services of LPS for heritage

19   Washington Mutual transactions of which this one.  This is not a

20   Chase transaction.

21          THE COURT:  I understand that but its Chase's role as

22   the successor to Washington Mutual.  I've gotten from either you

23   or from other litigants papers under oath or under Rule 11

24   authority that have said that Chase is the successor to

25   Washington Mutual.

*In re Silvia Nuer - 3/18/10*                                    13

1          MR. TEITELBAUM:  Chase under the contract acquired the

2    assets of Washington Mutual.  It is the servicer.  It is

3    proceeding under this 2004 agreement with LPS as the, to use the

4    word, the acquirer of the assets of Washington Mutual.  We have

5    the document, Your Honor.  Mr. Zipes, in fact, requested it last

6    night via email.  I have not yet responded.  I have just done so

7    on the record and I will do so formally, that the agreement

8    obligations us to inform Mr. Cash and LPS of the request and

9    provide him with an opportunity if appropriate to seek an

10   appropriate protective order.

11         Your Honor, if we were served with a subpoena, we may

12   or may not join on that but frankly, we have -- not a subpoena,

13   a document request -- we have not received that.  I'm not

14   standing on ceremony but I am advising the Court that the

15   contractual provisions of that agreement do obligate us to so

16   advise LPS of the request.

17         THE COURT:  All right.  Mr. Chase (sic)?

18         MR. CASH:  Mr. Cash, Your Honor?

19         THE COURT:  I'm sorry, Mr. Cash.

20         MR. CASH:  Okay.  Your Honor, first just for the

21   record, certainly we reserve any rights and objections we have

22   regarding jurisdiction and improper service.  Having said that,

23   Your Honor, under 45(c) --

24         THE COURT:  Pause.  Of course -- pause, Mr. Cash.  Of

25   course you have a reservation of rights but help me understand

*In re Silvia Nuer - 3/18/10*                                    14

1    the basis upon which you are doing that.  Where is your client

2    located?

3              MR. CASH:  Florida, Your Honor.

4              THE COURT:  Florida.

5              MR. CASH:  Your Honor, there's two problems; one, LPS

6    was not served with a subpoena.  The subpoena is for Scott

7    Walter specifically.  He is the man who signed the assignment.

8    Mr. Walter is a resident of Minnesota.  Under 45(c)(3)(A)(2)

9    when a non-party may -- I'm sorry -- a non --

10             THE COURT:  I know the rules about non-parties being

11   subject to subpoenas.  the issue is whether LPS and -- are you

12   also counsel for Mr. Walter?

13             MR. CASH:  I am, Your Honor.

14             THE COURT:  Okay.  Whether LPS and Mr. Walter are

15   going to make the United States Department of Justice, Mr.

16   Zipes' office, the United States Trustee, subpoena them.

17   Because if you're going to make them subpoena them, that's

18   waiving your legal rights as annoying as bush-league as I find a

19   technique of that character to be, and then I will simply tell

20   Mr. Zipes to get the US Marshals in the Southern District of

21   Florida and the District of Minnesota to put subpoenas on your

22   guys.  Is that what you want me to do?  Because Mr. Zipes, you

23   have the same ability to invoke the US Marshals that I do, don't

24   you?

25             MR. ZIPES:  Judge, we would certainly do the

*In re Silvia Nuer - 3/18/10*                              15

1   appropriate thing in that situation.

2           THE COURT:  All right.  So, Mr. Cash, do you want me

3   to tell Mr. Zipes that he's got to serve process and serve form

4   subpoenas?

5           MR. CASH:  Before we get to that, may I respond to

6   what we have done?

7           THE COURT:  No, first answer my questions.

8           MR. CASH:  Yes, Your Honor, I would like them to obey

9   the rules.

10          THE COURT:  All right.  Now continue.

11          MR. CASH:  At this point, Your Honor, LPS has not even

12  been purported to be served with a subpoena, only Mr. Walter.

13  When you look at the US Trustee subpoena, that's how it was

14  addressed, to Scott Walter, LPS Default Services, Inc.  Your

15  Honor, without proper service, despite the fact that it's a

16  violation of Rule 45(c)(3)(A)(2), we traveled to New York on our

17  own nickel to appear and get a deposition.  We did that

18  voluntarily.

