UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------

*In re:*                              Case No. 08-14106 *(reg)*
          SILVIA NUER,                New York, New York
                          *Debtor.*   March 17, 2010

-------------------------------------------------

CHAP 7 MATTER - TRANSCRIPT RE TELEPHONE CONFERENCE RE
DISCOVERY DISPUTE; MOTION FOR PROTECTIVE ORDER PURSUANT TO
SECTION 105 AND BANKRUPTCY RULE 7026(C)
BEFORE THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

A P P E A R A N C E S :

*For Debtor*                    LINDA M. TIRELLI, ESQ.
                                202 Mamaroneck Avenue, 3rd Fl.
                                White Plains, New York 10601
                                (914) 946-0860; (914) 946-0870


*For J.P. Morgan:*              JAY TEITELBAUM, ESQ.
                                Teitelbaum & Baskin, LLP
                                3 Barker Avenue, 3rd Floor
                                White Plains, New York 10601-1509
                                (914) 437-7670; (914) 437-7672 fax


*For David Kittay,*             MELISSA LOUISE STEINBERG, ESQ.
*Chapter 7 Trustee:*            Kittay & Gershfeld, PC
                                100 White Plains Road, 2nd Floor
                                Tarrytown, New York 10591
                                (914) 332-8000; (914) 332-8001


*For the UST Office:*           GREG MICHAEL ZIPES, ESQ.
                                33 Whitehall Street
                                New York, New York 10004-2112
                                (212) 510-0500


*Transcription Service:*        A-1 Transcripts
                                A1@Court-Transcripts.net


*Proceedings recorded by electronic sound recording.*
*Transcript produced by transcription service.*

*In re Silvia Nuer - 3/17/10*                                                    2

1          THE COURT:  Just a minute, please.

2          MR. CASH:  This is Mike Cash.

3          THE COURT:  All right.  Just a minute.  I have Mr.

4    Cash and was it Ms. Tirelli?

5          MS. TIRELLI:  Yes.

6          THE COURT:  All right.

7          MS. TIRELLI:  Yes, Judge, this is Linda Tirelli.

8          THE COURT:  All right.  Do I have Mr. Teitelbaum?

9          MR. TEITELBAUM:  Yes, Your Honor, Jay Teitelbaum,

10   attorney for Chase is on the line.

11         THE COURT:  All right.

12         MS. STEINBERG:  And, Your Honor, Melissa Steinberg on

13   behalf of the Trustee.

14         THE COURT:  All right, Ms. Steinberg.  And I have Mr.

15   Zipes in my courtroom with me.  Anybody else on the call?

16         MR. TEITELBAUM:  Your Honor, this is Jay Teitelbaum.

17   In my office is my partner Ron Baskin.

18         THE COURT:  All right.  Now I am getting background

19   noise in the back.

20         MR. CASH:  Your Honor, it's probably me.  This is Mike

21   Cash.  I am in New Orleans with my daughter.  It's my birthday.

22   I had literally less than 24 hours notice that I was going to be

23   involved in this.  We are not a party and certainly by

24   participating, we do not object waive any objection to

25   jurisdiction but I am going to do my best on my cell phone,

*In re Silvia Nuer - 3/17/10*                                           3

1    literally in the French Quarter in New Orleans with my daughter

2    for my birthday.

3           THE COURT:  Well, all right.  We're acting under a

4    case management order.  You can have whatever reservations of

5    rights you want but you're a party to a discovery dispute and

6    under my case management order, the parties to discovery

7    disputes proceed by telephone.

8           Mr. Cash, I need you to wrap your hand around your

9    cell phone or something, so I don't get background noise and to

10   try to shelter it when you're speaking.

11          Mr. Teitelbaum, I -- well, we can't proceed this way.

12   There's too much noise in the background.

13          MR. TEITELBAUM:  Keep it on mute until you're going to

14   speak.

15          THE COURT:  I'm sorry?

16          MR. TEITELBAUM:  If the cell phone goes on mute until

17   Mr. Cash has to speak that should work, Your Honor.

18          THE COURT:  All right.  Can you mute your cell phone,

19   Mr. Cash?

20          MR. CASH:  Yes, I am really not sure how to do that

21   without being sure of not hanging up on Your Honor, so I am

22   going to try cover it as much as I can.

23          THE COURT:  All right.  Well I guess another option we

24   have is for me to have a separate call with you dealing with Mr.

25   Zipes' concerns vis-a-vis your compliance.  Mr. Zipes is that

*In re Silvia Nuer - 3/17/10*                                    4

1    acceptable to you?

2              MR. ZIPES:  That's fine, Your Honor.

3              THE COURT:  All right.  Mr. Cash, we will call you

4    back when we deal with Mr. Teitelbaum and Ms. Tirelli's

5    controversy but I can't have the kind of level of disturbance

6    that I have on my call now by reason of the background noise in

7    your situation.

8              MR. CASH:  I understand, Your Honor, and I apologize

9    but like I say, we are not even --

10             THE COURT:  Mr. Cash, forgive me.

11             MR. CASH:  -- a party to this case (indiscernible)

12   over us.

13             THE COURT:  Mr. Cash and forgive me, I am going to

14   speak very slowly and softly.

15             MR. CASH:  Okay.

16             THE COURT:  And I won't raise my voice again.

17             MR. CASH:  Okay.

18             THE COURT:  But I don't care whether or not you are a

19   party.  You have at least arguably evidence relevant in this

20   case and you will meet such discovery obligations as I determine

21   whether or not you are a party.

22             MR. CASH:  With all due respect, Your Honor, I do not

23   believe that this court has jurisdiction over my client who is

24   not a resident of the southern district and is not a party to

25   this case and is not --

*In re Silvia Nuer - 3/17/10*                    5

1          THE COURT:  I will be the judge --

2          MR. CASH:  -- (indiscernible).

3          THE COURT:  I will be the judge of that and if you

4    don't like it, you can take it to an appellate court with

5    appropriate jurisdiction.

6          MR. CASH:  Fair enough, Your Honor.

7          THE COURT:  All right.  Now -- I now have quiet on my

8    line.

9          Mr. Teitelbaum, would you please explain to me why in

10   the light of my case management order I have a full motion for a

11   protective order from you which says in baby talk that discovery

12   disputes and protective order matters are supposed to be

13   attended to by a conference call?

14         MR. TEITELBAUM:  Your Honor, I apologize.  I am still

15   getting some noise.  I am not sure if Mr. Cash is still on the

16   line.

