TEITELBAUM & BASKIN, LLP
Attorneys for JPMorgan Chase Bank, N.A.
as servicer for Deutsche Bank National
Trust Company, as Trustee for Long
Beach Mortgage Trust 2006-2
1 Barker Avenue, Third Floor
White Plains, NY 10601
(914) 437-7670
Jay Teitelbaum
jteitelbaum@tblawllp.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
In re                                               :        Chapter 7
                                                    :
SILVIA NUER,                                        :        Case No. 08-14106 (REG)
                                                    :
                    Debtor.                         :
-------------------------------------------------------

## RESPONSE OF JPMORGAN CHASE BANK, N.A. WITH RESPECT TO ORDER TO SHOW CAUSE, DATED MARCH 11, 2013

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

JP Morgan Chase Bank, N.A., as servicer for Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Trust 2006-2 (together "**Chase**"), for (i) its response to the Court's *sua sponte* order to show cause, dated March 11, 2013 (ECF Docket No. 127) (the "**OSC**"); (ii) its response to the Chapter 7 Trustee's response, dated March 28, 2013 (ECF Docket No. 128) to the OSC (the "**Trustee's Response**"); (iii) its response to the Debtor's response, dated March 29, 2013 (ECF Docket No 130) to the OSC (the "**Debtor's Response**"); and (iv) in support of an order closing the Bankruptcy Case, respectfully states:

1.      There is no reason or basis to keep this case open. The Court correctly identified the fact that there has been no activity in this case for over a year. In fact, there has not been a

substantive filing in this case for nearly three years. The last substantive filing occurred in late March, early April 2010 (ECF Docket Nos. 95-99) in connection with a protective order sought by Chase arising from the conduct of a deposition by the Debtor's counsel, Ms. April Charney. The relief requested by Chase was granted by order of this Court as reflected in the transcript of the April 19, 2010 telephonic hearing.

2. The Trustee's response to the OSC is truly incredible. Prior to filing the Trustee's Response, the Trustee had not filed a single substantive pleading in this case since *May 2009* (ECF Docket No. 52) and has no conceivable interest in this case other than fees. The Premises (1651 Metropolitan Avenue, Bronx, N.Y. #7C) is subject to Chase's first priority mortgage in the principal amount of $104,000, plus interest, costs and fees accruing since October 2007 and recorded liens of the Co-op believed to exceed $80,000.00. [1]

3. Similarly, incredible is the Debtor's Response which misrepresents material facts to this Court. First, the motion for relief by Chase which was at issue in connection with the sanctions motion by the Debtor related to the Premises identified as 1651 Metropolitan Avenue, Bronx, N.Y. #7C and has nothing to do with a Purdy Avenue apartment. Second, without discussing the terms of any settlement discussions, on more than one occasion, Chase did offer to settle this matter and discussed same with Mr. Zipes of the Office of the United States Trustee. Third, Chase has never admitted to having filed any false or misleading documents with this Court and denies any that false or misleading pleadings have been filed with the Court in this case. Chase has acknowledged that errors may have been made in the original motion for relief with respect to attaching an incomplete copy of the note--which did not include a copy of the back page with the endorsement; however, Chase has since corrected any such errors and indeed withdrawn the

---

1 According to Trulia.com, the average list price for apartments in this development is $128,237 and the average sales price is $89,250.

so-called offensive pleading.

4. Moreover, the undersigned counsel has represented to the Court and continues to represent to the Court, that I am in possession of the original note and mortgage, in my capacity as attorney for Chase and that the originals of such documents have been made available to counsel for the Debtor for inspection. Chase continues to maintain that is has standing to prosecute the rights of a holder of the Note and owner of the Mortgage and this Court has noted that if Chase "wanted to proceed with a motion for relief from the stay, either on a clean slate or after an evidentiary hearing, it's likelihood of succeeding would eventually get very, very high. I don't know if it's productive to say that it would be a 90 percent chance of being ultimately successful or even higher." (Transcript of January 7, 2010 hearing at p. 51.) (Exhibit A).

5. Further, the Trustee's and the Debtor's references to alleged mortgage industry practices are irrelevant as determined by this Court on March 18, 2011. (March 18, 2011 Transcript at p. 31. The Court: "I am not engaging in a freestanding investigation of the mortgage collection industry.") (Exhibit A hereto).

6. As reflected by Docket No. 125, the Debtor passed away sometime in July 2012; however, the activity in this case stopped long before Ms. Nuer passed away. Contrary to the statement at page 4 of the Trustee's Response, Chase has had no substantive settlement or other discussion to resolve this case since at least October 2010, when Chase rejected a settlement proposal made by counsel for the Debtor. (A copy of the October 29 letter to Mr. Gardner is attached to ECF Docket No. 119 as Exhibit D).

7. Dismissal of this case is appropriate under Federal Rule of Civil Procedure 41(b), as made applicable to contested matters by Bankruptcy Rule 9014(c). Neither the Debtor nor the Trustee have prosecuted this matter for nearly three years; the Debtor, who is deceased, will not

3

be prejudiced; Chase continues to be prejudiced by the continued application of the automatic stay with respect to its rights as a mortgagee and by the continued expense of monitoring this dormant matter; and there are no assets for the Trustee to administer. *Cf. LeSane v. Hall's Security Analyst, Inc.*, 239 F.3d 206 (2d Cir. 2001) (identifying the factors considered in connection with a Rule 41 dismissal).