19          Mr. Walter answered every question he was asked, every

20  question, about his execution of the assignment, about

21  identifying his signature, about what authority he had to sign

22  the document, about whether or not he reviewed anything in

23  signing the document, about how the document came to him and how

24  he came to sign it, about what his normal procedures were, about

25  policies and procedures; he answered every question.

*In re Silvia Nuer - 3/18/10*                                16

1       The only time it got dicey, Your Honor, is when it

2   extended far beyond the purpose we were there which was to

3   explain Scott Walter's signature on that document, how it came

4   to be there, his authority for doing so and his policies and

5   procedures for doing everything he did.   And when questions

6   started being asked about our client lists, our internal

7   policies and procedures, what fees LPS charges its clients -- we

8   don't have any interaction with the Debtor, Your Honor.   What

9   fees we charge our clients, bank clients, that's when I said

10  that that's confidential, its proprietary and we're not going to

11  answer those questions.   That's not what we were there for.

12      We in good faith, Your Honor, wanted to give the Court

13  all of the information it needed to be able to identify what

14  happened with the documents that are at issue.

15      THE COURT:   You gave him a direction to answer on

16  grounds other than privilege?

17      MR. CASH:   On confidentiality, yes, Your Honor.

18      THE COURT:   On a deposition you were defending in the

19  Southern District of New York?

20      MR. CASH:   Yes, Your Honor.

21      THE COURT:   That's unacceptable, Mr. Cash.

22      MR. CASH:   Your Honor, if information is proprietary

23  and confidential and then it's put in a public record like a

24  subpoena or like a deposition, there is no way to protect its

25  confidentiality any longer.   So at least it's my understanding

*In re Silvia Nuer - 3/18/10*                                    17

1   under the Federal Rules and every jurisdiction I've been in,

2   Your Honor, that one of the areas where you can instruct not to

3   answer is if the answer would disclose proprietary information.

4            THE COURT:  No, the appropriate way to do it is to put

5   it under a temporary confidentiality stip or order and then seek

6   rulings from the Court.  We don't --

7            MR. CASH:  I (indiscernible), Your Honor.

8            THE COURT:  We don't direct people not to answer on

9   grounds of relevance in this district.

10           MR. CASH:  Your Honor, I brought with me -- no, it

11  wasn't relevance, Your Honor, it was confidentiality.  I brought

12  with me to the deposition, Your Honor, the document that the US

13  Trustee says he needs to see despite the fact that it had not

14  been properly subpoenaed, I brought it.  And what I asked is can

15  we agree that this document will be kept confidential and any

16  testimony regarding this document will be confidential for this

17  deposition only, with everyone reserving their rights to declare

18  it non-confidential when we can get in front of the Court,

19  simply so that we can proceed and everyone can have access to

20  the document for this deposition only; that was declined on more

21  than one occasion because I said I am here, the witness is here,

22  the document's here.  I just don't want to waive confidentiality

23  by handing it over, so if we can have that agreement we can use

24  the document.  That was declined, Your Honor.

25           So I think considering that we voluntarily appeared in

*In re Silvia Nuer - 3/18/10*                                    18

1   a case where we are a non-party, gone more than 100 miles from

2   where we live which is where the depositions are supposed to be

3   taken, we went above and beyond the call of duty to be

4   cooperative here.  And I think the transcript will bear that

5   out.

6            THE COURT:  All right.  Mr. Zipes, reply?

7            MR. ZIPES:  Yes, Judge, I think the transcript will

8   speak for itself and I won't get into what took place.  I just

9   want to inject a few points where he is -- one is there was no

10  response by Mr. Cash about my statements about how the subpoena

11  was -- came to be served on LPS.  He's not contesting that we

12  had an agreement and he's basically backing out of that

13  agreement.  But, Judge, again he also --

14           MR. CASH:  I take objection to that.

15           MR. ZIPES:  Excuse me, I gave you the opportunity to

16  talk.

17           He also is not contesting that LPS was served with a

18  subpoena at the deposition itself.  He's claiming that it's

19  defective in some way but again, Judge, there are Rules of

20  Evidence obviously, if he thinks that there is a problem with

21  the subpoena.