17         MR. CASH:  No, I will get off the line if I am causing

18   a problem.  So I will wait for someone to get back with me and

19   I'll drop off the line.

20         THE COURT:  Thank you.

21         (Mr. Cash is excused from conference call.)

22         THE COURT:  All right.

23         MR. TEITELBAUM:  Your Honor, this is Jay Teitelbaum.

24   I am not sure I understood Your Honor's comment or question

25   about why this matter should be by conference call in that we

*In re Silvia Nuer - 3/17/10*                              6

1   were prepared to appear in person and I thought it was either

2   the request or the suggestion of chambers that the call be

3   conducted telephonically.  I just want to be clear, we were

4   prepared to be there in chambers.

5           THE COURT:  You have read my case management order;

6   haven't you, Mr. Teitelbaum?

7           MR. TEITELBAUM:  I have, Your Honor.  We filed this

8   motion following an attempt to resolve discovery issues with Ms.

9   Tirelli and Mr. Zipes concerning the ongoing issue before this

10  Court with respect to the Nuer case in the matter of the

11  sanctions request against Chase.  As reflected in the motion,

12  Your Honor, we actually believe that we've reached agreement

13  with the -- in principle with the US Trustee's Office as to

14  discovery that would proceed in connection with the ongoing

15  matter.

16          We attempted, Your Honor, to discuss this with Ms.

17  Tirelli and reach similar accord with her on the scope of

18  discovery as set forth in the motion.  And Ms. Tirelli said that

19  she was not in a position to agree to limit discovery in any

20  manner, shape or form and that we therefore stated to her that

21  we would seek an appropriate motion, by appropriate motion, a

22  protective order of this Court and we then -- we laid out, Your

23  Honor, in our pleading the scope of the issues that were in

24  dispute.

25          Among other things, Your Honor, we believed that the

*In re Silvia Nuer - 3/17/10*                                          7

1    discovery request in connection with both depositions and

2    documents really aren't at issue, frankly, because we've

3    essentially produced everything in response to prior discovery

4    requests, so that there's really not a dispute over additional

5    document production, again because the discovery request that's

6    currently before the parties and this court is virtually

7    identical to the discovery request that was served at the early

8    stages of this matter.  And the documents have been produced by

9    Chase.

10            And in point of fact, to the extent that we continue

11   to obtain additional documents, we've produced them.  And to the

12   extent that additional requests are made at depositions for the

13   production of documents, we've produced additional documents.

14            So the documents really aren't at issue.  The issue

15   is, Your Honor, with respect to depositions and frankly the

16   scope of discovery and I don't want to speak -- well let me just

17   state that to date, Chase has produced about 1,400 pages of

18   documents in response to requests.

19            We have produced witnesses including Mr. Ferndon.  We

20   have produced Ms. Garvis.  We have agreed on a date for the

21   production of the Baum firm which is actually another piece of

22   this.  We understand -- I think all of the parties are now in

23   agreement that the Court's prior ruling that discovery or

24   deposition be conducted by the 19th got fouled up because of the

25   storm and different scheduling problems.  And I don't think

*In re Silvia Nuer - 3/17/10*                                      8

1   there's any dispute that the parties recognize that they need

2   some additional time, hopefully by the end of this month to

3   complete depositions but that was a little bit taken out of our

4   hands by virtue of the events of the past week with all of the

5   weather.  People just could not travel, could not get into New

6   York.

7           But the Baum firm is scheduled for deposition at my --

8   on the 24th.  We have Mr. Renaldo Reyes, who is at Deutsche

9   Bank, who is available for a deposition.  We asked that he --

10  his deposition at least in the beginning be conducted

11  telephonically because we believe that his deposition would be

12  limited to essentially authenticating a few documents that were

13  produced by Deutsche Bank and undisputed facts.  Again, not to

14  speak for Mr. Zipes but Mr. Zipes was in agreement that that

15  made sense since Mr. Reyes is located in California.

16          We've even suggested that if a telephonic deposition

17  is unproductive or doesn't work for whatever reason, that -- you

18  know, arrangements can be made to bring him to New York but at

19  least in the first instance, it did make some sense to try to do

20  it telephonically.

21          THE COURT:  Mr. Teitelbaum, I've waited and waited

22  before interrupting you.  I asked a very, very simply question

23  and I got a very, very long answer; the question being why when

24  I had a case management order that says that motions for

25  protective orders are to be raised by conference calls with

*In re Silvia Nuer - 3/17/10*                                          9

1   letters, I get a notebook captioned, "Motion for the Entry of a

2   Protective Order."

3          MR. TEITELBAUM:  I am sorry, Your Honor, I apologize.

4   I didn't fully appreciate the question.  Again, the reason --

5   the reason is, Your Honor, because this is not a simple matter

6   and we've been before Your Honor on several occasions at status

7   conferences and we did not believe that this matter would --

8   could be fully addressed, appropriately addressed by a letter

9   that would essentially have been the same content, Your Honor,

10  because the issues here are not simple.  The issues here go to

11  really the heart of what this dispute presently before the Court

12  is and we did -- and we thought it appropriate that the Court

13  should have all of the information before it to rule on --

14  excuse me -- to rule on this issue.

15         THE COURT:  Well then you make such a request to me in

16  a conference call.  I had multi-billion dollar discovery

17  disputes in Lyondell Chemical and those lawyers were able to

18  follow the rules.  I don't understand why you couldn't.

19         MR. TEITELBAUM:  Your Honor, I apologize if I haven't

20  followed the rules.  We filed a protective order motion so that

21  Your Honor would have a full record in front of him and could

22  rule on it.

23         THE COURT:  Well now you're placing burdens on all of

24  the other parties in this case and I am going to deny it without

25  prejudice to going by the rules.  Now we're going to use the

*In re Silvia Nuer - 3/17/10*                                    10

1  remainder of the time to get this back on track.  But I am

2  telling you, Mr. Teitelbaum, that my case management orders are

3  not suggestions.  They're not imprecatory terms.

4            MR. TEITELBAUM:  I understand completely.

5            THE COURT:  And I don't want to be interrupted either.

6            MR. TEITELBAUM:  I'm sorry.

7            THE COURT:  And I expect full and complete compliance

8  with my case management orders because aside from the burdens

9  that it places on me, it places party -- burdens on other

10 parties in the case, some of whom are not as well funded as you

11 are and it puts them to the test of trying to decide whether

12 they're going to respond in kind and whether my case is going to

13 alternatively burden them or spin out of control.

14            Now tell me what's bothering you that caused you to

15 give me this notebook?