8. As counsel for the Debtor admits, this case has nothing to do with the administration of any assets for the benefit of creditors and everything to do with seeking legal fees for a crusade which was abandoned more than three years ago.

9. The Debtor and the Trustee have slept on any purported rights for nearly three years and should not be permitted to continue to burden Chase or the Court with this matter.

**WHEREFORE**, Chase respectfully requests that this case be closed.

Dated: White Plains, New York
       March 29, 2013

        TEITELBAUM & BASKIN, LLP
        Attorneys for JPMorgan Chase Bank, N.A.
        as servicer for Deutsche Bank National
        Trust Company, as Trustee for Long
        Beach Mortgage Trust 2006-2

        By: /s/ Jay Teitelbaum

        1 Barker Avenue, Third Floor
        White Plains, NY 10601
        (914) 437-7670
        jteitelbaum@tblawllp.com

Exhibit A

*In re Silvia Nuer - 1/7/10*                                                  51

1  but I would discourage you from doing it, because I think that
2  in the exercise of my discretion I would ultimately conclude
3  that factors that have to be weighed in the totality as part of
4  any discretionary determination, such as the benefits of knowing
5  the facts, the benefits of having a long familiarity with the
6  matter, the fact that even amongst those lawyers, who are
7  licensed in New York, there is a wide spectrum of skill, and it
8  is normal for lawyers to practice and to litigate with the need
9  to address the law of other states.
10         The motion while permissible is not likely to be a
11 good expenditure of money.  And in my case management
12 responsibility, I want matters to proceed on the assumption that
13 either that motion wouldn't be made or would not be granted if
14 made.  So, while technically speaking, I'm giving you permission
15 to make it, I'm discouraging you from doing so.
16         On the matter of summary judgment, if such a motion
17 were made, it would have about an even money chance of being
18 successful on summary judgment.  Although ultimately if the bank
19 wanted to proceed with it's motion for relief from the stay
20 either on a clean slate or after an evidentiary hearing, it's
21 likelihood of succeeding would eventually get to be very, very,
22 high.  I don't know if it's productive to say that it would be a
23 90 percent chance of being ultimately successful or even higher.
24         But in the absence of some consensual resolution, it
25 appears to me that with competent lawyering which the bank now

In re Silvia Nuer - 3/18/10                                    31

1    So, you know, I am trying to proceed in good faith. I
2  have a guy that just came -- is coming 3,000 miles. I offered
3  to make him available live and if people aren't available, they
4  aren't available. I am just concerned and I don't want to have
5  to come back to the Court with these types of issues. And since
6  we're all here, I would ask for that clarification if possible.
7    THE COURT: Let me clarify it in this way, Mr.
8  Teitelbaum. If and to the extent which you folks can make
9  deals, which of course is my preference, I expect parties once
10 they make the deals to honor them. If anybody reasonably
11 believes in good faith that he or she needs something beyond a
12 deal and if it's a new request, not renegotiating the deal and I
13 have some trouble seeing how somebody who just made a deal can
14 then do this, but maybe somebody else might have a need, the
15 purpose of the matters before me is to address the issues
16 originally raised by Ms. Tirelli and the issues raised by the US
17 Trustee. I am not engaging in a freestanding investigation of
18 the mortgage collection industry.
19   With that said, anything that bears on the issues
20 before me or might lead to such under the usual Rule 26
21 standards, is admissible. The starting point for that inquiry
22 is the specifics of what Chase and/or the Baum firm did in its
23 litigation against Ms. Nuer. To the extent practices in the
24 industry or relations between various parties impacted upon Ms.
25 Nuer, they are fair game for discovery. If they're wholly

*In re Silvia Nuer - 3/18/10*                                32

1  unrelated to anything affecting Ms. Nuer, my ruling now subject
2  to some showing of relevance of which I am now unaware, is that
3  it's not discoverable.
4      To the extent there is an overall pattern or practice
5  that did bear on Ms. Nuer, most obviously the way the Baum firm
6  does things but possibly in other areas, I will consider that on
7  the facts, but if it affects Ms. Nuer, the party who is opposing
8  it is going to have to row upstream to show me that it's not
9  relevant.
10     Is that helpful, Mr. Teitelbaum?
11     MR. TEITELBAUM: Yes, it is. Thank you.
12     THE COURT: All right.
13     MR. CASH: Your Honor, Mike Cash. One more question?
14     THE COURT: Yes, sir.
15     MR. CASH: If we are able to work out a scope of the
16 deposition -- and I'm hoping that we could do it this afternoon
17 or tomorrow, if we are able to work that out and work out
18 another date and I think given the Court's attorneys eyes only,
19 I don't think the document is going to be an issue any longer,
20 is there -- would the Court like us to memorialize that? Would
21 you like us to put it in an order? Do you still want a brief or
22 memorandum supporting the instructing a client not to answer? I
23 guess I am trying to find out what, if anything, becomes moot if
24 we are able to work out the logistics of this deposition?
25     THE COURT: If you can get a full deal, Mr. Cash,