22           The good faith aspect of trying to work this out, I

23  did try to work out something.  Mr. Teitelbaum is making the

24  suggestion.  If you look at Mr. Cash's letter that he sent to

25  you with the attachment -- with the attached letter that he had

*In re Silvia Nuer - 3/18/10*                                    19

1   sent to me -- by the way he didn't send my letter with that --

2   but right at the end there's a handwritten notation at the end

3   of his letter.  It says, "Greg, I wrote this before we talked. I

4   am looking into a more limited production option now."  That was

5   the last I heard from Mr. Cook (sic) about a more limited

6   production that would just deal with the issues in this case.

7   Again, I haven't seen the agreement, so I don't know if we can

8   limit it in that way.  I was willing to work with him in that

9   way.

10        The only time that it came up was at the deposition

11  and frankly, Judge, I don't know about you -- never mind.  I am

12  not going to take a document that I have never seen before and

13  ask questions about it at a deposition and that was the

14  unacceptable aspect of that to me.  It wasn't necessarily that

15  we can't work this out.

16        But, Judge, the idea of being sandbagged here is at

17  the forefront.  We had an agreement.  That agreement was not

18  abided by.  If games are being played here and we have to do it

19  the way this Court suggested, we'll obviously do that.  But I

20  actually think we have the subpoena served on LPS and LPS can

21  choose to ignore that subpoena on whatever grounds it thinks is

22  appropriate and my office has its rights in that regard.

23        But the overall point here is we want to get to the

24  finish line and get discovery done.  And I am not going to sit

25  through a deposition where the Rules of Evidence are not in play

*In re Silvia Nuer - 3/18/10*                    20

1   and where Mr. Cash decides that questions are not going to be

2   answered.  I, by the way, did not ask any questions about dollar

3   amounts and as Mr. Teitelbaum and Mr. Cash know, because I

4   discussed it with them, my office is not interested in the

5   dollar amounts that LPS is collecting from each client.

6          Judge, I have a basic question here.  I know that

7   Chase is a client of LPS but I think Steven J. Baum may also be

8   a client and I wasn't allowed to ask that question.  I don't

9   know.  That's the purpose of discovery.  Where need to figure

10  out where LPS fits into this.  Mr. Walter answered certain

11  questions and Judge, I wouldn't be standing on ceremony today if

12  I thought that notwithstanding everything that happened at that

13  deposition, I got all of the questions that I asked answered.

14         The fact here is that I didn't get basic answers and I

15  need him in a deposition.  If that's what this Court suggests, I

16  need to have that done in Minnesota or Florida, my office will

17  do that.  But we do have Steven J. Baum coming in for a

18  deposition.  I do intend to ask them if, for example, LPS hasn't

19  -- actually has a business in New York, because my understanding

20  is that it's a publicly traded company, I don't know the answer

21  to that.  But Mr. Cash is on the record right now and we'll just

22  find out the answers to all of these questions.

23         So I defer to the Court either if we want to say that

24  we should start de novo and serve another subpoena, we'll do

25  that.  If the Court wants to direct me to file a motion to

*In re Silvia Nuer - 3/18/10*                                    21

1    compel, I will do that.  And if -- but I can't have a deposition

2    of Mr. Walter when Mr. Cash is creating the rules as we go.

3    You've heard that he doesn't accept the threshold issue of

4    jurisdiction of the Court and that's something -- that's a

5    threshold issue.  That's not a question of relevance or anything

6    else.  That's a threshold issue.  If he's not willing to concede

7    that, we've got a bigger issue and my office has to deal with

8    that accordingly.

9            I was going to propose today that if he adheres to his

10   position, that my office file a motion to compel based upon the

11   subpoenas, that my office would have to take discovery of LPS'

12   counsel who agreed to this arrangement and service of the

13   subpoena.  I would have to take the deposition of Mr. Teitelbaum

14   as well because he was involved with this whole arrangement and

15   he was quiet today but I asked him to pipe in about whether that

16   was an agreement as well.  And fair is fair, if someone wants to

17   question me as well on this, it's their prerogative, as well.

18           But we need to get to the finish line here.  My office

19   is -- when I said it's a small case, it's an extremely important

20   case, it's a small case in the sense that I think that it

21   shouldn't be requiring all of this time and energy in getting

22   basic information.  And so, Judge, we -- at this point, I have

23   nothing further to say.