16            MR. TEITELBAUM:  Thank you, Your Honor.  First is the

17 deposition of Mr. Reyes.  We've asked that that deposition be

18 conducted telephonically.  As I said, Mr. Zipes had no objection

19 to that and I know he's in court and he can speak for himself.

20 Ms. Tirelli did not want to conduct it telephonically.  Your

21 Honor, as I read the rules and the law, telephonic depositions

22 are reasonable and appropriate and there's not even a need for a

23 showing of a hardship.  So we would ask that the Court direct

24 the parties that at least in the first instance that Mr. Reyes

25 can proceed telephonically.

*In re Silvia Nuer - 3/17/10*                                          11

1          THE COURT:  All right.  Ms. Tirelli, what was the

2   problem with that proposal?

3          MS. TIRELLI:  If I may, Your Honor, the problem that I

4   have with that proposal is the amount of documents there are in

5   this case as of today.  Mr. Reyes is apparently an employee of

6   Deutsche Bank which as I understand it, maintains all of the

7   original documents and they are quite voluminous.  As Mr.

8   Teitelbaum has indicated, there's more than 1,400 pages of

9   documents at this point.

10         Now granted not all of them are suitable for questions

11  to be posed to Mr. Reyes, but a good portion of them are and we

12  don't feel that it would be best to use this time to try to do

13  this telephonically.

14         THE COURT:  What does it have to do with whether or

15  not the deposition is taken telephonically in the first

16  instance?

17         MS. TIRELLI:  Well it -- Your Honor, I just think that

18  in terms of handling the documents and seeing what is actually

19  before Mr. Reyes and to avoid any sort of confusion on the

20  record, it would just be a lot easier perhaps to make a nice

21  clean record and making it more clear if we have him in person

22  to review the documents.

23         THE COURT:  Well if any party wants to question Reyes

24  on any particular documents, why can't he or she send copies of

25  the documents that are to be marked as deposition exhibits to

*In re Silvia Nuer - 3/17/10*                                    12

1   the other parties in the case, so that instead of you looking at

2   1,400 of them, you're looking at 20?

3         MS. TIRELLI:  Your Honor, I suppose we could do that.

4   I was also hoping to have Mr. Reyes in the same room as the

5   original documents.  I am not clear on exactly where the

6   original -- those documents are this point.  And that was a file

7   I am going to say of approximately 50 pages.

8         I've asked for color-copied, double-sided, you know,

9   documents -- I'm sorry, double-sided, color copies of these

10  documents since I -- some of them -- just for example, the note

11  has been first disclosed to be unendorsed repeatedly but now it

12  comes up that there's an endorsement on the back of it.  I would

13  like to know when that endorsement was put there.

14        So you see there's questions regarding the documents

15  and I think that handling the originals would make a difference

16  in this case.  I can't trust the copies that have been made.

17        THE COURT:  I thought that was addressed a long time

18  ago?

19        MS. TIRELLI:  It's not that it's been addressed.  I

20  still don't know when that endorsement was put on the back of

21  that note.  Mr. Teitelbaum claims to have had possession of that

22  original note back in July and again has sent it back so it was

23  not available when Mr. Hergin (ph.) testified.  When it came

24  back to his possession, now there's an endorsement on the back

25  of it.  I don't know when that endorsement was put on the back

*In re Silvia Nuer - 3/17/10*                                          13

1   of that note but that's something that I think Mr. Reyes can

2   certainly speak to being that he is the custodian of the

3   documents.

4          THE COURT:  All right.  And there's a problem with

5   asking him that?

6          MS. TIRELLI:  Well there's a problem with asking him

7   that in terms of, you know, we don't really have clear copies of

8   this.  I mean we have some copies, I suppose we could try to use

9   them.  You know, we maybe could compromise and perhaps have this

10  by teleconference where we could actually have one appear on a

11  screen, so I could actually see what documents we're looking at

12  just to make sure that we're actually viewing the same document.

13         THE COURT:  Did you have a meet and confer with Mr.

14  Teitelbaum on this?

15         MS. TIRELLI:  I've tried to, Your Honor.  Jay, is that

16  something that we could work out?

17         THE COURT:  Mr. Teitelbaum?

18         MR. TEITELBAUM:  If I may?

19         THE COURT:  What?

20         MR. TEITELBAUM:  Your Honor, if I may?  We did -- Ms.

21  Tirelli and I did on March 5 discuss the possibility of Mr.

22  Reyes by telephone.  She absolutely refused to do it by

23  telephone, so that was out meet and confer.

24         With respect to Mr. Reyes and 1,400 pages, Mr. Reyes

25  is the document custodian.  He has no personal knowledge of the

1   documents.  His testimony, frankly -- there are three pages

2   attached to Exhibit E to our motion, which are the documents

3   from Deutsche Bank which was like the checking in of the

4   original loan documents.  His testimony would be to the effect

5   of here's what our records show that the documents came in.

6   Here's what the records show that they contained, whether they

7   contained an endorsement, did not contain an endorsement.  We're

8   not talking about 1,400 pages.  We're literally talking about

9   two or three pages and his knowledge of the fact of whether or

10  not WaMu was the servicer and Chase is now the servicer.  Your

11  Honor, in all honesty, that deposition should last about 15

12  minutes.

13          THE COURT:  Ms. Tirelli, did you want to go all of the

14  way out to California for this?

15          MS. TIRELLI:  (Indiscernible).

16          THE COURT:  Wait.  You can't talk over me, Ms.

17  Tirelli.

18          MS. TIRELLI:  Okay.

19          THE COURT:  The question I was asking you was did you

20  really want to go out to California for this deposition?

21          MS. TIRELLI:  Well, Your Honor, it's not that I would

22  want to, it's just that I would want to know for sure, you know,

23  that Mr. Reyes is looking at the same documents that I am

24  looking at.  You know, again, I am looking at Mr. Reyes'

25  affidavit which he submitted in this case and it does seem the

*In re Silvia Nuer - 3/17/10*                    15

1  scope would go perhaps beyond the one or two documents that Mr.

2  Teitelbaum just mentioned.

3        Do I really want to go to California?  No, I don't

4  really want to go out to California, Your Honor, but I did

5  submit the affidavit of Mr. Reyes and I would like him to

6  produce him as a witness so I can -- you know, I can actually

7  reasonably --

8        THE COURT:  Ms. Tirelli, you can't see my body

9  language but I am going through a fair amount of frustration

10  with you, just like I am going through with Mr. Teitelbaum.