24           THE COURT:  All right.

25           MR. CASH:  Your Honor, this is Mike Cash.

*In re Silvia Nuer - 3/18/10*                                    22

1          THE COURT:  Yes, Mr. Cash?

2          MR. TEITELBAUM:  Before we do, Your Honor, may I,

3   because Mr. Zipes did correctly point out, I did omit to respond

4   to a point regarding my role, if any, in this agreement.

5          THE COURT:  Mr. Cash, are you willing to yield to Mr.

6   Teitelbaum?

7          MR. CASH:  Absolutely, Your Honor.

8          MR. TEITELBAUM:  Your Honor, we in court advised the

9   Court that we were using our best effort to have LPS appear for

10  a deposition.  That's what we did.  Once LPS advised us that it

11  was engaging outside counsel, and I have an email to this

12  effect, I advised Mr. Zipes he had to deal with outside counsel.

13  I was not involved in any agreement or deal or service of a

14  subpoena by email or otherwise in any manner, shape or form with

15  LPS.  Chase did what it said it would do.  Mr. Walter appeared,

16  answered questions as Mr. Cash said, regarding the document.

17  That was the extent of our involvement.

18         MR. CASH:  Your Honor, Mike Cash.

19         THE COURT:  Yes, sir.

20         MR. CASH:  We did not agree and I am saying this

21  without reservation, we never agreed to produce our document.

22  What we did agree to, what we did agree to, is that for the

23  limited purpose of answering questions about the execution of

24  that one document, we would voluntarily come to New York and we

25  honored that agreement.

1          What we found when we got there and I will -- and Mr.

2     Zipes is correct to be completely fair to him, he did not ask

3     any questions about fees or how they're charged or who our

4     customer list is.  That came from the Debtor's counsel and I

5     think there's an underlying reason for that.  But we never

6     agreed to appear voluntarily to have our business practices

7     dissected in a case where that is not an issue.

8          So, if that's going to be the scope that they're going

9     to try to go into, Your Honor, then we are going to stand on the

10    formality of Rule 45(c)(3)(A)(2) which means that any subpoena

11    served upon us that purports to require us to go outside of more

12    than 100 miles from our place of business and Mr. Walter in

13    particular, is invalid and it just is.

14         Now what I am still willing to do and perhaps the

15    Court can direct me on the best way to do this because I don't

16    want to do it the way that the Court would consider improper, is

17    to file a motion requesting that the scope of the deposition be

18    limited to the issues surrounding the signature of this

19    document, the authority to sign this document, because if we

20    don't have to go into our business practices, which are

21    confidential in a highly competitive market, if we don't have to

22    disclose all of that, Your Honor, I will come back to New York.

23    I will bring Mr. Walter back to New York.  I will not require

24    the US Trustee to jump through all of these hoops and we will

25    answer again every question about the document, how it came to

*In re Silvia Nuer - 3/18/10*                                    24

1  be signed by Mr. Walter, what he reviewed, what he believed to

2  be true, why he believed it to be true, everything about this

3  document, which is my understanding, Your Honor, of what's in

4  issue, and his authority to sign it.  I am happy to do that and

5  will do that on our nickel again.

6        But what I won't do voluntarily, at least, Your Honor,

7  is to expose my client in a case they're not a party in to

8  discovery deposition about their confidential business

9  practices.  I just think it's inappropriate.  And so if the

10  Court can give me guidance in how the Court would best want that

11  issue raised, perhaps I can do it that way and we'll come back

12  up.

13        MR. ZIPES:  And, Judge, just to try to be helpful, I

14  would agree for the purposes of this to reasonable limitations.

15  As Mr. Teitelbaum knows, we do sometimes fight over the edges of

16  relevance here.  I think my office and certainly the Debtor

17  would take a more expansive view on that but that's something I

18  believe we have worked out in the past in depositions.  I do

19  appreciate Mr. Cash's statement and reservation of rights.