11  This kind of stuff is the kind of stuff that we would deal with

12  in about eight seconds over a phone call when I was a lawyer.

13  If you had a limited number of documents, you would premark them

14  for the deposition.  You can copy them in black and white, if

15  it's necessary.  You couldn't do it back in the old days when I

16  was a lawyer but you can do it now, you can copy them in color

17  and you work out with your opponent this stuff.  You're

18  proposing me to approve lawyers going 3,000 miles for a 15

19  minute deposition?

20        MS. TIRELLI:  Your Honor, I am sorry, can I respond?

21        THE COURT:  Yes.

22        MS. TIRELLI:  Okay.  I am not asking you to

23  necessarily ask us to go 3,000 miles for a deposition.  If Mr.

24  Teitelbaum would agree to provide color copies of these

25  documents because there are handwritten notes on some of the

*In re Silvia Nuer - 3/17/10*                               16

1    documents with divergent colors and whatnot, then I just want to

2    make sure that we're all looking at the same documents.  And

3    it's -- we could have this (indiscernible), I think that that

4    should be easy enough to do with today's technology.  I would

5    just prefer to have it done that way versus telephone.  I mean

6    if I have to try it by telephone first, okay, but, you know I am

7    saying that it would just be more productive if we either had it

8    in person or if we could have it be a teleconference

9    (indiscernible).

10            THE COURT:  Mr. Teitelbaum, give her color Xeroxes of

11    the documents.  Premark them.  Your request for a telephonic

12    deposition is granted without prejudice to the possibility that

13    we might have to do more than that upon a showing of cause.

14            At the risk of stating the obvious, I expect a lot

15    more in the way of meet and confers and thoughtful meet and

16    confers on the part of you guys before any discovery dispute is

17    brought to me, either by means of a notebook or by means of a

18    letter.

19            Next issue?

20            MR. TEITELBAUM:  Your Honor, this is Jay Teitelbaum.

21    I am going to apologize.  Apparently our phone went bad for

22    about 45 seconds.  I just rejoined the call.

23            THE COURT:  Well what I said was you are to give to

24    her Xerox copies -- color Xeroxes of the documents you want to

25    mark and you are to premark them.  Anybody who may want to give

*In re Silvia Nuer - 3/17/10*                    17

1   a witness anything else is to do likewise.  And you request for

2   a telephonic deposition is granted without prejudice to

3   anybody's rights to seek or oppose more extensive discovery upon

4   a showing of appropriate cause.

5           MR. TEITELBAUM:  All right.  That's great.

6           THE COURT:  That is a paraphrase of what I said the

7   first time.

8           MR. TEITELBAUM:  Thank you, Your Honor.  I will get

9   the full transcript obviously and we'll fully conform to that.

10          Your Honor, the next issues relate essentially to the

11  scope of the depositions and the Rule 30(b) request that the

12  Debtor has served upon us.  And, Your Honor, the reason for the

13  request of this Court to become involved is because we

14  specifically had discussions with the Office of the US Trustee

15  on the scope and the US Trustee agreed -- again, without

16  prejudice obviously, as things evolved but agreed to the scope

17  of the discovery going forward based upon the pleadings filed in

18  this Court were appropriately limited to the facts and

19  circumstances of the Garvis and the Walter assignments, the two

20  assignments which have given parties concern to date and

21  generally how the motion for relief was prepared.

22          And then I will add to that, given Ms. Tirelli's

23  second amended objection which narrowed the scope and eliminated

24  the prior objection, essentially the issue of standing and facts

25  related to that, what we're faced with, Your Honor, is a Rule

*In re Silvia Nuer - 3/17/10*                                    18

1   30(b) request that goes into a multitude of issues which are not

2   before the Court, not part of any pleading in front of this

3   Court and we at Chase are prepared to produce and have produced

4   witnesses to talk about and testify about the Garvis assignment,

5   the Walter assignment, the loan and how the motion for relief

6   was prepared.

7           But, Your Honor, for example, the discovery requests

8   include number 5, the operation of the legal network, including

9   how attorneys are selected, paid for, who they report to, how

10  their fees are fixed.  Your Honor, we've objected to that on any

11  number of grounds but most of which has absolutely nothing to do

12  with anything in this case.

13          Your Honor, we've also for example in discovery

14  request number 3, the entry and preservation of collector notes

15  and records.  Your Honor may recall from the facts of this case,

16  this loan was not paid for more than a year before Chase became

17  the servicer.  We can certainly as Ms. Tirelli knows, produces

18  someone that says there are no notes and collector records but

19  she knows that because she knows that there were no payments.

20  And by the way, there were not allegations, not a single

21  allegation in the pleadings that refer or relate to collector

22  notes.

23          Number 4, how a payoff number is calculated.  Your

24  Honor, the Debtor has admitted signing the note, signing the

25  mortgage, not having made payments.  There's no dispute as to

*In re Silvia Nuer - 3/17/10*                                    19

1   this fact or issue in the case.  And so we've said look, we'll

2   produce a witness that will testify about how the loan was

3   produced but to try to produce, you know, X number of witnesses

4   with respect to issues that are not before the Court is

5   burdensome.

6          Request number 6, Your Honor, the Debtor has asked for

7   a witness to testify and to quote, "various notations in the

8   documents that were produced."  We met and conferred with Ms.

9   Tirelli to ask her to please try to identify those documents on

10  which there were notations or notes which she had questions.

11  She told me all of them.

12         Now, not all of them have notations and not all of

13  them are relevant to the issues before this Court.  So we would

14  request in that regard that if there are issues that Ms. Tirelli

15  has with notations or stray markings on documents, we will do

16  our best to produce a witness that could address those issues.

17         And we would also point out that we did produce Mr.

18  Herndon who has knowledge of the computer databases and the

19  computer documents that are prepared in this case.  Ms. Tirelli

20  has the documents before her.  She did not ask Mr. Herndon those

21  questions.  So we have produced a witness.  We're ready to do it

22  again but we think that it is reasonable to request that Ms.

23  Tirelli identify out of the documents those which she believes

24  are at issue.

25         And similarly, Ms. Tirelli has asked for identify -- a

*In re Silvia Nuer - 3/17/10*                                    20

1    witness to essentially authenticate every document that has been

2    produced in this case.  Again, we've asked her to plead identify

3    those documents to which she has an issue on authentication and

4    to which authentication is required under Federal Rule of

5    Evidence 902, and with respect to the fact that her own client

6    has signed a request for admissions acknowledging her signature

7    and/or initials on the original loan documents.