20        I do think in addition to what he requested, we also

21  would want to just hear who the client is here and whether

22  Steven J. Baum is also a client.  We have -- if the agreement --

23  I would actually agree to and accept the representations of the

24  party that, for the purposes of this at least initially, that

25  there can be a limited turnover of relevant portions of the

*In re Silvia Nuer - 3/18/10*                            25

1    documents if they deem appropriate for this and we'll get this

2    taken care of in an expeditious way.  I can't speak for the

3    Debtor's counsel on this and -- but I am willing to do that and

4    this is in order to move this process along.

5            MR. CASH:  And if we have Debtor's counsel -- but we

6    can get everybody on board, Your Honor, we're happy to do it and

7    like I say, we'll come back up and give another deposition.

8    It's just where it got dicey is when it got outside the realm of

9    this document and hits case and started being broad general

10   questions about LPS.

11           And so if maybe we can -- maybe rather than take up

12   the Court's time, we could have a conference call maybe later

13   today among the four of us, see if we can agree to some scope of

14   the deposition and then move forward.  But if we can't, perhaps

15   -- if we couldn't get that worked out, perhaps if the Court

16   would entertain a motion to limit the scope of the deposition or

17   -- I'm not sure how you would want that raised, Your Honor and I

18   guess that's my question because I don't want to do it in a way

19   that would be other than the Court would want.

20           THE COURT:  All right.  Here's what we're going to do,

21   folks.  And let me say -- I am going to tell you what I am going

22   to do and then I am going to explain to you the basis for the

23   exercise of my discretion in this regard.  And by way of

24   preface, I am going to say that insistence on subpoenas as we

25   have here on production of documents runs contrary to the custom

*In re Silvia Nuer - 3/18/10* 26

1  in this district where lawyers are expected to cooperate with

2  each other and to minimize expenses to their respective clients

3  and to act in a way more gentlemanly than I have seen here.

4         With that said, parties do have the rights to stand on

5  their legal entitlements as distasteful as I find conduct of

6  that character to be.  And with respect to the document, which I

7  gather is undisputedly a document held by Lender Processing

8  Services, Mr. Cash, you are to tell Mr. Zipes if you continue to

9  stand on your right and if you do, Mr. Zipes, you are to find

10  out from Mr. Cash and if Mr. Cash is unwilling to give you this

11  information, you tell me, the location of LPS in Florida.  You

12  are authorized and directed to get a subpoena issued out of the

13  Southern District of Florida Bankruptcy Court directing --

14  authorizing and directing production of that document under a

15  subpoena duces tecum.  That's out of the Southern District of

16  Florida or wherever in Florida LPS is located.

17         Then I am willing now with my jurisdiction over the

18  underlying case that that document will be produced in the first

19  instance under an attorneys eyes only basis.  The producer of

20  the document if it wants to continue attorneys eyes only basis

21  is to submit one or more affidavits or declarations by people

22  knowledgeable of the facts establishing the basis for keeping it

23  confidential under Section 107 of the Code.  I think it's 107.

24  I will pull out my book if there's any doubt.

25         MR. ZIPES:  107.

*In re Silvia Nuer - 3/18/10*                    27

1          THE COURT:  It's 107.  Until and unless I order

2     otherwise, the document will be made available on an attorneys

3     eyes only basis only.  But we're talking about the total

4     document, not parts of it.

5          The scope of deposition testimony presents different

6     issues and will be dealt with differently.  One or more of you

7     is to provide to me at your earliest reasonable convenience a

8     transcript of the deposition which has engendered so much

9     controversy.  Within one week after production of that document,

10    and whoever does it is going to do it on a letter of

11    transmittal, advising all parties that the transcript has been

12    submitted, any claims to confidentiality in that deposition

13    shall be supported by affidavit or declaration explaining why

14    that is perceived or argued to be confidential.

15         With respect to a deposition that was taken in the

16    Southern District of New York, I of course as both the forum

17    court and the outpost court for the deposition will determine

18    the issues relating to directions not to answer at that

19    deposition.  However, I will not make those determinations

20    without giving people an opportunity to establish by affidavit

21    why claims of confidentiality were made and I will need -- and

22    here we're going to go a little more formal than we sometimes do

23    -- case law authority, I prefer brief but I will accept

24    memorandum, that authorizes -- that explains the basis for

25    directing a client not to answer on grounds other than privilege

*In re Silvia Nuer - 3/18/10*                                    28

1    in the Southern District of New York.