8         So we don't need -- there's no dispute as to the

9    authenticity of those documents and in point of fact, those

10   documents were originated by an entity that is defunct and

11   there's not a live person that could authenticate.  And as we

12   set forth in our motion in a case out of the District of

13   Illinois, in this type of situation, this type of business

14   record is presumptively authentic unless there's some showing

15   that it isn't.  And frankly in this case, we have the Debtor

16   acknowledging her signature on the document; on the note, on the

17   mortgage and on related documents.

18        The requests for internal processes for Chase as far

19   as making a determination as to the validity of a claim, Your

20   Honor, there is no dispute.  We can do it with respect to this

21   loan if the Court would so order us to do it but again

22   respectfully, there is no dispute on this issue.  And we are

23   concerned as frankly was the case in LPS (ph.) in which sort of

24   brought this -- that other matter before Your Honor was that the

25   deposition metamorphous itself into something that goes from the

*In re Silvia Nuer - 3/17/10*                    21

1   specific loan to general practices and policies unrelated to the

2   loan.  And we are extraordinarily concerned about the scope and

3   we've tried to get an agreement limiting it, and we have not

4   been able to do that, getting the discovery limited to this

5   loan.

6          Request number 8, the Debtor asked --

7          THE COURT:  Mr. Teitelbaum, would you try very hard --

8   try to speak a little more directly, a little more quickly.

9   This conference call is going on interminably.

10          MR. TEITELBAUM:  Your Honor, there are approximately

11   10 or 11 requests and the bottom line is, we have reached an

12   agreement in principle with the US Trustee which would limit the

13   scope of discovery to the assignments with respect to Ms. Garvis

14   that she executed, that Mr. Walter executed and with respect to

15   in general how the motion for relief was prepared.

16          Essentially, Your Honor, that's the substance of our

17   motion, that we would ask that Ms. Tirelli limit her discovery

18   to that which the US Trustee has asked for, as well in this case

19   based on what's presently before the Court.

20          THE COURT:  All right.  Ms. Tirelli, do you want to

21   respond?

22          MS. TIRELLI:  Yes and I will try to be brief, Your

23   Honor.  I have questions regarding a lot of the documents that

24   have been produced in this case and it's at the point, I cannot

25   trust anything that is being handed over to me.

*In re Silvia Nuer - 3/17/10*                    22

1      Most recently in Mr. Teitelbaum's email which I

2  believe was March 4 if I am not mistaken, he references again

3  advocating for the assignments of mortgage which we already know

4  were somewhat falsifies, that he advocates that they were, in

5  fact, notarized documents.

6      Well after speaking -- after taking the deposition of

7  Ann Garvis, apparently she never signed that in front of a

8  notary.  Mr. Walter yesterday testified that he's not sure when

9  those notaries attached the notarization, the second page of the

10  document that he signed.  So I can't take it for granted that

11  anything being handed to me  is what it purports to be.  It

12  could well --

13      THE COURT:  That's non-responsive, Ms. Tirelli.  What

14  I need to know is why on any document you want to ask questions

15  on you can't just say these are the documents upon which I need

16  a qualified witness and why you're making your opponent go

17  through 14,000 (sic) documents without telling him what you want

18  to question on.  And if you need to look at the documents, in

19  color or otherwise, before you do it, why don't you look at the

20  documents and make your request after that?

21      MS. TIRELLI:  Okay.  Your Honor, then perhaps what I

22  should do at this time is take a review of the documents and

23  give him -- and give Mr. Teitelbaum a more specified list of

24  exactly what I want to question on.

25      THE COURT:  Thank you.

*In re Silvia Nuer - 3/17/10*                                23

1          Next issue?

2          MR. TEITELBAUM:  Your Honor, that was really the issue

3   that we tried to resolve -- that I tried to resolve on March 5

4   telephonically with Ms. Tirelli.  I will just note that on two

5   separate occasions Ms. Tirelli was at my office and viewed for a

6   couple of hours the original loan documents.  We have made those

7   available to her and for her to say she doesn't know where they

8   are, they are still in my office.  And she knows that and we

9   made them available.

10         MS. TIRELLI:  Okay.

11         MR. TEITELBAUM:  And there are --

12         MS. TIRELLI:  I don't know that.

13         MR. TEITELBAUM:  Okay.  Your Honor, this --

14         THE COURT:  All right.  Wait.  Mr. Zipes, do you want

15  to get into this food fight?

16         MR. TEITELBAUM:  Hello?

17         THE COURT:  Just a minute, Mr. Zipes is coming to the

18  lectern.

19         MR. ZIPES:  Judge, I am listening to this with some

20  feelings of anguish because I had actually had thought until

21  this motion was filed by Mr. Teitelbaum that the parties were

22  cooperating.  I actually think that outside certain requests,

23  maybe one side wants to give a little bit less and one side

24  wants to give a little bit more, but for the most part this has

25  been a consensual discovery process.

*In re Silvia Nuer - 3/17/10*                    24

1       And I think, frankly, Ms. Tirelli after I have had

2   discussions with her, was prepared to modify her request.  I am

3   not quite sure that this motion was necessary and I think the

4   parties have worked cooperatively, generally, Judge.  And this

5   actually is not a good indication of what's been going on in the

6   discovery process.

7       We do have serious issues in this case.  The

8   assignments are -- contain incorrect information.  Chase has

9   until yesterday at least, cooperated in producing every witness

10  that we've asked for.  I think that there's some question that

11  we want to make sure that Chase isn't going to offer some other

12  witness, that they haven't already produced at the time of a

13  trial or an evidentiary hearing before this court.

14      Mr. Teitelbaum just now earlier said we could do this

15  by telephone but if that doesn't work out, we'll do it some

16  other way.  That's the Mr. Teitelbaum frankly that I know.

17  That's not necessarily what he was saying before today but I

18  think we can work all of these issues out, Judge.  And again,

19  that's all I have to say.

20      THE COURT:  All right, folks, what is there that you

21  don't think you can work out that I need to decide as the Judge?

22      MR. TEITELBAUM:  Your Honor, this is Jay Teitelbaum.

23  Just very quickly, I greatly respect Mr. Zipes but I think what

24  you've heard on this call, frankly, is that Ms. Tirelli had

25  asked for a lot of information.  I've tried to work with it.

*In re Silvia Nuer - 3/17/10*                              25

1  Chase has tried to work with it.  It has not been cooperative in

2  that regard and that is why we did make the motion.