2             I am not deciding any issues of confidentiality today.

3    I am not deciding the propriety of the directions not to answer

4    today except to express my threshold concerns as to the

5    impropriety of such a direction but I am certainly going to keep

6    an open mind on it.  And these rulings, except to the extent I

7    have ordered it, are without prejudice to your further rights.

8             If you want to stand on your rights to make any

9    further deposition of Walters take place in the District of

10   Minnesota, that is of course also your right, Mr. Cash.

11            I heard you saying that with some resolution of the

12   issues, you might still bring him back to New York but it wasn't

13   clear to me as to whether that resolution was to be to your

14   satisfaction or to mine because ultimately he will testify in

15   accordance with my rulings, at least with respect to the

16   deposition that was already taken.  And if that has to continue

17   in the District of Minnesota, then Mr. Zipes, you'll have to do

18   it in the District of Minnesota.  And Mr. Zipes, if he insists

19   on a subpoena to Mr. Walters as contrasted to LPS, then you'll

20   lay a subpoena on him there issued out of the District of

21   Minnesota under the rules.

22            All right.  Are we done, folks?

23            MR. TEITELBAUM:  Your Honor, it's Jay Teitelbaum, just

24   one or two quick, if I may, clarifications.  The direction for

25   attorneys eyes only, I just want to be clear about this.  Within

*In re Silvia Nuer - 3/18/10*                                        29

1   24 hours after Mr. Walters deposition, my client's

2   communications department was contacted by The Wall Street

3   Journal regarding that deposition.  I just would like the Court

4   to be very clear that it's not only the document, it's the

5   content.  It's all discussions regarding the document are

6   attorneys eyes only and should not be disclosed until further

7   order of this court.

8           THE COURT:  I would have thought that that's not

9   debatable but if somebody wants to be heard on that, I will

10  allow that.

11          (No response.)

12          THE COURT:  Of course.

13          MR. TEITELBAUM:  Thank you, Your Honor.

14          THE COURT:  I mainly see this in my commercial cases

15  where hedge funds are trying to use the press but this case is

16  to be tried before me.  It is not to be tried before the press.

17  I am not ordering you not to communicate with the press but what

18  I am doing is saying that anything that is confidential by

19  reason of a confidentiality order or stip must be rigorously

20  protected and just as a document cannot be given to the press,

21  its content cannot be paraphrased to the press or to anybody's

22  Aunt Molly or anybody beyond the scope of people who are

23  authorized to get it.  And the same is true with respect to

24  deposition testimony concerning that document.  I think this is

25  just a more extensive way of fully agreeing with you, Mr.

1    Teitelbaum.

2            MR. TEITELBAUM:  Thank you.  Again, I apologize for

3    raising it.  It's only because of the past history in the case.

4            If I may just very briefly to go back to Your Honor's

5    invitation I think earlier on in the call just to deal very

6    quickly with the ruling from yesterday.  I again would ask the

7    Court's indulgence, what we would ask the Court to consider is

8    that there was an agreement or is in place an agreement with the

9    UST's office as to the scope of the discovery in this case which

10   was the facts and circumstances of the Walter and Garvis

11   assignments and how the motion for relief was prepared,

12   generally, the standing of the bank as servicer for the trust to

13   proceed.

14           All other objections to the motion have been withdrawn

15   and are not before the Court and we would ask that the ruling be

16   clarified, Your Honor, to just -- for the purposes of going

17   forward, limit the discovery to those issues so that we can

18   literally move forward.

19           I will be frank.  I have -- I tried last night to move

20   this forward even after Your Honor's ruling about Mr. Reyes'

21   telephonic deposition.  I contacted Mr. Reyes immediately.  I

22   found out he would, in fact, be in New York next week on

23   business.  He was tied up two days fully.  I asked that he stay

24   in New York the third day.  I immediately contacted the parties

25   and Ms. Tirelli advises me she is not available.

*In re Silvia Nuer - 3/18/10*                    31

1      So, you know, I am trying to proceed in good faith.  I

2   have a guy that just came -- is coming 3,000 miles.  I offered

3   to make him available live and if people aren't available, they

4   aren't available.  I am just concerned and I don't want to have

5   to come back to the Court with these types of issues.  And since

6   we're all here, I would ask for that clarification if possible.