3        With respect to the telephonic issue, Your Honor, that

4  was actually frankly right in our pleading.  It was offered up

5  from the get go and we were unfortunately unable to make a --

6  get a resolution on that.

7        What I would ask the Court for at this point, Your

8  Honor, is the -- a direction that limits the discovery to the

9  issues which Mr. Zipes and myself have tried to work through

10  which were the Garvis and the Walter assignment and how the

11  motion for relief was prepared and to eliminate from the

12  discovery issues at this point the extraneous underlying facts

13  which are not before -- not in dispute here.

14        THE COURT:  All right.  Ms. Tirelli, help me with that

15  point that Mr. Teitelbaum made a moment ago -- it was more than

16  a moment ago, it was quite a long time ago -- about you asking

17  for stuff beyond issues dealing with the Garvis, Walter

18  assignments, how the motion for relief was prepared and the

19  issue of standing?

20        MS. TIRELLI:  Okay, Your Honor.  Mr. Zipes and I have

21  very similar interests in this case but they're not exactly

22  congruent.  The Debtor certainly has questions regarding

23  standing and regarding the chain of custody and chain of

24  ownership of her loan documents.  I understand that Mr.

25  Teitelbaum seems convinced that his documents are going to be be

*In re Silvia Nuer - 3/17/10*                                    26

1   all, end all but there's yet anybody to actually come forth and

2   authenticate these documents.  Hopefully Mr. Reyes will be able

3   to help us in that regard but I don't know yet.  We haven't

4   deposed him yet.  So I think that limiting discovery at this

5   point would just be premature.

6           And I also want the Court to know, and I think this

7   was indicated in my email which I did provide to the Court, I

8   have been stating right along, you know, let's work this out.

9   It's not that I am not willing to narrow the scope.  I am saying

10  just not at this time; let's see how these depositions progress.

11  Mr. --

12          THE COURT:  Ms. Tirelli, you've just done the exact

13  same thing that I criticized Mr. Teitelbaum for.  I asked a

14  simple questions and you answered a different question at

15  excruciating length.  The question I asked is why do you need at

16  this point, if ever, information going beyond the circumstances

17  of your particular client?

18          MS. TIRELLI:  Well, Your Honor, I don't think that I

19  am asking for anything that's going beyond the circumstances of

20  my client.  You know, again I will take a look at the discovery

21  requests I have made and to the extent that I am able to narrow

22  them, I will certainly work to do so.

23          THE COURT:  All right.  Mr. Teitelbaum, your request

24  that the document production and the testimony be limited to

25  your particular client is granted for the time being without

*In re Silvia Nuer - 3/17/10*                27

1   prejudice to Ms. Tirelli's or to Mr. Zipes ability to get more

2   upon a showing of cause.

3        Now with that said, we've gone on for almost an hour

4   and I am going to give you ten more minutes.  And then I am

5   going to make you guys go back and confer the way you should

6   have conferred the first time before I spend any more time on

7   these disputes because frankly, folks, I am losing my patience.

8        Now Mr. Teitelbaum, are there any unique issues that

9   are incapable of being dealt with by a meet and confer?

10       MR. TEITELBAUM:  Your Honor, the most troublesome one

11  I would like the Court to focus on at this point is this request

12  number 5; the operation of the legal network including how

13  attorneys are selected, how they are paid, who they report to,

14  how their fees are fixed or set (indiscernible) --

15       THE COURT:  I thought I just ruled on that.

16       MR. TEITELBAUM:  -- to the party retained.  Your

17  Honor?

18       THE COURT:  I thought I just ruled on that, that I was

19  saying that you don't need to produce --

20       MR. TEITELBAUM:  (Indiscernible.)

21            (Cross-talk)

22       THE COURT:  Mr. Teitelbaum, you can't talk over me.

23  Forgive me.

24       MR. TEITELBAUM:  I'm sorry.

25       THE COURT:  I don't know why I am asking you to

*In re Silvia Nuer - 3/17/10*                    28

1   forgive me but I've just ruled on that.  I said that if it

2   doesn't particular effect this client, it's not going to be

3   produced at this time.

4          MR. TEITELBAUM:  Thank you.  And this client just

5   meaning Ms. Nuer.  That's what I wanted to understand.

6          THE COURT:  Yes.

7          MR. TEITELBAUM:  Thank you.  Then, Your Honor, I don't

8   have anything further.

9          MS. TIRELLI:  I do.

10          THE COURT:  All right.  Go ahead.

11          MS. TIRELLI:  Yes, and hopefully, on -- you know, I

12   did try to confer with Mr. Teitelbaum on this yesterday but he

13   thought that we would, you know, bring this up at this time.

14   Mr. Teitelbaum informed me that he is producing attorney Amy

15   Przewozny, I guess as a 30(b)(6) witness.  Attorney Przewozny is

16   an attorney with the Steven J. Baum Law Firm.  I am not sure --

17          THE COURT:  With the what law firm?  With the Baum Law

18   Firm?

19          MS. TIRELLI:  Yes, she's a -- right.  She's -- my

20   understanding is -- and I do know Amy.  She is an attorney with

21   the Baum Law Firm.  I believe she graduated law school in about

22   2004 and she's the managing attorney over there.  She, as far as

23   I am aware of, did not submit any of the documents in this case.

24   So I did ask Mr. Teitelbaum how it is that she's the choice of

25   witnesses and he told me that she's the 30(b)(6) witness and

*In re Silvia Nuer - 3/17/10*                              29

1   said I will just figure it out.  I don't quite know that what

2   means.  If she's going to be asserting the attorney-client

3   privilege to every question that I ask, I am still willing to go

4   forward with the deposition, Your Honor, but we're going to end

5   up with a transcript that's just, you know, repeating the same

6   line; attorney-client privilege as the answer.

7           THE COURT:  Well is your problem that she is going to

8   be asserting or may assert the attorney-client privilege or is

9   it that she's the wrong 30(b)(6) designee?

10          MS. TIRELLI:  I guess it's both, Your Honor.  I just

11  don't see how she can be a 30(b)(6) designee and if she is, is

12  she waiving the attorney-client privilege?

13          THE COURT:  Well 30(b)(6) designations have nothing to

14  do with the attorney-client privilege.  The law is quite clear

15  that attorneys can be required to testify but that that doesn't

16  make the attorney-client privilege go away.

17          On the issue of who is the proper 30(b)(6) designee,

18  you have the key to the jail in your pocket by being more

19  specific as to what you want to question on and if you do that,

20  they've got to produce the right guy or woman and if they don't

21  do that, you can keep getting orders from the Judge to keep

22  having him produce people until you get the right one.