7      THE COURT:  Let me clarify it in this way, Mr.

8   Teitelbaum.  If and to the extent which you folks can make

9   deals, which of course is my preference, I expect parties once

10   they make the deals to honor them.  If anybody reasonably

11   believes in good faith that he or she needs something beyond a

12   deal and if it's a new request, not renegotiating the deal and I

13   have some trouble seeing how somebody who just made a deal can

14   then do this, but maybe somebody else might have a need, the

15   purpose of the matters before me is to address the issues

16   originally raised by Ms. Tirelli and the issues raised by the US

17   Trustee.  I am not engaging in a freestanding investigation of

18   the mortgage collection industry.

19      With that said, anything that bears on the issues

20   before me or might lead to such under the usual Rule 26

21   standards, is admissible.  The starting point for that inquiry

22   is the specifics of what Chase and/or the Baum firm did in its

23   litigation against Ms. Nuer.  To the extent practices in the

24   industry or relations between various parties impacted upon Ms.

25   Nuer, they are fair game for discovery.  If they're wholly

*In re Silvia Nuer - 3/18/10*                                          32

1   unrelated to anything affecting Ms. Nuer, my ruling now subject

2   to some showing of relevance of which I am now unaware, is that

3   it's not discoverable.

4          To the extent there is an overall pattern or practice

5   that did bear on Ms. Nuer, most obviously the way the Baum firm

6   does things but possibly in other areas, I will consider that on

7   the facts, but if it affects Ms. Nuer, the party who is opposing

8   it is going to have to row upstream to show me that it's not

9   relevant.

10         Is that helpful, Mr. Teitelbaum?

11         MR. TEITELBAUM:  Yes, it is.  Thank you.

12         THE COURT:  All right.

13         MR. CASH:  Your Honor, Mike Cash.  One more question?

14         THE COURT:  Yes, sir.

15         MR. CASH:  If we are able to work out a scope of the

16  deposition -- and I'm hoping that we could do it this afternoon

17  or tomorrow, if we are able to work that out and work out

18  another date and I think given the Court's attorneys eyes only,

19  I don't think the document is going to be an issue any longer,

20  is there -- would the Court like us to memorialize that?  Would

21  you like us to put it in an order?  Do you still want a brief or

22  memorandum supporting the instructing a client not to answer?  I

23  guess I am trying to find out what, if anything, becomes moot if

24  we are able to work out the logistics of this deposition?

25         THE COURT:  If you can get a full deal, Mr. Cash,

1   nothing would please me more than for me to avoid further

2   judicial resources expenditures on this dispute.  But I think

3   that given the track record of proceedings before me in this

4   matter, most of all of which preceded your presence here, I

5   think I need to have it papered.

6          MR. CASH:  Okay.  And I think listening to the US

7   Trustee and what they're interested in and what -- I am

8   optimistic at least as far as the US Trustee is concerned, I

9   haven't really talked to Ms. Tirelli much, but I am optimistic

10  and I think the US Trustee and I are much, much closer to being

11  on the same page than not being.  So maybe we can have a call

12  this afternoon and everyone can see if we can get there.  But we

13  will pay for it, Your Honor.

14         THE COURT:  All right.  Very well.  One other thing I

15  should say by way of clarification --

16         MR. CASH:  Yes, sir.

17         THE COURT:  -- it is at least possible that Ms.

18  Tirelli's and Mr. Zipes' concerns are not wholly congruent.

19  When I said what I said about focusing on Ms. Nuer it was

20  principally from the perspective of any discovery that Ms.

21  Tirelli might be looking for.

22         MR. CASH:  Correct.

23         THE COURT:  I don't know the exact scope of Mr. Zipes'

24  inquiry or the institutional concerns that the United States

25  government might be raising in this but what I said about scope

*In re Silvia Nuer - 3/18/10* 34

1  has to be refined to more precisely slice and dice it.  So to

2  say that I didn't understand Mr. Zipes to be investigating

3  everything in the mortgage industry across the country but

4  within the scope of matters as to which Mr. Zipes' office

5  reasonably is seeking discovery, I have difficulty seeing how

6  anything he is looking for isn't appropriate for disclosure.