23          But the attorney-client privilege issue and the proper

24  designee issue have nothing to do with each other.

25          MS. TIRELLI:  Okay.  Thank you, Your Honor.

*In re Silvia Nuer - 3/17/10*                    30

1      THE COURT:  Mr. Zipes?

2      MR. ZIPES:  Yes, Judge, not to belabor the issue here

3  but this is exactly the type of issue that until -- I won't say

4  the motion but the parties have been able to work this out.  My

5  office had the same exact question as Ms. Tirelli.  We're

6  relying on Chase to produce someone who is familiar with how

7  this motion was prepared.  Chase has chosen to produce Amy

8  Przewozny.  We are going to depose her with the assumption that

9  this is the right deponent and if it's not or we need someone

10  else, which it appears likely that we would, we would have that

11  conversation with Jay Teitelbaum.

12      THE COURT:  You already told Mr. Teitelbaum that what

13  you want to question the Baum witness on was how the motion was

14  prepared.

15      MR. ZIPES:  That's correct.  The Chase party that

16  helped prepare this motion, that's what my office wants that led

17  to an assignment of --

18      THE COURT:  But the Chase business person or the Baum

19  lawyer?

20      MR. ZIPES:  Well see, Judge, this is the discussions

21  that we were having.  We're leaving it to Chase.  We're saying

22  we want the people at Chase who were involved with preparing

23  this motion to vacate the stay which have bad information on it.

24  And all that Chase has produced to date are LPS, which we have

25  issues with because we weren't able to depose, and we don't know

*In re Silvia Nuer - 3/17/10*                                    31

1   -- and they're producing an attorney to describe the motion.

2   And they produced Mr. Herndon, as well, who described the chain

3   of title but who wasn't involved with this motion.

4           Judge, what my office -- my office actually thinks

5   there are going to be very few contested facts at the end of the

6   day before this Court.  We expect to enter into stipulations

7   with Chase on this, if it ever becomes an evidentiary hearing.

8           The issue for this Court to decide is going to be what

9   Chase's duties were in vetting its own motions to vacate the

10  stay.  Everybody they've produced to date has had virtually no

11  information on the motion that was put before this Court or the

12  assignments which had bad information.  It was people signing

13  their names on the dotted line for the most part and we're still

14  waiting as part of discovery to figure out who at Chase was the

15  person reviewing this motion in depth and detail before it went

16  out.  That's the issue that is going to be before the Court.

17  Chase is going to say that yes, they made some mistakes but no

18  worries.  And that's really the issue that my office sees.

19          So LPS is Mr. Walter, that was yesterday.  We were

20  surprised at the problems that occurred yesterday because we

21  were operating in a very consensual way in producing witnesses.

22  LPS has elected at the last moment, Judge, to assert that

23  service of a subpoena was improper and I know that Mr. Cash is

24  not on line right now but I don't think he would say anything

25  different here.

*In re Silvia Nuer - 3/17/10*                                    32

1          I am in agreement with the General Counsel of LPS

2    which is, Judge, a publicly traded company.  They were supposed

3    to produce a witness yesterday and answer our questions in

4    connection with the assignment.  It turned into a charade where

5    we weren't allowed to ask questions.  There were objections on

6    the grounds of relevance, for example.

7          Mr. Cash did not like the fact that I was asking about

8    what happened in LPS and the assignment after 2008.  He said

9    that's irrelevant.  And not citing any rules of evidence, that's

10   when he said I am directing the witness not to answer that.  And

11   then he walked out.

12         THE COURT: Wait.  He directed the witness not to

13   answer a question for grounds under the privilege?

14         MR. ZIPES:  That's -- well, Judge, first he said he

15   was there as a volunteer and not pursuant to the subpoena which

16   we served because -- and he was there as a volunteer.  And then

17   he picked and chose the questions that he was entitled to

18   answer.

19         I actually -- one of the documents that my office

20   asked for from them, the one document was, what is LPS'

21   operational agreement with Chase that allows LPS to assign an

22   assignment on behalf of Chase and add that to a motion to vacate

23   the stay and Chase has disavowed any responsibility apparently

24   for LPS' action in this case.  They said they're represented by

25   separate counsel.  We're not responsible for them, even though

*In re Silvia Nuer - 3/17/10*                                    33

1   they prepared an assignment that made it to this court.

2           He refused to produce that document and he's claiming

3   that we don't have jurisdiction over him, even though we had

4   this agreement and I sent a subpoena to General Counsel of LPS.

5   Chase was on all the email chains when this happened.  I was

6   taken aback when the day before this deposition, LPS took --

7           THE COURT:  Well, Mr. Zipes, I think with Mr. Cash not

8   on the phone --

9           MR. ZIPES:  Yes.

10          THE COURT:  -- it's inappropriate for you to be

11  talking anymore --

12          MR. ZIPES:  I'm sorry.

13          THE COURT:  -- about LPS.

14          MR. ZIPES:  Okay.  But -- I'm sorry.

15          MR. TEITELBAUM:  Your Honor, if I may briefly, this is

16  Jay Teitelbaum.

17          With respect to LPS, Mr. Cash is not on the line, I

18  think he would take issue with a lot of what Mr. Zipes said

19  today.  I was there.  Mr. Walter, the person who signed the

20  assignment attached to the motion for relief, was the witness.

21  He testified that he identified the signature.  The objections

22  that came from Mr. Cash related to issues unrelated to the

23  execution of the assignment.  They related to the business

24  practices of LPS.

25          I just want the Court to be aware that from where I

*In re Silvia Nuer - 3/17/10*                                        34

 1  was sitting, Mr. -- LPS was there at the request of Chase to

 2  answer questions regarding the assignment in this case.  When

 3  the questions went beyond that scope, Mr. Cash lodged

 4  objections.  And he -- Mr. Cash also did bring with him a

 5  servicer's agreement and offered that it be used during the

 6  deposition, provided that the parties would agree for the

 7  purposes of the deposition that it be confidential with everyone

 8  reserving their right to then, if it needed to be made public,

 9  be made public and that offer was made on a couple of occasions

10  during the deposition.  Mr. Zipes and Ms. Tirelli were not

11  comfortable with that and so Mr. Cash did not produce the --

12          THE COURT:  Mr. Teitelbaum, I have the same problem

13  with you.  I don't want to discuss this further with Cash not on

14  the line.