7         If there is something where somebody thinks Mr. Zipes

8  is overreaching, then you're going to have to more precisely

9  articulate it to me and I will consider it on its particular

10  facts.

11         MR. CASH:  And much of the questioning from Mr. Zipes

12  frankly was not and I think the vast majority of those questions

13  were answered without objection.  But I think we can work

14  through that, Your Honor.

15         MR. TEITELBAUM:  And Jay Teitelbaum here, Your Honor.

16  As far as that goes, as we have said a couple of times, as Mr.

17  Zipes said and Chase have an agreement in principle as to the

18  scope, so I don't believe that there's any issue on that at all.

19         THE COURT:  Very well.

20         MR. TEITELBAUM:  Your Honor, one last quick question

21  on the LPS piece which is -- I mentioned that Mr. Zipes had

22  asked Chase to produce the agreement.  I am just going to

23  suggest that I am going to allow LPS and Mr. Zipes to work that

24  out and that we not be compelled at this point to do something

25  which would necessarily undercut or backdoor what the Court has

1   ruled on today.

2          THE COURT:  All right.  So you are going to not

3   produce it without prejudice to something down the road.

4          MR. TEITELBAUM:  Well, Your Honor, I think that I

5   would allow -- I think it makes sense to allow LPS and Mr. Zipes

6   to try to work that out and to the extent they do it, releases

7   us of our obligation to produce the document.

8          THE COURT:  It temporarily is so relieved; yes.  It's

9   obvious that you don't want to step on their toes in seeing if

10  they can work out something consensual.  With that said, I mean

11  if you have possession of the document, it's at least seemingly

12  subject to production.  It would be no less attorneys eyes only

13  if you produced it than if LPS did.  But I think the sensible

14  thing to do is to say that for now you don't have to produce it.

15  We're going to let Mr. Cash and Mr. Zipes do their thing and

16  then everybody's rights will be reserved.  If there is some need

17  to ask you to produce your copy, which unless it has markings on

18  it, would at least seemingly be the exact same thing as what LPS

19  would be producing.

20         MR. TEITELBAUM:  Thank you, Your Honor.

21         THE COURT:  All right.

22         MR. CASH:  And, I guess, Your Honor, I hate to take up

23  your conference call to do this but with everybody on the phone,

24  I was wondering if there's a time when we could arrange or if

25  someone could call me and arrange a conference call this

*In re Silvia Nuer - 3/18/10*                                              36

1   afternoon, I am available.

2           MR. ZIPES:  Well I am available, as well.  We could

3   work that out off the line.  Judge --

4           MR. TEITELBAUM:  The Court can drop off the call if

5   you would like because this was originated by me, so we can work

6   that out without taking up the Court's time.

7           THE COURT:  As long as I as the Court can drop off, I

8   don't care but I thought I heard Mr. Zipes saying he wants to

9   raise one other thing with me.

10          MR. ZIPES:  Oh, Judge, simply this that my office does

11  want discovery to end on a relatively expedited basis here and

12  we would actually suggest, I think we'll have all discovery done

13  in this case by mid-April at the absolute latest, assuming

14  there's no litigation involving LPS and if so, that may have to

15  change.  But assuming we work everything out with LPS, I think

16  we'll be done with discovery by mid-April and I would suggest

17  maybe a conference with the Court just to discuss -- for

18  example, we have to go to an evidentiary hearing at that point,

19  how that will be set up and how that will be cued up.

20          THE COURT:  Well contact Ms. Blum to see if there is a

21  date at which all concerned can be there for that.  If you're

22  only talking about a conference, I would have little doubt that

23  we could shoehorn it in, even if before or after traditional

24  business hours.

25          The problem is, as you may know, Mr. Zipes, that there

1   are a lot of things going on in Lyondell Chemical, Kemptura

2   (ph.), General Motors and some of the medium-sized cases and

3   evidentiary hearing time is going to be tough to get.

4           MR. ZIPES:  I understand, Your Honor, completely.

5           THE COURT:  Okay.

6           MR. ZIPES:  Thank you very much.

7           THE COURT:  Very well.  Have a good day.  We're

8   adjourned.

9                   (Matter concluded)

10                     - o0o -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION

I, Linda Ferrara, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated:  March 22, 2010

_____
Signature of Approved Transcriber