15          MR. TEITELBAUM:  I --

16          THE COURT:  I am also having problems with the fact

17  that we're still not done and we've taken twice the amount of

18  time that I took in my last three discovery dispute conferences

19  in Lyondell Chemical in matters involving a 23 billion dollar

20  LBO.  Now --

21          MR. TEITELBAUM:  Your Honor, from our perspective,

22  you've ruled and we appreciate that and we don't have anything

23  further.  I honestly just wanted to not leave the LBS issue with

24  only one side being --

25          THE COURT:  Well, you're going to have to stay on

*In re Silvia Nuer - 3/17/10*                                35

1  because we're going to get cash on in a minute.  But if there is

2  one thing that I am hoping I made clear is that the meet and

3  confers have not been satisfactory between you and Ms. Tirelli

4  and you Mr. Teitelbaum.  And I don't want to issue an order

5  prohibiting you from filing motions, Mr. Teitelbaum but I don't

6  want further motion papers from you on this kind of stuff.  And

7  Ms. Tirelli, I must confess to you, by being shocked by the lack

8  of thought and lack of refinement that you had in your

9  questions.  So I am furious at both of you.

10         Now what we're going to do is I am going to extend the

11  discovery cut-offs to the extent necessary.  You're going to

12  spend the next two weeks meeting and conferring and working out

13  the details of this stuff.  And you're going to be more focused

14  in your request, Ms. Tirelli and you're going to be less

15  stonewalling in your responses, Mr. Teitelbaum.  And you're not

16  going to be hitting her over the head with a sledgehammer when a

17  phone call or a thoughtful response or saying okay, I will give

18  you color Xerox would skin the cat.

19         Now let's get Cash on the phone.

20         COURT CLERK:  I don't have Mr. Cash's cell phone

21  number.  I don't know what -- do you have Mr. Cash's cell phone

22  number?

23         MR. ZIPES:  I don't have his cell number, I am sorry,

24  with me.  I saw you walking around with a little card.

25         COURT CLERK:  Yes, this is not it.

*In re Silvia Nuer - 3/17/10*                                    36

1          MR. ZIPES:  I thought you did.

2          THE COURT:  What do we have on tomorrow's calendar?

3          COURT CLERK:  Judge, we have several status

4    conferences and you also have several lis stay motions in your

5    smaller cases.

6          THE COURT:  All right.  We're going to continue this

7    conference via conference call after my morning calendar

8    tomorrow.  Get Cash on it.  And his birthday will be over then

9    and whether or not his celebrating is over, he will participate

10   in that call and tell him he's got to be in a quiet place to

11   participate.

12         MS. TIRELLI:  Your Honor?

13         THE COURT:  Yes, Ms. Tirelli, is that?

14         MS. TIRELLI:  Yes.  It's Linda Tirelli, Your Honor.  I

15   have a hearing before Judge Schiff tomorrow up in Bridgeport.

16   So I am afraid that, you know, at about 1 o'clock -- because I

17   would have to leave my office no later than 1:00 if I am leaving

18   from --

19         THE COURT:  When is your hearing before Judge Schiff?

20         MS. TIRELLI:  It's at 2 o'clock, but depending on

21   where it falls on the calendar, I could be there until 4:30.  I

22   can certainly, you know, do a conference as long as I am off the

23   phone by 1 o'clock, but if you have a calendar in the morning,

24   then I probably would not think you would be available until

25   after 4:30.

*In re Silvia Nuer - 3/17/10*                                    37

1        THE COURT:  Can we do it at 8 o'clock in the morning

2    tomorrow?

3        MS. TIRELLI:  I would be more than happy to do it at 8

4    o'clock in the morning, Your Honor.

5        THE COURT:  All right.  8 o'clock in the -- well,

6    wait, we need to be sure that we have that cell phone number

7    from Helene or that one of you can reach this guy.

8        MR. TEITELBAUM:  I have -- this is Jay Teitelbaum.  I

9    have his cell.  I can provide it to the Court right now or I can

10   try to reach him but frankly, I would prefer not to be

11   responsible to try to reach him but I am happy to do it.

12       THE COURT:  Well I want -- we can't affect his rights

13   without him being on the call but I am not going to subject

14   myself or the other parties in this case to listening to a lot

15   of background chatter in a New Orleans party.  So we'll do it at

16   8 o'clock tomorrow eastern time, because I assume New Orleans is

17   on central time and he's got to be in a quiet place.

18       MR. TEITELBAUM:  Your Honor, I can undertake to reach

19   him.  I have his -- what -- should we use the same call in

20   information?

21       THE COURT:  I don't know what call information is

22   going to be used.  It's going to be on the record in the

23   courtroom.

24       MR. TEITELBAUM:  Yes, but I had provided a call in

25   information for the parties and the Court on this.  Should we

*In re Silvia Nuer - 3/17/10*                    38

1  use the same information?

2          THE COURT:  Fine with me.

3          MR. TEITELBAUM:  Ms. Blum has that and all of the

4  parties have it already, so I don't -- I will not, unless you

5  need it again, I am not going to recirculate it.

6          THE COURT:  All right.  The only question is, Ms. Blum

7  is usually in by 8 o'clock.  So -- but you would need that --

8  give my law clerks the call in information again, Mr.

9  Teitelbaum, off this call.

10         MR. TEITELBAUM:  Okay.  I have it here, can I -- if I

11 may?

12         THE COURT:  You can do it right now then; yes.  Go

13 ahead.

14         MR. TEITELBAUM:  It's -- the dial in number is 404

15 area, 443-6397.  The pass code or the access code is 6950334#.

16 And I will join in as the host and everyone will connect.

17         THE COURT:  All right.  Are we adjourned then?

18         MR. TEITELBAUM:  Your Honor, I will contact Mr. Cash.

19         MR. ZIPES:  Is the courtroom actually going to be open

20 tomorrow or should I just call in?

21         THE COURT:  We'll make sure.  When I get in, which is

22 usually well before 8 o'clock, I will make sure the courtroom's

23 open.

24         MR. ZIPES:  Okay.  Thank you, Your Honor.

25         THE COURT:  Or maybe it's easier for you just to call

*In re Silvia Nuer - 3/17/10* 39

1  in like everybody else, Mr. Zipes.

2          MR. ZIPES:  Okay.  Thanks.

3          THE COURT:  All right.  We're adjourned.

4          MR. TEITELBAUM:  Thank you.

5          MS. TIRELLI:  Thank you, Your Honor.

6                  (Matter concluded)

7                    - oOo -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION


I, Linda Ferrara, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated:  March 22, 2010

_____
Signature of Approved Transcriber